# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>REVSTONE INDUSTRIES, LLC, et al.,[1]<br><br>     Debtors. | Chapter 11<br>Case No. 12-13262 (BLS)<br>Jointly Administered |
| REVSTONE INDUSTRIES, LLC,<br><br>     Plaintiff,<br><br>v.<br><br>SCOTT R. HOFMEISTER and GEORGE S. HOFMEISTER,<br><br>     Defendants. | Adv. Proc. No. 14-_____ (BLS) |

## COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS, UNAUTHORIZED POST-PETITION TRANSFERS AND RELATED RELIEF

Plaintiff Revstone Industries, LLC (the "Debtor" or "Plaintiff"), by and through its undersigned counsel, and based upon knowledge, information and belief, alleges as follows:

## NATURE OF ACTION

1.    The Debtor seeks to recover, for the benefit of its bankruptcy estate and its creditors, a series of biweekly cash transfers (collectively, the "Scott Transfers"), totaling in excess of $133,000, that were made during 2012 by the Debtor's former manager, Defendant George S. Hofmeister ("George Hofmeister"), to or for the benefit of his son, Defendant Scott R. Hofmeister ("Scott Hofmeister"). The Scott Transfers purported to be wages paid to Scott Hofmeister as an employee of the Debtor, but were made when Scott Hofmeister was attending

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool & Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each Debtor is: Revstone Industries, LLC, et al., c/o Huron Consulting Group Inc., 900 Wilshire Drive, Suite 270, Troy, MI 48084, Attn: John C. DiDonato, Chief Restructuring Officer.

business school and, in his own words, was "out of the picture" on the Debtor's activities. Accordingly, the Debtor did not receive reasonably equivalent value in exchange for the Scott Transfers. Approximately $124,000 of the Scott Transfers were made prior to the Debtor's petition date, while the Debtor was insolvent. The remainder of the Scott Transfers were made after the Debtor's petition date, and were not authorized by this Court or by title 11 of the United States Code (the "Bankruptcy Code").

2. Scott Hofmeister was the recipient or beneficiary of the Scott Transfers, and as such is liable for the return of the Scott Transfers under sections 544(b), 549 and 550 of the Bankruptcy Code and the Delaware Uniform Fraudulent Transfer Act, 6 Del. C. § 1301 et seq. Moreover, in making, causing or authorizing the Scott Transfers, George Hofmeister breached his fiduciary duties to the Debtor, and Scott Hofmeister aided and abetted those breaches of fiduciary duties. Accordingly, in addition to the avoidance and recovery of the Scott Transfers, the Debtor seeks to recover compensatory and punitive damages from the Defendants.

3. As of January 17, 2013, the Debtor's operating agreement was amended to, among other things, appoint John C. DiDonato as the President and Chief Restructuring Officer of the Debtor, and to appoint two independent managers, James Shein and Richard Newsted, to the Debtor's Board of Managers. The two independent managers make up a restructuring committee that has authority over the Debtor's bankruptcy and restructuring efforts. The purpose of this action is to avoid and recover the Scott Transfers for the benefit of the Debtor's estate and its creditors.

DOCS_LA:283585.3 73864-001

A003

4.    The Defendants are advised that the Debtor's investigation is ongoing and that the Debtor may seek to further amend this complaint to, among other things, add other transfers alleged to be subject to avoidance.

## JURISDICTION AND VENUE

5.    This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

6.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and (e).

7.    This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (H) and (O).

8.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

9.    Plaintiff is a debtor and debtor in possession in the above-captioned bankruptcy case. It brings this action on behalf of its estate and its creditors.

10.    Defendant Scott R. Hofmeister is an individual residing in California. Scott Hofmeister is George Hofmeister's son.

11.    Defendant George S. Hofmeister is an individual residing in Kentucky. At all relevant times, George Hofmeister was the Chairman and sole member of the Board of Managers of the Debtor.

## FACTUAL BACKGROUND

12.    On December 3, 2012 (the "Petition Date"), the Debtor commenced its bankruptcy case under chapter 11 of the Bankruptcy Code.

-3-

A004

13.     The Debtor was founded on December 2, 2008 as a Delaware limited liability company, pursuant to an operating agreement dated December 2, 2008, as amended on February 16, 2011 and January 17, 2013, by and among three irrevocable trusts established for Hofmeister's children – the Megan G. Hofmeister Irrevocable Trust, the Scott R. Hofmeister Irrevocable Trust, and the Jamie S. Hofmeister Irrevocable Trust (the "Children's Trusts").

14.     On or about July 1, 2011, the Children's Trusts assigned all of their membership interests in the Debtor to Ascalon Enterprises, LLC ("Ascalon"), which now owns 100% of the membership interests in the Debtor.

15.     At all relevant times, Hofmeister was the Chairman and sole member of Ascalon's Board of Managers, and was the Chairman and sole member of the Debtor's Board of Managers.

16.     The Debtor, through its subsidiary operating companies, is a designer and manufacturer of engineered components for the automotive industry and other industrial sectors.  It is or was the direct or indirect parent of approximately 32 subsidiaries.

17.     As set forth above, the Debtor is a holding company, the assets of which consist entirely of its interests in subsidiaries that were acquired in a series of leveraged acquisitions commencing in late 2008.  As of January 1, 2009, the Debtor reported in federal tax filings that its liabilities exceeded its assets by $1.6 million, and the Debtor is informed and believes that the sum of its debts continued to exceed all of its assets, at fair valuations, at all times through the Petition Date.

18.     No person with the ability or standing to sue had inquiry notice of the Scott Transfers.

## FIRST CLAIM FOR RELIEF
### Against Scott Hofmeister for Avoidance and Recovery of Fraudulent Transfers
### (11 U.S.C. §§ 544(b) and 550(a); 6 Del. C. § 1305)

19.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

20.     Between January 13, 2012 and November 30, 2012, the Debtor made a series of biweekly cash transfers to or for the benefit of Scott Hofmeister, totaling $124,231.84. These Scott Transfers (collectively, the "Scott Pre-Petition Transfers") are identified on the spreadsheet attached hereto as **Exhibit 1**, which is incorporated herein by this reference.

21.     The Scott Pre-Petition Transfers were transfers of property of the Debtor.

22.     The Debtor received less than reasonably equivalent value in exchange for the Scott Pre-Petition Transfers. Specifically, the Scott Pre-Petition Transfers purported to be wages paid to Scott Hofmeister as an employee of the Debtor, but the amount of the Scott Pre-Petition Transfers vastly exceeded the value of any services provided to the Debtor by Scott Hofmeister.

23.     At the times that the Scott Pre-Petition Transfers were made, the sum of the Debtor's debts was greater than all of the Debtor's assets, at a fair valuation.

24.     At all relevant times, the Debtor had actual creditors holding unsecured claims allowable within the meaning of sections 502 and 544(b) of the Bankruptcy Code.

25.     As a result, the Scott Pre-Petition Transfers should be avoided pursuant to section 544 of the Bankruptcy Code and section 1305 of the Delaware Uniform Fraudulent Transfer Act.

26.     Under section 550(a) of the Bankruptcy Code, the Debtor is entitled to recover the value of an avoided transfer from the initial transferee of the transfer, or from the immediate or mediate transferee of such initial transferee, or from the entity for whose benefit the transfer was made. The

-5-

value of the Scott Pre-Petition Transfers was $124,231.84.  Scott Hofmeister was the initial transferee of the Scott Pre-Petition Transfers, the immediate or mediate transferee of such initial transferee, or the entity for whose benefit the Scott Pre-Petition Transfers were made.

## SECOND CLAIM FOR RELIEF
### Against Scott Hofmeister for Avoidance and Recovery of Post-Petition Transfers
### (11 U.S.C. §§ 549 and 550(a); 6 Del. C. § 1305)

27.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

28.     On December 14, 2012 and December 28, 2012, the Debtor made two Scott Transfers, totaling $9,754.80 (the "Scott Post-Petition Transfers"), to or for the benefit of Scott Hofmeister. The Scott Post-Petition Transfers are identified on the spreadsheet attached hereto as **Exhibit 1**, which is incorporated herein by this reference.

29.     The Scott Post-Petition Transfers were made after the commencement of the Debtor's chapter 11 bankruptcy case.

30.     The Scott Post-Petition Transfers were transfers of property of the Debtor's chapter 11 bankruptcy estate.

31.     The Scott Post-Petition Transfers were not authorized under the Bankruptcy Code or by the Court.

32.     As a result, the Scott Post-Petition Transfers should be avoided pursuant to section 549 of the Bankruptcy Code.

33.     Under section 550(a) of the Bankruptcy Code, the Debtor is entitled to recover the value of an avoided transfer from the initial transferee of the transfer, or from the immediate or mediate transferee of such initial transferee, or from the entity for whose benefit the transfer was made.  The

-6-

value of the Scott Post-Petition Transfers was $9,754.80. Scott Hofmeister was the initial transferee of the Scott Post-Petition Transfers, the immediate or mediate transferee of such initial transferee, or the entity for whose benefit the Scott Post-Petition Transfers were made.

### THIRD CLAIM FOR RELIEF
### Against George Hofmeister for Breach of Fiduciary Duty

34. Plaintiff realleges and incorporates by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

35. At all relevant times, George Hofmeister owed a fiduciary duty to the Debtor to act in good faith, in its best interests, without conflict of interest and to exercise such care as an ordinarily prudent person in a like position would use under similar circumstances.

36. In directing, causing and/or authorizing each of the Scott Transfers, George Hofmeister violated that fiduciary duty.

37. At all relevant times, George Hofmeister had full, exclusive and complete control over the Debtor. No person with the ability or standing to sue had inquiry notice of the Scott Transfers. The Debtor reasonably relied upon the good faith and competence of George Hofmeister as a fiduciary.

38. As a proximate result of the breaches of fiduciary duty, the Debtor suffered damages, in an amount at least equal to the amount of the Scott Transfers that are adjudged to be fraudulent or unauthorized post-petition transfers in this action, whether alleged herein or added subsequently by amendment.

39. In engaging in the conduct alleged herein, George Hofmeister was guilty of oppression, fraud or malice, entitling Plaintiff, in addition to the actual damages, to recover damages for the sake of example and by way of punishing George Hofmeister.

-7-

A008

## FOURTH CLAIM FOR RELIEF
### Against Scott Hofmeister for Aiding and Abetting Breach of Fiduciary Duty

40.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

41.     At all relevant times, George Hofmeister owed a fiduciary duty to the Debtor to act in good faith, in its best interests, without conflict of interest and to exercise such care as an ordinarily prudent person in a like position would use under similar circumstances.

42.     In directing, causing and/or authorizing each of the Scott Transfers, George Hofmeister violated that fiduciary duty.

43.     At all relevant times, George Hofmeister had full, exclusive and complete control over the Debtor.  No person with the ability or standing to sue had inquiry notice of the Scott Transfers.  The Debtor reasonably relied upon the good faith and competence of George Hofmeister as a fiduciary.

44.     Scott Hofmeister had actual knowledge of George Hofmeister's breaches of his fiduciary duty.

45.     Scott Hofmeister knowingly and substantially assisted, encouraged and participated in George Hofmeister's breaches of his fiduciary duty.

46.     As a proximate result of the breaches of fiduciary duty, and of Scott Hofmeister's knowing and substantial assistance, encouragement and participation in the breaches of fiduciary duty, the Debtor suffered damages, in an amount at least equal to the amount of the Scott Transfers that are adjudged to be fraudulent or unauthorized post-petition transfers in this action, whether alleged herein or added subsequently by amendment.

47.     In engaging in the conduct alleged herein, Scott Hofmeister was guilty of oppression, fraud or malice, entitling Plaintiff, in addition to the actual damages, to recover damages for the sake of example and by way of punishing Scott Hofmeister.

-8-

**PRAYER FOR RELIEF**

WHEREFORE, by reason of the foregoing, the Debtor requests that the Court enter judgment for the Debtor as follows:

(1)     For avoidance of the Scott Pre-Prepetition Transfers under section 544 of the Bankruptcy Code and applicable state law;

(2)     For avoidance of the Scott Post-Petition Transfers under section 549 of the Bankruptcy Code;

(3)     For recovery of the Scott Pre-Petition Transfers and the Scott Post-Petition Transfers, under section 550 of the Bankruptcy Code, from Scott Hofmeister in such amount as Scott Hofmeister is alleged to be liable herein;

(4)     For interest at the maximum legal rate from the dates of the Scott Transfers;

(5)     On the Third Claim for Relief against George Hofmeister, for general and exemplary damages in an amount subject to proof at trial;

(6)     On the Fourth Claim for Relief against Scott Hofmeister, for general and exemplary damages in an amount subject to proof at trial;

(7)     For costs of suit incurred herein, including without limitation, attorneys' fees, to the extent permitted by law; and

DOCS_LA:283585.3 73864-001

A010

(8)     For such other and further relief as the Court may deem just and proper.

Dated: December 1, 2014                          PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
Alan J. Kornfeld (CA Bar No. 130063)
Elissa A. Wagner (CA Bar No. 213589)
Colin R. Robinson (Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: ljones@pszjlaw.com
        akornfeld@pszjlaw.com
        ewagner@pszjlaw.com
        crobinson@pszjlaw.com

Counsel for Debtor Revstone Industries, LLC

DOCS_LA:283585.3 73864-001                                          A011

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>REVSTONE INDUSTRIES, LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br>Case No. 12-13262 (BLS)<br>Jointly Administered |
| REVSTONE INDUSTRIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT R. HOFMEISTER and GEORGE S. HOFMEISTER,<br><br>Defendants. | Adv. Proc. No. 14-50977 (BLS)<br><br><br>**Related to Adversary Docket No. 1** |

**EXHIBIT 1 TO COMPLAINT TO AVOID AND RECOVER FRAUDULENT
TRANSFERS, UNAUTHORIZED POST-PETITION TRANSFERS AND RELATED RELIEF**

Dated: December 2, 2014

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
Alan J. Kornfeld (CA Bar No. 130063)
Elissa A. Wagner (CA Bar No. 213589)
Colin R. Robinson (Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
        akornfeld@pszjlaw.com
        ewagner@pszjlaw.com
        crobinson@pszjlaw.com

Counsel for Debtor Revstone Industries, LLC

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool & Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each Debtor is: Revstone Industries, LLC, et al., c/o Huron Consulting Group Inc., 900 Wilshire Drive, Suite 270, Troy, MI 48084, Attn: John C. DiDonato, Chief Restructuring Officer.

DOCS_DE:196542.1 73864/001

# Exhibit 1

**Revstone Industries, LLC**
**Scott Hofmeister**
**Payroll Summary**

**Pre-Petition Scott Transfers:**

| Pay Date | Pay Rate | ER Soc Sec (Max $110100) | ER MDCR | ER FUTA (Max $7,000) | ER KUI (Max $9,000) |
|---|---|---|---|---|---|
| 13-Jan-12 | 4,807.69 | 298.08 | 69.71 | 28.85 | 163.46 |
| 27-Jan-12 | 4,807.69 | 298.08 | 69.71 | 13.15 | 142.54 |
| 10-Feb-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 24-Feb-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 9-Mar-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 23-Mar-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 6-Apr-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 20-Apr-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 4-May-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 18-May-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 1-Jun-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 15-Jun-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 29-Jun-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 13-Jul-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 27-Jul-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 10-Aug-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 24-Aug-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 7-Sep-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 21-Sep-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 5-Oct-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 19-Oct-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 2-Nov-12 | 4,807.69 | 298.08 | 69.71 | - | - |
| 16-Nov-12 | 4,807.69 | 268.51 | 69.71 | - | - |
| 30-Nov-12 | 4,807.69 | - | 69.71 | - | - |
| **Pre-Petition Sub-Total** | 115,384.56 | 6,826.20 | 1,673.08 | 42.00 | 306.00 |

TOTAL - Pre-Petition  124,231.84

**Post-Petition Scott Transfers:**

| Pay Date | Pay Rate | ER Soc Sec (Max $110100) | ER MDCR | ER FUTA (Max $7,000) | ER KUI (Max $9,000) |
|---|---|---|---|---|---|
| 14-Dec-12 | 4,807.69 | - | 69.71 | - | - |
| 28-Dec-12 | 4,807.69 | - | 69.71 | - | - |
| **Post-Petition Sub-Total** | 9,615.38 | - | 139.42 | - | - |

TOTAL - Post-Petition  9,754.80

| **Full Year Total** | 124,999.94 | 6,826.20 | 1,812.50 | 42.00 | 306.00 |

TOTAL - ALL  133,986.64

A014

# EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br>REVSTONE INDUSTRIES, LLC, et al.,[1]<br><div align="center">Debtors.</div> | Chapter 11<br>Case No. 12-13262 (BLS)<br>Jointly Administered |
| SPARA, LLC,<br><div align="center">Plaintiff,</div><br>v.<br>SCOTT R. HOFMEISTER and GEORGE S.<br>HOFMEISTER,<br><div align="center">Defendants.</div> | Adv. Proc. No. 14-_____ (BLS) |

## COMPLAINT TO AVOID AND RECOVER
## FRAUDULENT TRANSFERS AND RELATED RELIEF

Plaintiff Spara, LLC (the "Debtor" or "Plaintiff"), by and through its undersigned

counsel, and based upon knowledge, information and belief, alleges as follows:

## NATURE OF ACTION

1.    The Debtor seeks to recover, for the benefit of its bankruptcy estate and its

creditors, a cash transfer in the amount of $70,000 (the "Scott Transfer") made on June 28, 2011,

by the Debtor's former manager, Defendant George S. Hofmeister ("George Hofmeister"), to or

for the benefit of his son, Defendant Scott R. Hofmeister ("Scott Hofmeister").  The Debtor was

insolvent at the time the Scott Transfer was made, and did not receive reasonably equivalent

value in return.  Specifically, the Scott Transfer was made for the purpose of paying Scott

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool & Engineering, LLC (6450).  The location of the Debtors' headquarters and the service address for each Debtor is: Revstone Industries, LLC, et al., c/o Huron Consulting Group Inc., 900 Wilshire Drive, Suite 270, Troy, MI 48084, Attn: John C. DiDonato, Chief Restructuring Officer.

Hofmeister's tuition at Harvard Business School. Scott Hofmeister was not an employee of the Debtor, and never provided any services or anything else of value to the Debtor in exchange for the Scott Transfer.

2. Scott Hofmeister was the recipient or beneficiary of the Scott Transfer, and as such is liable for the return of the Scott Transfer under sections 544(b), 548 and 550 of the Bankruptcy Code and the Delaware Uniform Fraudulent Transfer Act, 6 Del. C. § 1301 *et seq*. Moreover, in making, causing or authorizing the Scott Transfer, George Hofmeister breached his fiduciary duties to the Debtor, and Scott Hofmeister aided and abetted such breach of fiduciary duties. Accordingly, in addition to the avoidance and recovery of the Scott Transfer, the Debtor seeks to recover compensatory and punitive damages from the Defendants.

3. As of January 17, 2013, the Debtor's operating agreement was amended to, among other things, appoint John C. DiDonato as the President and Chief Restructuring Officer of the Debtor, and to appoint two independent managers, James Shein and Richard Newsted, to the Debtor's Board of Managers. The two independent managers make up a restructuring committee that has authority over the Debtor's bankruptcy and restructuring efforts. The purpose of this action is to avoid and recover the Scott Transfer for the benefit of the Debtor's estate and its creditors.

4. The Defendants are advised that the Debtor's investigation is ongoing and that the Debtor may seek to further amend this complaint to, among other things, add other transfers alleged to be subject to avoidance.

**JURISDICTION AND VENUE**

5.    This is an adversary proceeding pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

6.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b) and (e).

7.    This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(H).

8.    Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**PARTIES**

9.    Plaintiff is a debtor and debtor in possession in the above-captioned bankruptcy case.  It brings this action on behalf of its estate and its creditors.

10.    Defendant Scott R. Hofmeister is an individual residing in California.  Scott Hofmeister is George Hofmeister's son.

11.    Defendant George S. Hofmeister is an individual residing in Kentucky.  At all relevant times, George Hofmeister was the Chairman and sole member of the Board of Managers of the Debtor.

**FACTUAL BACKGROUND**

12.    On December 3, 2012 (the "Petition Date"), the Debtor commenced its bankruptcy case under chapter 11 of the Bankruptcy Code.

13.    The Debtor was founded on August 2, 2010 as a Delaware limited liability company, pursuant to an operating agreement, effective August 2, 2010, by and among three irrevocable trusts established for Hofmeister's children – the Megan G. Hofmeister Irrevocable

A018

Trust, the Scott R. Hofmeister Irrevocable Trust, and the Jamie S. Hofmeister Irrevocable Trust (the "Children's Trusts").

14.    On or about July 1, 2011, the Children's Trusts assigned all of their membership interests in the Debtor to Ascalon Enterprises, LLC ("Ascalon"), which now owns 100% of the membership interests in the Debtor.

15.    At all relevant times, Hofmeister was the Chairman and sole member of Ascalon's Board of Managers, and was the Chairman and sole member of the Debtor's Board of Managers.

16.    The Debtor, through its non-debtor subsidiary operating companies, is a manufacturer of engineered components for the automotive industry and other industrial sectors.

17.    As set forth above, the Debtor is a holding company, the assets of which at the time of the Transfer consisted of related entity receivables, cash, and interests in certain non-debtor subsidiaries.  The sum of the Debtor's debts exceeded its assets, at fair valuations, at the time of the Transfer.

18.    No person with the ability or standing to sue had inquiry notice of the Scott Transfer.

## FIRST CLAIM FOR RELIEF
### Against Scott Hofmeister for Avoidance and Recovery of Fraudulent Transfers
### (11 U.S.C. §§ 544(b) and 550(a); 6 Del. C. § 1305)

19.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

20.    On June 28, 2011, the Debtor made a cash transfer to or for the benefit of Scott Hofmeister in the amount of $70,000 (*i.e.*, the Scott Transfer).

21.    The Scott Transfer was a transfer of property of the Debtor.

-4-

A019

22. The Debtor received less than reasonably equivalent value in exchange for the Scott Transfer. Specifically, the Scott Transfer was made for the purpose of paying Scott Hofmeister's tuition at Harvard Business School. Scott Hofmeister was not an employee of the Debtor and never provided any services or anything else of value to the Debtor.

23. At the time that the Scott Transfer was made, the sum of the Debtor's debts was greater than all of the Debtor's assets, at a fair valuation.

24. At all relevant times, the Debtor had actual creditors holding unsecured claims allowable within the meaning of sections 502 and 544(b) of the Bankruptcy Code.

25. As a result, the Scott Transfer should be avoided pursuant to section 544 of the Bankruptcy Code and section 1305 of the Delaware Uniform Fraudulent Transfer Act.

26. Under section 550(a) of the Bankruptcy Code, the Debtor is entitled to recover the value of an avoided transfer from the initial transferee of the transfer, or from the immediate or mediate transferee of such initial transferee, or from the entity for whose benefit the transfer was made. The value of the Scott Transfer was $70,000. Scott Hofmeister was the initial transferee of the Scott Transfer, or the entity for whose benefit the Scott Transfer was made.

## SECOND CLAIM FOR RELIEF
**Against Scott Hofmeister for Avoidance and Recovery of Fraudulent Transfers**
**(11 U.S.C. §§ 548 and 550(a))**

27. Plaintiff realleges and incorporates by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

28. On June 28, 2011, the Debtor directly or indirectly, voluntarily or involuntarily, made a cash transfer to or for the benefit of Scott Hofmeister in the amount of $70,000 (*i.e.*, the Scott Transfer).

29. The Scott Transfer was a transfer of property of the Debtor.

-5-

A020

30.     The Debtor received less than reasonably equivalent value in exchange for the Scott
Transfer.  Specifically, the Scott Transfer was made for the purpose of paying Scott Hofmeister's
tuition at Harvard Business School.  Scott Hofmeister was not an employee of the Debtor and
never provided any services or anything else of value to the Debtor.

31.     At the time that the Scott Transfer was made, (i) the sum of the Debtor's debts was
greater than all of the Debtor's assets, at a fair valuation, (ii) the Debtor was engaged in business for
which its remaining property was an unreasonably small capital, or (iii) the Debtor intended to incur,
or believed it would incur, debts that were beyond its ability to repay as they matured.

32.     As a result, the Scott Transfer should be avoided pursuant to section 548 of the
Bankruptcy Code.

33.     Under section 550(a) of the Bankruptcy Code, the Debtor is entitled to recover the value
of an avoided transfer from the initial transferee of the transfer, or from the immediate or mediate
transferee of such initial transferee, or from the entity for whose benefit the transfer was made.  The
value of the Scott Transfer was $70,000.  Scott Hofmeister was the initial transferee of the Scott
Transfer, or the entity for whose benefit the Scott Transfer was made.

## THIRD CLAIM FOR RELIEF
### Against George Hofmeister for Breach of Fiduciary Duty

34.     Plaintiff realleges and incorporates by reference each and every allegation set
forth in the above paragraphs as though fully set forth herein.

35.     At all relevant times, George Hofmeister owed a fiduciary duty to the Debtor to
act in good faith, in its best interests, without conflict of interest and to exercise such care as an
ordinarily prudent person in a like position would use under similar circumstances.

-6-

36. In directing, causing and/or authorizing the Scott Transfer, George Hofmeister violated that fiduciary duty.

37. At all relevant times, George Hofmeister had full, exclusive and complete control over the Debtor. No person with the ability or standing to sue had inquiry notice of the Scott Transfer. The Debtor reasonably relied upon the good faith and competence of George Hofmeister as a fiduciary.

38. As a proximate result of the breaches of fiduciary duty, the Debtor suffered damages, in an amount at least equal to the amount of the Scott Transfer and any other transfer that is adjudged to be a fraudulent transfer in this action, whether alleged herein or added subsequently by amendment.

39. In engaging in the conduct alleged herein, George Hofmeister was guilty of oppression, fraud or malice, entitling Plaintiff, in addition to the actual damages, to recover damages for the sake of example and by way of punishing George Hofmeister.

## FOURTH CLAIM FOR RELIEF
**Against Scott Hofmeister for Aiding and Abetting Breach of Fiduciary Duty**

40. Plaintiff realleges and incorporates by reference each and every allegation set forth in the above paragraphs as though fully set forth herein.

41. At all relevant times, George Hofmeister owed a fiduciary duty to the Debtor to act in good faith, in its best interests, without conflict of interest and to exercise such care as an ordinarily prudent person in a like position would use under similar circumstances.

42. In directing, causing and/or authorizing the Scott Transfer, George Hofmeister violated that fiduciary duty.

43. At all relevant times, George Hofmeister had full, exclusive and complete control over the Debtor. No person with the ability or standing to sue had inquiry notice of the Scott

Transfer. The Debtor reasonably relied upon the good faith and competence of George Hofmeister as a fiduciary.

44.　　Scott Hofmeister had actual knowledge of George Hofmeister's breach of his fiduciary duty.

45.　　Scott Hofmeister knowingly and substantially assisted, encouraged and participated in George Hofmeister's breach of his fiduciary duty.

46.　　As a proximate result of the breach of fiduciary duty, and of Scott Hofmeister's knowing and substantial assistance, encouragement and participation in the breach of fiduciary duty, the Debtor suffered damages, in an amount at least equal to the amount of the Scott Transfer and any other transfer that is adjudged to be a fraudulent transfer in this action, whether alleged herein or added subsequently by amendment.

47.　　In engaging in the conduct alleged herein, Scott Hofmeister was guilty of oppression, fraud or malice, entitling Plaintiff, in addition to the actual damages, to recover damages for the sake of example and by way of punishing Scott Hofmeister.

## **PRAYER FOR RELIEF**

WHEREFORE, by reason of the foregoing, the Debtor requests that the Court enter judgment for the Debtor as follows:

(1)　　For avoidance of the Scott Transfer under section 544 of the Bankruptcy Code and applicable state law;

(2)　　For avoidance of the Scott Transfer under section 548 of the Bankruptcy Code;

(3)　　For recovery of the Scott Transfer, under section 550 of the Bankruptcy Code, from Scott Hofmeister in such amount as Scott Hofmeister is

-8-

alleged to be liable herein;

(4)     For interest at the maximum legal rate from the dates of the Scott Transfer;

(5)     On the Third Claim for Relief against George Hofmeister, for general and
exemplary damages in an amount subject to proof at trial;

(6)     On the Fourth Claim for Relief against Scott Hofmeister, for general and
exemplary damages in an amount subject to proof at trial;

(7)     For costs of suit incurred herein, including without limitation, attorneys'
fees, to the extent permitted by law; and

(8)     For such other and further relief as the Court may deem just and proper.

Dated: December 2, 2014                    PACHULSKI STANG ZIEHL & JONES LLP

                                          Laura Davis Jones (Bar No. 2436)
                                          Alan J. Kornfeld (CA Bar No. 130063)
                                          Elissa A. Wagner (CA Bar No. 213589)
                                          Colin R. Robinson (Bar No. 5524)
                                          919 North Market Street, 17th Floor
                                          P.O. Box 8705
                                          Wilmington, DE  19899-8705 (Courier 19801)
                                          Telephone:  (302) 652-4100
                                          Facsimile:  (302) 652-4400
                                          Email: ljones@pszjlaw.com
                                                 akornfeld@pszjlaw.com
                                                 ewagner@pszjlaw.com
                                                 crobinson@pszjlaw.com

                                          Counsel for Debtor Spara, LLC

-9-

# EXHIBIT C

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>REVSTONE INDUSTRIES, LLC, et al.,[1]<br><div align=center>Reorganized Debtors.</div> | Chapter 11<br>Case No. 12-13262 (BLS)<br>Jointly Administered |
| FRED C. CARUSO, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust,<br><div align=center>Plaintiff,</div><br>    v.<br>GEORGE S. HOFMEISTER, et al.,<br><div align=center>Defendants.</div> | Adv. No. 14-50033 (BLS) |
| FRED C. CARUSO, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust,<br><div align=center>Plaintiff,</div><br>    v.<br>RADCO CONSTRUCTION SERVICES, INC.,<br><div align=center>Defendant.</div> | Adv. No. 14-50651 (BLS) |
| FRED C. CARUSO, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust,<br><div align=center>Plaintiff,</div><br>    v.<br>PENN RIDGE FARMS LLC,<br><div align=center>Defendant.</div> | Adv. No. 14-50652 (BLS) |

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool & Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each Debtor is: Revstone Industries, LLC, et al., c/o Huron Consulting Group Inc., 900 Wilshire Drive, Suite 270, Troy, MI 48084, Attn: John C. DiDonato, Chief Restructuring Officer.

| | |
|---|---|
| FRED C. CARUSO, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust, <br>                Plaintiff, <br>     v. <br> HOLMES, HOLLISTER & CO., <br>                Defendant. | Adv. No. 14-50654 (BLS) |
| FRED C. CARUSO, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust, <br>                Plaintiff, <br>     v. <br> TURNBERRY INVESTORS, LLC, <br>                Defendant. | Adv. No. 14-50656 (BLS) |
| FRED C. CARUSO, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust, <br>                Plaintiff, <br>     v. <br> SIMON PLC ATTORNEYS & COUNSELORS, <br>                Defendant. | Adv. No. 14-50975 (BLS) |
| FRED C. CARUSO, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust, <br>                Plaintiff, <br>     v. <br> SCOTT R. HOFMEISTER, et al., <br>                Defendants. | Adv. No. 14-50977 (BLS) |
| FRED C. CARUSO, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust, <br>                Plaintiff, <br>     v. <br> MID-STATES CAPITAL, LLC, <br>                Defendant. | Adv. No. 14-50978 (BLS) |

DOCS_LA:301370.2 73864-030

A027

| | |
|---|---|
| FRED C. CARUSO, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust,<br><br>     Plaintiff,<br>  v.<br><br>AMI MORTON FABRICATION, LLC,<br><br>     Defendant. | Adv. No. 14-50979 (BLS) |
| FRED C. CARUSO, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust,<br><br>     Plaintiff,<br>  v.<br><br>PATRICK SMITH,<br><br>     Defendant. | Adv. No. 14-50980 (BLS) |
| FRED C. CARUSO, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust,<br><br>     Plaintiff,<br>  v.<br><br>GSL OF ILL., LLC,<br><br>     Defendant. | Adv. No. 14-50981 (BLS) |

## TRUSTEE'S INITIAL EXPERT WITNESS DESIGNATION

Plaintiff Fred C. Caruso, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust (the "Trustee"), successor in interest to Revstone Industries, LLC ("Revstone") in the above-captioned Adversary Proceedings, hereby designates the person identified below, whose expert opinion testimony the Trustee expects to offer into evidence, at trial and otherwise, in the Adversary Proceedings. The Trustee reserves all rights to designate additional rebuttal expert witnesses in response to any expert designation(s) by any Defendant(s) in the Adversary Proceedings.

DOCS_LA:301370.2 73864-030

A028

The Trustee designates:

**James M. Lukenda, CIRA, CFF**
**Managing Director**
**Huron Consulting Group, Inc.**
**599 Lexington Avenue, 25th Floor**
**New York, NY 10022-7656**
**Telephone: (646) 277-2207**

The Trustee expects Mr. Lukenda to testify, and to provide expert evidence and opinions at trial and otherwise, as to the following general subject areas:

1.    Revstone's insolvency.

2.    The fraudulent pre-petition transfer(s) identified in the operative complaints in the Adversary Proceedings.

3.    Revstone's predicate creditor(s) pursuant to 11 U.S.C. § 544.

4.    The post-petition transfers identified in the operative complaint in *Caruso v. Scott Hofmeister, et al.*, Adv. No. 14-50977 (BLS).

5.    The contents of Mr. Lukenda's expert report (including exhibits) regarding Revstone, served concurrently herewith.

Mr. Lukenda charges an hourly rate of $725.00 for deposition and trial testimony in the Adversary Proceedings, against which the Revstone/Spara Litigation Trust receives a 20% accommodation.

[remainder of page intentionally blank]

Dated:  October 7, 2016    PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (Bar No. 2436)
Alan J. Kornfeld (CA Bar No. 130063)
Elissa A. Wagner (CA Bar No. 213589)
Colin R. Robinson (Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:  ljones@pszjlaw.com
   akornfeld@pszjlaw.com
   ewagner@pszjlaw.com
   crobinson@pszjlaw.com

Counsel for the Revstone/Spara Litigation Trustee

DOCS_LA:301370.2 73864-030                   A030

# EXHIBIT D



INITIAL EXPERT REPORT OF JAMES M. LUKENDA, CIRA, CFF
Revstone Industries, LLC

James M. Lukenda, CIRA, CFF
Huron Consulting Services LLC

October 7, 2016

DE

Initial Expert Report of James M. Lukenda, CIRA, CFF
Table of Contents

## I.    Contents

**Introduction** ........................................................................................................... 1

    *PREFACE* .......................................................................................................... 1

    *SCOPE* ............................................................................................................... 2

    *QUALIFICATIONS* ........................................................................................... 3

    *SUMMARY OF OPINIONS* .............................................................................. 5

    *BACKGROUND ON REVSTONE INDUSTRIES, LLC* ................................... 6

**Approach to Determining Solvency** ..................................................................... 7

    *BALANCE SHEET TEST* .................................................................................. 7

    *NET ASSETS OF REVSTONE INDUSTRIES, LLC* ........................................ 9

    *BASIS FOR ADJUSTMENTS* .......................................................................... 11

    *REVSTONE – INSOLVENT FROM INCEPTION* ......................................... 15

**Transfers** ............................................................................................................... 16

**Predicate Creditors** .............................................................................................. 49

Appendices
Exhibits

A033

Initial Expert Report of James M. Lukenda, CIRA, CFF
Appendices

A.    *Curriculum Vitae* of James M. Lukenda, CIRA, CFF

B.    List of Adversary Proceedings

C.    List of Documents Relied Upon

Exhibits

I.     Revstone Industries, LLC Organization 2008 to 2012

II.    Summary of Guarantees

III.   Liquidity Communications Examples

IV.    Hofmeister Schedule of Non-Health Related Payments

V.     Farm Employee Payroll Charged to Health & Benefits, LLC

A034

# Introduction

*PREFACE*

Pachulski Stang Ziehl & Jones LLP ("PSZJ" or "Counsel"), in its capacity as legal counsel for Revstone Industries, LLC ("Revstone" or the "Debtor") and Fred C. Caruso, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust, retained Huron Consulting Services LLC ("Huron" or "we") and through Huron, James M. Lukenda, CIRA, a Managing Director, as its financial expert in numerous adversary proceedings (the "Adversary Proceedings") filed in the Debtor's chapter 11 case.[1]

Counsel requested that Huron evaluate the transactions that are the subject of the Adversary Proceedings. Those transactions include, among other things, pre-petition transfers of the Debtor's funds, which the Debtor's former manager, George S. Hofmeister ("Hofmeister"), caused the Debtor to make to or for the benefit of Hofmeister and the other defendants ("Defendants") in the Adversary Proceedings, including the Megan G. Hofmeister Irrevocable Trust, the Scott R. Hofmeister Irrevocable Trust, and the Jamie S. Hofmeister Irrevocable Trust (the "Children's Trusts").

Counsel requested that Huron determine whether Revstone had creditors as of the bankruptcy petition date to whom Revstone has owed a debt since the earliest of the transaction dates (the "Predicate Creditors".)

Counsel also requested that Huron evaluate the Debtor's insolvency at the time of these pre-petition transfers, and determine the additional damages Revstone suffered as a result of these pre-petition transfers.

Finally, Counsel requested that Huron evaluate certain transfers made during the pre and post-petition periods from the bank account(s) into which the Debtor and its subsidiaries deposited the employer portion of health care premiums paid to the Ascalon Enterprises Employee Medical Benefits Plan (the "Ascalon Health Plan").

---

[1] Revstone's chapter 11 case is pending in the United States Bankruptcy Court for the District of Delaware as *In re Revstone Industries, LLC*, Case No. 12-13262 (BLS). The Adversary Proceedings, which are pending in the United States Bankruptcy Court for the District of Delaware and the United States Bankruptcy Court for the Eastern District of Kentucky, are listed on Appendix B hereto.

*SCOPE*

Huron is a management consulting firm and not a CPA firm. Huron does not provide attest services, audits, or other engagements in accordance with standards established by the American Institute of Certified Public Accountants ("AICPA") or auditing standards promulgated by the Public Company Accounting Oversight Board ("PCAOB"). The procedures that Huron performed do not constitute an audit of the financial statements of Debtor or its affiliates in accordance with the AICPA's or PCAOB's auditing standards. Accordingly, Huron expresses no opinion or other form of assurance on any financial statements, management representations, or other data provided by any of the parties included in or underlying the accompanying report.

*QUALIFICATIONS*

I am a Managing Director of Huron's Business Advisory practice.  I have served in this capacity since Huron's founding in 2002.  Prior to that time I was a Partner in Arthur Andersen LLP's Corporate Recovery Services practice based in New York.  My work in the Huron Business Advisory practice and prior to that, my work with Arthur Andersen's Corporate Recovery practice, going back to 1989, has been focused on assisting clients with turnaround, restructuring, and bankruptcy matters, working on behalf of companies and their directors, lenders, committees of creditors, and other parties-in-interest including individual creditors, in capacities ranging from consultant and advisor to financial expert, to chief restructuring officer.  My industry experience tracks the cycles of troubled industries in the United States and abroad:  manufacturing, publishing and media, energy, telecommunications, construction contracting, airlines, and retail, to name a few.  Among the hallmark cases with which I have been involved are Federated Department Stores, JWP, Pocket Communications and DCR PCS, Global Crossing Ltd., Northwest Airlines, Nortel Networks, The Great Atlantic and Pacific Tea Company, Residential Capital, LLC, and Sherwin Alumina Company. I have also worked on assignments for many middle market companies, providing a range of services including valuation and solvency analyses, avoidance matters, forensic accounting, and investigations.  I am well familiar with the Debtor's Chapter 11 case, and the reasons the Debtor sought Chapter 11 protection.  I served as the Deputy Chief Restructuring Officer for Revstone during its Chapter 11 case.

I regularly lend my experience to industry education programs addressing bankruptcy and restructuring topics for groups such as Practising Law Institute, American Bankruptcy Institute and Association of Insolvency and Restructuring Advisors ("AIRA"). I am one of the authors of the AICPA/AIRA publication, *2005 Bankruptcy Revisions Implications for Businesses and Financial Advisors*.

I am a Certified Insolvency and Restructuring Advisor ("CIRA"), Certified in Financial Forensics ("CFF"), and an active member of AIRA.

I hold a Bachelor of Science in Business Administration degree, *cum laude,* in Accounting from Georgetown University.  Attached as **Appendix A** is a copy of my *curriculum vitae* with citations of publications and speaking engagements, and matters involving depositions and expert testimony.

During my 27 plus years of experience in bankruptcy and restructuring, my work has regularly included the analysis of transfers and Chapter 5 causes of action, solvency, and other valuation questions, as well as analyses of the affirmative defenses available to creditors under applicable

statutes related to avoidable transactions.  As a result, I have the necessary familiarity and expertise to address the matters for which Counsel has engaged Huron.

The opinions presented in this report are based on my analyses of available information and my many years of experience as a financial advisor and Certified Insolvency and Restructuring Advisor.  As part of performing my analyses, I utilized Huron's professional staff who worked under my direction and control.

Not all of the defendants in the Adversary Proceedings have fully responded to discovery requests and fact discovery continues.  I reserve my right to amend my statements and conclusions if necessary for additional information I may receive after the date of this report.

Counsel's engagement of Huron provides for payment on an hourly basis for the services my colleagues and I are providing.  My standard billing rate is $725 per hour.  Huron agreed to provide a discount of 20% against its invoices calculated at the standard rates.

*SUMMARY OF OPINIONS*

Based on my analysis of the information currently available in the Adversary Proceedings, my opinions are summarized as follows.

Huron examined over 228 transfers of Revstone's funds that were made between January 1, 2009 and December 3, 2012 (the "Relevant Period"). It is my opinion that (1) these pre-petition transfers constituted transfers of Revstone's property to or for the benefit of the Defendants in the Adversary Proceedings, as specified herein, (2) Revstone did not receive reasonably equivalent value in exchange for the transfers and, in most cases, received no value at all, (3) there are at least two creditors to whom Revstone has been indebted since January 2009, and who remained unpaid as of December 3, 2012, namely the Commonwealth of Kentucky and the State of Indiana,  and (4) Revstone was insolvent from its inception in December 2008 and at all times thereafter, including at the times the pre-petition transfers were made as summarized below:

**REVSTONE INDUSTRIES, LLC INSOLVENCY**

|  | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|
| Revstone Industries, LLC Insolvency (Liabilities Exceed Assets) | $ (4,045,443) | $ (23,512,829) | $ (57,805,874) | $ (81,050,360) | $ (53,616,513) |
| Total Revstone Guarantees Issued by Year | - | (32,330,853) | (90,575,956) | (20,612,679) | (45,000,000) |

Huron examined information on over 140 transfers sourced from the Debtor and its subsidiaries' employer portion of medical premiums paid to the Ascalon Health Plan. It is my opinion that these pre and post-petition transfers, which totaled $541,354.34, were made for purposes unrelated to the Ascalon Health Plan and that, as a result of these transfers, at least $528,054.34 was unavailable to pay medical claims or other legitimate expenses of the Ascalon Health Plan.

It is also my opinion that Revstone made certain post-petition transfers to Hofmeister's son, Scott Hofmeister. Although these transfers purported to be wages paid to Scott Hofmeister, Scott Hofmeister was a full-time MBA student at the time of the post-petition transfers.

James M. Lukenda, CIRA, CFF

October 7, 2016

*BACKGROUND ON REVSTONE INDUSTRIES, LLC*

Hofmeister founded Cerion, LLC (c/k/a Revstone Transportation, LLC) on November 26, 2008. At that time, "it was an American manufacturing company focused on acquiring and operating small to medium-sized machining operations in the Midwest region of the United States" (per 2008 audited financials) and had two operating entities, Metavation, LLC and Eptec S.A. de C.V.

Contributed equity in Cerion amounted to $475,356. This amount appears to represent an allocation of expenditures from one or more other Hofmeister entities.

From inception, Cerion, a limited liability corporation, was member managed by the Children's Trusts.

Revstone Industries, LLC (as previously defined, the "Debtor" or "Revstone") was organized on December 2, 2008 as a Delaware limited liability company, pursuant to an operating agreement dated December 2, 2008 by and among the Children's Trusts. Revstone, through its subsidiary operating companies, characterized itself as a designer and manufacturer of engineered components for the automotive industry and other industrial sectors.

Members Equity in Revstone from inception appears to consist of nothing more than a journal entry transaction with another Hofmeister entity.

As of 2012, Revstone was the direct or indirect parent of approximately 42 subsidiaries. Cerion, LLC became a direct subsidiary of Revstone and formally changed its name to Revstone Transportation, LLC ("Revstone Transportation") on April 7, 2010.

On or about July 1, 2011, the Children's Trusts assigned all of their membership interests in Revstone to Ascalon Enterprises, LLC ("Ascalon", which entity is wholly controlled by the Children's Trusts), which currently has, pursuant to Revstone's confirmed plan of reorganization, a suspended 100% of the membership interests in Revstone.

On December 3, 2012, Revstone commenced its bankruptcy case under chapter 11 of the Bankruptcy Code. At all relevant times up to the bankruptcy, Hofmeister was the Chairman and sole member of Ascalon's Board of Managers, and was the Chairman and sole member of Revstone's Board of Managers. With the appointments of independent board members and the Chief Restructuring Officer, by January 17, 2013, Hofmeister's executive and decision making authority with respect to Revstone was effectively terminated.

Detail of Revstone's 2008-2012 organizational structure is provided in EXHIBIT I.

## Approach to Determining Solvency

*BALANCE SHEET TEST*

The Bankruptcy Code defines "insolvent" as:

> *a financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522*[2]

Revstone is a holding company organized under the laws of Delaware.  On a standalone basis, Revstone had no manufacturing operations and nominal amounts of tangible assets such as furnishings and equipment during the Relevant Period.  Revstone, with a management team that varied in size and cost over time, simply managed its controlling interest in its investments that were a result of acquisitions.  Throughout the Relevant Period, Revstone's assets consisted almost exclusively of investments in subsidiaries and receivables from other Hofmeister entities. Revstone also incurred substantial debts and moved funds among related entities to address constant requests from within Revstone's holdings and from other Hofmeister interests for money to pay outstanding obligations.

Huron evaluated a significant amount of data, accounting records, annual operating plans, and other records that are available.  As set forth below, in conducting my insolvency analysis and in reaching my conclusions I have relied upon the financial information included in the following financial statements which were reported upon by independent auditors.

- Cerion, LLC and Subsidiaries, Consolidated Financial Statements and Independent Auditors' Report for the Period November 26, 2008 (Date of Inception) Through December 31, 2008
- Revstone Transportation, LLC and Affiliates, Also Known As Revstone Transportation Group, Combined Financial Statements and Independent Auditors' Report for the Period December 31, 2009
- Revstone Industries, LLC and Subsidiaries, Consolidated Financial Statements and Independent Auditors' Report For the Year Ended December 31, 2010
- Revstone Industries, LLC and Subsidiaries, Consolidated Financial Statements and Independent Auditors' Report For the Year Ended December 31, 2011

---

[2] 11 U.S.C. § 101 (32)(a).

- Eptec, S.A. de C.V. Financial Statements for the Years Ended December 31, 2012 and 2011, and Independent Auditors Report dated May 24, 2013
- Aarkel Tool & Die Inc Financial Statements for the Years Ended December 31, 2009-2012
- T Cast Holdings Consolidated Financial Statements with Supplementary Information for Year Ended December 31, 2010
- Fairfield Castings, LLC dba Revstone Castings Fairfield, LLC and Metavation Castings, LLC  2011 Consolidated Financial Statement Audit

As there were no Revstone consolidated audited financial statements prepared for the year ended December 31, 2012, in preparing my analysis and forming my opinions I have relied upon the financial information for that period obtained from Revstone's accounting and finance files.

I have included a comprehensive listing of the documents and other information which was relevant to my analysis and conclusions in addition to those cited above in Appendix C to this Report.

In evaluating solvency from a balance sheet perspective, whether assets at fair value exceed liabilities, the valuation of the assets may be approached from a number of perspectives. These include but are not limited to valuation based on projected cash flows, comparable market multiple analysis, and comparative market transactions.

In this case, I have chosen to place my greatest reliance on the actual fair market transaction values paid by Hofmeister for the acquisitions that comprised Revstone over the Relevant Period and utilized the financial statements reported upon by the independent auditors as my starting point for the analysis.

During the Relevant Period, the automotive supplier and related industrial markets were in significant turmoil.  This period included the United States' premier industrial companies, General Motors and Chrysler, filing for Chapter 11 protection. Credit markets were frozen. There were few comparable transactions during this period and multiples for reported companies varied greatly depending on the quality of the assets.

Hofmeister approached the market looking for distressed assets.  Given the lack of capital at Hofmeister's disposal, once acquired, he was not in a position to invest in those assets to attain improved performance.  In most cases, the assets acquired operated with negative cash flows thereby eliminating a discounted cash flow analysis from the valuation alternatives.

The usual criticism for using GAAP financial statements as the basis for a solvency analysis is that the values recorded at historic cost are far removed from the fair values during the period for which the analysis is performed.  In this case, Revstone was a new entity at the start of the

Relevant Period and substantially all of the assets in question were acquired during the period through market transactions.  Accordingly, purchase accounting for Revstone and its subsidiaries reflects the market value of those assets during the Relevant Period.

While based on the fair market values of the acquired assets and operations, the financial statements to which I referred in performing my analysis required certain adjustments to reflect other adjustments to GAAP and for details not otherwise reflected in those financial statements as outlined below.

### *NET ASSETS OF REVSTONE INDUSTRIES, LLC*

As a holding company, with minor exceptions for nominal amounts of property and equipment in the later years of the Relevant Period, Revstone's assets consisted entirely of its investments in a number of other holding companies and receivables from other Hofmeister related entities. These holding companies then directly or through additional holding companies held investments in underlying operating companies Hofmeister acquired.

The appropriate measure of value at the Revstone level would therefore be the value of Revstone's "Investment in Subsidiaries".  The TABLE 1 on the next page presents Revstone's investments in its subsidiaries and the amount of equity reported for each entity by year and the necessary additional adjustments to properly show the extent of Revstone's insolvency in each of the years during the Relevant Period.

Continued on next page

**REVSTONE INDUSTRIES, LLC SOLVENCY ANALYSIS**
**TABLE 1**

|  | Audit 2008 | Audit 2009 | Audit 2010 | Audit 2011 | Internal 2012 |
|---|---|---|---|---|---|
|  |  | *Adjusted for Negative Equity* |  |  |  |
| Equity of Revstone Industries, LLC Subsidiaries |  |  |  |  |  |
| Revstone Transportation Group, LLC | 15,719,797 | 41,274,537 | 36,622,153 | 33,906,993 | 73,115,030 |
| Revstone Plastics, LLC |  | - | 9,783,881 | - |  |
| Revstone Lighting, LLC |  |  |  | 6,318,848 | - |
| Revstone Industries Canada, Inc. |  | 11,715,815 | - | - |  |
| Revstone Wallaceburg Canada, Inc. |  | 14,271,496 | 10,862,468 | 12,729,939 | 14,414,071 |
| Revstone Tool & Engineering, LLC |  |  | 27,525,526 | 23,105,430 |  |
| RPM-Tec, LLC |  |  | 5,992,826 | - |  |
| Revstone Health Plan |  |  |  |  |  |
| Revstone Mexico S. de R.L. de C.V. |  |  |  | 241 |  |
| Revstone San Luis Potosi S. de R.L. de C.V. |  |  |  | 159,741 |  |
| Revstone Industries, LLC Corporate |  |  | 1,953,660 | (52,824,063) | (23,075,590) |
| Eliminations |  |  | (51,204,147) | (15,542,029) | (52,574,697) |
| Control Group Pension Liability - Hillsdale Pension Plan | (15,719,798) | (21,642,346) | (29,038,963) | (32,374,447) | (32,374,447) |
| Control Group Pension Liability - Fairfield Pension Plan |  |  | (2,275,888) | (3,190,542) | (1,984,192) |
| Hillsdale Pension Plan Liability |  |  |  |  |  |
| Prohibited Loans |  | (4,927,740) | (27,527,740) | (31,125,480) | (31,136,687) |
| **Revstone Industries, LLC Balance Before Fair Value Adjustments** | $           (1) | $ 40,691,762 | $(17,306,224) | $(58,835,369) | $(53,616,513) |
|  | - | - | - | - | - |
| *Fair Value Adjustments* |  |  |  |  |  |
| Bargain Purchase Adjustment: |  |  |  |  |  |
| Revstone Industries Burlington, LLC |  | (10,611,613) |  |  |  |
| Metavation, LLC Vassar |  | (735,279) |  |  |  |
| MPI, LLC |  | (28,005,903) |  |  |  |
| Greenwood Forgings, LLC |  |  | (7,781,422) |  |  |
| Revstone Castings Fairfield, LLC |  |  | (7,909,624) |  |  |
| Revstone Towing, LLC |  |  | (11,032,312) |  |  |
| Saleen, LLC |  |  | (366,408) |  |  |
| Arrow Racing, LLC |  |  | (226,864) |  |  |
| Power-Tec Manufacturing, LLC |  |  | (1,878,197) |  |  |
| T Cast & Spara Tact |  |  | (4,279,930) |  |  |
| A/R & Loan Receivable - Affiliate | (2,406,797) | (13,978,687) | (7,709,597) | (20,265,671) |  |
| 2009 Contech and MW TDC Equity |  | (13,658,437) |  |  |  |
| Deferred Tax Asset | (1,638,645) | (1,544,727) | (2,225,386) | (1,292,467) |  |
| Deferred Loan Origination |  |  | (1,859,816) | (2,228,178) |  |
| Deferred Tax Liability |  | 2,860,241 | 4,206,697 | 1,571,325 |  |
| Deferred Gain |  | 1,469,814 | 563,209 |  |  |
| **Total Fair Value Adjustments** | $ (4,045,442) | $ (64,204,591) | $(40,499,650) | $(22,214,991) | $        - |
|  | - | - | - | - |  |
| **Revstone Industries, LLC Insolvency (Liabilities exceed Assets)** | $ (4,045,443) | $ (23,512,829) | $(57,805,874) | $(81,050,360) | $(53,616,513) |
|  |  |  |  |  |  |
| **Total Revstone Guarantees Issued by Year** | $        - | $ (32,330,853) | $ (90,575,956) | $(20,612,679) | $(45,000,000) |

My analysis began by determining the amount of positive equity reported by Revstone's investments and sub-investments. Where an entity such as Revstone Transportation reported positive and negative equity investments, I only included the positive equity balances in my totals.

The balances for Revstone Industries, LLC Corporate reflect the net assets or liabilities of Revstone as reported in the consolidating financial statement schedules.

In order to eliminate the gross-up of assets and liabilities between the entities I also included the eliminations presented on the consolidating schedules.

In addition, for each of the years presented I added back the obligations for the Hillsdale Hourly and Salaried Pension Plans (the "Hillsdale Plans") to the equity investment in Revstone Transportation. I added back the obligation for the Revstone Castings Fairfield GMP Local 539 Pension Plan (the "Fairfield Plan") to the equity investment in Revstone Tool & Engineering, LLC for the years 2010 and 2011 during which time Fairfield Castings, LLC, the plan sponsor, was a subsidiary of that entity. As discussed below, I then reflected the controlled group liability related to the Hillsdale and Fairfield Plans as an obligation against the controlled group at the Revstone level.

### BASIS FOR ADJUSTMENTS

#### Pension Plan Controlled Group Liability

Hofmeister though Revstone Transportation began his Revstone acquisitions with the purchase of the membership interest in Hillsdale Automotive, LLC (renamed Metavation, LLC and now known and referred to herein as TPOP, LLC or "TPOP") and its Mexican subsidiary Eptec, S.A. de C.V. ("Eptec") for one dollar ($1.00) on November 28, 2008. Included in the purchase was a $5 million cash contribution from TPOP's former parent. This $5 million fund was immediately taken by Hofmeister and sent to one or more other Hofmeister entities. There is no indication that these funds were ever repaid or recovered by TPOP. As such, TPOP was immediately insolvent upon acquisition. In acquiring the member interest in TPOP, the Revstone entities became obligated as a group for any underfunding of the Hillsdale Plans under the controlled group liability provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). Upon the acquisition of the entity now known as Fairfield Castings, LLC ("Fairfield"), Revstone and its affiliates became obligated for the underfunding in the Fairfield Plan. My analysis includes the obligations presented on the TPOP and Fairfield financial statements representing the difference between plan assets as reported and the accumulated benefit obligations. These obligations are valued based on the assumption that the pension plans are continuing plans.

Pursuant to the settlement with Pension Benefit Guaranty Corporation (the "PBGC Settlement"), which was approved by the United States Bankruptcy Court for the District of Delaware, the plans were terminated resulting in a claim against the controlled group entities of $95 million. After considering the adjustment discussed below for the uncollectible prohibited investments, the insolvency reflected in the above schedule would be at least $31 million greater when considering the additional liability under the PBGC Settlement and plan terminations.

*Adjustment for Uncollectible Prohibited Investments*

The adjustment for Hillsdale Pension Plan Liability Prohibited Loans adds to Revstone's controlled group liability for the unfunded pension obligations not recognized in the financial statements because of the overstatement of the value of the prohibited transactions.

Starting in January 2009, Hofmeister caused the Hillsdale and Fairfield Plans to convert third party investments to loans and notes and other related party assets. These transactions were prohibited under ERISA regulations. Many of these loans went to purchase other distressed assets and many of the borrowing entities did not have the collateral or ability to repay the amounts borrowed. Despite the poor credit profile of these investments, Hofmeister had the loans and investments reported at face value in the calculation of the unfunded pension obligations. Over the Relevant Period, the amount of the uncollectible prohibited investments that were not recognized as such in the calculations of the unfunded pension obligation rose from $4.9 million in 2009 to over $31 million in 2012.

*Bargain Purchase Adjustments*

The bargain purchase adjustments subtract from the financial statement value of Revstone's subsidiaries the book equity created by what was once called "negative goodwill."

By general definition, the occasional gain resulting from a bargain purchase is the gain recognized on the financial statements for assets purchased for less/below fair market value of its net assets. Current accounting rules[3] require the purchaser of said assets to book the difference between the purchase price of the assets and their fair market value on the income statement at the time of the initial purchase accounting. This gain flows to the purchaser's retained earnings, increasing reported book equity.

Hofmeister was very active in the liquidation space and was looking to purchase assets at depressed values. Considering the automotive industry was operating under a significant state of duress, the market became plagued with manufacturing assets from automotive suppliers who wound down operations and needed to monetize the current value of their assets. At the time of

---

[3] Accounting Standards Codification 805-30-25-2, Business Combinations.

the automotive downturn (2008-2010), companies were not being sold for the standard cash flow multiples.. Instead, these automotive suppliers were sold at depressed liquidation values in many cases without actually being liquidated. The liquidation value was determined by what the market would endure, which was a very fluid tolerance. This market condition is perfectly crystalized in the purchase terms under which Hofmeister acquired some of his largest operating entities, which primarily included little to no cash and the assumption of liabilities or at the supervision of the bankruptcy court, which by definition provides for a competitive sale process and generates a "market value".

In recording these purchases, Revstone accountants measured the purchase price of the assets (cash or other consideration including liabilities assumed) and compared those amounts against appraisals of the individual assets acquired. In most cases, on a stand-alone basis, the total appraised value of the individual assets Hofmeister acquired exceeded the consideration Hofmeister paid for those assets giving rise to a "book gain" on the so called bargain purchase. However, these accounting gains and the equity they created for book purposes are illusory. In continuing to operate the acquired entities, Hofmeister had no ability to realize the value reflected in the appraisals of the individual assets on any comprehensive basis. If the appraisals were correct, only upon a realized liquidation of the operations would those assets begin to generate the gross proceeds forecast by the appraisals. Furthermore, the realized gross proceeds would in turn be reduced for employee termination costs, wear and tear from continued use after the date of the appraisals, environmental, and other costs of the liquidation process.

The market participants' calculation of fair value takes into consideration the current and future prospects for losses expected to incur from said assets. That is exactly the situation presented in the Hofmeister purchases. Absent action by the purchaser to invest and improve the acquired operations in order to mitigate future losses, no incremental value can be realized. In this case all but two of the entities had negative profitability as measured by EBITDA in the year of purchase.

The Revstone assets were purchased at the fair market value as reflected by the consideration provided and the liabilities assumed and no additional economic gain accrued to Revstone with those purchases.

*A/R & Loan Receivable from Affiliates Adjustments*

The adjustments in this category reduce the value of receivables from other non-Revstone Hofmeister entities to reflect that Revstone is unable to collect those balances.

Revstone's financial statements indicate a net balance in the accounts & loans receivable from affiliates category. This represents a net receivable due from Hofmeister entities that are not in the Revstone consolidation. These balances reflect amounts due from other entities owned by

Ascalon or by the Children's Trusts.  As evidenced in the Transfer Section of this report, Hofmeister and the Children's Trusts operated various entities outside of Revstone and its subsidiaries and perpetuated those businesses with Revstone's funds.  As in the Revstone operations, it is our understanding that the Children's Trusts' non-Revstone operating entities also struggled to stay afloat and many closed their doors or were sold at a loss.  Moreover, in most cases, Revstone's receivables from these entities were not documented by promissory notes or written agreements, and were unsecured.  Like the prohibited loans and investments in the pension plans, the Revstone financial statements carried these receivables at face value.

*2009 Contech and MW TDC Equity*

I removed the equity balances for Contech Castings, LLC ("Contech") and MW TDC, Inc. ("Texas Die Cast") from the 2009 totals for Revstone's subsidiaries because Contech and Texas Die Cast were not owned by Revstone in 2009.

Contech and Texas Die Cast are entities originally acquired and owned by non-Revstone entities. The Contech assets were purchased in June 2009 in a bankruptcy section 363 sale by the George S. Hofmeister Family Trust Dated June 21, 1991 for the benefit of each of Hofmeister's three children ("Family Trust").  The Family Trust assigned its membership interest in Contech to Revstone on June 23, 2010.

The assets of Texas Die Cast were purchased in May 2007 by MW Universal Acquisition, Inc. and MW Universal, Inc., both of which are non-Revstone entities.  It wasn't until June 23, 2010 that MW Universal Inc. conveyed its membership interests in Texas Die Cast to Revstone.

Contech and Texas Die Cast were included in the 2009 Revstone consolidation because these entities, although not Revstone entities, were controlled by Hofmeister.  GAAP requires that consolidated financial statements include all entities under common control where the controlling individual or entity has the ability to direct activities of the group.  While this treatment was appropriate for financial reporting purposes in 2009, the attribution of the value of these entities to Revstone in 2009 is not appropriate since these entities were not direct or indirect subsidiaries of Revstone until mid-2010.  My adjustment removes the net equity value of these entities from Revstone for 2009.

*Deferred Tax Assets and Deferred Tax Liability Adjustments*

I have excluded both the deferred tax assets and deferred tax liabilities from my analysis.

Revstone and the majority of its direct and indirect subsidiaries are disregarded entities for tax purposes.  Taxable income or loss flows to a parent taxpayer entity.  For accounting purposes some of the entities recognize deferred tax assets and liabilities in accordance with GAAP.

These assets and liabilities represent potential tax obligations and/or refunds but do not represent actual taxes owed or refundable.

*Deferred Loan Origination Costs*

I have excluded the loan origination cost asset from my analysis.

GAAP requires that costs of originating loans should be capitalized and amortized over the course of the loan period as an adjustment to interest cost. These book assets have no continuing value.

*Deferred Gain*

I have added back the deferred gain appearing on Revstone's statements since the deferral was simply for reporting purposes.

GAAP requires that gains on sales of assets be deferred when the sale of the asset is accompanied by an agreement of some other form of continuing association between the seller and the buyer. Such a situation would be where the seller monetizes assets through a sale and enters into an agreement with the buyer to continue to use the assets pursuant to a leasing arrangement. TPOP recorded such a gain in 2009.

### REVSTONE – INSOLVENT FROM INCEPTION

*Balance Sheet Test*

As reflected in TABLE 1, after considering the necessary adjustments to the reported financial statement values, Revstone's liabilities greatly exceeded its assets at fair value from inception forward, beginning with liabilities exceeding assets by over $4 million at the end of 2008, and ending at the end of 2012 with liabilities exceeding assets by not less than $47 million.

In addition to Revstone's obligations to the pension plans as a member of the controlled group, Revstone was constantly providing guarantees for its own subsidiaries, other Hofmeister entities, and for Hofmeister and his family. The following TABLE 2 summarizes the amounts of guarantees issued by Revstone for each of the years in the Relevant Period.

**Revstone Industries Guarantees**
*in Millions*

|  | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|
| Total by Year |  | $ 32,330,853 | $ 90,575,956 | $ 20,612,679 | $ 45,000,000 |

See the accompanying EXHIBIT II for a detailed listing of the individual guarantees that comprise these totals.

*Capitalization*

I found no evidence in the records that Revstone was ever capitalized with any monetary equity investment. Before adjustments, Revstone's initial tax return for the period ended December 31, 2008 reflected liabilities greater than assets of $1,636,697 from losses during the period with no contributed capital. The beginning balance of contributed capital of $3.5 million reflected in the 2010 audited financial statements appears to have originated with Revstone recording a journal entry with the balancing debit to the Metavation intercompany receivable. There is no evidence that this receivable was ever funded nor is there evidence of any other contributed capital reflected in any of the other financial statements or records I reviewed. In my opinion, Revstone was without adequate capital from inception.

*Cash Flow and Ability to Pay Debts as They Came Due*

Throughout the Relevant Period, Hofmeister played a constant shell game moving cash among both Revstone and non-Revstone entities, borrowing at one entity and using the cash at another, and generally not paying obligations as they came due.

One of the most glaring examples of this type of activity relates to the self-insured health plan that was initially a Revstone subsidiary and later moved to Ascalon. At the time the CRO was appointed in January 2013, the Ascalon Health Plan was owed almost $5.1 million from various Revstone entities. Because of cash constraints at the entity level, Hofmeister allowed the individual entities whose employees participated in the health plan to defer making the employer's portion of the health and dental plan monthly premiums. At least $741,000 of that amount was outstanding related to periods prior to the end of 2011.

Probably the most illustrative way to demonstrate the constant pressure the Revstone employees were under for paying bills is to let them speak through their e-mail correspondence. The e-mail correspondence my staff and I reviewed during our work is replete with discussion of the constant pressure Revstone was under because of a lack of adequate funding. The accompanying EXHIBIT III presents representative examples of that e-mail correspondence.

## Transfers

Transaction information underlying the statements and conclusions in this Report originated from a number of sources. Huron reviewed the majority of the transactions in Revstone's sole operating bank account, Account No. 07380975883 with Fifth Third Bank (the "Fifth Third Account"). The Fifth Third Account contained Revstone's funds, was controlled and maintained

by Revstone, and was used to transact Revstone's business including the receipt and payment of various intercompany loans, loans from third parties, and subsidiary operations. The Fifth Third Account was opened on December 19, 2008 and closed on August 30, 2011. While reviewing the Fifth Third Account debits and credits, we determined the transfers and payments detailed below were made from this account using Revstone's funds. Huron also reviewed other cash account records in verifying the transaction activity. Payroll information regarding payments to defendant Scott Hofmeister was traced to Revstone's payroll records provided through Revstone's third party payroll processor.

## AIRLIE TRANSFERS

According to Revstone's books and records, a total of $5,200,000 of Revstone's funds was transferred to Airlie Opportunity Master Fund, Ltd. ("Airlie Fund") between April 2009 and August 2010 (the "Airlie Transfers"). The Airlie Transfers were made via wire transfers from the Fifth Third Account to Airlie Fund as follows:

| Transfer Date | Transfer Amount |
|---|---|
| 4/2/09 | $100,000 |
| 7/1/09 | $100,000 |
| 2/9/10 | $200,000 |
| 2/9/10 | $300,000 |
| 2/11/10 | $500,000 |
| 5/13/10 | $50,000 |
| 8/19/10 | $3,950,000 |
| **Total:** | **$5,200,000** |

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the Airlie Transfers, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the Airlie Transfers, (iii) that Revstone owed any debt to any recipient or beneficiary of the Airlie Transfers at the time of the Airlie Transfers, or (iv) that Revstone otherwise had any obligation to make the Airlie Transfers.

In fact, Revstone's books and records indicate that (i) American Metals Industries, Inc. ("AMI") was indebted to Airlie Opportunity Capital Management, L.P. ("Airlie Management") pursuant to a November 15, 2007 promissory note issued by AMI in favor of Airlie Management in the original principal amount of $3,855,732.29 (the "Airlie Note"), (ii) the Children's Trusts entered into a Sale and Assignment Agreement with Airlie Management (the "Airlie Agreement") on or about January 25, 2010, by which the Children's Trusts agreed to (among other things) pay a total of $4,500,000 to Airlie Management, and (iii) the Airlie Transfers were made to reduce

AMI's debt under the Airlie Note and satisfy the Children's Trusts' obligations under the Airlie Agreement.  AMI was wholly owned by the Children's Trusts.  Hofmeister was the President of AMI, and was the trustee of the Children's Trusts at the time of the Airlie Agreement and the first six Airlie Transfers.

Based on the foregoing, it is my opinion that (i) the Airlie Transfers were made to Airlie Fund between April 2, 2009 and August 19, 2010, (ii) Revstone did not receive reasonably equivalent value in exchange for the Airlie Transfers, (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Airlie Transfers were made, and (iv) the Airlie Transfers were made for the benefit of AMI and the Children's Trusts.  The Trustee is entitled to recover the principal amount of the Airlie Transfers plus prejudgment interest at the federal judgment rate from the date of each of the Airlie Transfers.[4]

## DUKE TRANSFERS

According to Revstone's books and records, Bill E. Duke ("Duke") and Hi-Craft Engineering, Inc. ("Hi-Craft") received a total of $1,093,702.95 (the "Duke Transfers") via wire transfers made between December 2009 and July 2010, as follows:

| Transfer Date | Transfer Amount |
|---------------|-----------------|
| 12/1/09 | $73,704 |
| 12/18/09 | $62,000 |
| 7/16/10 | $957,998.95 |
| **Total:** | **$1,093,702.95** |

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for any of the Duke Transfers, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises with respect to any of the Duke Transfers, (iii) that Revstone owed any debt to any recipient or beneficiary of any of the Duke Transfers at the time of the Duke Transfers, or (iv) that Revstone otherwise had any obligation to make any of the Duke Transfers.

In fact, Revstone's books and records indicate that the Duke Transfers were made to satisfy two judgments totaling approximately $1,808,000 that were obtained by Duke and Hi-Craft on or about June 30, 2008, as follows:  Duke obtained a judgment against Hofmeister for $1,408,132; Hi-Craft obtained a judgment against Hofmeister, MW Universal, Inc. ("MW Universal") and the Family Trust for $400,150. MW Universal was wholly owned by AMI, which was wholly owned by the Children's Trusts, at the time of the Duke Transfers.  Moreover, at the time of the Duke Transfers, Hofmeister was the Chairman of MW Universal, the President of AMI and the trustee of the Children's Trusts.

---

[4] The Airlie Transfers are the subject of the First Claim for Relief in the Hofmeister Adversary Proceeding.

Based on the foregoing, it is my opinion that (i) the Duke Transfers were made between December 1, 2009 and July 16, 2010, (ii) the Duke Transfers were made to satisfy obligations owed, not by Revstone, but by Hofmeister, MW Universal and the Family Trust, (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Duke Transfers were made, and (iv) the Duke Transfers were made for the benefit of Hofmeister, MW Universal, AMI, the Children's Trusts and the Family Trust.  Prejudgment interest on the Duke Transfers is recoverable at the federal judgment rate from the date of each avoided Duke Transfer.[5]

## ARETE TRANSFERS

According to Revstone's books and records, a total of $731,496.57 of Revstone's funds was transferred (the "Arete Transfers") either directly to Arete, LLC ("Arete"), or to GSL of Ill., LLC ("GSL") to satisfy obligations owed by Arete and its subsidiaries.  The Arete Transfers were made between February 2009 and June 2011 via wire transfers from the Fifth Third Account as follows:

| Transfer Date | Transfer Amount |
|---|---|
| 2/25/09 | $5,000 |
| 4/2/09 | $338,000 |
| 5/15/09 | $31,206 |
| 5/22/09 | $50,000 |
| 4/15/10 | $35,538 |
| 9/20/10 | $32,697 |
| 10/14/10 | $46,500 |
| 12/27/10 | $7,250 |
| 3/1/11 | $25,000 |
| 4/12/11 | $14,500 |
| 6/15/11 | $64,326.57 |
| 6/27/11 | $81,479 |
| **Total:** | **$731,496.57** |

The transfer of $64,326.57 on June 15, 2011 was made to GSL.  The remainder of the Arete Transfers were made directly to Arete.

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the Arete Transfers, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the Arete Transfers, (iii) that Revstone owed any debt to

---

[5] The Duke Transfers are the subject of the Second Claim for Relief in the Hofmeister Adversary Proceeding.

any recipient or beneficiary of the Arete Transfers at the time of the Arete Transfers, or (iv) that Revstone otherwise had any obligation to make the Arete Transfers.

In fact, Revstone's books and records indicate that (i) the transfer to GSL on June 15, 2011 was made to satisfy obligations owed by Arete and its subsidiaries to GSL under an Equipment Lease Agreement dated September 23, 2008 and (ii) the remainder of the Arete Transfers were made to Arete to provide working capital to Arete, or for Arete to use to satisfy its insurance, pension plan, interest, and other obligations of Arete and its subsidiaries. Per the Arete, LLC Operating Agreement dated June 25, 2009, Arete was wholly owned by the Children's Trusts, and Hofmeister was the Chairman of Arete.

Based on the foregoing, it is my opinion that (i) the Arete Transfers were made to Arete and GSL between February 25, 2009 and June 27, 2011, (ii) Revstone did not receive reasonably equivalent value in exchange for the Arete Transfers, (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Arete Transfers were made, and (iv) the Arete Transfers were made for the benefit of Arete and the Children's Trusts. The Trustee is entitled to recover the principal amount of the Arete Transfers plus prejudgment interest at the federal judgment rate from the date of each of the Arete Transfers.[6]

## INTERLOCK TRANSFERS

According to Revstone's books and records, a total of $250,120 of Revstone's funds was transferred (the "Interlock Transfers") between December 2009 and March 2011 in connection with the acquisition of Interlock Die Company, LLC ("Interlock Die") by Arete Interlock, LLC ("Arete Interlock"). The Interlock Transfers were made via check and wire transfers from the Fifth Third Account as follows:

| Transfer Date | Transfer Amount |
|---|---|
| 12/23/09 | $5,120 |
| 3/2/10 | $50,000 |
| 5/10/10 | $25,000 |
| 8/27/10 | $50,000 |
| 11/24/10 | $15,000 |
| 12/13/10 | $25,000 |
| 12/16/10 | $50,000 |
| 3/1/11 | $6,000 |
| 3/1/11 | $24,000 |
| **Total:** | **$250,120** |

---

[6] The Arete Transfers are the subject of the Third Claim for Relief in the Hofmeister Adversary Proceeding. The transfer to GSL also is the subject of the First Claim for Relief in the GSL Adversary Proceeding.

The transfers made on December 23, 2009 (via Check No. 1503) and on March 2, 2010, May 10, 2010 and August 27, 2010 (via wire transfer) in the total amount of $130,120 were made to Patrick Smith ("Smith"). The transfer of $6,000 made on March 1, 2011 (via wire transfer) was made to Utica Leasco. The remainder of the Interlock Transfers were made via wire transfer directly to Interlock Die.

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the Interlock Transfers, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the Interlock Transfers, (iii) that Revstone owed any debt to any recipient or beneficiary of the Interlock Transfers at the time of the Interlock Transfers, or (iv) that Revstone otherwise had any obligation to make the Interlock Transfers.

In fact, Revstone's books and records indicate that (i) the transfers to Smith on March 2, 2010 and May 10, 2010 were payments on a seller note held by Smith in connection with the acquisition of Interlock Die by Arete Interlock, (ii) the transfer to Utica Leasco was made to satisfy an obligation of Interlock Die or Arete Interlock, and (iii) the transfers made directly to Interlock Die were for its use as working capital or to satisfy its payroll and other obligations. Revstone had no ownership interest in Interlock Die or Arete Interlock. To the contrary, Interlock Die was owned by Arete Interlock, Arete Interlock was owned by JSM Midwest Machining, LLC ("JSM Midwest"), and JSM Midwest was owned by the Children's Trusts.

Based on the foregoing, it is my opinion that (i) the Interlock Transfers were made to Smith, Utica Leasco and Interlock Die between December 23, 2009 and March 1, 2011, (ii) Revstone did not receive reasonably equivalent value in exchange for the Interlock Transfers, (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Interlock Transfers were made, and (iv) the Interlock Transfers were made for the benefit of Interlock Die, Arete Interlock and the Children's Trusts. The Trustee is entitled to recover the principal amount of the Interlock Transfers plus prejudgment interest at the federal judgment rate from the date of each of the Interlock Transfers.[7]

## BAKER TRANSFERS

According to Revstone's books and records, a total of $284,500 of Revstone's funds was transferred (the "Baker Transfers") to Baker Metal Products Corporation ("Baker Metal"), or to First Clearing, LLC ("First Clearing") to satisfy loan obligations owed by Baker Metal. The Baker Transfers were made between December 2009 and July 2011 via wire transfers from the Fifth Third Account as follows:

| Transfer | Transfer |
|---|---|

---

[7] The Interlock Transfers are the subject of the Fourth Claim for Relief in the Hofmeister Adversary Proceeding. The transfers to Smith also are the subject of the First Claim for Relief in the Smith Adversary Proceeding.

| Date | Amount |
|------|--------|
| 12/15/09 | $50,000 |
| 1/13/10 | $50,000 |
| 3/2/10 | $40,000 |
| 3/4/10 | $141,000 |
| 7/25/11 | $3,500 |
| **Total:** | **$284,500** |

The transfer of $3,500 on July 25, 2011 was made to First Clearing. The remainder of the Baker Transfers were made directly to Baker Metal.

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the Baker Transfers, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the Baker Transfers, (iii) that Revstone owed any debt to any recipient or beneficiary of the Baker Transfers at the time of the Baker Transfers, or (iv) that Revstone otherwise had any obligation to make the Baker Transfers.

In fact, Revstone's books and records indicate that (i) the transfer to First Clearing on July 25, 2011 was made to satisfy loan obligations owed by Baker Metal to First Clearing, (ii) the transfers on March 2, 2010 and March 4, 2010 were made to Baker Metal to provide it with working capital, and (iii) the transfers on December 15, 2009 and January 13, 2010 were made to Baker Metal on behalf of Arete. Arete Tubing Solutions, LLC, a 100% Arete member-managed entity, purchased Baker Metal on September 30, 2009. As stated above, Arete was owned by the Children's Trusts, and Hofmeister was the Chairman of Arete.

Based on the foregoing, it is my opinion that (i) the Baker Transfers were made to Baker Metal and First Clearing between December 15, 2009 and July 25, 2011, (ii) Revstone did not receive reasonably equivalent value in exchange for the Baker Transfers, (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Baker Transfers were made, and (iv) the Baker Transfers were made for the benefit of Baker Metal, Arete and the Children's Trusts as described above. The Trustee is entitled to recover the principal amount of the Baker Transfers plus prejudgment interest at the federal judgment rate from the date of each of the Baker Transfers.[8]

## DFB TRANSFERS

According to Revstone's books and records, a total of $1,055,797.72 of Revstone's funds was transferred to DFB Holdings, Inc. ("DFB") or its counsel between February 2010 and February 2011 (the "DFB Transfers"). The DFB Transfers were made via wire transfers from the Fifth Third Account as follows:

---

[8] The Baker Transfers are the subject of the Fifth Claim for Relief in the Hofmeister Adversary Proceeding.

| Transfer Date | Transfer Amount |
|---|---|
| 2/23/10 | $10,000 |
| 2/26/10 | $10,000 |
| 3/15/10 | $250,000 |
| 4/9/10 | $10,000 |
| 5/3/10 | $125,000 |
| 8/6/10 | $25,000 |
| 8/13/10 | $25,000 |
| 8/19/10 | $25,000 |
| 8/27/10 | $25,000 |
| 9/2/10 | $25,000 |
| 9/9/10 | $25,000 |
| 9/24/10 | $25,000 |
| 9/29/10 | $25,000 |
| 10/8/10 | $25,000 |
| 10/15/10 | $25,000 |
| 10/22/10 | $25,000 |
| 11/5/10 | $25,000 |
| 11/12/10 | $25,000 |
| 11/19/10 | $25,000 |
| 11/24/10 | $25,000 |
| 12/3/10 | $125,000 |
| 12/13/10 | $25,000 |
| 12/17/10 | $25,000 |
| 12/30/10 | $25,000 |
| 1/7/11 | $50,000 |
| 1/14/11 | $25,000 |
| 2/15/11 | $797.72 |
| **Total:** | **$1,055,797.72** |

The transfers on February 23, 2010 and February 26, 2010 were made to DFB's counsel, Wegman, Hessler & Vanderburg. The transfers made between March 15, 2010 and February 15, 2011 were made directly to DFB.

According to Revstone's books and records, and the materials produced by the defendants in the Adversary Proceedings, the DFB Transfers were made in settlement of litigation filed by DFB on January 19, 2010 against Hofmeister and Revstone. The litigation arose out of an asset purchase agreement ("APA") between JJ Seville, LLC f/k/a JJH Holdings LLC ("JJ Seville"), as the buyer, and DFB Properties, Ltd. and Seville Centrifugal Bronze, Inc. (now known as DFB), as the sellers. Hofmeister executed the APA as the Chief Executive Officer of JJH Holdings LLC

(now known as JJ Seville). The Children's Trusts held a 50% ownership interest in JJ Seville. Revstone did not hold any ownership interest in JJ Seville.

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that JJ Seville, Hofmeister or the Children's Trusts repaid Revstone for the DFB Transfers, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises from JJ Seville, Hofmeister or the Children's Trusts in exchange for the DFB Transfers, or (iii) that Revstone owed any debt to JJ Seville, Hofmeister or the Children's Trusts at the time of the DFB Transfers.

Based on the foregoing, it is my opinion that (i) the DFB Transfers were made to DFB or its counsel between February 23, 2010 and February 15, 2011, (ii) neither JJ Seville, Hofmeister nor the Children's Trusts provided Revstone with anything of value in exchange for the DFB Transfers, (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the DFB Transfers were made, and (iv) JJ Seville, Hofmeister and the Children's Trusts were beneficiaries of the DFB Transfers. Prejudgment interest on the DFB Transfers is recoverable at the federal judgment rate from the date of each avoided DFB Transfer.[9]

## CRESTMARK TRANSFERS

According to Revstone's books and records, a total of $499,361 of Revstone's funds was transferred (the "Crestmark Transfers") to Crestmark Bank ("Crestmark") between October 2009 and December 2010. The Crestmark Transfers were made via check and wire transfers from the Fifth Third Account as follows:

| Transfer Date | Transfer Amount |
|---------------|-----------------|
| 10/23/09 | $1,500 |
| 12/18/09 | $22,500 |
| 2/3/10 | $26,342 |
| 2/19/10 | $26,200 |
| 3/16/10 | $25,344 |
| 4/16/10 | $25,585 |
| 8/16/10 | $49,960 |
| 9/23/10 | $24,493 |
| 11/19/10 | $100,000 |
| 12/15/10 | $197,437 |
| **Total:** | **$499,361** |

The transfer made on February 3, 2010 was made via Check No. 1616. The remainder of the Crestmark Transfers were made via wire transfer.

---

[9] The DFB Transfers are the subject of the Sixth Claim for Relief in the Hofmeister Adversary Proceeding.

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the Crestmark Transfers, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the Crestmark Transfers, (iii) that Revstone owed any debt to any recipient or beneficiary of the Crestmark Transfers at the time of the Crestmark Transfers, or (iv) that Revstone otherwise had any obligation to make the Crestmark Transfers. In fact, Revstone's books and records indicate that the Crestmark Transfers were payments owed by Hofmeister on a personal loan from Crestmark to Hofmeister.

Based on the foregoing, it is my opinion that (i) the Crestmark Transfers were made to Crestmark, for Hofmeister's benefit, between October 23, 2009 and December 15, 2010, (ii) Revstone did not receive reasonably equivalent value in exchange for the Crestmark Transfers, and (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Crestmark Transfers were made. The Trustee is entitled to recover the principal amount of the Crestmark Transfers plus prejudgment interest at the federal judgment rate from the date of each of the Crestmark Transfers.[10]

## RADCO TRANSFERS

According to Revstone's books and records, a total of $316,153 of Revstone's funds was transferred (the "Radco Transfers") to Radco Construction Services, Inc. ("Radco") between August 2010 and December 2010. The Radco Transfers were made via wire transfers from the Fifth Third Account as follows:

| Transfer Date | Transfer Amount |
|---|---|
| 8/17/10 | $25,000 |
| 8/20/10 | $108,000 |
| 8/27/10 | $125,000 |
| 11/19/10 | $10,000 |
| 12/8/10 | $48,153 |
| Total: | $316,153 |

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the Radco Transfers, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the Radco Transfers, (iii) that Revstone owed any debt to any recipient or beneficiary of the Radco Transfers at the time of the Radco Transfers, or (iv) that Revstone otherwise had any obligation to make the Radco Transfers.

---

[10] The Crestmark Transfers are the subject of the Seventh Claim for Relief in the Hofmeister Adversary Proceeding.

In fact, Revstone's books and records indicate that the Radco Transfers were payments for construction services (specifically, roof repairs) and related fees for property on Cypress Street in Paris, Kentucky that was (i) owned by MSJ Realty, Inc., which is registered as an assumed name corporation, having assumed the name of American Commercial Coatings, Inc. ("ACC/MSJ"), and (ii) occupied by AMI and MW Universal.  ACC/MSJ's ultimate owner was the Family Trust.

MW Universal was wholly owned by AMI, which was wholly owned by the Children's Trusts. Hofmeister was the Chairman of MW Universal and the President of AMI.

Based on the foregoing, it is my opinion that (i) the Radco Transfers were made to Radco between August 17, 2010 and December 8, 2010, (ii) Revstone did not receive reasonably equivalent value in exchange for the Radco Transfers, (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Radco Transfers were made, and (iv) the Radco Transfers were made for the benefit of ACC/MSJ, AMI, MW Universal and the Children's Trusts. The Trustee is entitled to recover the principal amount of the Radco Transfers plus prejudgment interest at the federal judgment rate from the date of each of the Radco Transfers.[11]

## PENN RIDGE TRANSFERS

According to Revstone's books and records, a total of $175,000 of Revstone's funds was transferred (the "Penn Ridge Transfers") to Penn Ridge Farms LLC ("Penn Ridge") between April 2010 and September 2010.  The Penn Ridge Transfers were made via check and wire transfers from the Fifth Third Account as follows:

| Transfer Date | Transfer Amount |
|---|---|
| 4/2/10 | $75,000 |
| 8/20/10 | $25,000 |
| 9/29/10 | $75,000 |
| Total: | $175,000 |

The transfer on April 2, 2010 was made via Check No. 1747.  The remainder of the Penn Ridge Transfers were made via wire transfer.

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the Penn Ridge Transfers, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the Penn Ridge Transfers, (iii) that Revstone owed any debt

---

[11]  The Radco Transfers are the subject of the Eighth Claim for Relief in the Hofmeister Adversary Proceeding.  The Radco Transfers also are the subject of the First Claim for Relief in the Radco Adversary Proceeding.

to any recipient or beneficiary of the Penn Ridge Transfers at the time of the Penn Ridge Transfers, or (iv) that Revstone otherwise had any obligation to make the Penn Ridge Transfers.

In fact, the Penn Ridge Transfers appear to be horse-related payments made to Penn Ridge for the benefit of Hofmeister, who was actively involved in the Thoroughbred racing industry. Revstone, on the other hand, did not own any horses or conduct any horse-related business.

Based on the foregoing, it is my opinion that (i) the Penn Ridge Transfers were made to Penn Ridge, for Hofmeister's benefit, between April 2, 2010 and September 29, 2010, (ii) Revstone did not receive reasonably equivalent value in exchange for the Penn Ridge Transfers, and (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Penn Ridge Transfers were made. The Trustee is entitled to recover the principal amount of the Penn Ridge Transfers plus prejudgment interest at the federal judgment rate from the date of each of the Penn Ridge Transfers.[12]

## CMRD TRANSFER

According to Revstone's books and records, a total of $50,000 of Revstone's funds was transferred (the "CMRD Transfer") to CMRD, LLC ("CMRD") on August 17, 2010. The CMRD Transfer was made via wire transfer from the Fifth Third Account.

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the CMRD Transfer, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the CMRD Transfer, (iii) that Revstone owed any debt to any recipient or beneficiary of the CMRD Transfer at the time of the CMRD Transfer, or (iv) that Revstone otherwise had any obligation to make the CMRD Transfer.

Based on the foregoing, it is my opinion that (i) the CMRD Transfer was made to CMRD, for Hofmeister's benefit, on August 17, 2010, (ii) Revstone did not receive reasonably equivalent value in exchange for the CMRD Transfer, and (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time of the CMRD Transfer. The Trustee is entitled to recover the principal amount of the CMRD Transfer plus prejudgment interest at the federal judgment rate from the date of the CMRD Transfer.[13]

---

[12] The Penn Ridge Transfers are the subject of the Ninth Claim for Relief in the Hofmeister Adversary Proceeding. The Penn Ridge Transfers also are the subject of the First Claim for Relief in the Penn Ridge Adversary Proceeding.

[13] The CMRD Transfer is the subject of the Tenth Claim for Relief in the Hofmeister Adversary Proceeding.

## KEENELAND TRANSFER

According to Revstone's books and records, a total of $269,026.21 of Revstone's funds was transferred (the "Keeneland Transfer") to Keeneland Association, Inc. ("Keeneland") on January 5, 2010.  The Keeneland Transfer was made via Check No. 1567 from the Fifth Third Account.

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the Keeneland Transfer, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the Keeneland Transfer, (iii) that Revstone owed any debt to any recipient or beneficiary of the Keeneland Transfer at the time of the Keeneland Transfer, or (iv) that Revstone otherwise had any obligation to make the Keeneland Transfer.

In fact, the documents produced by the defendants in the Adversary Proceedings indicate that (i) the Keeneland Transfer was a payment to Keeneland for the purchase of twelve Thoroughbred horses at Keeneland's 2009 Breeding Stock Sale, (ii) the buyer statement for this transaction was directed to Nelson E. Clemmens under his Keeneland Account No. 124692-329901, and (iii) Keeneland paid the sellers of the horses before it received the Keeneland Transfer from Revstone.  Clemmens has asserted that the horses that are the subject of this transaction were purchased for Hofmeister.  As stated above, Revstone did not own any horses or conduct any horse-related business.

Based on the foregoing, it is my opinion that (i) the Keeneland Transfer was made to Keeneland on January 5, 2010, (ii) Revstone did not receive reasonably equivalent value in exchange for the Keeneland Transfer, (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Keeneland Transfer was made, and (iv) the Keeneland Transfer was made for the benefit of Hofmeister and Nelson E. Clemmens ("Clemmens").  The Trustee is entitled to recover the principal amount of the Keeneland Transfer plus prejudgment interest at the federal judgment rate from the date of the Keeneland Transfer.[14]

## HOLMES HOLLISTER TRANSFERS

According to Revstone's books and records, a total of $693,644 of Revstone's funds was transferred (the "Holmes Hollister Transfers") to Holmes, Hollister & Co. ("Holmes Hollister") between July 2009 and June 2011.  The Holmes Hollister Transfers were made via check and wire transfers from the Fifth Third Account as follows:

| Transfer Date | Transfer Amount |
| --- | --- |

---

[14] The Keeneland Transfer is the subject of the Eleventh Claim for Relief in the Hofmeister Adversary Proceeding.  The Keeneland Transfer also is the subject of the First Claim for Relief in the Keeneland Adversary Proceeding.

| Transfer Date | Transfer Amount |
|---|---|
| 7/14/09 | $30,000 |
| 7/29/09 | $15,000 |
| 8/3/09 | $20,617 |
| 8/13/09 | $13,000 |
| 8/28/09 | $30,000 |
| 9/14/09 | $35,000 |
| 9/30/09 | $26,027 |
| 10/6/09 | $2,000 |
| 10/9/09 | $12,000 |
| 10/14/09 | $14,000 |
| 10/21/09 | $22,000 |
| 10/29/09 | $40,000 |
| 11/12/09 | $40,000 |
| 11/16/09 | $20,500 |
| 11/25/09 | $35,000 |
| 12/15/09 | $35,000 |
| 12/31/09 | $15,000 |
| 1/15/10 | $43,000 |
| 3/12/10 | $100,000 |
| 8/16/10 | $25,000 |
| 8/23/10 | $33,000 |
| 8/26/10 | $61,000 |
| 10/29/10 | $6,500 |
| 6/17/11 | $15,000 |
| 6/24/11 | $5,000 |
| **Total:** | **$693,644** |

The transfers made between August 3, 2009 and September 30, 2009 were made via check – Check Nos. 1271, 1282, 1312, 1348 and 1361, respectively – as were the transfers made between October 9, 2009 and January 15, 2010 – Check Nos. 1370, 1374, 1400, 1435, 1459, 1465, 1499, 1517, 1566 and 1580, respectively.  The remainder of the Holmes Hollister Transfers were made via wire transfer.

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the Holmes Hollister Transfers, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the Holmes Hollister Transfers, (iii) that Holmes Hollister, its principals (Douglas Q. Holmes and John B. Hollister), or any other party provided reasonably equivalent value to Revstone in exchange for the Holmes Hollister Transfers, or (iv) that Revstone otherwise had any obligation to make the Holmes Hollister Transfers.

In fact, the available information indicates that:

- The transfer of $30,000 made on July 14, 2009 was identified as an "investment" in Holmes Hollister.  I have not located anything indicating that Revstone held any type of investment in Holmes Hollister at any time.
- The transfer of $100,000 made on March 12, 2010 was for use as "working capital" by Holmes Hollister.  I have not located anything indicating that Revstone had any obligation to provide Holmes Hollister with working capital.
- The transfers made between August 16, 2010 and August 26, 2010, totaling $119,000, and the transfers made between June 17, 2011 and June 24, 2011, totaling $20,000, were identified as "consulting" or other expenses.  I have not located anything indicating that Holmes Hollister provided services or anything else of reasonably equivalent value to Revstone in exchange for these transfers, or incurred expenses in the amounts of these transfers that were attributable to Revstone.  Moreover, at the times of these transfers, Douglas Holmes served as the trustee of the Children's Trusts.

Based on the foregoing, it is my opinion that (i) the Holmes Hollister Transfers were made to Holmes Hollister between July 14, 2009 and June 24, 2011, (ii) Revstone did not receive reasonably equivalent value in exchange for the Holmes Hollister Transfers, (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Holmes Hollister Transfers were made, and (iv) the Holmes Hollister Transfers were made for the benefit of the Children's Trusts as described above.  The Trustee is entitled to recover the principal amount of the Holmes Hollister Transfers plus prejudgment interest at the federal judgment rate from the date of each of the Holmes Hollister Transfers.[15]

## MW UNIVERSAL TRANSFERS

According to Revstone's books and records, a total of $1,668,160.64 of Revstone's funds was transferred (the "MW Universal Transfers") to MW Universal, or to third parties to satisfy the obligations of MW Universal or its subsidiary, MW Monroe Plastics, Inc. ("MW Monroe").  The MW Universal Transfers were made between February 2009 and December 2010 via check and wire transfers from the Fifth Third Account as follows:

| Transfer Date | Transfer Amount |
| --- | --- |
| 2/24/09 | $8,662.97 |
| 4/8/09 | $50,000 |
| 4/16/09 | $42,814.22 |
| 4/30/09 | $10,053 |
| 5/1/09 | $299,000 |

---

[15] The Holmes Hollister Transfers are the subject of the Twelfth Claim for Relief in the Hofmeister Adversary Proceeding.  The Holmes Hollister Transfers also are the subject of the First Claim for Relief in the Holmes Hollister Adversary Proceeding.

| 5/15/09 | $41,017.92 |
|---|---|
| 5/29/09 | $40,111.60 |
| 6/22/09 | $10,000 |
| 7/2/09 | $113,000 |
| 11/3/09 | $82,228.78 |
| 11/4/09 | $20,000 |
| 2/3/10 | $8,250 |
| 2/9/10 | $30,000 |
| 3/4/10 | $5,000 |
| 3/29/10 | $256,750 |
| 6/3/10 | $26,684 |
| 8/13/10 | $30,000 |
| 8/16/10 | $103,200 |
| 8/17/10 | $33,500 |
| 8/25/10 | $11,000 |
| 9/23/10 | $300 |
| 10/15/10 | $11,800 |
| 11/1/10 | $334,000 |
| 11/5/10 | $6,000 |
| 12/17/10 | $94,788.15 |
| **Total:** | **$1,668,160.64** |

The transfers made on February 24, 2009 and April 8, 2009 were made to MW Universal via Check Nos. 1009 and 1096, respectively. The remainder of the MW Universal Transfers were made via wire transfer.

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the MW Universal Transfers, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the MW Universal Transfers, (iii) that Revstone owed any debt to any recipient or beneficiary of the MW Universal Transfers at the time of the MW Universal Transfers, or (iv) that Revstone otherwise had any obligation to make the MW Universal Transfers.

In fact, the available information indicates that:

- The transfers made on April 16, 2009 and April 30, 2009, totaling $52,857.22, were made to the law firm of Fiege Nawrocki LLP for legal services provided to MW Universal.
- The transfer of $41,017.92 on May 15, 2009 was made to Travelers Insurance Company to satisfy an insurance payment owed by MW Universal.
- The transfers made on May 29, 2009 and November 3, 2009, totaling $122,340.38, were made to MW Universal in connection with an ICON note or other obligation. Specifically, MW Universal entered into a Master Lease Agreement with IEMC Corp. on September 14,

2007, which was subsequently assigned to ICON Leasing Fund Eleven, LLC as identified in the Second Amendment and Restated Schedule 1 to the Master Lease Agreement.

- The transfers made on February 9, 2010, June 3, 2010 and December 17, 2010, totaling $151,472.15, were made to NL Ventures VI, LP.  According to the documents produced by the defendants in the Adversary Proceedings, these transfers were made to satisfy (i) obligations owed by MW Monroe pursuant to a lease agreement between MW Monroe (as lessee) and NL Ventures VI Universal, LLC (as lessor), (ii) obligations owed by MW Universal as the guarantor of MW Monroe's obligations under that lease agreement, and (iii) obligations owed by both MW Universal and MW Monroe pursuant to a June 4, 2010 settlement agreement between MW Universal, MW Monroe and NL Ventures VI Universal, LLC.

- The transfer of $256,750 on March 29, 2010 was made to MW Universal to satisfy a pension debt obligation owed by one of MW Universal's subsidiaries.

- The transfer of $103,200 on August 16, 2010 was made to MW Universal on account of an obligation of Baker Metal.  As previously discussed, Baker Metal was ultimately owned by Children's Trusts.

- The transfer of $11,800 on October 15, 2010 was made to provide working capital to MW Universal.  Revstone had no obligation to provide working capital to MW Universal, and received no benefit from this transfer.

MW Universal was wholly owned by AMI, which was wholly owned by the Children's Trusts. Hofmeister was the Chairman of MW Universal and the President of AMI.  Hofmeister also was the trustee of the Children's Trusts at the time of the MW Universal Transfers made between February 24, 2009 and June 3, 2010.

Based on the foregoing, it is my opinion that (i) the MW Universal Transfers were made between February 24, 2009 and December 17, 2010, (ii) Revstone did not receive reasonably equivalent value in exchange for the MW Universal Transfers, (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the MW Universal Transfers were made, and (iv) the MW Universal Transfers were made for the benefit of MW Universal, AMI and the Children's Trusts.  The Trustee is entitled to recover the principal amount of the MW Universal Transfers plus prejudgment interest at the federal judgment rate from the date of each of the MW Universal Transfers.[16]

## JMP TRANSFER

According to Revstone's books and records, a total of $1,900,000 of Revstone's funds was transferred (the "JMP Transfer") to JMP Industries, Inc. ("JMP") on September 30, 2010.  The JMP Transfer was made via wire transfer from the Fifth Third Account.

---

[16] The MW Universal Transfers are the subject of the Thirteenth Claim for Relief in the Hofmeister Adversary Proceeding.

The JMP Transfer was made pursuant to an agreement to restructure $10,000,000 of obligations owed to JMP by Palm Plastics Holdings, LLC ("Palm Holdings"). Palm Holdings was owned 50% by JMP, and 50% by the Children's Trusts. Hofmeister executed the restructuring agreement on behalf of himself, as the Chief Executive Officer of Palm Holdings, as the Chief Executive Officer of its wholly owned subsidiary, Palm Plastics, Ltd. ("Palm Plastics"), and as the trustee of the Children's Trusts. Revstone did not hold any ownership interest in Palm Holdings or Palm Plastics.

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Palm Holdings, Palm Plastics, Hofmeister or the Children's Trusts repaid Revstone for the JMP Transfer, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises from Palm Holdings, Palm Plastics, Hofmeister or the Children's Trusts in exchange for the JMP Transfer, or (iii) that Revstone owed any debt to Palm Holdings, Palm Plastics, Hofmeister or the Children's Trusts at the time of the JMP Transfer.

Based on the foregoing, it is my opinion that (i) the JMP Transfer was made to JMP on September 30, 2010, (ii) neither Palm Holdings, Palm Plastics, Hofmeister nor the Children's Trusts provided Revstone with anything of value in exchange for the JMP Transfer, (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the JMP Transfer was made, and (iv) the JMP Transfer was made for the benefit of Palm Holdings and the Children's Trusts. Upon avoidance of the JMP Transfer, prejudgment interest on the JMP Transfer is recoverable at the federal judgment rate from the date of the JMP Transfer.[17]

## PALM HOLDINGS TRANSFERS

According to Revstone's books and records, a total of $1,000,000 of Revstone's funds was transferred (the "Palm Holdings Transfers") to Palm Holdings and its subsidiary, Palm Plastics. The Palm Holdings Transfers were made between April 2010 and May 2010 via check and wire transfers from the Fifth Third Account as follows:

| Transfer Date | Transfer Amount |
|---------------|-----------------|
| 4/16/10 | $400,000 |
| 4/28/10 | $200,000 |
| 4/28/10 | $200,000 |
| 5/11/10 | $200,000 |
| **Total:** | **$1,000,000** |

The transfers made on April 28, 2010 were made via Check Nos. 1814 and 1815, respectively. The remainder of the Palm Holdings Transfers were made via wire transfer.

---

[17] The JMP Transfer is the subject of the Fourteenth Claim for Relief in the Hofmeister Adversary Proceeding.

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the Palm Holdings Transfers, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the Palm Holdings Transfers, (iii) that Revstone owed any debt to any recipient or beneficiary of the Palm Holdings Transfers at the time of the Palm Holdings Transfers, or (iv) that Revstone otherwise had any obligation to make the Palm Holdings Transfers.

In fact, the documents produced by the defendants in the Adversary Proceedings indicate that (i) Palm Holdings was owned 50% by JMP and 50% by the Children's Trusts, (ii) Palm Plastics was a wholly owned subsidiary of Palm Holdings, and (iii) Hofmeister was the Chief Executive Officer of Palm Holdings, the Chief Executive Officer of Palm Plastics, and the trustee of the Children's Trusts. Revstone did not hold any ownership interest in Palm Holdings or Palm Plastics.

Based on the foregoing, it is my opinion that (i) the Palm Holdings Transfers were made to Palm Holdings or its subsidiary between April 16, 2010 and May 11, 2010, (ii) Revstone did not receive reasonably equivalent value in exchange for the Palm Holdings Transfers, (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Palm Holdings Transfers were made, and (iv) the Palm Holdings Transfers were made for the benefit of Palm Holdings and the Children's Trusts. The Trustee is entitled to recover the principal amount of the Palm Holdings Transfers plus prejudgment interest at the federal judgment rate from the date of each of the Palm Holdings Transfers.[18]

## HIGHLAND FARMS TRANSFERS

According to Revstone's books and records, a total of $87,500 of Revstone's funds was transferred (the "Highland Farms Transfers") to Highland Farms, LLC ("Highland Farms") between October 2009 and July 2011. The Highland Farms Transfers were made, respectively, via Check Nos. 1412, 1413, 2328 and 2337 from the Fifth Third Account, as follows:

| Transfer Date | Transfer Amount |
|---|---|
| 10/30/09 | $35,000 |
| 10/30/09 | $15,000 |
| 6/10/11 | $7,500 |
| 7/6/11 | $30,000 |
| **Total:** | **$87,500** |

---

[18] The Palm Holdings Transfers are the subject of the Fifteenth Claim for Relief in the Hofmeister Adversary Proceeding.

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the Highland Farms Transfers, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the Highland Farms Transfers, (iii) that Revstone owed any debt to any recipient or beneficiary of the Highland Farms Transfers at the time of the Highland Farms Transfers, or (iv) that Revstone otherwise had any obligation to make the Highland Farms Transfers.

In fact, the Highland Farms Transfers appear to be horse-related payments made to Highland Farms for the benefit of Highland Farms and Hofmeister, who was actively involved in the Thoroughbred racing industry and owned Highland Farms. Revstone, on the other hand, did not own any horses or conduct any horse-related business.

Based on the foregoing, it is my opinion that (i) the Highland Farms Transfers were made to Highland Farms, for Hofmeister's benefit, between October 30, 2009 and July 6, 2011, (ii) Revstone did not receive reasonably equivalent value in exchange for the Highland Farms Transfers, and (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Highland Farms Transfers were made. The Trustee is entitled to recover the principal amount of the Highland Farms Transfers plus prejudgment interest at the federal judgment rate from the date of each of the Highland Farms Transfers.[19]

## **TURNBERRY TRANSFER**

According to Revstone's books and records, a total of $100,000 of Revstone's funds was transferred (the "Turnberry Transfer") to Turnberry Investors, LLC ("Turnberry") on September 24, 2010. The Turnberry Transfer was made via wire transfer from the Fifth Third Account.

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the Turnberry Transfer, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the Turnberry Transfer, or (iii) that Revstone otherwise received anything of value in exchange for the Turnberry Transfer.

In fact, the available information indicates that the Turnberry Transfer was a real estate investment made for Hofmeister's benefit. Moreover, Revstone requested (but did not receive) a refund of the Turnberry Transfer in September 2011.

Based on the foregoing, it is my opinion that (i) the Turnberry Transfer was made to Turnberry, for Hofmeister's benefit, on September 24, 2010, (ii) Revstone did not receive reasonably equivalent value in exchange for the Turnberry Transfer, and (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Turnberry Transfer was made.

---

[19] The Highland Farms Transfers are the subject of the Sixteenth Claim for Relief in the Hofmeister Adversary Proceeding.

The Trustee is entitled to recover the principal amount of the Turnberry Transfer plus prejudgment interest at the federal judgment rate from the date of the Turnberry Transfer.[20]

## FASIG-TIPTON TRANSFER

According to Revstone's books and records, a total of $100,000 of Revstone's funds was transferred (the "Fasig-Tipton Transfer") to Fasig-Tipton Company, Inc. ("Fasig-Tipton") on March 17, 2010. The Fasig-Tipton Transfer was made via Check No. 1718 from the Fifth Third Account.

I have not located anything in Revstone's books and records, or in the materials produced by Fasig-Tipton, indicating (i) that Revstone was repaid for the Fasig-Tipton Transfer, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the Fasig-Tipton Transfer, (iii) that Revstone owed any debt to any recipient or beneficiary of the Fasig-Tipton Transfer at the time of the Fasig-Tipton Transfer, or (iv) that Revstone otherwise had any obligation to make the Fasig-Tipton Transfer.

In fact, the documents produced by Fasig-Tipton indicate that (i) the Fasig-Tipton Transfer was a payment to Fasig-Tipton for the purchase of two Thoroughbred horses at Fasig-Tipton's February 2010 Kentucky Winter Mixed Sale, (ii) Fasig-Tipton paid the sellers of the horses before it received the Fasig-Tipton Transfer from Revstone, and (iii) the registration and other certificates for both horses were received by Triton Farms, LLC ("Triton Farms"). As stated above, Revstone did not own any horses or conduct any horse-related business. Hofmeister and his family, however, were actively involved in the Thoroughbred racing industry.

Based on the foregoing, it is my opinion that (i) the Fasig-Tipton Transfer was made on or about March 17, 2010, as described above, (ii) Revstone did not receive reasonably equivalent value in exchange for the Fasig-Tipton Transfer, and (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Fasig-Tipton Transfer was made. The Trustee is entitled to recover the principal amount of the Fasig-Tipton Transfer plus prejudgment interest at the federal judgment rate from the date of the Fasig-Tipton Transfer.[21]

## TRITON/STONE SPIRE TRANSFERS

According to Revstone's books and records, a total of $147,350 of Revstone's funds was transferred (the "Triton/Stone Spire Transfers") to Triton Farms and Stone Spire III, LLC ("Stone Spire") between December 2009 and June 2011. The Triton/Stone Spire Transfers were made via check and wire transfers from the Fifth Third Account, as follows:

---

[20] The Turnberry Transfer is the subject of the Seventeenth Claim for Relief in the Hofmeister Adversary Proceeding. The Turnberry Transfer also is the subject of the First Claim for Relief in the Turnberry Adversary Proceeding.

[21] The Fasig-Tipton Transfer is the subject of the Eighteenth Claim for Relief in the Hofmeister Adversary Proceeding. The Fasig-Tipton Transfer also is the subject of the First Claim for Relief in the Fasig-Tipton Adversary Proceeding.

| Transfer Date | Transfer Amount |
|---|---|
| 12/24/09 | $15,000 |
| 9/9/10 | $1,350 |
| 5/9/11 | $16,000 |
| 6/15/11 | $15,000 |
| 6/17/11 | $100,000 |
| **Total:** | **$147,350** |

The transfers made on December 24, 2009, September 9, 2010 and June 17, 2011 were made to Triton Farms via Check Nos. 1554, 2093 and 2332, respectively. The remaining two transfers were made to Stone Spire via wire transfer.

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the Triton/Stone Spire Transfers, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the Triton/Stone Spire Transfers, (iii) that Revstone owed any debt to any recipient or beneficiary of the Triton/Stone Spire Transfers at the time of the Triton/Stone Spire Transfers, or (iv) that Revstone otherwise had any obligation to make the Triton/Stone Spire Transfers.

In fact, the information available indicates that (i) Stone Spire was owned by Triton Farms and Clemmens, and (ii) all of the Triton/Stone Spire Transfers were horse-related disbursements. Revstone did not own any horses or conduct any horse-related business. On the other hand, Hofmeister and his family, Clemmens, and their respective entities were actively involved in the Thoroughbred racing industry.

Based on the foregoing, it is my opinion that (i) the Triton/Stone Spire Transfers were made to Triton Farms and Stone Spire, as described above, between December 24, 2009 and June 17, 2011, (ii) Revstone did not receive reasonably equivalent value in exchange for the Triton/Stone Spire Transfers, and (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Triton/Stone Spire Transfers were made. The Trustee is entitled to recover the principal amount of the Triton/Stone Spire Transfers plus prejudgment interest at the federal judgment rate from the date of each of the Triton/Stone Spire Transfers.[22]

## JSM CLEVELAND TRANSFERS

---

[22] The Triton/Stone Spire Transfers are the subject of the Nineteenth Claim for Relief in the Hofmeister Adversary Proceeding. The transfers to Stone Spire also are discussed at ¶¶ 40-41 of the operative complaint in the Hofmeister Adversary Proceeding, and are included in the First Claim for Relief in the Clemmens Adversary Proceeding.

According to Revstone's books and records, a total of $621,353 of Revstone's funds was transferred (the "JSM Cleveland Transfers") to JSM Cleveland, Inc. ("JSM Cleveland") or for the benefit of JSM Cleveland.  The JSM Cleveland Transfers were made between April 2009 and December 2010 via check and wire transfers from the Fifth Third Account as follows:

| Transfer Date | Transfer Amount |
|---|---|
| 4/2/09 | $40,000 |
| 4/22/09 | $30,000 |
| 4/24/09 | $50,000 |
| 7/3/09 | $29,653 |
| 7/31/09 | $15,000 |
| 12/3/09 | $6,000 |
| 12/18/09 | $25,000 |
| 2/25/10 | $25,000 |
| 3/17/10 | $45,000 |
| 3/30/10 | $26,000 |
| 8/27/10 | $175,000 |
| 8/31/10 | $15,000 |
| 9/3/10 | $139,000 |
| 12/8/10 | $700 |
| **Total:** | **$621,353** |

The transfers on 7/31/09, 12/18/09, 3/17/10, 3/30/10 and 8/31/10 were made via Check Nos. 1234, 1520, 1710, 1744 and 2035, respectively, to JSM Enterprises, Inc. ("JSM Enterprises"). The remainder of the JSM Cleveland Transfers were made via wire transfer to JSM Cleveland and to a third party, Hahn Loeser & Parks, LLP.

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the JSM Cleveland Transfers, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the JSM Cleveland Transfers, (iii) that Revstone owed any debt to any recipient or beneficiary of the JSM Cleveland Transfers at the time of the JSM Cleveland Transfers, or (iv) that Revstone otherwise had any obligation to make the JSM Cleveland Transfers.

In fact, the available information indicates that:

• JSM Cleveland was wholly owned by JSM Enterprises.  JSM Enterprises was a holding company with no active operations, and with no active subsidiaries other than JSM Cleveland.

- The transfers made on April 2, 2009, February 25, 2010 and August 27, 2010, totaling $240,000, were made to the law firm of Hahn Loeser & Parks LLP in settlement of a lawsuit filed by Carl Tenk, et al. against JSM Cleveland.
- The transfer of $29,653 on July 3, 2009 was made to Batten Capital Secured Debt Fund 1 for the benefit of JSM Cleveland. Revstone had no obligation to make this payment.
- The transfers made on April 22, 2009 and April 24, 2009 were made to JSM Cleveland for its use as working capital.  Revstone had no obligation to provide JSM Cleveland with working capital.
- The transfer of $139,000 on September 3, 2010 was made to JSM Cleveland to use for accrued vacation pay.  Revstone had no obligation to make this payment.

Based on the foregoing, it is my opinion that (i) the JSM Cleveland Transfers were made to or for the benefit of JSM Cleveland between April 2, 2009 and December 8, 2010, (ii) Revstone did not receive reasonably equivalent value in exchange for the JSM Cleveland Transfers, and (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the JSM Cleveland Transfers were made.  The Trustee is entitled to recover the principal amount of the JSM Cleveland Transfers plus prejudgment interest at the federal judgment rate from the date of each of the JSM Cleveland Transfers.[23]

## MID-STATES TRANSFER

According to Revstone's books and records, a total of $100,000 of Revstone's funds was transferred (the "Mid-States Transfer") to Mid-States Capital, LLC ("Mid-States") on April 2, 2009.  The Mid-States Transfer was made via wire transfer from the Fifth Third Account.

I have not located anything in Revstone's books and records, or in the materials produced by Mid-States, indicating (i) that Revstone was repaid for the Mid-States Transfer, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the Mid-States Transfer, (iii) that Revstone owed any debt to any recipient or beneficiary of the Mid-States Transfer at the time of the Mid-States Transfer, or (iv) that Revstone otherwise had any obligation to make the Mid-States Transfer.

In fact, the documents produced by Mid-States indicate that the Mid-States Transfer was a payment for consulting services provided in connection with Fourslides, Inc. ("Fourslides").  Fourslides was owned by Arete. Arete was wholly owned by the Children's Trusts, and Hofmeister was the Chairman of Arete and Fourslides.

Based on the foregoing, it is my opinion that (i) the Mid-States Transfer was made on April 2, 2009 to Mid-States, (ii) Revstone did not receive reasonably equivalent value in exchange for the Mid-States Transfer, (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Mid-States Transfer was made, and (iv) the Mid-States Transfer was

---

[23] The JSM Cleveland Transfers are the subject of the Twentieth Claim for Relief in the Hofmeister Adversary Proceeding.

made for the benefit of Hofmeister and the Children's Trusts.  The Trustee is entitled to recover the principal amount of the Mid-States Transfer plus prejudgment interest at the federal judgment rate from the date of the Mid-States Transfer.[24]

## SIMON TRANSFERS

According to Revstone's books and records, a total of $195,000 of Revstone's funds was transferred (the "Simon Transfers") to the law firm of Simon PLC Attorneys & Counselors f/k/a Simon, Galasso & Frantz, PLC ("Simon PLC").  The Simon Transfers were made between April 2009 and October 2009 via wire transfers from the Fifth Third Account.  On October 27, 2009, Simon PLC repaid $17,195 of the Simon Tranfers to Revstone.  These transactions are depicted in the following chart:

| Transfer Date | Transfer Amount |
|---|---|
| 4/7/09 | $25,000 |
| 4/30/09 | $50,000 |
| 6/25/09 | $80,000 |
| 10/19/09 | $40,000 |
| 10/27/09 | $(17,195) |
| Total: | $177,805 |

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone received any repayment for the Simon Transfers other than the $17,195 received on October 27, 2009, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the Simon Transfers, (iii) that Revstone owed any debt to any recipient or beneficiary of the Simon Transfers at the time of the Simon Transfers, or (iv) that Revstone otherwise had any obligation to make the Simon Transfers.

In fact, the information available indicates that (i) Simon PLC was legal counsel to Hofmeister and the Family Trusts in connection with litigation filed on behalf of the Family Trusts, captioned as *George S. Hofmeister Family Trust, et al. v. FGH Industries, LLC, et al.*, Case No. 06-cv-13984 (DT) (E.D. Mich.), and related arbitration proceedings (the "FGH Litigation"), and (ii) the Simon Transfers were payments to Simon PLC for legal services provided and expenses incurred on behalf of Hofmeister and the Family Trusts in connection with the FGH Litigation. Revstone was not a party to the FGH Litigation, had no interest in the FGH Litigation, and was not represented by Simon PLC in connection with the FGH Litigation (or otherwise).

---

[24] The Mid-States Transfer is the subject of the Twenty-First Claim for Relief in the Hofmeister Adversary Proceeding.  The Mid-States Transfer also is the subject of the First Claim for Relief in the Mid-States Adversary Proceeding.

Based on the foregoing, it is my opinion that (i) the Simon Transfers were made to Simon PLC between April 7, 2009 and October 19, 2009, (ii) Revstone was repaid $17,195 of the Simon Transfers on October 27, 2009 but did not receive reasonably equivalent value in exchange for the remaining $177,805 of the Simon Transfers, (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Simon Transfers were made, and (iv) the Simon Transfers were made for the benefit of Hofmeister.  The Trustee is entitled to recover the principal amount of the Simon Transfers plus prejudgment interest at the federal judgment rate from the date of each of the Simon Transfers.[25]

## COMVEST TRANSFER

According to Revstone's books and records, a total of $300,000 of Revstone's funds was transferred (the "ComVest Transfer") to ComVest Capital, LLC ("ComVest") on July 3, 2009. The ComVest Transfer was made via wire transfer from the Fifth Third Account.

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the ComVest Transfer, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the ComVest Transfer, (iii) that Revstone owed any debt to any recipient or beneficiary of the ComVest Transfer at the time of the ComVest Transfer, or (iv) that Revstone otherwise had any obligation to make the ComVest Transfer.

In fact, the information available indicates that the ComVest Transfer was a payment on loan or other obligations owed to ComVest by W Forge Holdings, Inc. and MW Universal, as guarantor. As stated above, MW Universal is wholly owned by AMI, and AMI is wholly owned by the Children's Trusts. Revstone has no ownership interest in AMI, MW Universal, or W Forge Holdings, Inc.

Based on the foregoing, it is my opinion that (i) the ComVest Transfer was made on or about July 3, 2009, (ii) Revstone did not receive reasonably equivalent value in exchange for the ComVest Transfer, (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the ComVest Transfer was made, and (iv) the ComVest Transfer was made for the benefit of W Forge Holdings, Inc., MW Universal, AMI and the Children's Trusts.[26]

## AMI MORTON TRANSFERS

According to Revstone's books and records, a total of $180,000 of Revstone's funds was transferred (the "AMI Morton Transfers") to AMI Morton Fabrication, LLC ("AMI Morton").

---

[25] The Simon Transfers are the subject of the Twenty-Second Claim for Relief in the Hofmeister Adversary Proceeding.  The Simon Transfers also are the subject of the First Claim for Relief in the Simon Adversary Proceeding.

[26] The ComVest Transfer is the subject of the Twenty-Third Claim for Relief in the Hofmeister Adversary Proceeding.

The AMI Morton Transfers were made between February 2009 and April 2011 via checks issued from the Fifth Third Account, as follows:

| Transfer Date | Transfer Amount |
|---|---|
| 2/25/09 | $125,000 |
| 4/7/09 | $50,000 |
| 4/14/11 | $5,000 |
| **Total:** | **$180,000** |

The transfers identified above were made via Check Nos. 1006, 1078 and 2299, respectively.

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the AMI Morton Transfers, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the AMI Morton Transfers, (iii) that Revstone owed any debt to any recipient or beneficiary of the AMI Morton Transfers at the time of the AMI Morton Transfers, or (iv) that Revstone otherwise had any obligation to make the AMI Morton Transfers.

In fact, the information available indicates that AMI Morton was wholly owned by the Children's Trusts. Revstone had no ownership interest in AMI Morton.

Based on the foregoing, it is my opinion that (i) the AMI Morton Transfers were made between February 25, 2009 and April 14, 2011, (ii) Revstone did not receive reasonably equivalent value in exchange for the AMI Morton Transfers, (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the AMI Morton Transfers were made, and (iv) the AMI Morton Transfers were made to or for the benefit of AMI Morton and the Children's Trusts. The Trustee is entitled to recover the principal amount of the AMI Morton Transfers plus prejudgment interest at the federal judgment rate from the date of each of the AMI Morton Transfers.[27]

---

[27] The AMI Morton Transfers are the subject of the Twenty-Fourth Claim for Relief in the Hofmeister Adversary Proceeding. The AMI Morton Transfers also are the subject of the First Claim for Relief in the AMI Morton Adversary Proceeding.

## CLEMMENS TRANSFERS

According to Revstone's books and records, a total of $705,000 of Revstone's funds was transferred (the "Clemmens Transfers") to Clemmens between December 2009 and April 2011.[28] The Clemmens Transfers were made via wire transfers from the Fifth Third Account, as follows:

| Transfer Date | Transfer Amount |
|---|---|
| 12/22/09 | $20,000 |
| 2/24/10 | $5,000 |
| 3/3/10 | $5,000 |
| 3/5/10 | $50,000 |
| 3/12/10 | $150,000 |
| 3/26/10 | $200,000 |
| 8/13/10 | $100,000 |
| 8/27/10 | $100,000 |
| 10/15/10 | $10,000 |
| 11/5/10 | $50,000 |
| 4/12/11 | $15,000 |
| **Total:** | **$705,000** |

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the Clemmens Transfers, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the Clemmens Transfers, (iii) that Clemmens or any other party provided reasonably equivalent value to Revstone in exchange for the Clemmens Transfers, or (iv) that Revstone otherwise had any obligation to make the Clemmens Transfers.

In fact, the available information indicates that:

- The transfer of $20,000 made on December 22, 2009 was a horse-related expense. As stated above, Revstone did not own any horses or conduct any horse-related business. Hofmeister and Clemmens, on the other hand, were actively involved in the Thoroughbred racing industry.
- The transfers made on February 24, 2010 and March 3, 2010, totaling $10,000, were identified as "trustee" fees. At the times of these transfers, Clemmens was the trustee of the Family Trust.

---

[28] The Clemmens Transfers are discussed at ¶¶ 40-41 of the operative complaint in the Hofmeister Adversary Proceeding. The Clemmens Transfers, as well as the two transfers to Stone Spire discussed above, also are the subject of the First Claim for Relief in the Clemmens Adversary Proceeding. In the Clemmens Adversary Proceeding, the Trustee seeks to recover from Clemmens a total principal amount of $736,000.

- The transfers made between March 5, 2010 and August 27, 2010, totaling $150,000, were identified as "financing" fees.  I have not located anything indicating that Clemmens provided services or anything else of reasonably equivalent value to Revstone in exchange for these transfers.  Moreover, at the times of these transfers – in fact, at the time of all of the Clemmens Transfers – Clemmens was the trustee of the Family Trust.

Based on the foregoing, it is my opinion that (i) the Clemmens Transfers were made to Clemmens between December 22, 2009 and April 12, 2011, (ii) Revstone did not receive reasonably equivalent value in exchange for the Clemmens Transfers, and (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Clemmens Transfers were made.  The Trustee is entitled to recover the principal amount of the Clemmens Transfers plus prejudgment interest at the federal judgment rate from the date of each of the Clemmens Transfers.

<u>**SCOTT HOFMEISTER TRANSFERS**</u>

According to Revstone's books and records, a total of $133,986.67 of Revstone's funds was transferred (the "<u>Scott Transfers</u>") to Hofmeister's son, Scott R. Hofmeister ("<u>Scott Hofmeister</u>") between January 2012 and December 2012.  The Scott Transfers were made via wire transfer from Ceridian, Revstone's payroll processor, as follows:

| Transfer Date | Transfer Amount |
|---|---|
| 1/13/12 | $5,367.79 |
| 1/27/12 | $5,331.17 |
| 2/10/12 | $5,175.48 |
| 2/24/12 | $5,175.48 |
| 3/9/12 | $5,175.48 |
| 3/23/12 | $5,175.48 |
| 4/6/12 | $5,175.48 |
| 4/20/12 | $5,175.48 |
| 5/4/12 | $5,175.48 |
| 5/18/12 | $5,175.48 |
| 6/1/12 | $5,175.48 |
| 6/15/12 | $5,175.48 |
| 6/29/12 | $5,175.48 |
| 7/13/12 | $5,175.48 |
| 7/27/12 | $5,175.48 |
| 8/10/12 | $5,175.48 |
| 8/24/12 | $5,175.48 |
| 7/7/12 | $5,175.48 |
| 7/21/12 | $5,175.48 |
| 10/5/12 | $5,175.48 |

| Transfer Date | Transfer Amount |
|---|---|
| 10/19/12 | $5,175.48 |
| 11/2/12 | $5,175.48 |
| 11/16/12 | $5,145..91 |
| 11/30/12 | $4,877.40 |
| 12/14/12 | $4,877.40 |
| 12/18/12 | $4,877.40 |
| **Total:** | **$133,986.67** |

The Scott Transfers made between January 13, 2012 and November 30, 2012, totaling $124,231.87, were made prior to the Petition Date (the "Scott Pre-Petition Transfers"). The two remaining Scott Transfers, totaling $9,754.80, were made after the Petition Date, on December 14, 2012 and December 28, 2012 (the "Scott Post-Petition Transfers").

I have not located anything in Revstone's books and records, or in the materials produced by the defendants in the Adversary Proceedings, indicating (i) that Revstone was repaid for the Scott Transfers, (ii) that Revstone received any promissory notes, written agreements or verbal repayment promises in exchange for the Scott Transfers, (iii) that Scott Hofmeister or any other party provided reasonably equivalent value to Revstone in exchange for the Scott Transfers, or (iv) that Revstone otherwise had any obligation to make the Scott Transfers.

In fact, the available information indicates that, while the Scott Transfers purported to be wages paid to Scott Hofmeister as an employee of Revstone, the Scott Transfers were made when Scott Hofmeister was a full-time student at Harvard Business School.

Based on the foregoing, it is my opinion that (i) the Scott Transfers were made to Scott Hofmeister between January 13, 2012 and December 28, 2012, (ii) Revstone did not receive reasonably equivalent value in exchange for the Scott Pre-Petition Transfers, (iii) as discussed in the Insolvency Section of this Report, Revstone was insolvent at the time the Scott Pre-Petition Transfers were made, and (iv) the Scott Post-Petition Transfers were not made in the ordinary course of Revstone's business. The Trustee is entitled to recover the principal amount of the Scott Transfers plus prejudgment interest at the federal judgment rate from the date of each of the Scott Transfers.[29]

## NON-HEALTHCARE TRANSFERS

Between 2012 and June 2013, Hofmeister caused a total of at least $541,354.34 to be transferred (the "Non-Healthcare Transfers") from the Ascalon Health Plan. The Non-Healthcare Transfers were made using funds designated by the Debtor and its subsidiaries for the Ascalon Health Plan,

---

[29] The Scott Transfers are the subject of the First Claim for Relief in the Scott Hofmeister Adversary Proceeding.

but were made for purposes unrelated to the provision of healthcare benefits to plan participants or the administration of the Ascalon Health Plan. The Non-Healthcare Transfers were as follows:

| Transfer Date | Transfer Amount |
|---|---|
| 2012 | $139,005.45 |
| 2/15/13 | $1,600 |
| 2/20/13 | $700 |
| 3/22/13 | $11,000 |
| 4/10/13 | $20,000 |
| 5/1/13 | $250,000 |
| 5/21/13 | $60,000 |
| 6/14/13 | $32,000 |
| 1Q 2013 | $27,048.89 |
| **Total:** | **$541,354.34** |
| | |
| Repayment | $-13,300.00 |
| **Revised Total:** | **$528,054.34** |

All of the Non-Healthcare Transfers were made via check and/or wire transfer from Fifth Third Bank Account No. 7381299333 (the "9333 Account"), except for the two payroll transfers, which were made from Fifth Third Bank Account No. 7381299325 (the "9325 Account").

There is no evidence that any of the Non-Healthcare Transfers were made for purposes related to the Ascalon Health Plan.  In fact, the detail regarding the purpose of each of the Non-Healthcare Transfers (other than those related to the Hofmeister Farm Employees and the earliest Triton Farm payments (see below)) was provided to me through Hofmeister's counsel on a schedule titled "Non-Health related Payments, July 10, 2013" (the "Hofmeister Admission").   The Hofmeister Admission is attached as EXHIBIT IV to this Report.  In addition to the Hofmeister Admission, other available information indicates that:

- The transfers made on February 15, 2013 and February 20, 2013, totaling $2,300, were made to Triton Farms.  Triton Farms is a Hofmeister-related horse business unrelated to the provision of health benefits to plan participants.

- The transfer of $11,000 made on March 22, 2013 was identified as a transfer for Triton Farms-Harvard Tuition. As stated above, Triton Farms is a Hofmeister-related horse business, and Hofmeister's son (Scott Hofmeister) was a student at Harvard Business School. Hofmeister, himself, informed me on June 25, 2013 that this payment was made for his son's business school tuition.  There is no connection between Scott Hofmeister's MBA and the provision of health benefits to plan participants.

- The transfer of $20,000 on April 10, 2013 was made to SH Development.  SH Development was organized on or around October 12, 2012, and is member managed by Hofmeister and John Sekely, both of whom have a 50% membership interest.

- The transfer of $250,000 made on May 1, 2013 was allocated as follows, according to the Hofmeister Admission:
  - $100,000 was transferred to JMP.  JMP, a manufacturing entity, is a third party entity that engaged in various business transactions with Hofmeister and Children's Trust.
  - $65,578 was identified as UBS Interest.  UBS Securities, LLC is a financial firm, and was a litigant that asserted claims against Hofmeister and Revstone.
  - $25,000 was used for Ascalon's payroll obligations.
  - $5,000 was transferred to Bradley Racing Stable, LLC. Hofmeister was actively involved in the Thoroughbred racing industry.
  - $10,000 was transferred to Nelson Clemmens.  At the time of this transfer, Clemmens was the trustee of the Family Trust.
  - $20,000 was transferred to Bullock & Coffman.  Bullock & Coffman represented several Revstone and Spara, LLC entities in the Boston Financial Group, LLC litigation.
  - $5,000 was transferred to PPC Recovery.  I have not seen anything indicating that this transfer was made for purposes related to the Ascalon Health Plan
  - $19,075 was transferred to Lincoln National Life.  Hofmeister held a life insurance policy with Lincoln National Life.
  - $346.98 was used to make a payment on Hofmeister's US Air Mastercard.  I have not seen anything indicating that the payment was applied to charges related to the Ascalon Health Plan.

- A May 31, 2013 transfer was allocated in the Hofmeister Admission as follows:
  - $37,000 was used for Ascalon's payroll obligations.
  - $6,000 was transferred to Utica Leasing.  Utica Leasco, LLC is a manufacturing industry asset based lender.
  - $16,183.33 was transferred to DIDS, LLC ("DIDS") on account of interest payments related to notes which are a portion of the prohibited pension asset transactions that have been the subject of intense litigation in Revstone's bankruptcy proceedings.  DIDS was a limited liability company under Fairfield Castings, LLC set up with the stated purpose of facilitating sales financing.  DIDS' sole purpose was to facilitate loan agreements with Hofmeister entities which were funded by and sold to the Fairfield Plan.
  - $816.67 was transferred to the law firm of Steckbauer Weinhart Jaffe LLP ("SWJ").  There is no evidence that SWJ provided legal services or incurred expenses related to the Ascalon Health Plan.

- The Hofmeister Admission allocated the transfer on June 14, 2013 of $32,000 as follows:
  - $16,667 was used for Ascalon's payroll obligations.
  - $15,333 was transferred to Ohio State University. An analyst with Revstone was a candidate in the Ohio State University Masters of Business Administration program. Like the case of Hofmeister's son, there is no apparent connection between this MBA tuition and the Ascalon Health Plan.

- During 2012, transfers of $139,005.45 were for payroll and related employer paid benefits for persons employed by Hofmeister on his horse farm (the "Hofmeister Farm Employees"). The Hofmeister Farm Employees were included on the payroll of Health and Benefits Services, LLC, an Ascalon entity that provided administrative services to the Ascalon Health Plan. I understand it was an open secret that Hofmeister paid the Hofmeister Farm Employees with funds belonging to the Ascalon Health Plan, even though those individuals provided no services to the Ascalon Health Plan. Pam Lucas, Revstone's Director of Human Resources, identified the Hofmeister Farm Employees in an e-mail dated April 8, 2014. A copy of that email, along with payroll registers related to the Hofmeister Farm Employees, is attached as EXHIBIT V to this Report.

| Hofmeister Farm Employee Name | Amount Paid in 2012 |
|---|---|
| Florence, O. | $40,262.04 |
| Florence, S. | $45,180.31 |
| Florence, S. Jr. | $30,648.96 |
| Florence, W. | $6,573.64 |
| Ratliff, P. | $16,340.50 |
| **Total** | **$139,005.45** |

- The transfer of $27,048.89 consisted of several payments made over a 9 to 10 week period in early 2013 for payroll and benefits of the Hofmeister Farm Employees unrelated to the Ascalon Health Plan.

| Hofmeister Farm Employee Name | Amount Paid in 1Q 2013 |
|---|---|
| Florence, O. | $8,021.58 |
| Florence, S. | $8,393.92 |
| Florence, S. Jr. | $5,193.29 |
| Florence, W. | $1,575.87 |
| Ratliff, P. | $3,864.23 |
| **Total** | **$27,048.89** |

On July 15, 2013, Ascalon repaid $13,300 to the Ascalon Health Plan. To date, the remainder of the Non-Healthcare Transfers remain unpaid.

Hofmeister committed to repay the sum of $210,000 on or before December 31, 2013, without admitting liability for the Non-Healthcare Transfers. He failed to do so. I am not aware of any efforts taken by either Ascalon or the Children's Trusts to enforce Hofmeister's repayment commitment, or to repay or collect the remainder of the Non-Healthcare Transfers.

As part of my evaluation of the Non-Healthcare Transfers, I reviewed the activity in the 9333 Account from December 1, 2012 through June 30, 2013. All deposits from December 1, 2012 through June 30, 2013 were either employer health premium contributions made by the Debtor and its subsidiaries, or other health plan related inflows, such as rebates from healthcare providers and claim settlements. No "general" funds were deposited into the 9333 Account during this period. The 9325 Account was funded with transfers made from the 9333 Account.

In summary, Hofmeister caused the Non-Healthcare Transfers to be made for purposes unrelated to the Ascalon Health Plan. As a result of Hofmeister's improper Non-Healthcare Transfers, the Ascalon Health Plan had at least $528,054.34 fewer dollars available to it for the payment of employee medical claims, administrative costs and other legitimate expenses of the Ascalon Health Plan.

## Predicate Creditors

As of December 3, 2012, Revstone was indebted to many creditors. At least two of those creditors were owed amounts that have been outstanding since the beginning of 2009.

Revstone was obligated to the Commonwealth of Kentucky, Division of Unemployment Insurance, for unpaid unemployment insurance taxes for the first quarter of 2009 in an amount of $884.99. Records reflect that Revstone had 13 employees in Kentucky as of January 2009 for whom Revstone was obligated to pay unemployment insurance taxes and was at least partially delinquent in paying that obligation. That obligation remained unpaid as of the petition date.

As of December 3, 2012, Revstone was obligated for an employer contribution under the Indiana Employer Security Act for the first quarter of 2009 in the amount of $344.84. The Indiana Department of Workforce Development Collections Unit filed proof of claim No. 62 which includes this amount.

# James M. Lukenda, CIRA, CFF

## MANAGING DIRECTOR

Jim provides assistance to clients with troubled debt restructurings, mergers, acquisitions and dispositions, litigation and claims analysis, fraud investigations, and other financial consulting and bankruptcy assignments.

His experience spans numerous industries including heavy manufacturing, retailing, electronics, consumer products and distribution, construction and contracting, communications and publishing, real estate, and hospitality.



P 646-277-2207
F 508-445-0256
jlukenda@huronconsultinggroup.com

Jim's extensive experience includes:

**Financial Forensics**
- Analysis of a multimillion dollar construction contract and lost profits claim from a troubled state highway contract;
- Financial records disentanglement assignment to locate misappropriated funds;
- Analysis of inventory procedures and record keeping to explain product shortages and operating losses;
- Investigation of trading pattern velocity and investment portfolio mismanagement of a not-for-profit institution.

**Bankruptcy & Restructuring**
- Expert testimony on issues of business plans, liquidations, avoidance actions, substantive consolidation, and other reorganization and bankruptcy issues;
- Development and evaluation of strategic business plans on behalf of debtors and creditors including the evaluation of customer and product profitability, store and plant profitability, overhead structure, and industry viability;
- Analysis for providing expert testimony on business performance, lost profits, and claims for damages;
- Preparation of valuation reports including enterprise value and liquidation analyses;
- Negotiation and evaluation of out-of-court debt restructuring proposals;
- Implementation of "fresh start" accounting

**Representative engagements**
- American Community Newspapers – Secured Lenders
- Revstone Industries – DCRO
- Nortel Networks Inc. – Debtors
- Sherwin Alumina Company – Debtors
- Olympia & York – Committee of Tower B Bondholders
- Petrie Retail, Inc. – Equity Investors and DIP Lender
- Robert Maxwell Group – Joint Administrators
- WP Steel Ventures – Official Committee of Unsecured Creditors

**Education and certifications**
- BSBA, cum laude, Georgetown University School of Business Administration
- Certified Public Accountant (New Jersey and New York)
- Certified Insolvency and Restructuring Advisor
- Certified in Financial Forensics
- Instructor, AIRA coursework, Certified Insolvency and Restructuring Advisor and Certification in Distressed Business Valuation

**Professional associations**
- Association of Insolvency & Restructuring Advisors, Board of Directors (1992 to present), President (2002 to 2003), Chairman (2004 to 2005)
- INSOL International, Board of Directors (1999 to 2003)
- Association for Corporate Growth, New Jersey Chapter, Treasurer
- American Bankruptcy Institute, Member

© 2016 Huron Consulting Group. All rights reserved.
Proprietary & Confidential.
JMI HBA_CV_P 04.16



# James M. Lukenda, CIRA, CFF

## EXPERT TESTIMONY AND DEPOSITIONS

Matters of Accounting, Financial Analysis, Operations and Business Viability, and Solvency

**Testimony**

In re Sherwin Alumina Company,
LLC, et al. U.S. Bankruptcy Court,
Southern District of Texas
16-20012 (DRJ), January 13, 2016

In re The Great Atlantic & Pacific
Tea Company, Inc., et al.
U.S. Bankruptcy Court, Southern
District of New York
No. 10-24549 (RDD)
February 6, 2012

In the Matter of the Arbitration
Between Airline Pilots Association,
and United Airlines, Inc.
Board No. 2008-06
June 4, 2008

In re Pocket Communications, Inc.
and DCR PCS, Inc.
Adversary Proceeding No. 98-6223-
ESD.
U.S. Bankruptcy Court, District of
Maryland
No. 97-4105-ESD
May 4, 2000

In re PPI Enterprises (U.S.), Inc., &
Polly Peck Produce, Inc.
U.S. Bankruptcy Court, District of
Delaware, 96-539 (PJW)
November 18, 1998

David W. Allard, Jr., Trustee of De
Lorean Motor Company, Plaintiff, vs.
Arthur Andersen & Co., et al.
Supreme Court of the State of New
York County of New York -- Civil
Term -- Part: 11, March 3, 1998

In re Who's Who Worldwide
Registry, Inc.
U.S. Bankruptcy Court, Eastern
District of New York
894-81496-478
October 12, 1994

**Testimony, continued**

In re Maurice Bidermann
U.S. Bankruptcy Court, Southern
District of New York
93 B 43525 (JLG)
June 22, 1994

In re Estate of Bessie Setzer Frisch
Circuit Court, Fourth Judicial Circuit
In and for Duval County, Florida
May/June 1993

In re Capital Resources Corporation
U.S. Bankruptcy Court, District of
New Jersey
89-20620
March 20, 1990; December 18, 1990

Depositions

In re Energy Conversion Devices,
Inc., et al., U.S. Bankruptcy Court,
Eastern District of Michigan,
Southern Division, Adv. Proc. No.
13-04958 (TJT), October 20, 2014

In re Revstone Industries, LLC, et
al., U.S. Bankruptcy Court, District of
Delaware, No. 12-13262 (BLS)
September 12, 2013

In re Global Crossing Ltd., et al.
U.S. Bankruptcy Court, Southern
District of New York
No. 02-40188 (REG)
November 20, 2002

In re Pocket Communications, Inc.
and DCR PCS, Inc.
Adversary Proceeding No. 98-6223-
ESD.
U.S. Bankruptcy Court, District of
Maryland
No. 97-4105-ESD
March 15, 2000

**Depositions, continued**

In re PPI Enterprises (U.S.), Inc., &
Polly Peck Produce, Inc.
U.S. Bankruptcy Court District of
Delaware
96-539 (PJW)
May 15, 1998

In re Lomas Financial Corporation,
et al.
Lomas Financial Corporation, et al.
vs. CDC Servicing, Inc. vs. Nomas
Corporation
U.S. Bankruptcy Court, District of
Delaware
95-1235 (PJW)
September 11, 1997

McDevitt Machinery, Inc., Plaintiff vs.
Kobelco America Inc., et al.,
Defendants
United States District Court for the
District of New Hampshire
C.A. No. C-94-537-JRM
February 11, 1997

In re Buckhead America Corp., et al.
Buckhead America Corporation
vs.Reliance Capital Group, Inc. et al.
U.S. Bankruptcy Court, District of
Delaware
C.A. No. 93-392-SLR
June 19 and 22, 1995

In re Estate of Bessie Setzer Frisch
Circuit Court, Fourth Judicial Circuit
In and for Duval County, Florida
May/June 1993

In re Advanced Mining Systems,
Inc., et al.
U.S. Bankruptcy Court, Southern
District of New York
92 B 43471 (CB)
January 13, 1993

© 2016 Huron Consulting Group. All rights reserved.
Proprietary & Confidential.
JMI HBA_CV_P 04 16



# James M. Lukenda, CIRA, CFF

## PUBLICATIONS AND SPEAKING ENGAGEMENTS

### Publications

"Pension Plan Minefields for Distressed Auto Cos."
with L. Marcero, Law360, July 31, 2014

"Liquidation Basis of Accounting:  FASB Proposes
Guidance for a Topic for Which Little Has Been
Written" AIRA Journal, Volume 26, Number 3, 2012

"Accounting for Liabilities Subject to Compromise
when a Debtor is Discontinuing an Operation," AIRA
Journal, Volume 23, Number 5, December
2009/January 2010

"International Financial Reporting Standards: Hello
Accounting Convergence, Goodbye GAAP?,"
American Bankruptcy Institute Journal, Volume
XXVIII, No. 3, April 2009

2005 Bankruptcy Revisions, Implications for
Businesses and Financial Advisors, Edited by Grant
W. Newton, AIRA/AICPA, Contributing Author.

"Fair Value Measurement:  Proposed FASB
Standard to Bring Greater Consistency to Financial
Reporting," American Bankruptcy Institute Journal,
Volume XXIV, No. 8, October 2005

Statement of Financial Accounting Standards No.
150, American Bankruptcy Institute Journal, Volume
XXII, No. 8, October 2003

"Underfunded Pension Plans: A Looming Crisis for
Corporate America?," American Bankruptcy Institute
Journal, Volume XXII, No. 1, February 2003

"New Rules for Business Combinations, Intangibles
and Goodwill Accounting," American Bankruptcy
Institute Journal, December/January 2002

"New Accounting Standards for Distinguishing
Between Liabilities and Equity May Be Close at
Hand," American Bankruptcy Institute Journal,
Volume XIX, No. 8, October 2000

### Recent Speaking Engagements

"Asset Sales/Labor & Employment" American
Bankruptcy Institute, 34th Annual Spring Conference,
April 16, 2106

Recent Developments in Distressed Debt,
Restructurings & Workouts 2016 Webinar, Practising
Law Institute, January 2016

"Liquidating Trusts" VALCON 2015, Emerging
Valuation Issues in Bankruptcy and Beyond, February
25, 2015

"Presenting Experts in Bankruptcy Litigation" American
Bankruptcy Institute, Northeast 21st Annual Bankruptcy
Conference, July 18-19, 2014

"Revenue and Cash Flow Forecasting" American
Bankruptcy Institute, VALCON 2014, February 26,
2014

Recent Developments in Distressed Debt,
Restructurings & Workouts 2014 Webinar, Practising
Law Institute, January 2014

"Law Firm Bankruptcies" American Bankruptcy Institute
New York City Bankruptcy Conference, May 16, 2013

Bankruptcy Litigation Roundtable, Institutional Investor
Educational Foundation, March 14, 2012

Previous speaking engagements include:

Association of Insolvency and Restructuring Advisors
The Bank Lending and Law Institutes
The Beard Group Distressed Investing Conference
Financial Management Association – New York City
Foundation for Accounting Education
The George Washington University National Law
Center Government Contracts Program
New Jersey State Society of CPAs

© 2016 Huron Consulting Group. All rights reserved.
Proprietary & Confidential.
JMI HHA_CV_P 04 16



**APPENDIX B**
**Revstone Industries, LLC**
**List of Adversary Parties**

The Adversary Proceedings pending in the United States Bankruptcy Court for the District of Delaware are as follows:

1.   Caruso v. George S. Hofmeister, et al., Adv. No. 14-50033 (the "Hofmeister Adversary Proceeding")

2.   Caruso v. Radco Construction Services, Inc., Adv. No. 14-50651 (the "Radco Adversary Proceeding")

3.   Caruso v. Penn Ridge Farms, LLC, Adv. No. 14-50652 (the "Penn Ridge Adversary Proceeding")

4.   Caruso v. Holmes, Hollister & Co., Adv. No. 14-50654 (the "Holmes Hollister Adversary Proceeding")

5.   Caruso v. Turnberry Investors, LLC, Adv. No. 14-50656 (the "Turnberry Adversary Proceeding")

6.   Caruso v. Simon PLC Attorneys & Counselors, Adv. No. 14-50975 (the "Simon Adversary Proceeding")

7.   Caruso v. Scott Hofmeister, et al., Adv. No. 14-50977 (the "Scott Hofmeister Adversary Proceeding")

8.   Caruso v. Mid-States Capital, LLC, Adv. No. 14-50978 (the "Mid-States Adversary Proceeding")

9.   Caruso v. AMI Morton Fabrication, LLC, Adv. No. 14-50979 (the "AMI Morton Adversary Proceeding")

10.  Caruso v. Patrick Smith, Adv. No. 14-50980 (the "Smith Adversary Proceeding")

11.  Caruso v. GSL of Ill., LLC, Adv. No. 14-50981 (the "GSL Adversary Proceeding")

12.  Caruso v. Ascalon Enterprises, LLC, et al., Adv. No. 14-50031 (the "Healthcare Plan Adversary Proceeding")

13.  Caruso v. Homer W. McClarty, et al., Adv. No. 14-50986 (the "Pension Plan Adversary Proceeding")


The Adversary Proceedings pending in the United States Bankruptcy Court for the Eastern District of Kentucky are as follows:

1.   Caruso v. Keeneland Association, Inc., et al., Adv. No. 15-05123 (the "Keeneland Adversary Proceeding")

2.   Caruso v. Fasig-Tipton Company, Inc., Adv. No. 15-05094 (the "Fasig-Tipton Adversary Proceeding")

3.   Caruso v. Nelson E. Clemmens, Adv. No. 16-05016 (the "Clemmens Adversary Proceeding")

DE

APPENDIX C
Revstone Industries, LLC
Documents and Other Information Relevant to Expert's Analysis and Conclusions
Page 1 of 2

1.  Revstone Industries, LLC shared database of electronically stored information, including emails
2.  2008 and 2009 Consolidated Financial Statements and Independent Auditors Reports for Cerion (c/k/a Revstone Transportation, LLC) and Revstone Transportation, LLC, respectively
3.  2010 and 2011 Consolidated Financial Statements and Independent Auditors Reports for Revstone Industries, LLC and subsidiaries
4.  2009 and 2012 Consolidated Financial Statements of AarKel Manufacturing Inc.
5.  2010 Consolidated Financial Statements with Supplementary Information, T Cast Holdings, LLC and Subsidiary
6.  2011 Consolidated Financial Statements of Fairfield Castings, LLC DBA Revstone Castings Fairfield, LLC and Metavation Castings Fairfield, LLC
7.  2011 Revstone Quality of Earnings Reports
8.  2012 Revstone Industries Dec 2012 Stmts v11 (2) (internal)
9.  2012 US Tool Financials (internal)
10. 2012 Greenwood Forgings Plex 2010-2012 (internal)
11. 2012 Eptec, S.A. de C.V. (A wholly owned subsidiary of Metavation Mexico, LLC) Financial Statements for the Years Ended December 31, 2012 and 2011
12. 2008-2012 appraisals for Revstone and subsidiaries
13. Revstone Industries, LLC 2008 and 2009 Federal Tax Returns
14. Other tax related documents from the shared database of electronically stored information
15. Pension Plan documents: 2007-2011 Form 5500 filings; 2011 Determination Letter; 2006 IRS Review; 2009-2012 Schedule of Assets
16. Fifth Third Bank Account: bank statements, copies of canceled checks, wire transfer confirmations, internal wire log, and intercompany transactions
17. Other cash records, bank statements, and receipt or disbursement support for Revstone and subsidiaries
18. Transactional records for Revstone and its subsidiaries, including purchase and sale agreements, and refinancing agreements.
19. Revstone and its operating subsidiaries' credit agreements, promissory notes and guarantees
20. Organizational records of Revstone and its subsidiaries
21. Organizational records of George Hofmeister's related entities
22. Organizational records of the Children's Trusts and their related entities
23. Organizational records of the Family Trust and its related entities
24. Revstone and its subsidiaries' pre-petition Board of Managers meeting minutes
25. Miscellaneous county real estate records
26. Ceridian payroll reports
27. Documents produced and/or filed by Revstone or the Trustee in the Adversary Proceedings and related proceedings

DE

APPENDIX C

Revstone Industries, LLC

Documents and Other Information Relevant to Expert's Analysis and Conclusions

Page 2 of 2

28. Documents produced and/or filed by the Defendants in the Adversary Proceedings and the defendants in related proceedings

29. Documents filed by Revstone or other parties in Revstone's and TPOP's chapter 11 cases

30. Documents produced by Mellen, Smith & Pivoz, PLC

31. Revstone's creditor files and proofs of claim.

32. Preliminary Report Regarding Solvency at December 31, 2010 prepared by AlixPartners for settlement purposes

33. Health and Benefits Services payroll registers and payroll analysis: Year ended 12/26/12, Year-to-date 07/12/13

34. Fifth Third Bank statements – Ascalon Accounts #9333, #3909, #9325, December 2012 to June 2013

35. Health and Benefits Services Analysis of bank statements between 12/06/12 – 07/15/13

36. Letter from S. Toll to L. Davis Jones on 09/16/13 re: $210,000 repayment for non-healthcare related transfers

37. Letter from L. Davis Jones to S. Toll re: Farmhand payroll transfers from Healthcare accounts

38. Fifth Third wire transfer detail re: $13,300 repayment to Ascalon on 07/15/13 for Triton Farms

39. Non-Health related payments analysis provided by George Hofmeister and Sheldon Toll on 07/10/13 for transfers made on 04/10/13, 05/01/13, 05/31/13 and 06/14/13

40. Letter from J. DiDonato to S. Toll re: $11,000 Triton Farms transfer made on 03/22/13

41. April 8, 2014 e-mail from Pam Lucas re: Hofmeister Farm Employees.

42. Accounting for Business Combinations (ASC 805)

43. Automotive industry research and Capital IQ reports

## 2008 REVSTONE INDUSTRIES ORGANIZATIONAL CHART



EXHIBIT I
Page 1 of 5

A090

EXHIBIT I
Page 2 of 5



2009 REVSTONE INDUSTRIES ORGANIZATIONAL CHART

EXHIBIT I
Page 3 of 5

EXHIBIT I
Page 3 of 5

2010 REVSTONE INDUSTRIES ORGANIZATIONAL CHART



EXHIBIT I
Page 4 of 5

EXHIBIT I
Page 4 of 5

2011 REVSTONE INDUSTRIES ORGANIZATIONAL CHART



EXHIBIT I
Page 5 of 5

EXHIBIT I
Page 5 of 5

2012 REVSTONE INDUSTRIES, LLC ORGANIZATIONAL CHART



**EXHIBIT II**
**Revstone Industries, LLC**
**Summary of Guarantees**

| Borrower, Seller, Lessee, Maker | Guarantor(s) | Lender/Lessor | Date of Origination | Year | Agreement Face Amount |
|---|---|---|---|---|---|
| Arete, Inc.; Fourslides, Inc. | Revstone Industries, LLC (through judgment) | Rex E Schlaybaugh Jr; Oxford Investment Group | Note: 2/20/2009 Judgment: 5/5/2011 | 2009 | $ 102,731.00 |
| Arete, Inc.; Fourslides, Inc. | Revstone Industries, LLC (through judgment) | Selwyn Isakow; Oxford Investment Group | Note: 2/20/2009 Judgment: 5/5/2011 | 2009 | $ 34,244.00 |
| Arete, Inc.; Fourslides, Inc. | Revstone Industries, LLC (through judgment) | Oxford Investment Group Inc. | SPA: 2/20/2009 Judgment: 5/4/2011 | 2009 | $ 733,391.00 |
| Arete, Inc; Fourslides, Inc. | Revstone Industries, LLC (through judgment) | Hilsel Investment Company Limited Partnership; Oxford Investment Group Inc. | Note: 2/20/2009 Judgment: 5/5/2011 | 2009 | $ 547,898.00 |
| Chicago Miniature Lighting, LLC | Revstone Plastics, LLC; Revstone Industries, LLC | BHC Interim Funding III, L.P. | Original:12/22/2009 Amended: multiple | 2009 | $ 8,500,000.00 |
| JJ Holdings, LLC d/b/a Seville Centrifugal Bronze | Revstone Industries, LLC; George Hofmeister; Megan G. Hofmeister Irrevocable Trust, Scott R. Hofmeister Irrevocable Trust; Jamie S. Hofmeister Irrevocable Trust | J.J. Mould Plastic USA, Inc. | Note: 4/30/2009 Guaranty: 4/13/2011 | 2009 | $ 2,000,000.00 |
| Power-Tec Manufacturing, LLC | Revstone Industries, LLC; Spara LLC | SG Equipment Finance U.S.A. Corp. | Lease: 12/1/09 Guarantee: 7/20/2011 | 2009 | $ 1,152,256.20 |
| Revstone Industries Burlington, Inc. | Revstone Industries, Inc | Royal Bank of Canada | 6/12/2009 | 2009 | $ 14,760,333.00 |
| Revstone Plastics, LLC | Revstone Industries, LLC | Hillsdale Hourly Pension Plan | 3/30/2009 | 2009 | $ 2,000,000.00 |
| Revstone Plastics, LLC | Revstone Industries, LLC | Hillsdale Salaried Pension Plan | 3/30/2009 | 2009 | $ 1,500,000.00 |
| Timco, LLC (acquired entity Jan. 2011); assigned to Brownstone Plastics, LLC | Revstone Industries, LLC (acquired entity Jan. 2011) | Hillsdale Hourly Pension Plan & Hillsdale Salaried Pension Plan | 2/18/2009 | 2009 | $ 1,000,000.00 |
| AarKel Tool & Die, Inc., Talhin/T Corporation | Revstone Wallaceburg Canada Inc.; Revstone Plastics Canada Inc.; Talhin/T Sales Corp.; Revstone Industries, LLC | Callidus Capital Corporation | 7/27/2010 | 2010 | $ 11,630,426.27 |
| Cerion MPI, LLC | Revstone Industries, LLC; George Hofmeister | ICON Leasing Fund Eleven, LLC | 1/1/2010 | 2010 | $ 10,014,835.09 |
| Contech Castings, LLC | Revstone Industries, LLC; Revstone Transportation, LLC | National Machine Tool Financial Corporation | 11/17/2010 | 2010 | $ 479,378.00 |
| Contech Castings, LLC | Revstone Industries, LLC; Revstone Transportation, LLC | National Machine Tool Financial Corporation | 11/17/2010 | 2010 | $ 958,756.00 |
| Contech Forgings, LLC | Omega TG, LLC; Revstone Industries, LLC; George Hofmeister | Bridgeport Capital Funding, LLC | 7/28/2010 | 2010 | Factor |
| Contech Forgings, LLC | Revstone Industries, LLC; Omega TG, LLC | Boston Finance Group, LLC | 9/30/2010 | 2010 | $ 4,000,000.00 |
| Eptec, S.A. de C.V. (as "Seller") and Metavation Mexico, LLC / Metavation Mexico II. LLC (as "Shareholders" of "Seller") | Revstone Industries, LLC; | GE CF Mexico, S.A. de C.V. | Loan: 5/25/2010 Guarantee: 10/31/12 | 2010 | $ 7,427,000.00 |
| Eptec, S.A. de C.V. (as "Seller") and Metavation Mexico, LLC / Metavation Mexico II. LLC (as "Shareholders" of "Seller") | Revstone Industries, LLC; | GE CF Mexico, S.A. de C.V. | Loan: 5/25/2010 Guarantee: 10/31/12 | 2010 | $ 9,381,000.00 |
| Metavation, LLC | Revstone Industries, LLC | Grede, LLC - Supplier Guarantee | 6/14/2010 | 2010 | Various |
| MW Crow, Inc.; MW General, Inc., Revstone Aero LLC | Revstone Industries, LLC; Contech Castings, LLC | BHC Interim Funding III, L.P. | 4/8/2010 | 2010 | $ 7,000,000.00 |
| Palm Plastics Holdings, LLC | Revstone Industries, LLC | JMP Industries, LLC; JJ Mould Plastics | 7/22/2010 | 2010 | $ 10,000,000.00 |
| Power-Tec Manufacturing, LLC (both Michigan & Delaware); Arrow Racing, LLC; Arrow Racing Engines, LLC; Saleen, LLC | Revstone Industries, Revstone Transportation, LLC (Cerio) | Boston Finance Group, LLC | Loan: 4/23/2010 Guaranty: May 2010 | 2010 | $ 6,000,000.00 |
| Power-Tec Manufacturing, LLC; Arrow Racings, LLC; Saleen, LLC | Revstone Industries, LLC | Michael F. Shields | 4/14/2010 | 2010 | $ 2,700,000.00 |
| Power-Tec Manufacturing, LLC; Arrow Racings, LLC; Saleen, LLC | Revstone Industries, LLC | Michael F. Shields | 4/14/2010 | 2010 | $ 3,000,000.00 |
| Power-Tec Manufacturing, LLC; RPM-Tec, LLC | Revstone Industries, LLC; Power-Tec Manufacturing, LLC (DE); RPM-Tec, LLC; George Hofmeister | Loeb Financial Services, LLC | 6/18/2010 | 2010 | $ 1,851,851.04 |

**EXHIBIT II**
**Revstone Industries, LLC**
**Summary of Guarantees**

| Borrower, Seller, Lessee, Maker | Guarantor(s) | Lender/Lessor | Date of Origination | Year | Agreement Face Amount | |
|---|---|---|---|---|---|---|
| Revstone Industries Burlington, Inc. | Revstone Industries, Inc | DSM Leasing, Ltd. | 7/1/2010 | 2010 | $ | 807,193.36 |
| Revstone Industries Burlington, Inc.; Revstone Industries. LLC; Hofmeister Trusts | Revstone Industries, Inc.; Megan G. Hofmeister Irrevocable Trust, Scott R. Hofmeister Irrevocable Trust; Jamie S. Hofmeister Irrevocable Trust | Bendix Commercial Vehicle Systems, LLC & Ford Motor Company, Inc. & Royal Bank of Canada GM and TRW | 4th Amended Note: 11/18/2010 Accommodation: 1/1/2011 | 2010 | $ | 3,500,000.00 |
| Revstone Industries, LLC and George S. Hofmeister | N/A | Loeb Financial Services, LLC | 4/9/2010 | 2010 | $ | 521,516.17 |
| Revstone Industries, LLC and George S. Hofmeister | N/A | Loeb Financial Services. LLC | 4/9/2010 | 2010 | $ | 407,773.72 |
| RPM Towing, LLC (Valley) | Revstone Industries, LLC; RPM-Tec. LLC; George Hofmeister | Loeb Financial Services, LLC | 6/17/2010 | 2010 | $ | 1,604,937.36 |
| RPM-Tec, LLC | Revstone Industries, LLC | Cabot II-TX11,01, L.P. - Lease Guaranty | 10/?/2010 | 2010 | Various | |
| Spara Tactical Mobility, LLC | Revstone Industries, LLC | Capital lease | | 2010 | $ | 251,289.00 |
| Spara Tactical Mobility, LLC | George Hofmeister; T Cast Holdings, LLC; Revstone Industries, LLC | Loeb Financial Services, LLC | Lease: 7/19/10 | 2010 | Multiple Leases | |
| T Cast Holdings, LLC | Revstone Industries, LLC; Contech Castings, LLC | Boston Finance Group, LLC | Loan: 3/3/2010 Guaranty: May 2010 | 2010 | $ | 4,000,000.00 |
| US Tool & Engineering, LLC (Lansing Tool) | Revstone Industries, LLC; Omega TG, LLC | Boston Finance Group, LLC | Loan: 3/26/2010 Guaranty: May 2010 | 2010 | $ | 4,000,000.00 |
| Self-Insurance (Health Care) | Revstone Industries, LLC | Per Audit | | 2010 | Various | |
| Environmental Liabilities | Revstone Industries, LLC | Per Audit | | 2010 | $ | 1,040,000.00 |
| Chicago Miniature Lighting, LLC | Revstone Lighting, LLC; Revstone Industries, LLC | Convest Capital, LLC | Loan: 12/30/2011 Guarantee: 4/4/12 | 2011 | $ | 13,000,000.00 |
| Contech Castings, LLC | Revstone Industries, LLC | Nexteer | 12/22/2011 | 2011 | $ | 841,359.49 |
| Contech Castings, LLC | Revstone Industries, LLC; Revstone Transportation, LLC | Forum Financial Services | Lease: 1/20/11 Guaranty: 1/28/11 & 1/29/11 | 2011 | $ | 98,000.00 |
| Contech Castings, LLC; Revstone Industries, LLC; Revstone Transportation, LLC | | First Call Temporary Services, LLC | 10/13/2011 | 2011 | $ | 20,000.00 |
| Spara, LLC | Revstone Industries, LLC | Boston Finance Group, LLC | 6/21/2011 | 2011 | $ | 6,000,000.00 |
| Contech Forgings, LLC | Revstone Industries, LLC | Sapa Group, LLC - Supplier Guarantee | 10/31/2011 | 2011 | Various | |
| Spara Tactical Mobility, LLC | Revstone Industries, LLC | Capital lease | | 2011 | $ | 368,320.00 |
| Environmental Liabilities | Revstone Industries, LLC | Per Audit | | 2011 | $ | 285,000.00 |
| Contech Castings, LLC; MPI, LLC; Metavation, LLC; MW Texas Die Castings, Inc. | REVSTONE INDUSTRIES, LLC, REVSTONE TRANSPORTATION, LLC, CONTECH CASTINGS REAL ESTATE HOLDINGS, LLC, CERION MPI GRAND AVENUE, LLC, CERION MPI KNOX LLC, CERION MPI GOLF ROAD, LLC, CERION MPI MEXICO LLC, METAVATION MEXICO, LLC, METAVATION MEXICO II, LLC, METAVATION TRAVERSE CITY, LLC, METAVATION TRAVERSE CITY BUILDING THREE, LLC, METAVATION VASSAR, LLC, EPTEC, S.A. DE C.V., MPI INTERNATIONAL MEXICO. S. DE R.L. DE C.V. AND MIDS, LLC | ICON Agent, LLC | 2/3/2012 | 2012 | $ | 8,000,000.00 |

**EXHIBIT II**
Revstone Industries, LLC
Summary of Guarantees

| Borrower, Seller, Lessee, Maker | Guarantor(s) | Lender/Lessor | Date of Origination | Year | Agreement Face Amount |
|---|---|---|---|---|---|
| Contech Castings, LLC; MPI, LLC; Metavation, LLC; MW Texas Die Castings, Inc. | REVSTONE INDUSTRIES, LLC, REVSTONE TRANSPORTATION, LLC, CONTECH CASTINGS REAL ESTATE HOLDINGS, LLC, CERION MPI GRAND AVENUE LLC, CERION MPI KNOX LLC, CERION MPI GOLF ROAD, LLC, CERION MPI MEXICO LLC, METAVATION MEXICO, LLC, METAVATION MEXICO II, LLC, METAVATION TRAVERSE CITY, LLC, METAVATION TRAVERSE CITY BUILDING THREE, LLC, METAVATION VASSAR, LLC, EPTEC, S.A. DE C.V., MPI INTERNATIONAL MEXICO, S. DE R.L. DE C.V. AND MIDS, LLC | ICON Agent, LLC | 2/3/2012 | 2012 | $  37,000,000.00 |
| Metavation, LLC | Revstone Industries, LLC | General Motors, LLC - Participation Agreement | 2/3/2012 | 2012 | Various |

| Total Revstone Guarantees | $  188,519,488.70 |
|---|---|

**EXHIBIT III - Examples of Communications Stressing the Critical Liquidity Issues at Revstone and Related Entities**

| Date | From | To | Subject Entity | Subject |
|---|---|---|---|---|
| 8/7/2009 | M. Irvin | D. Lifton, T. Hoefer, S. Toll, T. Myers, R. Berg | Revstone, Timco | DNE: Purchase Agreement Confirmation |
| 8/10/2009 | J. Zolkin | G. Hofmeister, T. Saeli, D. Lifton, D. Smith, J. Mirro, J. Rathbun | Revstone | Victory Park concerns |
| 8/13/2009 | G. Hofmeister | S. Toll, D. Smith, D. Lifton, S. Alkhafaji | Revstone | Jordanian financing |
| 9/16/2009 | M. Carr | T. Saeli, D. Smith, J. White, T. Hoefer, G. Hofmeister, D. Lifton, W. Aspatore | ADS, Revstone Plastics | ADS - Liquidity issues and financing |
| 6/8/2010 | Sheldon Toll | G, Hofmeister, D. Smith | Timco | Timco Shut Down |
| 6/26/2010 | J. White | G. Hofmeister | Timco, ChML, Omega | Omega - Cash from ChML account |
| 9/27/2010 | J. White | G. Hofmeister, D. Lifton, T. Hoefer, T. Brady | Aarkel, Timco, Talhin/T | Weekly Update - Week Ending 9/26 |
| 11/5/2010 | G. Hofmeister | D. Smith | Revstone, Timco | Timco - Revstone at risk |
| 11/23/2010 | J. White | D. Lifton, T. Hoefer, M. Pente, D. Smith | Revstone | Conversation with Access Capital |
| 11/28/2010 | Scott Ulnick | Roger Goldbaum | Revstone and Ducker Worldwide | Revised Schedule Ducker Worldwide Payments from Revstone |
| 11/29/2010 | R. Goldbaum | G. Hofmeister, T. Brady, D. Lifton, P. Peterson , D. Smith, J. Wilber, M. Carr | Revstone, AarKel, Timco, ChML | Weekly Update - WE Nov 20th |
| 5/18/2011 | G. Hofmeister | J. Gray, J. Stipp | Revstone | Letter from G. Hofmeister |
| 5/30/2011 | D. Smith | A. Smith, B. Smith, D. Lifton, J. O'Toole, J. Brown, M. Mitchell, M. Putz, M. Carr | Valley, Power Tec | Cash Forecasts |
| 6/3/2011 | D. Lifton | D. Smith | Revstone | $ - Personal payments to D. Lifton |
| 6/7/2011 | J. Stipp | C. Saurini, R. Smith, S. Szatkowski, T. Herzinger, J. Brown, A. Washeleski, D. Smith, G. Hofmeister, D. Lifton | Revstone | Cash needs today |
| 7/9/2012 | J. Ackley | D. Smith, L. Jacobs | Revstone | Oakland County Treasurer - unpaid tax |
| 11/30/2012 | J. Ackley | G. Hofmeister, D. Smith | Revstone | Don Lifton/Airplane |

**From:**                          George Hofmeister <ghofmeister@revstone.com>
**Sent:**                          Friday, August 07, 2009 9:43 PM
**To:**                            Daniel V. Smith
**Subject:**                       Fwd: Fw: DNE: RE: Purchase Agreement Confirmation

**Importance:**                    Low


He is selling me a business that is toast.   george

---------- Forwarded message ----------
From: **Don Lifton** <dlifton@timcollc.com>
Date: Fri, Aug 7, 2009 at 5:39 PM
Subject: Fw: DNE: RE: Purchase Agreement Confirmation
To: ghofl23@aol.com


Lets discuss tomorrow OK?

----- Original Message -----
From: Irvin, Mike <mike.irvin@mbandt.com>
To: Don Lifton
Cc: Tim.Hoefer@Revstone.us <Tim.Hoefer@Revstone.us>; lawtoll@comcast.net <lawtoll@comcast.net>; Myers, Tom <tom.myers@mbandt.com>; Robert Berg <rberg@sgfattorneys.com>
Sent: Fri Aug 07 17:01:29 2009
Subject: DNE: RE: Purchase Agreement Confirmation

Don,


MB&T is disappointed!


It has been over 2 months since we reached a verbal agreement to sell the building at 18703 Dix Toledo and the Timco loan obligations.  Since that time we have exchanged various drafts of a purchase agreement.  However, it is still not signed.  During this time you have made no loans payments to the Bank nor have you paid any lease payments on the building.  This is simply not acceptable.  If you are sincerely interested in closing the transaction we are still prepared to do so.  However time is of the essence.


If by 8/14/09 we are unable to execute an acceptable purchase agreement, or past due lease and loan payments are not received, we'll assume that your position has changed and other collection strategies will be pursued by the bank.


I look forward to hearing from you



Michael W. Irvin

Senior Vice President

1                              A099

Special Assets Group

Monroe Bank & Trust

Phone: (734) 240-5066

Fax: (734) 384-8234

www.MBandT.com

Privileged/Confidential information may be in this message.  If you are not the addressee indicated in this message you may not make use of, or rely in any way on, this information.  In such case, you should destroy this message and kindly notify the sender by reply email.

_____

From: Don Lifton [mailto:dlifton@liftonlaw.com]
Sent: Thursday, May 28, 2009 3:53 PM
To: Irvin, Mike
Cc: Tim.Hoefer@Revstone.us; lawtoll@comcast.net
Subject: RE: Purchase Agreement Confirmation

Mike,

This will confirm our understanding regarding Revstone's purchase of Timco's obligations to MB&T as well as the real estate located at 18703 Dix Toledo, Brownstown, MI.  The characterization in your email to me of May 27th is correct, so long as it is understood that the transaction encompasses all of Timco's obligations to MB&T.

I will pass along to Revstone your suggestions as to a closing date and get back to you on timing by this coming Tuesday.

Regards,

Don

_____

From: Irvin, Mike [mailto:mike.irvin@mbandt.com]
Sent: Wednesday, May 27, 2009 12:49 PM
To: Don Lifton
Cc: Myers, Tom
Subject: DNE: Purchase Agreement Confirmation

Don,

This e-mail is intended to summarize and confirm our understanding regarding the purchase of Timco's notes to MB&T and the Real Estate located at 18703 Dix Toledo, Brownstown, MI by Revstone Industries.

The Notes and Real Estate will be purchased for a combined total of $3,075,000.  No allocation of the total price of $3,075,000 between the two asset categories was discussed.  The purchase will be documented in writing as soon as practical feasible.

Although not specifically discussed MB&T would like to close on the purchase no later than 6/26/09.

Please reply to this e-mail to confirm the price of the purchase and provide your thoughts regarding the timing of documenting the transaction and closing.

Thank you

Mike


Michael W. Irvin

Senior Vice President

Special Assets Group

Monroe Bank & Trust

Phone: (734) 240-5066

Fax: (734) 384-8234

www.MBandT.com


Privileged/Confidential information may be in this message.  If you are not the addressee indicated in this message you may not make use of, or rely in any way on, this information.  In such case, you should destroy this message and kindly notify the sender by reply email.

--
George

| **From:** | Jeff Zolkin <jzolkin@ghsecurities.com> |
| **Sent:** | Monday, August 10, 2009 10:15 PM |
| **To:** | ghofmeister@revstone.com; tsaeli@revstone.com; Donald B. Lifton; Daniel V. Smith |
| **Cc:** | Justin Mirro; Rathbun, Joel |

**Importance:**        Low

Guys,

Victory Park passed. They had a number of concerns, but the primary one was how Revstone would fund the cash burn associated with Intermet.  Victory Park had no interest in having to potentially liquidate assets and the visibility to the main business was a challenge for them.

Jeff Zolkin
Managing Director
Investment Banking

*Global Hunter Securities, LLC*
*660 Newport Center Drive, Suite 950*
*Newport Beach, CA 92660*
*Direct (949)335-0684*
*Fax (949)719-9004*
*Cell (310)780-8388*
*jzolkin@ghsecurities.com*

Global Hunter Securities archives and reviews outgoing and incoming email. It may be produced at the request of regulators or in connection with civil litigation. Global Hunter Securities accepts no liability for any errors or omissions arising as a result of transmission. Use by any other than the intended recipients is prohibited. This is neither an offer nor a solicitation of an offer to buy or sell securities. Information upon which this material is based was obtained from sources believed to be reliable, but has not been verified. Additional information is available upon request.

| | |
|---|---|
| **From:** | George Hofmeister <ghofmeister@revstone.com> |
| **Sent:** | Thursday, August 13, 2009 11:25 PM |
| **To:** | Sheldon S. Toll |
| **Cc:** | Daniel V. Smith; dlifton@liftonlaw.com; Shakir Alkhafaji |
| **Subject:** | Re: Revstone Industries, LLC - Jordanian finacning |
| | |
| **Importance:** | Low |

Sheldon:  Please keep pushing as fast as you can.  We need the funding.    george

On Thu, Aug 13, 2009 at 1:09 PM, Sheldon S. Toll <lawtoll@comcast.net> wrote:

Today, at approximately noon, I had about a 20 minute telephone conversation with Haitham Hawashin, the Jordanian group's lawyer.  He was very cordial and the call was very constructive.  He asked for, and I have sent him, the Company's operating agreement.  He suggested that the Operating Agreement might have to be amended to provide for the issuance of the Convertible Preferred Interests, and I told him this would not be a problem.  He asked for an explanation of "interests" versus "shares," which I provided.  He also said he had some drafting changes to the documents which he would send me by tomorrow morning.  He said these changes involved some beefing up of the antidilution language, acceleration of the note in event of default, and possible need for a subscription agreement in event of conversion.


Law Office of Sheldon S. Toll PLLC

2000 Town Center, Suite 2100

Southfield, MI 48075

lawtoll@comcast.net

Tel   248-351-5480

Fax  248-204-0672

Cell 248-797-9111




--
George

| | |
|---|---|
| From: | Michael Carr <mcarr@revstone.com> |
| Sent: | Wednesday, September 16, 2009 11:31 PM |
| To: | tsaeli@revstone.com; Daniel Vincent Smith; jwhite@revstone.com; Timothy Hoefer - Revstone.com |
| Cc: | George Hofmeister; dlifton@revstone.com; waspatore@revstone.com |
| Subject: | ADS |
| Importance: | Low |

Tom,

What financial statements can we provide to Lincoln as part of their validation we could finance a $5m transaction?  We intend to utilize a Chinese partner, however, we need our own FI statements to demonstrate an ability to pay in 2 months.  I understand we have liquidity issues, but do we have a set of statements isolated to Plastics that might give Lincoln and ADS comfort?

Mikk

"The only easy day was yesterday"

A104

| | |
|---|---|
| **⌐ ͻm:** | Sheldon S. Toll <lawtoll@comcast.net> |
| **.ıt:** | Tuesday, June 08, 2010 5:14 PM |
| **To:** | George Hofmeister; Dan Smith |
| **Subject:** | FW: Timco Shut Down |

**Importance:**    Low

f.y.i.

Law Office of Sheldon S. Toll PLLC
2000 Town Center, Suite 2100
Southfield, MI 48075
lawtoll@comcast.net
Tel   248-351-5480
Fax  248-204-0672
Cell 248-797-9111

**From:** Jonathan White [mailto:jwhite@revstone.com]
**Sent:** Tuesday, June 08, 2010 1:10 PM
**To:** dlifton@revstone.com; 'Timothy Hoefer - Revstone.com'; 'Sheldon S. Toll'; 'Dennis Johnson'
**Subject:** Timco Shut Down

   of right now, the Sheriff has shut down Timco's production. We "negotiated" for an extension to
1pm, at which time we were required to give up 100% of all monies due. No lesser amount was
acceptable. Insufficient money in Timco's account to pay the cost. No money forthcoming from other
sources. Twp attorney at lunch and not returning Sheldon's calls. MB&T is aware of the situation; is
working to see if they are willing to come up with the $. The timing is such that it will be late today best
case, if at all.

JW

Note: To view our e-mail disclaimer please click here.

**From:** George Hofmeister <ghofmeister@revstone.com>
**nt:** Saturday, June 26, 2010 6:25 PM
**To:** Daniel V. Smith
**Subject:** Fwd: FW: Omega

**Importance:** Low

---------- Forwarded message ----------
From: **Jonathan White** <whitejonathant@gmail.com>
Date: Sat, Jun 26, 2010 at 2:16 PM
Subject: FW: Omega
To: George Hofmeister <ghofmeister@revstone.com>

George,
Don and I spoke again on this. In our conversation, he emphasized that he
told BHC he was going to take cash from ChML's bank account at less than
$300k to Timco. He said the DiPaolo said neither Yes nor No, but just sat
there - i.e., interpreted as a "don't ask/don't tell" policy. If so, not
wholly inappropriate.

re of a calculated decision than I first interpreted. I am planning to
ask for the wire Monday morning unless instructed otherwise.

JW

-----Original Message-----
From: Donald Lifton [mailto:dlifton@revstone.com]
Sent: Saturday, June 26, 2010 11:39 AM
To: Jonathan T. White
Subject: Re: Omega

Jonathan. Let's be clear. I NEVER play games EVER. I reviewed CHML, and
Revstone with David. I also told him we would sell Omega as it is a
difficult non strategic business. I further told him that we would probably
liquidate Talhint and move Aarkel into our Transportation Group. I clearly
stated we were not asking for money to support Timco on an interim basis but
would cash on hand and would not ask for a loan from BH to support a
possible acquisition of Timco
And woul use under 300k of ChML cash on hand to support Timco

If Timco re to fail it could create serious problems for the entire
enterprise

ur mission is not to guard CHML at the expense of the enterprise

Do not have ANY contact with Brooks Houghton on this subject without
clearance from me as I do not want to draw attention to Timco and create a

1

A106

problem where one does not exist. We cannot convey any internal disagreement and draw unwarrented scrutiny

ᴾ S. We advise. This is a business not a democracy. Only George votes.

Please call me at home
Don
-----Original Message-----
From: "Jonathan White" <whitejonathant@gmail.com>
Date: Sat, 26 Jun 2010 11:11:28
To: <dlifton@revstone.com>
Subject: RE: Omega

Don -
I am taking a look at the Omega materials today.  We should be able to complete it this weekend.

With regards to the ChML-to-Timco funding, please know that I don't for a moment think that you would do this without GH's support.  Rather, my concern is that we are taking liberties with our relationship with BHC. Without their clear, unequivocal knowledge and blessing, we are taking a big risk by going against our loan agreement.  This is true even if the cash goes back in a week later - and experience says that there is a good chance it won't.  It appeared from our phone conversation that BHC did not give their blessing on this.  Without it, I vote to not transfer the funds.

I also know that without the transfer, Timco will not make it - not a good ꜱice for any of us to make.  But we have more to risk here than Timco.

JW

-----Original Message-----
From: Donald Lifton [mailto:dlifton@revstone.com]
Sent: Friday, June 25, 2010 4:09 PM
To: Geo Hofmeister; Jonathan T. White
Subject: Omega

Joel sending email expressing interest in Omega. I've spoken to Sam and alerted him.
Stay tuned

--
George

2

| | |
|---|---|
| **From:** | Mail. Revstone <ghofmeister@revstone.com> |
| **Sent:** | Monday, September 27, 2010 12:56 PM |
| **To:** | Dan Smith |
| **Subject:** | Fwd: Weekly Update - Week Ending 9/26 |

**Importance:** Low

FYI.

Sent from my iPhone

Begin forwarded message:

> **From:** "Jonathan White" <jwhite@revstone.com>
> **Date:** September 27, 2010 8:45:26 AM EDT
> **To:** "'George Hofmeister'" <ghofmeister@revstone.com>, <dlifton@revstone.com>, "'Timothy Hoefer - Revstone.com'" <thoefer@revstone.com>, <tbrady@revstone.com>
> **Subject: Weekly Update - Week Ending 9/26**
>
> Aarkel
>
> - Had follow up meeting with John Spearn on accelerating on the financing of AarKel. Will be kicking off next week (9/27). Looks to be useful approach, as Sched 1s are still nervous about tooling, automotive, and the freshness of the turnaround.
>
> - Exercised purchase option on the CIT IM press currently located in Plant #2 (outside of Receivership). Attempting to get downstroke from liquidator ASAP – this week as possible.
>
> - If the above press scheme cannot be done this week, problem with Callidus as we owe them $80k back this week (borrowed previously for Timco).
>
> Talhin/T
>
> - Tac Fast lease situation making slow progress. Now slightly more hopeful. Want to resolve this week.
>
> Timco
>
> - Hit the wall with cash at Timco. Took money back from AarKel that had been given them as pre-paid tooling from ChML back in July (and directed to Timco). **A band-aid and no near term solution known to bridge the ongoing gap.**
>
> - Received Term Sheet from Access Capital – first blush is 16% on a $3M line advanced on A/R – that's only c.$800k on today's A/R but will increase.
>
> - Close on debt purchase promised to MB&T for this week. **No known cash available to do this**.

1

- Lear & Chrysler still expecting equity close at end of September as well.

  Aero

- August reporting package sent to BHC. Okay there.

- Need to get Hank to Ft Worth so that we can get him to NYC. This is the one point that seems to be agitating BHC; otherwise they are cooperative.

  China

- ChML/Boao – Feasibility Study in 2nd draft. Further documentation in progress.

- Magnesium – awaiting redraft of LOI from other parties.

- HK company to be put together quickly; Shanghai hold co will take longer.

- Scheduled trip to cover (i) Showpla DD and negotiation, and (ii) ChML/Boao JV for week of 10/10.

  ARRK Deals

- Showpla LOI drafted and being reviewed by China counsel. **Will get out this week (with GH signature)**.

- Received Zimmerman material – reviewing.

  Schedule:  Chicago this week unless something comes up.

  Regards,

  JW

  Note: To view our e-mail disclaimer please click here.

| | |
|---|---|
| ˉom: | George Hofmeister <ghofmeister@revstone.com> |
| ıt: | Friday, November 05, 2010 12:10 PM |
| To: | Daniel V. Smith |
| Subject: | Fwd: Timco |

**Importance:**        Low

We need one of our guys working this full time to get a sale done.  as Revstone will get slammed by this bad company.    george

---------- Forwarded message ----------
From: **George Hofmeister** <ghofmeister@revstone.com>
Date: Sun, Oct 31, 2010 at 6:49 PM
Subject: Re: Timco
To: Jonathan White <jwhite@revstone.com>
Cc: dlifton@revstone.com, Timothy A Hoefer <thoefer@revstone.com>, "Daniel V. Smith" <dsmith@revstone.com>

What happened to the sale or JV process to China or others.  I can't believe we are putting Revstone at risk over this piece of .    george

On Sun, Oct 31, 2010 at 4:54 PM, Jonathan White <jwhite@revstone.com> wrote:

George,

Need to alert you to the situation at Timco.  Here's the background:

• Additional funding made available via asset sales, loans from AarKel, ChML, etc. – as well as tremendous effort in Brownstown – has allowed Timco to transfer the Lear business, support ramp ups, etc. through Q3 and October.  At this point, however, all existing cash sources have been tapped, and as previously predicted, the need for capital remains significant – Timco's current cash balance is negative $2k.

• Financing efforts are underway, but will not produce cash until the end of November.  JW is working on an A/R+Inv line with Access Capital; DS is working on a lease for the M&E.  We have approached Greenfield Commercial Credit for factoring, but the soonest they can have cash is 3 weeks (and at a significant premium cost).

• Additional cash infusions from AarKel are not being supported by Callidus (they are already $250k in from tober).  ChML is tight on cash as they are launching new programs.

1

• Next week's funding needs, including payroll, film to make production, and other (and only absolute) necessities are $204k. To get Timco to the end of November, an advance of additional $600k will be needed (for the weeks beginning 11/8 – 11/29: 150k, 120k, 100k, 120k). Minimal cash advances will be needed in December. This is after ⁻ʳretching all vendors and moving into December all tooling builds, Metavation payments, Property Taxes due, Credit ⸴rd past due, etc. Payroll gets drawn on Tuesday. This is net of anticipated receipts. Financing should be sufficient to repay advances and cover the MB&T requirements.


• Without a cash infusion next week, Timco will shut down. Core customers/products that will be impacted include:

    o GM – CTS Cadillac – Lansing

    o Roller Ball & Cage (via Lear) - GMT 900 – All GM pick-up trucks – Oshawa Canada, Ford, Nissan, Chrysler, Honda – Canada

    o Nissan – Smyrna, Tennessee (via Tacle, Fischer)

    o Ford Mustang – Flat Rock

    o Ford D258 Taurus – Chicago (via JCIM)

    o Chrysler LD/LX" 300C" and Charger – Guelph, Ontario (via CpK)

    o VW 324 (via Faurecia)

All Detroit 3, plus international OEMs will be impacted, as well as key Tier 1s. In addition, a shutdown will impact the position of Metavation's loan to Timco.


We should quickly discuss plans on funding and/or how to organize a wind down.


Regards,

JW



Note: To view our e-mail disclaimer please click here.



--
George

--
George

| | |
|---|---|
| **From:** | Jonathan White <jwhite@revstone.com> |
| **at:** | Tuesday, November 23, 2010 8:58 PM |
| **To:** | dlifton@revstone.com; Timothy A Hoefer; Mike Pente; Daniel V. Smith |
| **Subject:** | Conversation with Access Capital |

**Importance:**     Low

Gents,

Just now got off the phone with them. Still trying to close next week. Here are a few items for us to focus on:

(1) Equipment financing status. I've got messages into **Dan** on this –this looks to be the critical path item (need an inter-creditor agreement). The $900k FLV is disappointing, given a 2008 value of $1,090 in a now stronger market. We need every dollar.

(2) Funding gap. Mike P and I ran through this earlier today – per the cash forecast, we are $1,000k short on cash needs, which we can bridge by:

| | | |
|---|---|---|
| a. | Defer cap ex until we have room: | $100k |
| b. | Save some dough for mtg pmt vs. rent: | $40k |
| c. | Defer Metavation pmts (like now): | $100k |
| d. | Overage of 900 from Access + 500 from M&E on MB&T 1.2M refi: | $200k |
| e. | Make AarKel suffer financing on Tool builds: | $260k |

This leaves a 300K airball. Access is not willing to go beyond formula to bridge this. **Anyone** have ideas?

(3) Sept/Oct performance issues. Access' concern is that we had lots of cost overruns on transfer of business that "we knew" – what should we expect as unforeseen nonrecurring expenses when we start of entirely new programs? Which also begs the question, please tell me November will be better? Daren will be reaching out directly to **Tim and Mike** on this.

(4) They need a copy of the Purchase Order for the Inventory and Equipment that Timco acquired from Talhin/T. **Mike** – can you dig this up and forward it to me?

(5)                                            REDACTED

(6) **Mike P and I** are reviewing getting the Canadian A/Rs included in the borrowing base – we will get there.

(7) I asked Access to review the concept of customers depositing into "Access Capital" accounts vs. our accounts. They said they would consider, but it sounded like they were placating me and will require this.

Best,
JW

1

| | |
|---|---|
| **om:** | Scott Ulnick <scottu@ducker.com> |
| **.nt:** | Sunday, November 28, 2010 9:12 PM |
| **To:** | Goldbaum, Roger |
| **Subject:** | RE: Revised Schedule Ducker Worldwide Payments from Revstone |

**Importance:**    Low

Roger
Let's talk tomorrow AM. I have a meeting with the Ducker Partners at noon tomorrow and will present your ask. Six weeks is likely too big an ask so let's discuss alternatives. Thx

**From:** Goldbaum, Roger [mailto:rgoldbaum@mpi-int.com]
**Sent:** Sunday, November 28, 2010 1:01 PM
**To:** Scott Ulnick
**Subject:** FW: Revised Schedule Ducker Worldwide Payments from Revstone

Good Afternoon Scott, We have made good progress since our last conversation paying off your balance. As of today cash has again grown extremely tight and will not get better till the middle of January. Sorry to have to do this but I would like to ask if we can suspend payments till the middle of January. In the middle of January we would restart paying off the debt at the same pace as we had been paying before. Please let me know if you are ok with this request.

Roger

**m:** Scott Ulnick [mailto:scottu@ducker.com]
**_nt:** Monday, October 04, 2010 11:33 AM
**To:** Goldbaum, Roger
**Cc:** ghofmeister@revstone.com; Dan Smith; Mary K Cubera; Nick Limb; Cindy Shannon
**Subject:** Revised Schedule Ducker Worldwide Payments from Revstone

Roger
Attached please find the revised schedule; signed by George Hofmeister. Please notice we resume payments starting this Friday 10/8. Thx

M. Scott Ulnick / Ducker Worldwide / O: 248 530 2016 / M: 248 875 5501 / scottu@ducker.com / www.ducker.com

1

| | |
|---|---|
| From: | Goldbaum, Roger <rgoldbaum@mpi-int.com> |
| ent: | Monday, November 29, 2010 5:59 AM |
| To: | George Hofmeister; Tom Brady; dlifton@revstone.com |
| Cc: | ppeterson@revstone.com; Dan Smith; Jay Wilber; Mikk |
| Subject: | RE: Weekly Update WE Nov 20th |
| Attachments: | image002.gif |
| | |
| Importance: | Low |

Good Morning George/Tom/Don, We had a short but busy week. As days go by I get more and more concerned that we will not make it through the Christmas slowdown. I have already sent a note to Ducker asking them to delay our payments to them. Their response was positive (see attached).

Additionally attached is our latest cash-flow forecast and it doesn't look good. Not sure how we make end of December beginning of January. Please remember that as of today we already have over $9 million in past due payables. Other ideas to save cash are as follows: Do we have to pay Huron anymore? Can we avoid anymore cap-ex till the end of the year? Do we really want to pay our Christmas bonus?

| Week Ending | Week 0 12-Nov | Week 1 19-Nov | Week 2 26-Nov | Week 3 3-Dec | Week 4 10-Dec | Week 5 17-Dec | Week 6 24-Dec | Week 7 31-Dec | Week 8 7-Jan |
|---|---|---|---|---|---|---|---|---|---|
| WEEKLY REVENUE FORECAST | 7,178 | 7,317 | 5,948 | 6,811 | 7,193 | 7,196 | 1,497 | 450 | 5,991 |
| TOTAL CASH INFLOWS | 5,919 | 6,186 | 7,578 | 7,118 | 6,655 | 4,236 | 6,117 | 8,395 | 7,347 |
| | | | | | | | | | |
| Material Disbursements | 3,569 | 4,269 | 3,747 | 3,814 | 3,736 | 4,189 | 3,536 | 3,622 | 3,649 |
| Payroll Disbursements | 2,528 | 569 | 1,456 | 2,191 | 1,427 | 1,791 | 1,385 | 1,864 | 1,180 |
| Other Operating Disbursements | 717 | 1,897 | 982 | 727 | 672 | 649 | 791 | 896 | 716 |
| Other Disbursements | 397 | 598 | 268 | 1,256 | 389 | 498 | 268 | 2,138 | 369 |
| | | | | | | | | | |
| TOTAL OUTFLOWS | 7,172 | 6,525 | 6,365 | 7,899 | 6,155 | 7,017 | 5,980 | 7,922 | 5,904 |
| Net Cash Flow | (1,263) | (819) | 1,313 | (761) | (139) | (2,783) | 137 | 383 | 1,442 |
| Availability on Revolver | 4,193 | 4,398 | 4,867 | 3,673 | 4,235 | 2,936 | 193 | (6,175) | (3,848) |
| Revolver Reserve | 4,897 | 4,897 | 4,897 | 4,897 | 4,897 | 4,897 | 4,897 | 4,897 | 4,897 |
| True Availability | 5% | 381 | 778 | (424) | 138 | (1,161) | (3,909) | (6,273) | (7,537) |

<u>Wells</u>- We continue to have reviews with Wells. Last week we went into great detail with Herb Korn regarding current and future covenants. He was willing to re-write a few of the covenants to help represent what they should have been and we can pass for last month but as we continue to spend much more Cap-ex than forecasted we will soon fail our Well's covenants. They want to meet with us and I am trying to delay.

In addition, I discussed adding the Waterloo revolver to our existing facility. They had concerns for several reasons but the biggest roadblock is that it is Canadian.

<u>LBC -</u> We have failed LBC covenants primarily on our Cap-ex spending. They have the same concerns as Wells but do not see our bigger picture so are always more critical of us. I had several short meetings with them last week but ...ey were busy which was good news for us as we delayed when they start taking action. The one thing I did hear ...om them is they want to have a third party come and look at our business....never good news. I will be discussing this with them next week.

1

**Deloitte-** Had a meeting with the Deloitte team to go over the plan for the 2010 audit.

**GM-** Gathered a lot of info for Mark Fischer and started providing some of it to Marc Fischer.

**'le and Lease Back of Buildings** – We are making slow progress on the sale and leaseback of the portfolio of our ⌐wned buildings. I provided more answers again this week to United Equities. They are interested in at least half of our properties.

**Burlington** - We made it through another very tough week. Ford continues to be difficult and is not communicating with us what they want us to do. We continue to make it through our cash needs by advanced customer payments.

**Metavation** – We are working on cash plans to get Metavation through Christmas. But one of the difficulties is required Cap-ex for GM volume expansion.
In addition, we are preparing for the Dexter close and have most of our team in Iowa this week.

**MPI** – We are looking at selling our Mexican operation to several people and working with them to get them information. In addition ICON due diligence for Lobster is in high gear.

**Customers/Suppliers:**
ZF is requiring we buy new CNC equipment that we are trying to lease as we cannot afford the cash outlay. We have filled out several applications and we do have good preliminary interest.

**Acquisitions:**
A lot of work is ongoing on all the acquisitions including Lobster, Dexter (Nori), Delaware Tool, Compass and others (as stated above). We are working through, A/R, A/P, payroll, benefits and system setup. We continue to work with Ceridian to populate the Ceridian system.

The documents to set-up accounts and treasury agreements with Associated bank had to be revised but are complete ⌐ow.

For Lobster we are setting up Bank Accounts and working on plans for integrating AR, AP and financial personnel

Thanks!

Roger



2250 Thunderstick Drive Suite 1203
Lexington KY 40505
OFFICE 859.568.1763 | FAX 859.294.9568
www.revstone.com

May 18, 2011

Joseph Gray
Chief Executive Officer
Janice Stipp
Chief Financial Officer
Revstone Industries, LLC
21177 Hilltop Street
Southfield, MI 48033

Joe and Janice,

I was shocked and disappointed to receive your letter dated May 16, 2011 that was hand delivered to me yesterday, (the "Letter"). While you delivered the Letter under the guise of fulfilling your fiduciary roles to the Company and employees, you neglected your fiduciary obligations to the owners of Revstone. You failed to request information from the Office of General Counsel before making the baseless accusations contained in the Letter. Such failure constitutes a breach of your fiduciary obligations to the members of Revstone - the Jamie S. Hofmeister Irrevocable Trust, the Megan G. Hofmeister Irrevocable Trust, and the Scott R. Hofmeister Irrevocable Trust, (the "Members") and your responsibility to all other constituencies

I will address each of your concerns in the order in which they were raised. I believe, that overall, your letter is misguided, incorrect and abusive of your corporate responsibilities and "fiduciary duties". Your characterizations are false and quite frankly disparaging of both me as, Chairman and sole member of the Board of Managers, and Dan Smith our General Counsel.

I have repeatedly requested that you keep me informed by weekly reports and by regular phone calls. While Joe has worked to satisfy this request, Janice you have blatantly ignored that request, which is again a breach of your obligations. Both of you have spread false rumors and innuendo throughout the corporate office of Revstone which must cease immediately. In the tense times we are under with the dramatic growth and refinancing efforts, it is absolutely inappropriate for the two top executives in Detroit to be dealing in rumors and innuendo. We need leadership, not factually baseless, negative, undermining comments. Sending an accusatory letter without first calling me with your concerns is inconsistent with a desire to act in the best interest of Revstone and to maintain an effective working relationship with me and your other colleagues.

1. Pension Plan Investments.

First, your characterization of these invenstments is false. These investments were based on sound legal principles, specific guidance from the Department of Labor and statutory interpretation of ERISA. The fact that the two of you "have never seen" transactions of this type does not make them inappropriate as neither of you are ERISA experts.

Your accusations that the investments have somehow affected the refinance are a pitiful excuse to mask the inability to secure the refinancing in a timely manner.

Further, I believe that Dan Smith our General Counsel, has performed all of the required investigation into these matters prior to the investments being made, including, but not limited to, written opinion letters, discussions with outside counsel regarding the structure of the investments and discussions with one of the foremost experts in ERISA investments who was retained by our pension committee members to provide counsel on, among other things, these investments.    In fact it was this outside counsel that brought the structure of the 2010 transactions to us, and we have continued to work under his guidance.  Further the Department of Labor is currently auditing the plans, and has been apprised of all transactions and we are in full compliance with any and all of their audit requirements.

Since I have complete confidence in our General Counsel and the outside counsel that he has consulted with on these transactions, I believe that retaining outside counsel at this time is unwarranted and a waste of company resources, therefore I specifically forbid your doing so.  I have spoken with our General Counsel and I have requested that he provide you appropriate information so that you can be properly informed as to the due diligence and investigation that was performed prior to the issuing of the investments.

If you feel that you need to retain legal counsel for the company in order to discharge your duties you must resign as I will not authorize such an action.

Finally, this paragraph shows a general lack of trust and confidence in our office of General Counsel that is shocking. I note that you copied him on this while at the same time stating that the two of you would be in a better position to select outside counsel for your requested review. Again, you are hereby specifically forbidden and denied any say in the hiring or consultation with any legal counsel for the company without my express written authorization.  I will not speak for our General Counsel but I am certain that your baseless accusations, misinformation and general disrespect of him and his office may not be able to be repaired.

2.  1099s

I am uncertain why this paragraph was included in the letter. Janice, this is your job and what you were hired for. You were to ensure that we were and remain in compliance with sound accounting and tax principles.

If this was included as a point of information, I appreciate the update. Therefore, I will expect both of you to continue to properly handle these items and do not believe that any action is required of me at this time.

3.  Healthcare.

Again, the two of you have made an illogical leap based on incorrect or limited information. NO money was used for my personal expenses; all items paid were obligations of Revstone. Also, no employee contributions have been used for anything other than healthcare plan expenses. As

general assets of the company, employer contributions have been used for Revstone liabilities and payables that have not been paid for by your team. The real issue here is your inability to properly manage the cash situation since the first of the year. You informed me yesterday that the companies are performing at a monthly rate of $56M, which is roughly $5M ahead of our annual projections, and yet you have repeatedly failed to pay the most basic of items such as rent and internet service. This company has been in existence for nearly three years and has survived much leaner times without such basic items going unpaid. It is of great concern to me that you repeatedly fail to properly manage the cash in order to pay the most basic of items.

I expect that you will find these answers satisfactory. As you know, I am leaving today for Australia, the Middle East and China. While I am gone, please coordinate with our General Counsel to obtain the information you seek on the Pension Plan investments and any other significant matters that may arise.

We will have a meeting in Lexington upon my return to further discuss all outstanding issues.

Sincerely,

George Hofmeister
Chairman and Manager
Revstone Industries, LLC

| | |
|---|---|
| ᵀʳᵒm: | Dan Smith <dsmith@revstone.com> |
| ᴀt: | Monday, May 30, 2011 11:49 PM |
| To: | Alex Smith; Bob Smith; Don Lifton; James OToole; Jay Brown; Mark Mitchell; Mike Putz; Mikk Carr |
| Subject: | Fwd: Cash Forecasts |
| Importance: | Low |

All,

One of the first items to address is finding cash to help out Powertec and Valley.

Dan

**DANIEL V. SMITH, ESQ.  |  General Counsel**

**REVSTONE INDUSTRIES, LLC**
2250 Thunderstick Drive Suite 1203
Lexington KY 40505
OFFICE 859.568.1760    FAX 859.294.9568
www.revstone.com

[×]

ﾉute: To view our e-mail disclaimer please click here.

---------- Forwarded message ----------
From: **Mike Putz** <mputz@revstone.com>
Date: Mon, May 30, 2011 at 6:54 PM
Subject: Cash Forecasts
To: James O'Toole <jotoole@revstone.com>
Cc: Dan Smith <dsmith@revstone.com>, Robert LaCourciere <rlacourciere@revstone.com>

James,

Based on next week's forecast for Valley & Power-Tec there will be significant deficits.  Tat means PT will not be able to pay Clark-Hill, Boston, and still cannot cover payroll and the Consumers security deposit.  Valley will not be able to make the $215k pmt to Express.  However, if Prestige comes through, we can use the funds for both companies.

Mike

--
Michael D. Putz, CPA
    ief Financial Officer
Revstone Aftermarket
Revstone Power-Tec

1

Note: To view our e-mail disclaimer please click here.

**From:**         Donald Lifton <dlifton@revstone.com>
  **nt:**         Friday, June 03, 2011 8:23 PM
**To:**            Dan Smith
**Subject:**     Re: $

Perfect

**From:** Dan Smith <dsmith@revstone.com>
**Date:** Fri, 3 Jun 2011 16:12:18 -0400
**To:** <dlifton@revstone.com>
**Subject:** Re: $

TBD.


**DANIEL V. SMITH, ESQ. | General Counsel**

**REVSTONE INDUSTRIES, LLC**
2250 Thunderstick Drive Suite 1203
Lexington KY 40505
OFFICE 859.568.1760    FAX 859.294.9568
www.revstone.com

Note: To view our e-mail disclaimer please click here.



On Fri, Jun 3, 2011 at 4:08 PM, Donald Lifton <dlifton@revstone.com> wrote:
How much?

**From:** Dan Smith <dsmith@revstone.com>
**Date:** Fri, 3 Jun 2011 15:46:18 -0400
**To:** <dlifton@revstone.com>
**Subject:** Re: $

Nope. I will have money on Monday.

Dan

**DANIEL V. SMITH, ESQ. | General Counsel**

**REVSTONE INDUSTRIES, LLC**
2250 Thunderstick Drive Suite 1203
Lexington KY 40505
`FFICE 859.568.1760    FAX 859.294.9568
.vw.revstone.com

1

Note: To view our e-mail disclaimer please click here.


On Fri, Jun 3, 2011 at 3:40 PM, Donald Lifton <dlifton@revstone.com> wrote:
I'm feeling like low man on totem pole. Auto withdrawals starting to bounce. This has got to be fixed. Am I  the only team member not being paid ?

Don


Note: To view our e-mail disclaimer please click here.


Note: To view our e-mail disclaimer please click here.

A123

| | |
|---|---|
| From: | Janice Stipp <jstipp@revstone.com> |
| Sent: | Tuesday, June 07, 2011 12:19 PM |
| To: | Christine Saurini; Robert (Bob) W Smith; Shirley Szatkowski; Terry Herzinger; Jay Brown |
| Cc: | Alan Washeleski; Dan Smith; George Hofmeister; dlifton@revstone.com |
| Subject: | RE: Cash needs today |
| Attachments: | image001.png |
| | |
| Importance: | Low |

Jay

I understand you directed use of cash this week to Don Lifton, Sheldon Toll and the Boston note; please understand that the large payroll is to be funded this week and last week minimum suppliers were paid. In addition, Revstone has multiple shut off notices that need to be resolved. Can you please document how the payroll will be funded with your payment direction. I understand you have not inquired to the people involved in these activities prior to your direction

Regards,

**JANICE STIPP  |CFO**

**REVSTONE INDUSTRIES, LLC**
21177 Hilltop St.
Southfield, MI 48033
Email Jstipp@Revstone.com
     one 248.351.1111
Mobile 248.346.4277
Fax 248.351.1005
www.revstone.com

 REVSTONE

Note: To view our e-mail disclaimer please click here.

**From:** Christine Saurini [mailto:csaurini@revstone.com]
**Sent:** Monday, June 06, 2011 4:29 PM
**To:** Janice Stipp
**Cc:** Alan Washeleski
**Subject:** FW: Cash needs today

??? – do you know what mgmt. fees they are pulling ahead?

**CHRISTINE SAURINI, CTP  | Director of Treasury**

**REVSTONE INDUSTRIES, LLC**
21177 Hilltop St.
Southfield, MI 48033
OFFICE 248.351.1121    MOBILE 248.971.4506

www.revstone.com

REVSTONE

Note: To view our e-mail disclaimer please click here.

**From:** Jay Brown [mailto:jbrown@revstone.com]
**Sent:** Monday, June 06, 2011 2:36 PM
: Robert Smith; Shirley Szatkowski; Terry Herzinger; Christine Saurini
**bject:** Cash needs today

Revstone hq has approved 117k to disburse, sourced from a pull ahead of mgmt fees and an additional 125k for several expenses to be disbursed from normal borrowings. Details to follow shortly.
RW please call me asap.
Brown

Note: To view our e-mail disclaimer please click here.

Note: To view our e-mail disclaimer please click here.

| | |
|---|---|
| **From:** | Jan Ackley <jackley@revstone.com> |
| **at:** | Monday, July 09, 2012 10:51 PM |
| **To:** | Dan Smith |
| **Cc:** | Lawrence Jacobs |
| **Subject:** | Re: Oakland County Treasurer |

**Importance:**    Low

Revstone can't come up with 5k to pay their tax bill?

Sent from my iPhone
Jan Allen Ackley
513-383-9591
Jackley@ascalon.com


On Jul 9, 2012, at 5:39 PM, Dan Smith <dsmith@revstone.com> wrote:

> I disagree. A lockout of the revstone offices in Southfield is a high priority.
> Lets talk through cash issues tomorrow to see what we can do
>
> Dan
>
> Sent from my iPhone
>
> On Jul 9, 2012, at 5:35 PM, Lawrence Jacobs <ljacobs@sparagroup.com> wrote:
>
>> We are trying to scare up $17K to free up hitches in Mex to help Eptec in its audit. This
>> is not a hi priority.
>> L
>>
>> On Monday, July 9, 2012, Jan Ackley wrote:
>>
>>
>> Sent from my iPhone
>> Jan Allen Ackley
>> 513-383-9591
>> Jackley@ascalon.com
>>
>>
>> Begin forwarded message:
>>
>>> **From:** Dan Smith <dsmith@revstone.com>
>>> **Date:** July 9, 2012 4:18:18 PM EDT
>>> **To:** Jan Ackley <jackley@ascalonllc.com>
>>> **Subject: Fwd: Oakland County Treasurer**
>>>
>>> Any chance
>>>
>>> Sent from my iPhone

1

Begin forwarded message:

> **From:** dlifton@ascalonllc.com
> **Date:** July 9, 2012 4:10:19 PM EDT
> **To:** "Shellene Mitchell" <smitchell@revstone.com>,
> "Shakir Alkhafaji" <salkhafaji@Veritaslimited.com>,
> "George Hofmeister" <ghofmeister@revstone.com>, "Jay
> Brown" <jbrown@revstone.com>, "Daniel V. Smith"
> <dsmith@revstone.com>
> **Subject: Re: Oakland County Treasurer**
> **Reply-To:** dlifton@ascalonllc.com

I believe a 5k payment might hold them off. Alternative
won't look good in newspapers.
Sent via BlackBerry by AT&T

> **From:** "Shellene Mitchell" <smitchell@revstone.com>
> **Date:** Mon, 9 Jul 2012 16:04:58 -0400
> **To:** <dlifton@ascalonllc.com>;
> <salkhafaji@veritaslimited.com>
> **Subject:** Oakland County Treasurer

Due to the past due personal property taxes we just
received the attached hand delivered letter.

Mr. Briggs stated that unless a **substantial payment** is
made within five (5) days on the almost $20,000.00 past
due taxes that they will require the Treasurer office to post
a seizure notice and change the locks of the business.

Mr. Briggs  Deputy Treasurer - Tel:  248-585-0619

SHELLENE A. MITCHELL

REVSTONE INDUSTRIES, LLC

2000 Town Center

Suite 2100

Southfield, MI 48075

OFFICE 248 351 8800

CELL  248 521 3747

2

<u>www.revstone.com</u>



Note: To view our e-mail disclaimer please click <u>here</u>.

Note: To view our e-mail disclaimer please click <u>here</u>.

Note: To view our e-mail disclaimer please click <u>here</u>.

--
Lawrence W. Jacobs
Chief Financial Officer
**SPARA**
2250 Thunderstick Drive, Suite 1203
Lexington, KY 40505
OFFICE 859-568-1764
FAX 859-294-9568
<u>www.sparagroup.com</u>

Note: To view our e-mail disclaimer please click <u>here</u>.

Note: To view our e-mail disclaimer please click <u>here</u>.

A128

| | |
|---|---|
| **From:** | Jan Ackley <jackley@ascalonllc.com> |
| **Sent:** | Friday, November 30, 2012 4:38 PM |
| **To:** | George Hofmeister |
| **Cc:** | Dan Smith |
| **Subject:** | Don Lifton / Airplane |

**Importance:**     Low

GH

Just an FYI...Don is talking to Mbank about financing an airplane. He wants me to include the airplane financing with Associated Bank financing efforts which would then pay out MBank.

My advice to you....we should not be in the market to get funding for an airplane. I am not going to raise the specter of an airplane to Associated Bank. They will back away totally, as will other banks.

Don is calling me three times a day and I sent him all of the information per your request. He has that information in front of MBank about an airplane.

He now wants me to send Mbank my financial model I used for Associated Bank.

Call him off.

**JAN ALLEN ACKLEY** | Managing Director of Acquisitions/Financing
**ASCALON**
5522 Chester Gate Court
Mason, OH 45040
OFFICE 859.568.1766
MOBILE 513.383.9591
jackley@ascalonllc.com


A129

EXHIBIT IV

# Non-Health related Payments
## July 10, 2013

| | Revstone/Spara | Non Revstone/Spara | Total |
|---|---|---|---|
| April 10, 2013 Payment: | | | |
| SH Development | $ - | $ 20,000.00 | $ 20,000.00 |
| | | | |
| May 1, 2013 Payment: | | | |
| JMP Industries | - | 100,000.00 | 100,000.00 |
| UBS Interest | 65,578.02 | - | 65,578.02 |
| Ascalon Payroll | - | 25,000.00 | 25,000.00 |
| Bradley Racing | - | 5,000.00 | 5,000.00 |
| Nelson Clements | 10,000.00 | - | 10,000.00 |
| Bullock & Coffman | 20,000.00 | - | 20,000.00 |
| PPC Recovery | - | 5,000.00 | 5,000.00 |
| Lincoln National Life | - | 19,075.00 | 19,075.00 |
| US Air Mastercard (George) | 346.98 | - | 346.98 |
| | | | |
| May 31, 2013 Payment: | | | |
| Ascalon Payroll | 19,014.30 | 17,985.70 | 37,000.00 |
| Utica Leasing | - | 6,000.00 | 6,000.00 |
| DIDS | 16,183.33 | - | 16,183.33 |
| Steckbauer Weinhart Jaffe | - | 816.67 | 816.67 |
| | | | |
| June 14, 2013 Payment: | | | |
| Ascalon Payroll | 5,455.11 | 11,211.89 | 16,667.00 |
| Ohio State University (Rebecca) | 15,333.00 | - | 15,333.00 |
| | | | |
| Total | $ 151,910.74 | $ 210,089.26 | $ 362,000.00 |

**EXHIBIT V**

**FARM EMPLOYEE PAYROLL CHARGED TO HEALTH AND BENEFITS, LLC**

**James Lukenda**



**From:** Pam Lucas [mailto:plucas@revstone.com]
**Sent:** Tuesday, April 08, 2014 12:50 PM
**To:** John Owens
**Subject:** Farmhands 2013 Employment

During 2013, there were 5 farmhands: Ottis Florence, Steve Florence, Steve Florence, Jr., Whitney Florence and Palace Ratliff. They were all paid from Health & Benefits from 1-1-13 to 3-10-13, and starting 3-11-13 were transferred to Ascalon's payroll.

Please let me know if you need additional details.

**Pamela J. Lucas**|**Dir. Human Resources/Payroll Manager/Office Manager**
**REVSTONE**
29895 Greenfield Road
Suite 101
Southfield MI 48076
PHONE 248.351.1033
MOBILE 248.417.7876
www.revstone.com


Note: To view our e-mail disclaimer please click here.

A132

**Health and Benefit Services, LLC**
**Payroll Analysis**

*ANALYSIS OF HB PAYROLL REGISTERS*

### Year Ended 12/26/12

| Employee | Rate | YTD Hours | YTD Reg | YTD Other | YTD Bonus | YTD Total | MDCR | SSEC | Farm SUTA | Farm FUTA | Farm Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Brown, W | 1,461.54 | 1,200.00 | 36,538.50 | | | 36,538.50 | 502.38 | 1,455.18 | | | 40,262.04 |
| Florence, O | 14.50 | 2,611.50 | 37,866.75 | | | 37,866.75 | 541.58 | 1,568.71 | 243.00 | 42.00 | 45,180.31 |
| Florence, S | 15.00 | 2,855.75 | 42,836.25 | | | 42,836.25 | 528.43 | 1,530.63 | 243.00 | 42.00 | 30,648.96 |
| Florence, S.Jr. | 11.00 | 2,622.50 | 28,847.50 | | | 28,847.50 | 389.18 | 1,127.28 | 243.00 | 42.00 | 6,573.64 |
| Florence, W | 7.50 | 805.00 | 6,037.55 | | | 6,037.55 | 86.45 | 250.39 | 163.02 | 36.23 | |
| Hurst, D | 2,884.62 | 2,080.00 | 74,281.05 | 769.23 | 7,500.00 | 82,550.28 | 1,156.67 | 3,350.34 | | | |
| Ramsay, S | 5,000.00 | 2,080.00 | 129,230.76 | 1,284.11 | 40,000.00 | 170,514.87 | 2,416.86 | 4,624.20 | | | |
| Ratliff, P | 7.50 | 2,026.25 | 15,196.88 | | | 15,196.88 | 220.35 | 638.27 | 243.00 | 42.00 | 16,340.50 |
| Schuters, J. | 1,730.77 | 2,080.00 | 44,505.84 | 461.54 | 5,000.00 | 49,967.38 | 689.55 | 1,997.31 | | | |
| | | | $ 415,341.08 | $ 2,514.88 | $ 52,500.00 | $ 470,355.96 | $ 6,531.45 | $ 16,542.31 | $ 1,135.02 | $ 204.23 | $ 139,005.45 |

### Year-to-Date 7/12/13

| Employee | Rate | YTD Hours | YTD Reg | YTD Other | YTD Bonus | YTD Total | MDCR | SSEC | Farm SUTA | Farm FUTA | Farm Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Brown, W | 1,461.54 | 1,120.00 | 20,461.56 | | | 20,461.56 | 275.36 | 1,177.42 | 230.58 | 42.00 | 8,021.58 |
| Florence, O | 14.75 | 488.50 | 7,205.39 | | | 7,205.39 | 103.04 | 440.57 | 243.76 | 42.00 | 8,393.92 |
| Florence, S | 15.25 | 499.50 | 7,617.40 | | | 7,617.40 | 93.02 | 397.74 | 243.76 | 42.00 | 5,193.29 |
| Florence, S.Jr. | 11.50 | 407.50 | 4,686.25 | | | 4,686.25 | 62.35 | 266.61 | 149.96 | 28.12 | 1,575.87 |
| Florence, W | 8.50 | 166.50 | 1,415.26 | | | 1,415.26 | 20.25 | 86.57 | 45.29 | 8.50 | |
| Hurst, D | 2,884.62 | 1,120.00 | 40,384.68 | | | 40,384.68 | 564.24 | 2,412.63 | | | |
| Ramsay, S | 5,000.00 | 1,120.00 | 70,000.00 | | | 70,000.00 | 947.48 | 4,051.29 | | | |
| Ratliff, P | 8.50 | 408.00 | 3,468.00 | | | 3,468.00 | 50.14 | 214.32 | 110.98 | 20.81 | 3,864.23 |
| Schuters, J. | 1,730.77 | 1,120.00 | 24,230.78 | | | 24,230.78 | 689.55 | 1,997.31 | | | |
| | | | $ 179,469.32 | $ — | $ — | $ 179,469.32 | $ 2,805.41 | $ 11,044.46 | $ 780.57 | $ 141.43 | $ 27,048.89 |

RATES USED:
SUTA '12 = 2.7% on $9,000/ '13 = 3.2% on $9,000
FUTA .6% on $7,000

RATES USED:
SUTA '12 = 2.7% on $9,000/ '13  3.2% on $9,000
FUTA .6% on $7,000



2012

CERIDIAN

HEALTH AND BENEFIT SERVICES, LLC

086- ALPHABETIC PAYROLL REGISTER

086

12/28/12          B-12/28/12                    PAY
REPORT DATE       CHECKS DATED                   26
DED AND ADV       Y-TO-D                         PERIOD  PAGE NO.
AMOUNT CODES      GROSS TO NET                   1
                  TYPE    CURRENT    CHECK#

REB
NO.
EMPLOYEE ID
EMPLOYEE NAME
CO. NAME

99-XO2-O1615
BROWN, WYATT W

SS-NO          1461.54        FRQ  B    STAT  A
BASE                          M/S  S    SEX   M
FCAST   80.COE                ST1  KY
FILE#   1615                  F#EX  O1   S#EX  O1
PTD-C   O1/16/12              SADJ  NRES
OT-EX   N
DSS PT  Y

EFT-ACCOUNT#                  ID BK TP   TRANSIT-NO
                              A PQ C    2421-7612-9
ALT DATE:
DOB:          02/01/79

PC DESCR  RATE   HOURS    AMOUNT    DESCR

1  REGUL   80.00       1461.54  $LS1           20.00 OOO*      34738.50 GRCOMP     1361.54
   HSA              100.00-ACHBR            152.50 OOO*      33840.66 GRPAY      1311.66
                        PRE-TAX ITEMS ------   23.08 ONO*       1455.18 SSEC        56.97
   401K                            43.85-HSA   100.00-O6OE     502.38 MDCR        19.66
   DENTL                            3.79-401K U   3.00-8FO E    3799.61 FIT        145.69
   VISN                             2.24--                    1639.91 ST KY       53.08
                                              43.85-O6OE E               TOTDED      63.00
              Q-TO-D --- DED       10230.78 DENTL  3.79-O6OE     26303.58 NET       1006.16
1  REGULAR    -160.00 ----------   Y-VISN   2.24-O6OE          EFT A    1006.16
1  REGULAR    1200.00  -TO-D               .96  OFO*-          CUR SSEC WAGES  1356.47
1  REGULAR    240.00   F------IFE                              CUR MDCR WAGES  1356.47
1  REGULAR           4384.62  W2GRP                            Q-TO-D  --TAXES--
                              EFTA1          BAL/LMT --WAGES--- SSEC       398.80
                                             140.00 BAL       9495.29 MDCR       137.68
                              $LS1           427.43 LMT       9188.34 FIT       1019.83
                              $LS1           415.44 BAL       9188.34 ST KY     442.26

                              HSA            600.00 LMT --WAGES--- Y-TO-D- --TAXES--
                                            1800.00-BAL       34647.24 SSEC    1455.18
                              HSAER         1800.00-LMT       34647.24 MDCR     502.38
                                                               33840.66 FUTA
                              $LSB            140.50          33857.94 SUI KY   3799.91
                              ACHBR          167.56          36538.50 SUT KY
                              HSAER          700.00- --WAGES-- F-TO-D-1 --TAXES--
                              HSA            306.95          4069.41 SSEC       170.91
                              401K            26.53          4069.41 MDCR        59.00
                              DENTL           15.68          3934.98 FIT        437.07
                              VISN             6.72          3937.86 ST KY      189.54
                              W2GRP                          4384.62 SUT KY

                              $LS1           140.00
                              ACHBR         2745.00
                              HSAER          415.44
                              HSA           1800.00-
                              401K           789.30-
                              DENTL           68.22-
                              VISN            40.32-
                              W2GRP           17.28

                              Q-TO-D 1
                              $LS1           457.50
                              ACHBR          69.24
                              HSAER         300.00-
                              HSA           131.55-
                              401K           11.37-
                              DENTL           6.72-
                              VISN            2.88

99-XO3-97913
FLORENCE, OTTIS

1  REGUL  14.5000  90.00      1305.00 DENTL      7.58-O6OE      37866.75 GRCOMP   1305.00
                        PRE-TAX ITEMS ------ VISN   3.77-O6OE      37350.13 GRPAY   1285.13
   DENTL                            7.58-AFLPT   8.52-O6OE      1568.71 SSEC       53.98
   VISN                             3.77-VOLIN  55.11 OOO*       541.58 MDCR       18.64

A222

PAY ANALYSIS REPORTING

CERIDIAN

HEALTH AND BENEFIT SERVICES, LLC

# 086 — ALPHABETIC PAYROLL REGISTER

| | 12/28/12 | B-12/28/12 | PAY 26 |
| --- | --- | --- | --- |
| | REPORT DATE | CHECKS DATED | PERIOD PAGE NO. 2 |

PAY ANALYSIS REPORTING

| REB | | |
| --- | --- | --- |
| NO. | | CO. NAME |
| EMPLOYEE ID | | PC DESCR RATE HOURS AMOUNT DESCR AMOUNT AND ADV CODES Y-TO-D TYPE CURRENT CHECK# |
| EMPLOYEE NAME | | |

. . . . HOURS AND EARNINGS . . . . . . . . . DED AND ADV . . . . . . . GROSS TO NET . . . . . .

**99-XO3-97913**
**FLORENCE, OTTIS**   ***** CONTINUED *****

| SS-NO | 14.5000 | FRQ B | STAT A | AFLPT | | 8.52-STD | 22.33 000* | 3517.50 FIT | 112.58 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| BASE | .00 E | M/S M | | Q-TO-D | --LIFE | | .000 | 1849.47 STI KY | 62.35 |
| FCAST | 9913 | ST1 | KY | REGULAR | SPOUS | 27.55 000* | 2866.90 TOTDED | 972.59 |
| FILE# | | S#EX OO | | 686.50 | 9954.25 | | 27005.97 EFT A | 932.59 |
| HIRE 01/01/07 | F#EX OO | | REGULAR | STA1 | Q-TO-D | CUR SSEC WAGES | 1285.13 |
| PTO-C | | | | 2611.50 | 37866.75 DENTL | 53.06- | CUR MDCR WAGES | 1285.13 |
| OT EX N | | | | REGULAR | VISN | 26.39- | --WAGES-- Q-TO-D | --TAXES-- |
| | | | | 275.50 | 3994.75 VOLN | 59.64- | 9815.16 SSEC | 412.24 |
| EFT-ACCOUNT# | | ID BK TP | TRANSIT-NO | | AFLPT | 385.77 | 9815.16 MDCR | 142.32 |
| | | A KY C | 0421-0117-4 | | STD | 156.31 | 9815.16 FIT | 910.93 |
| ALT DATE: | | | | | SPOUS | 192.85 | 9815.16 ST KY | 483.97 |
| DOB: 05/11/46 | | | | | Y-TO-D | 1471.15 | --WAGES-- Y-TO-D | --TAXES-- |
| | | | | | ACHBR | 197.08- | 37350.13 SSEC | 1568.74 |
| | | | | | DENTL | 98.02- | 37350.13 MDCR | 541.58 |
| | | | | | VISN | 221.52- | 37350.13 FIT | 3517.50 |
| | | | | | AFLPT | 1487.96 | 7000.00 FUTA | |
| | | | | | VOLN | 635.08 | 7000.00 ST KY | |
| | | | | | STD | 743.86 | 37866.75 SUI KY | 1849.47 |
| | | | | | SPOUS | | | |

**99-XO3-97914**
**FLORENCE, STEVE**

| SS-NO | 15.0000 | FRQ B | STAT A | REGUL 15.0000 94.00 | ACHBR | 623.66 0MO* | 42836.25 GRCOMP | 1410.00 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| BASE | .00 E | M/S S | | 1410.00 | --MED | 229.10-0GCE | 36443.47 GRPAY | 1173.32 |
| FCAST | 9914 | ST1 | KY | PRE-TAX ITEMS | Q-TO-D | 7.58-0GCE | --WAGES-- Q-TO-D | --TAXES-- |
| FILE# | | F#EX O4 | | DENTL | VOLN | 12.46 000* | 528.43 SSEC | 49.28 |
| HIRE 01/01/07 | | | | MED | --LIFE | .000 | 528.43 MDCR | 57.06 |
| PTO-C | | | | REGULAR | Q-TO-D | .000 | 2429.05 FIT | 59.17 |
| OT EX N | | | | 719.25 | 10788.75 SPOUS | 1.06 000* | 1716.96 STI KY | 17.01 |
| | | | | Q-TO-D | --LIFE | 4.15 000* | 1716.96 ST1 KY | 52.79 |
| | | | | REGULAR | STA1 | | 455.28 NET A | 17.67 |
| EFT-ACCOUNT# | | ID BK TP | TRANSIT-NO | 293.50 | | | 29783.12 TOTDED | 977.40 |
| 357375 | | A Fa C | 0421-0155-6 | REGULAR | ACHBR | Q-TO-D | 911.99 ST | 977.40 |
| | | | | | --MED | 4365.16 | CUR SSEC WAGES | 971.32 |
| ALT DATE: | | | | | DENTL | 436.18- | CUR MDCR WAGES | 1173.32 |
| DOB: 08/27/70 | | | | | VOLN | 323.96 | --WAGES-- Q-TO-D | --TAXES-- |
| | | | | | CHILD | 87.22 | 911.99 SSEC | 132.41 |
| | | | | | VOLN | 7.42 | 911.99 MDCR | 132.02 |
| | | | | | CHILD | 29.05 | 911.99 FIT | 552.02 |
| | | | | | SPOUS | | 911.99 ST KY | 422.83 |
| | | | | | ACHBR | Y-TO-D | --WAGES-- Y-TO-D | --TAXES-- |
| | | | | | MED | 16215.16 | 10788.75 SUI KY | |
| | | | | | DENTL | 5956.60- | 36443.47 SSEC | 1530.63 |
| | | | | | VOLN | 436.18- | 36443.47 MDCR | 528.43 |
| | | | | | CHILD | 323.96 | 36443.47 FIT | 2429.05 |
| | | | | | CHILD | 27.56 | 7000.00 FUTA | |
| | | | | | SPOUS | 103.76 | 36443.47 ST KY | 1716.96 |
| | | | | | F-TO-D 1 | | | |

A223

A224



CERIDIAN

HEALTH AND BENEFIT SERVICES, LLC

086 — ALPHABETIC PAYROLL REGISTER

| | | | |
|---|---|---|---|
| REB | CO. NAME | | |
| NO. | | | |
| EMPLOYEE ID | | PC DESCR RATE HOURS AMOUNT | DESCR AMOUNT ADJ CODES |
| EMPLOYEE NAME | | . . . HOURS AND EARNINGS . . . | . . DED AND ADJ . . . |

REPORT DATE 12/28/12    B-12/28/12 CHECKS DATED

. . . . GROSS TO NET . . . .
Y-TO-D    TYPE    CURRENT    CHECK#

086

99-XC03-97914
FLORENCE, STEVE
***** CONTINUED *****

99-XC03-97915
FLORENCE, STEVEN JR
2023 WINCHESTER ROAD
PARIS KY 40361

| | | | |
|---|---|---|---|
| FRQ | B | STAT | A |
| M/S | S | SEX | M |
| ST1 | KY | | |
| F#EX | OO | S#EX | 02 |
| FADJ | $ | 10.00 | |

SS-NO XXX-XX-5027
BASE 11.0000
FCAST .00 E
FILE# 87915
HIRE 01/01/07
PTO-C
OT EX N

1 REGULAR    11.0000    90.00    990.00 ACHBR    169.18 OMO*
        DENTL              3.79-OGOE
        MED               6.23 OGOE*
        VOLIN
        CHILD
        SPOUS

--WAGES--    Y-TO-D    --TAXES--
28847.50 GRCOMP    990.00
    SUI KY    912.79
--WAGES-- F-TO-D    --TAXES--
1127.28 SSEC    38.34
389.18 MDCR    13.23
        FIT    117.78
1199.92 ST1 KY    39.22
161.98 TOTDED    6.23
20433.20 NET    697.99
    EFT A    697.99
CUR SSEC WAGES    912.79
CUR MDCR WAGES    912.79
        Q-TO-D    --TAXES--

EFT-ACCOUNT#
    ID BK TP  TRANSIT-NO
    A KY S    0421-0117-4

ALT DATE:
DOB:  06/01/89

1 REGULAR              2622.50    28847.50 ACHBR    1184.26
    PRE-TAX ITEMS        3.79-DENTL    513.94-
                        73.42-VOLIN    26.53-
                        -LIFE        43.61

--WAGES-- Q-TO-D    --TAXES--
28847.50 SUI KY    912.79
6969.78 SSEC    101.06
6969.78 MDCR    101.06
6969.78 FIT    911.52
7510.25 ST1 KY    308.19
26840.04 SSEC
26840.04 MDCR
7000.00 FUTA
26840.04 ST KY
28847.50 SUI KY    1199.92

A225

FLORENCE, WHITNEY E
99-XC02-O1543

| | | | |
|---|---|---|---|
| FRQ | B | STAT | A |
| M/S | S | SEX | 1 |
| ST1 | KY | | |
| F#EX | OO | S#EX | 1 |

SS-NO
BASE   7.5000
FCAST  .00  E
FILE#  1543
HIRE   01/03/12
PTO-C

1 REGUL    7.5000    28.00    210.00 401K U    3.00-8FO
        401K              6.30- E
        DENTL             3.79-OGOE

1 REGULAR    199.25    1494.38 401K    44.83-
        DENTL             26.53-
        401K             142.31-
        DENTL            75.80-

1 REGULAR    805.00    6037.55 DENTL
        401K
Y-TO-D    401K

--WAGES-- F-TO-D    --TAXES--
5840.44 GRPAY    120.09
250.39 SSEC    199.91
86.45 MDCR    8.66
356.36 FIT    2.99
82.08 ST1 KY    11.72
5033.56 NET    2.24
    EFT A    174.30
CUR SSEC WAGES    174.30
CUR MDCR WAGES    206.21
    SUI KY    206.21
--WAGES-- Q-TO-D    --TAXES--
6037.55 GRCOMP    210.00
2859.37 SSEC    199.91
2859.37 MDCR    8.66
2859.37 FIT    41.46
2859.37 ST1 KY    371.49
3091.00 SUI KY    124.68

A226



CERIDIAN

086 – ALPHABETIC PAYROLL REGISTER

086

| | 12/28/12 REPORT DATE | B-12/28/12 CHECKS DATED | PAY 26 PERIOD 04 PAGE NO. 4 |

HEALTH AND BENEFIT SERVICES, LLC

REB.
NO.
EMPLOYEE ID
EMPLOYEE NAME
CO. NAME

· · · HOURS AND EARNINGS · · ·       · · · DED AND ADV · · ·       · · · GROSS TO NET · · ·
PC  DESCR  RATE  HOURS  AMOUNT       DESCR  AMOUNT  CODES       Y-TO-D  TYPE  CURRENT  CHECK#

99-X02-01543
FLORENCE, WHITNEY E
***** CONTINUED *****

DT EX  N
DSS PT  Y
EFT-ACCOUNT#

ALT DATE:
DDB:  11/15/92

ID BK TP  TRANSIT-NO
A KY S   0421-O17-4

401K                                  401K      20.25-        --WAGES--      Q-TO-D      --TAXES--
DENTL                                  DENTL     11.37-   F-TO-D 1 --       1467.85  SSEC       61.65
                                                                            1467.85  MDCR       21.29
                                                                            1423.02  FIT        84.42
                                                                            1467.85  FUTA
                                                                            1467.85  SUI KY     17.11
                                                                   --WAGES--  Y-TO-D      --TAXES--
                                                                            5961.75  SSEC      250.39
                                                                            5961.75  MDCR       86.45
                                                                            5819.44  FIT       366.96
                                                                            5961.75  FUTA
                                                                            5819.44  SUI KY     82.08
                                                                            6037.55  SUI KY
                                                                   --WAGES--  F-TO-D 1 -- --TAXES--
                                                                             663.63  SSEC       27.87
                                                                             663.63  MDCR        9.63
                                                                             643.38  FIT        39.53
                                                                             663.63  FUTA
                                                                             643.38  ST
                                                                             675.00  SUI KY      8.30

99-X02-97897
HURST, DAVID T

SS-NO  2884 62
BASE   80.00E
FCAST
FILE#  97897
HIRE   11/07/06
PTO-C
DT EX  N
DSS PT  Y
EFT-ACCOUNT#

ALT DATE:
DDB:  05/11/71

FRQ  B    STAT  A
M/S  M    SEX   M
ST1  KY
F#EX O2   S#EX  O4

ID BK TP  TRANSIT-NO
B JR C   0830-OO13-7

| PC | DESCR | RATE | HOURS | AMOUNT | DESCR | AMOUNT | CODES |
|---|---|---|---|---|---|---|---|
| 1 | REGUL | 80.00 | | 2884.62 | ACHBR | 294.23 ONO* | |
| 1 | HSA | | | 92.31-HSAER | 23.08 ONO | |
| | | PRE-TAX ITEMS | | | 23.00 ONO | * |
| 1 | 401K | | | 26.54-HSA | 92.31-O60E | |
| | DENTL | | | 7.58-401K U | | |
| 8 | MED | | | 2.24-MED | 26.54- | E |
| | VISN | | | 8.77-O60E | | |
| 1 | REGULAR | Q-TO-D | 560.00 | 20192.34 VISN | 7.58-O60E | |
| 8 | BONUS | | | | 2.24-O60E | |
| | DENTL | | | DENTL | | |
| 1 | REGULAR | Y-TO-D | 2080.00 | 74281.05 LTD | .000 | |
| 8 | BONUS | | | W2GRP | .000 | OF0* |
| 1 | REGULAR | F-TO-D 1 | 240.00 | 8653.86 LIFE | 3.97 | |
| 7 | OTHER | | | 769.23 EFT82 | BAL/LMT -- | |
| 8 | BONUS | | | 7500.00 HSAER | 600.00 BAL | |
| | | | | 750.00 HSA | 600.00 LMT | |
| | | | | | 2400.06-BAL | |
| | | | | | 2400.06-LMT | |
| | | | | | Q-TO-D 06-LMT | |
| | | | | ACHBR | 2059.61 | |
| | | | | HSAER | 161.48 | |
| | | | | HSA | 646.17- | |
| | | | | 401K | 185.78- | |
| | | | | MED | 61.39- | |
| | | | | DENTL | 53.06- | |
| | | | | VISN | 15.68- | |
| | | | | W2GRP | 27.79 | |
| | | | | ACHBR | Y-TO-D 06-- | |
| | | | | | 7649.98 | |

--WAGES--       Q-TO-D      GRCOMP      2792.31
80150.22                    GRPAY      2747.18
7809.47                     SSEC        116.66
6350.34  SSEC               MDCR         40.28
1156.67  MDCR               FIT         288.04
60226.72 FIT     ST1 KY     144.30
4176.81  ST1 KY             EFT B
60930.23                    WAGES      2157.90
                            NET        2157.90
--WAGES--       Q-TO-D      WAGES      2777.69
26943.83 SSEC               WAGES      2777.69
26943.83 MDCR   CUR SSEC    --TAXES--
26943.83        CUR MDCR    1131.64
                Q-TO-D      390.69
--WAGES--       F-TO-D 1    3891.28
26758.05 SSEC               1438.89
26730.26 MDCR   ST  KY
27692.34 FIT    SUI KY
                STDC        --TAXES--
--WAGES--                   3456.34
79770.10 MDCR               1156.67
79770.10 FIT    ST  KY      9370.72
78984.77 FIT    SUI KY
--WAGES--       F-TO-D 1 -- --TAXES--
7000.00  FUTA               4176.81
82550.28 SUI KY
15833.07                    664.98
15833.07 MDCR               229.16
15741.54 FIT                2739.12
15753.45 ST  KY             861.69
16153.86 SUI KY

A227



CERIDIAN

HEALTH AND BENEFIT SERVICES, LLC

086- ALPHABETIC PAYROLL REGISTER

| | | | | | 086 |
|---|---|---|---|---|---|
| REB | | | | 12/28/12 | |
| NO. | CO. NAME | | | REPORT DATE | B-12/28/12 |
| EMPLOYEE ID | | | | | CHECKS DATED |
| EMPLOYEE NAME | | PC PC DESCR RATE | . . HOURS AND EARNINGS . . . . . . . . . . DED AND ADJ . . . . | . . . . . . Y-TO-D | PAY 26 |

. . . . HOURS AND EARNINGS . . . . . . . . . . DED AND ADJ . . . . . . . . . . Y-TO-D . . . . . . GROSS TO NET . . . . . .
PC PC DESCR RATE HOURS AMOUNT DESCR AMOUNT CODES Y-TO-D TYPE CURRENT CHECK#

PERIOD PAGE NO. 5

99-XO2-97897
HURST, DAVID T
*****  CONTINUED  *****

```
                                            ------- Y-TO-D -------
                                            HSAER      600.00
                                            HSA       2400.06-
                                            401K       682.11-
                                            MED        228.02-
                                            DENTL      197.08-
                                            VISN        51.24-
                                            W2GRP      103.22
                                            MISC1       67.22
                                            ------- F-TO-D 1 -------
                                            ACHBR      882.69
                                            HSAER       69.16
                                            HSA        276.93-
                                            401K        79.62-
                                            MED         26.31-
                                            DENTL       22.74-
                                            VISN         6.72-
                                            W2GRP       11.91
```

99-XO2-99826
LITTON, ALLISON R

| SS-NO | 1538.46 | FRQ B | STAT T | | | |
|---|---|---|---|---|---|---|
| BASE | 99826 | M/S S | SEX F | | | |
| FILE# | | ST1 KY | | | | |
| HIRE | 10/27/10 | F#EX 00 | S#EX 01 | | | |
| TERM | 01/05/12 | | | | | |
| PTO-C | | | | | | |
| OT EX Y | | | | | | |

ALT DATE:
DOB:  12/07/78

```
1 REGUL     80.00    5000.00 ACHBR    542.31 OMO*     167215.25 GRCOMP    4873.08
  HSA              126.92-HSAER     23.08 ONO*     160428.25 GRPAY     4831.27
                                                             SSC            .00
  --------- PRE-TAX ITEMS ---------    22.90-060E      4624.80 SSC        70.36
  DENTL             13.53-HSA     12.16-060E              .80 MDCR      728.78
  MED               16.13-MED     23.52-060E     11483.66 FIT       270.71
  VISN               6.13-DENTL   6.13-060E      9418.03 NET       270.71
                         VISN             .00 ST1 KY       .00
```

99-XO1-97923
RAMSAY, SCOTT

| SS-NO | 5000.00 | FRQ B | STAT A | | | |
|---|---|---|---|---|---|---|
| BASE | 80.00E | M/S M | SEX M | | | |
| FCAST | 97923 | ST1 KY | | | | |
| FILE# | 01/01/07 | F#EX O3 | S#EX O3 | | | |
| HIRE | | FADJ $ | 13.85 | | | |
| PTO-C | | | | | | |
| OT-C N | | | | | | |
| DSS PT Y | | | | | | |
| EFT-ACCOUNT# | ID BK TP TRANSIT-NO | 1 REGULAR | | | | |

```
1 REGULAR         35000.00 VISN      6.13-060E     118185.50 NET    118185.50
  --------- VISN          --------- LTD                .00 EFT A   3761.42
8 BONUS     560.00 Q-TO-D  40000.00 LTD                .00       3761.42
1 REGULAR  2080.00 Y-TO-D 129230.76 EFTA1                    --- CUR MDCR WAGES---
1 OTHER             1284.41         W2GRP     21.23 OFO*--WAGES--  Q-TO-D
8 BONUS             40000.00 HSAER                         17387.33 SSEC   730.27
  REGULAR   240.00 F-TO-D  15000.00 HSA      600.00 BAL    73967.50 MDCR  1072.53
                                    BAL/LMT           600.00 BAL          17665.87
                                    600.00 LMT    73818.89 FIT
                                    3299.92-BAL    73967.50 ST  KY
                                    75000.00 HSA   75000.00 SUI KY   4274.53
```

A228

                                                      .00 GRCOMP      .00
                                                      .00 NET         .00

PAY ANALYSIS REPORTING



CERIDIAN

086 - ALPHABETIC PAYROLL REGISTER

| | | | |
|---|---|---|---|
| | 12/28/12 | | PAY 26 |
| | REPORT DATE | 086 | PERIOD 6 |
| | B-12/28/12 | | PAGE NO. |
| | CHECKS DATED | | |

REB HEALTH AND BENEFIT SERVICES, LLC
NO.
EMPLOYEE ID       :..... HOURS AND EARNINGS .....  :..... DED AND ADJ ..... :  ..... CHECKS TO NET .....
CO. NAME
EMPLOYEE NAME            PC DESCR  RATE   HOURS  AMOUNT   DESCR  AMOUNT  CODES   Y-TO-D   TYPE   CURRENT   CHECK#

99-XO1-97923
RAMSAY, SCOTT
OO15471307   ***** CONTINUED *****

ALT DATE:              0421-0118-0 8  BONUS      F-TO-D 1       40000.00   BAL/LMT    3299.92-LMT   --WAGES--  Y-TO-D       --TAXES--
DOB:      03/23/60                                                         Q-TO-D 0             1101O0.00 SSEC        4624.20
                                                                           ACHBR   3796.17        166680.17 MDCR       2416.86
                                                                           HSAER    161.48        161128.19 FUTA       31483.60
                                                                           MED      888.12-       31000.00 ST KY
                                                                           DENTL    164.64-      166680.17 SUI KY     9418.03
                                                                           VISN      42.91-      170515.17 FIT
                                                                           W2GRP    148.61      54557.50 MDCR
                                                                           Y-TO-D       --WAGES-- F-TO-D 1  --TAXES--
                                                                           ACHBR   14100.06      54493.81 FIT      791.08
                                                                           HSAER    600.00      54557.50 ST KY    14750.75
                                                                           HSA     3299.92-     55000.00 SUI KY   3191.69
                                                                           MED      316.16-
                                                                           DENTL    611.52-
                                                                           VISN     159.38-
                                                                           W2GRP    551.98
                                                                           MISC1    525.18

99-XO2-O1544
RATLIFF, PALACE ASHTON
                                                                           F-TO-D 1
SS-NO      FRQ B  STAT A      1  REGUL  7.5000  90.00  675.00  ACHBR  152.50 OMO*   15196.88 GROOMP    675.00
7.5000     M/S S  SEX A      1  REGULAR         PRE-TAX ITEMS   20.25-HSAER  23.08 ONO*  14749.83 GRPAY    654.75
.OO E      ST1 KY                401K                          20.25-HSA          638.27 SSEC      28.35
BASE       F#EX OO              401K                   20.25-HSA          OEO          220.35 MDCR      9.78
FCAST      S#EX OO  1  REGULAR         Q-TO-D  687.50  5156.25  401K U   3.00-8FO  E  660.67 FIT      69.08
FILE#  1544                                                               20.25-  E        600.67 FIT      25.79
HIRE  01/03/12      1  REGULAR   Y-TO-D  276.50  2073.75          OEO          600.67 ST1 KY   25.79
PTO-C                                                            OEO          521.75 NET
OT EX  N                                                         000          521.75 EFT A
DSS PT Y                                                                   11680.97 NET     A229

EFT-ACCOUNT#   ID BK  TP  TRANSIT-NO
            A KY S    0421-0117-4                               BAL/LMT   461.60 BAL   --WAGES-- CUR SSEC WAGES  675.00
ALT DATE:     06/17/93                                         Q-TO-D      600.00 LMT   5196.25 CUR MDCR WAGES  675.00
DOB:                                                                   ACHBR  1067.50        5156.25 STEC      216.56
                                                            HSAER   161.56        5156.25 MDCR      74.76
                                                            401K   154.70-       5001.55 FIT      546.30
                                                            Y-TO-D                5156.25 ST KY    204.79
                                                            ACHBR  2897.50        --WAGES--  Y-TO-D  --TAXES--
                                                            HSAER   461.60        5196.88 SSEC    638.27
                                                            401K    447.05-       5196.88 MDCR    220.35
                                                            F-TO-D 1              14749.83 FIT   1609.57
                                                            ACHBR   457.50        7000.00 FUTA
                                                            HSAER    69.24        14749.83 ST KY
                                                            401K     62.21-       15196.88 SUI KY  600.67



086- ALPHABETIC PAYROLL REGISTER

086

12/28/12
REPORT DATE

B-12/28/12.
CHECKS DATED

PAY
26   PERIOD
PAGE NO. 7

HEALTH AND BENEFIT SERVICES, LLC

REB NO.
CO. NAME

99-X02-97949
SCHUTTERS, JENNIFER E

EMPLOYEE ID
EMPLOYEE NAME

99-X02-015044
RATLIFF, PALACE ASHTON
***** CONTINUED *****

| | HOURS AND EARNINGS | | | | DED AND ADJ | | GROSS TO NET | |
|---|---|---|---|---|---|---|---|---|
| PC DESCR | RATE | HOURS | AMOUNT | DESCR | AMOUNT | ADJ CODES | Y-TO-D | TYPE | CURRENT |

SS-NO        FRQ B
BASE  1730.77   M/S S   STAT A
FCAST  80.00E   ST1 KY  SEX F
FILE#  97949    F#EX 00   S#EX 01
HIRE 11/30/09
PTO-C
OT EX N
DSS PT Y

EFT-ACCOUNT#

ID BK TP  TRANSIT-NO
A 54 C   0421-0119-0 8

DOB:

ALT DATE:
DOB:       12/04/57

ALT DATE:

1 REGUL          80.00          1730.77 ACHBR        152.50 ONO*        --WAGES-- F-TO-D 1 --TAXES--
  HSA                               92.31-HSAER       23.08 ONO            47567.32 GRCOMP     1638.46
                                                      23.00 *             48956.27 GRPAY      1615.12
1 --- PRE-TAX ITEMS ---                              92.31-O6OE          1997.31 SSEC        68.79
  401K                              17.31-HSA          1.00-BFO           689.55 MDCR        23.75
  DENTL                             3.79-401K U                          1223.55 FIT        230.41
  VISN                              2.24-             17.31-             2382.01 ST1 KY      81.05
                          Q-TO-D                      O6O                34673.85 NET       1211.12

1 REGULAR        560.00          12115.39 DENTL        3.79-O6OE                    EFT A    1211.12
8 BONUS                          5000.00 VISN          2.24-O6OE         CUR SSEC WAGES     1637.99
                          Y-TO-D                                         CUR MDCR WAGES     1637.99
  OTHER                           --LTD                000                          Q-TO-D  --TAXES--
1 REGULAR       2080.00           44505.84 LIFE                          16465.93 SSEC        691.56
8 BONUS                            461.54 2GRP         5.56 OFO*        16365.83 MDCR        268.76
                                  5000.00 BFTA1                          16300.76 ST KY      848.45
                                                      BAL/LMT             17115.39 SUI KY
EFT-ACCOUNT#              F-TO-D 1                    600.00 BAL          16300.76 ST KY      848.45
                 240.00 BONUS            5192.31 HSAER    600.00 LMT      17115.39 SUI KY
                                  5000.00 HSA          2400.06-BAL      --WAGES-- Y-TO-D  --TAXES--
                                                      2400.06-LMT        47555.10 SSEC     1997.31
                                             HSA       2400.06-LMT        47555.10 SSEC      689.55
                                                      Q-TO-D             46966.27 FIT      7223.55
                                             ACHBR     1067.50           7000.00 FUTA
                                             HSAER      161.48          47110.83 ST KY      2382.01
                                             HSA        646.17-         49967.38 SUI KY
                                             401K       121.17-         --WAGES-- F-TO-D 1  --TAXES--
                                             DENTL      26.53-          9913.97 SSEC        416.38
                                             VISN       15.68-          9913.97 SSEC        143.75
                                             W2GRP      38.92           9845.36 FIT        1941.23
                                                      Y-TO-D             9845.36 MDCR        524.25
                                             ACHER     3965.00          9862.04 ST KY
                                             HSAER      600.00          10192.31 SUI KY
                                             HSA       2400.06-
                                             401K       444.57-
                                             DENTL      98.24-
                                             VISN       58.24-
                                             W2GRP      144.56
                                             MISC1      78.07
                                                      F-TO-D 1
                                             ACHBR      457.50
                                             HSAER      69.16
                                             HSA        276.93-
                                             401K       51.93-
                                             DENTL      11.37-
                                             VISN        6.72-
                                             W2GRP      16.68

A230



CERIDIAN

PAY ANALYSIS REPORTING

| REB | HEALTH AND BENEFIT SERVICES, LLC | | 086- ALPHABETIC PAYROLL REGISTER | | | 086 | | | | PAY 26 | 8 |
|---|---|---|---|---|---|---|---|---|---|---|---|

REB
NO.              HEALTH AND BENEFIT SERVICES, LLC
CO. NAME

086- ALPHABETIC PAYROLL REGISTER          086                                          PAY
                                                                                        26      8
                                                     12/28/12      B-12/28/12      PERIOD.  PAGE NO.
                                                     REPORT DATE   CHECKS DATED

EMPLOYEE ID           . . . . . . HOURS AND EARNINGS . . . . .   . . . . DED AND ADJ . . . : .   . . . . . GROSS TO NET . . . . . . .
EMPLOYEE NAME         PC DESCR   RATE   HOURS   AMOUNT   DESCR   AMOUNT   CODES   Y-TO-D   TYPE   CURRENT   CHECK#

99-X02-97912
WILSON, PATRICIA

SS-NO                   FRQ   B     STAT   T
BASE    1600.00         M/S   S     SEX    F
FILE#   97912           ST1   KY
HIRE    06/18/07        F#EX  01    S#EX   01
TERM
PTO-C   12/13/11
PTO-C
OT EX   N
DSS PT  Y
DOB:

ALT DATE:
DOB:             07/12/54

                                                                  .00 GROCOMP              .00
                                                                  .00 NET                  .00

086- ALPHABETIC PAYROLL REGISTER
GRAND TOTALS

086

REB NO.
CO. NAME — HEALTH AND BENEFIT SERVICES, LLC

PAY 26 / PERIOD PAGE NO. 9
12/26/12 REPORT DATE
B-12/26/12 CHECKS DATED

**HOURS/EARNS CURRENT**

| PC | DESCRIPTION | HOURS | EARNINGS | | PC | DESCRIPTION | HOURS | EARNINGS |
|----|-------------|-------|----------|--|----|-------------|-------|----------|
| 1 | REGULAR | 712.00 | 15,666.93 | | | HSA / TOTAL | 712.00 | 411.54- / 15,255.39- |

**PRE-TAX ITEMS CURRENT**

| DESCRIPTION | | DESCRIPTION | | DESCRIPTION | |
|-------------|--|-------------|--|-------------|--|
| 401K | 20.00 | DENTL | 114.25- | DENTL | 61.42- |
| MED | 73.80 | VISN | 323.45- | VISN | 16.62- |
| AFLPT | 8.52- | TOTAL | 8.52- | TOTAL | 52.26- |

**HOURS/EARNS**

| | PC | DESCRIPTION | HOURS | EARNINGS | | PC | DESCRIPTION | HOURS | EARNINGS |
|---|----|-------------|-------|----------|--|----|-------------|-------|----------|
| Q-TO-D | 1 | REGULAR | 5,215.25 | 112,442.39 | | 8 | BONUS / TOTAL | 5,215.25 | 52,500.00 / 164,942.39 |
| Y-TO-D | 8 | REGULAR | 18,361.00 | 415,341.08 | | 7 | OTHER / TOTAL | 18,361.00 | 2,515.18 / 470,356.26 |
| | 1 | BONUS | | 52,500.00 | | 8 | BONUS / TOTAL | | 52,500.00 / 99,967.79 |
| FLX-1 | 1 | REGULAR | 2,176.50 | 47,467.79 | | | TOTAL | 2,176.50 | |

**DEDUCTION TO NET**

CURRENT:
| $LS1 | 20.00 | CHILD | 1.06 | SPOUS | 31.70 | STD / TOTAL | 22.33 |
| VOLIN | 73.80 | CHILD | 7.42 | SPOUS | 221.90 | STD / TOTAL | 148.89 |

QTD:
| VOLIN | 140.00 | CHILD | 27.56 | SPOUS | 847.62 | STD / TOTAL | 156.31 |
| VOLIN | 60.00 | CHILD | | | | | 1,042.23 |

YTD:
| $LS1 | 1,973.90 | CHILD | 3.18 | SPOUS | 95.10 | STD / TOTAL | 446.67 |
| VOLIN | 221.40 | | | | | | |

**PRE-TAX ITEMS**

QTD:
| HSA | 2,880.78- | DENTL | 429.94- | MED | 2,264.15- | VISN / TOTAL | 16.34- |
YTD:
| HSA | 9,160.00- | DENTL | 1,782.96- | MED | 8,409.70- | VISN / TOTAL | 3,683.50- / 414.20- |
FTD1:
| HSA | 1,234.62- | DENTL | 184.26- | MED | 970.35- | VISN / TOTAL | 13,333.42- |

**EARNINGS FROM DEDUCTIONS**

QTD:
| HSA | 813.43- | HSAER | | | | STD / TOTAL | 49.86- |
| HSA | 59.64- | | | | | | 1,575.59- |
YTD:
| HSA | 221.52- | HSAER | | | | | |
| HSA | 345.56- | | | | | | |
FTD1:
| $LS1 | 25.56- | HSAER | | | | | |

**MEMO DEDUCTION**

CURRENT:
| ACHBR | 2,086.88 | HSAER | 115.16 | VISN / TOTAL | 635.08 |
QTD:
| ACHBR | 14,608.16 | HSAER | 807.56 | VISN / TOTAL | 3,624.16 |
YTD:
| ACHBR | 817.04 | HSAER | 2,677.04 | MISC1 | 670.47 | VISN / TOTAL | 446.99 |
FTD1:
| ACHBR | 95.16 | HSAER | 345.96 | | | |

**OTHER DEDUCTIONS**

CURRENT:
| W2GRP | 31.72 |
QTD:
| W2GRP | 212.04 |
QTD:
| W2GRP | 817.04 |
YTD:
| W2GRP | 95.16 |
FTD1:
| W2GRP | 95.16 |

**DED BALANCES**
$LS1

**GROSS TO NET**

| | WAGES | SOCSEC / MEDICR | FEDERAL | STATE | LOCAL | SDI/UC | DEDUCTION | NET |
|---|-------|------------------|---------|-------|-------|--------|-----------|-----|
| CUR | GRPAY 14731.13 | 421.03 / 215.70 | 1763.25 | 741.63 TOT | | | 148.89 | 11440.63 |
| | GRCOMP 15255.39 | | | 741.63 KY | | | | |
| QTD | GRPAY 158378.11 | 4319.00 | 28445.04 | 8441.02 TOT | 2,677.04 | | 1042.23 | 113819.32 |

CERIDIAN

```
REB     HEALTH AND BENEFIT SERVICES, LLC                    086- ALPHABETIC PAYROLL REGISTER          12/28/12        B-12/28/12     PAY
NO.        CO. NAME                                                GRAND TOTALS                      REPORT DATE      CHECKS DATED     26    10
                                                                                                        086           SDI/UC        PERIOD  PAGE NO.
GROSS TO NET        WAGES           SOCSEC          FEDERAL      STATE          LOCAL                               DEDUCTION          NET

YTD.       GRCOMP      162061.61     MEDICR                     8441.02 KY                                            3624.16      334029.98
           GRPAY       447122.80    2311.50       63329.04     23065.86 TOT
           GRCOMP      460456.22    6542.31                    23065.86 KY
                                    6531.45
*****************************************************************************************************************

WAGE AND TAXES                     QTD WAGES        QTD TAXES         YTD WAGES        YTD TAXES         FX1 WAGES         FX1 TAXES       FX2 WAGES      FX2 TAXES
EE SSEC TO LMT       102833.41       4319.00         393864.71        16542.31         43040.80          1807.70
   MDCR TO LMT       159413.58       2311.50         450444.88         6531.45         97598.30          1415.16
FIT                   15878.11      28445.04         447122.80        63329.04         97167.58         21046.61
FUTA TO LMT            1467.85                         61961.75          663.63
SIT
KY KENTUCKY          158600.15       8441.02         447939.84        23065.86         97252.74          5340.32
SDI/UC
KY KENTUCKY          164942.39                       470356.26                         99967.79
*****************************************************************************************************************
CURRENT TAX RECAP     TYPE    O     JURISDICTION                     TAXABLE WAGES      LIMIT          WAGES TO LIMIT      RATE         AMOUNT

FORM 8109 FEDERAL DEPOSIT                                                             LIABILITIES
EMPLOYEE SSEC          421.03                                                        WAGES TO LIMIT     RATE         AMOUNT
EMPLOYEE MDCR          215.70                                                                                                  FX1 TAXES
EMPLOYER SSEC          621.53                                                                                                  621.53 SSEC
EMPLOYER MDCR          215.72                                                                                                  215.72 MDCR
EMPLOYEE FIT         1,763.25                                                                                                  837.25
TOTAL DEPOSIT        3,237.23                                                                                                  371.24
                                                                                                                              373.01
                             FUTA    STANDARD RATE                    14,845.38        7000              206.21     7.65 %
                             FUTA    KENTUCKY                                          7000           61,961.75      .60 %
                             TOTAL                                                                                   .60 %

                             SUI     KY-KENTUCKY                      15,666.93        9000              210.00     2.70 %     5.67
                             TOTAL                                    15,666.93 ***************************************         5.67
                                                                     ********************                                      *****
                             SIT     KY-KENTUCKY                      14,762.85        STATE/LOCAL TAXES WITHHELD               5.67
                             TOTAL                                    14,762.85        LIMIT  WAGES TO LIMIT      RATE          AMOUNT
*****************************************************************************************************************
FEDERAL 401-K DEFERRAL LIMIT                     CR RED                               17000                                    11,440.63
FEDERAL 401-K CATCH-UP DEFERRAL LIMIT                                                  5500                                    11,440.63 *
EMPLOYEE CENSUS            ACTIVE EMPS    9           NET PAY ANALYSIS                 # DEP ADV   9     EFTS TOTAL             741.63
                          TERM EMPS      2                                            # EMPS PAID  9     TOTAL NET             741.63
                          TOTAL EMPS    11                                                              TOTAL TAXES           4,357.54 **
                                                                                                                             15,798.17 ***
*****************************************************************************************************************
```

PAY ANALYSIS REPORTING

A143

CERIDIAN

PAY ANALYSIS REPORTING

| REB NO. | HEALTH AND BENEFIT SERVICES, LLC<br>CO. NAME | 086- ALPHABETIC PAYROLL REGISTER<br>BILLING AUDIT INFORMATION | 086 | | PAY<br>26<br>PERIOD | PAGE NO.<br>11 |
|---|---|---|---|---|---|---|
| | | 12/28/12<br>REPORT DATE | B-12/28/12<br>CHECKS DATED | | | |

11 EMPLOYEES INCLUDED.

12 DATA GROUPS SELECTED.

1 COPY PRINTED.

OUTPUT MEDIA - PRINTED - YES

ORCHESTRATOR PRINT - NO

CD-ROM FILE - NO

REPORT TYPE - PAY ANALYSIS REPORT

DETAIL

I/P   12/12/11  10.04.43      R34.08
O/P   12/12/21  13.54.23      R34.73
PRT   12/12/21  13.54.42

A144

CERIDIAN

PAY ANALYSIS REPORTING

REB    HEALTH AND BENEFIT SERVICES, LLC

086- ALPHABETIC PAYROLL REGISTER

| | | | 12/27/13 | | 086 | | B-12/27/13 | | PAY 26 |
| NO.    CO. NAME | | | REPORT DATE | | | | CHECKS DATED | | PERIOD PAGE NO. 1 |

EMPLOYEE ID

EMPLOYEE NAME

| | . . . . HOURS AND EARNINGS . . . . | | | | . . . DED AND ADJ . . . | | . . . . . GROSS TO NET . . . . | |
| | PC DESCR RATE HOURS AMOUNT | | | | DESCR AMOUNT CODES | | Y-TO-D TYPE CURRENT CHECK# |

99-X02-01615

BROWN, WYATT W

| | | | | | | | | |
| | 1 REGUL 80.00 1461.54 | | | ACHBR | 152.50 OMO* | | 35400.04 GRCOMP | 1361.54 |
| | HSA 100.00-HSAER | | | | 23.08 ONO * | | 34103.16 GRPAY | 1311.66 |
| | | | | -- PRE-TAX ITEMS -- | | 23.00 | | 2186.63 SSEC | 84.10 |
| | | | | | 43.85-HSA | 100.00-060E | | 511.39 MDCR | 19.67 |
| | 1 401K | | | | 3.79-401K U | | 37955.44 ST1 KY | 144.32 |
| SS-NO 1461.54 FRQ B STAT A | DENTL | | | | 2.24- | | 1633.92 TOTDED | 63.92 |
| BASE M/S S SEX M | VISN | | | | | | 1785.92 SSEC | 999.56 |
| FCAST 80.00E ST1 KY | 1 REGULAR 560.00 10230.78 DENTL | | | | 3.79-060E | | 25827.26 NET | 999.56 |
| FILE# 1615 F#EX O1 S#EX O1 | Y-TO-D | | -VISN | | 2.24-060E* | | EFT A |
| HIRE 01/16/12 SADJ NRES | | | | | .92 | | CUR SSEC WAGES | 1356.47 |
| PT EX | 1 REGULAR 2080.00 38000.04 VOLIN | | | -LTD | | CUR MDCR WAGES | 1356.47 |
| OT EX N | | | | | 000 | | --WAGES-- Q-TO-D | --TAXES-- |
| DSS PT Y | 1 REGULAR F-TO-D 1 160.00 2923.08 LIFE | | | | 000 | | 9495.29 SSEC | 588.71 |
| | | | | W2GRP | | .96 OFO* | | 9495.29 MDCR | 137.68 |
| EFT-ACCOUNT# | HSAER | | | BAL/LMT | | | | 9181.62 FIT | 1010.73 |
| | | | | | | 600.00 BAL | | 9188.34 ST KY | 441.14 |
| ALT DATE: | | | | | | 600.00 LMT | | 10230.78 SUI KY |
| DOB: 02/01/79 | | | | | Q-TO-D | | --WAGES-- Y-TO-D | --TAXES-- |
| | HSA | | | | | 2600.00-BAL | | 35268.22 SSEC | 2186.63 |
| ID BK TP TRANSIT-NO | | | | | | 2600.00-LMT | | 35268.22 MDCR | 511.39 |
| A PQ C 2421-7612-9 | | | | | Q-TO-D | | | 34103.16 FUTA | 3755.44 |
| | | | | | ACHBR | 1067.50 | | 34120.10 FITA |
| | | | | | HSAER | 161.68 | | 34120.10 ST KY | 1638.52 |
| | | | | | HSA | 700.00- | | 38000.04 SUI KY |
| | | | | | 401K | 306.95- | | --WAGES-- F-TO-D 1 | --TAXES-- |
| | | | | | DENTL | 26.53- | | 2712.94 SSEC | 168.20 |
| | | | | | VISN | 15.68- | | 2712.94 MDCR | 39.34 |
| | | | | | VOLIN | 6.44 | | 2623.32 FIT | 288.78 |
| | | | | | W2GRP | 6.72 | | 2625.24 ST KY | 126.04 |
| | | | | | | | | 2923.08 SUI KY |
| | | | | | $LS1 | 160.00 | | |
| | | | | | | Y-TO-D | | |
| | | | | | ACHBR | 305.00 | | |
| | | | | | ACHBR | 46.08 | | |
| | | | | | HSAER | 3965.00 | | |
| | | | | | HSA | 600.00 | | |
| | | | | | HSA | 2600.00- | | |
| | | | | | 401K | 1140.10- | | |
| | | | | | DENTL | 98.54- | | |
| | | | | | VISN | 58.24- | | |
| | | | | | VOLIN | 23.92 | | |
| | | | | | W2GRP | 24.96 | | |
| | | | | | MISC1 | 20.00- | | |
| | | | | | | F-TO-D 1 | | |
| | | | | | ACHBR | 305.00 | | |
| | | | | | ACHBR | 46.08 | | |
| | | | | | HSAER | 200.00- | | |
| | | | | | HSA | 87.70- | | |
| | | | | | 401K | | | |
| | | | | | DENTL | 7.58- | | |
| | | | | | DENTL | 4.48- | | |
| | | | | | VISN | 1.84 | | |
| | | | | | VOLIN | 1.92 | | |
| | | | | | W2GRP | | | |

A349

2013

GUARDIAN

# 086- ALPHABETIC PAYROLL REGISTER

HEALTH AND BENEFIT SERVICES, LLC

086

| | |
|---|---|
| REB NO. | |
| CO. NAME | |
| EMPLOYEE ID | |
| EMPLOYEE NAME | |

· · · · · HOURS AND EARNINGS · · · · · ·
PC DESCR    RATE    HOURS    AMOUNT    DESCR

DED AND ADJ
AMOUNT CODES

· · · · GROSS TO NET · · · ·
TYPE    CURRENT    CHECK#

12/27/13
REPORT DATE

B-12/27/13
CHECKS DATED

Y-TO-D

PAY
PERIOD  26
PAGE NO.  2

---

**99-X03-97913**
FLORENCE, OTIS

| | | | | | |
|---|---|---|---|---|---|
| SS-NO | | FRQ | B | STAT | T |
| BASE | 14.7500 | M/S | M | SEX | M |
| FILE# | 97913 | ST1 | KY | | |
| HIRE | 01/01/07 | F#EX | OO | S#EX | OO |
| TERM | 03/08/13 | | | | |
| PTO-C | | | | | |
| OT EX | N | | | | |

ALT DATE:
DOB:

10

1  REGULAR

Y-TO-D
488.50    7205.39

| | |
|---|---|
| 7106 .04 GRCOMP | .00 |
| 7106 .04 GRPAY | .00 |
| 440 .57 SSEC | .00 |
| 102 .84 MDCR | .00 |
| 568 .44 FIT | .00 |
| 350 .48 ST1 KY | .00 |
| 524 .95 TOTDED | .00 |
| 5030 .16 NET | .00 |
| --WAGES-- Y-TO-D | --TAXES-- |
| 7106 .04 SSEC | 440 .57 |
| 7106 .04 MDCR | 103 .04 |
| 7106 .04 FIT | 668 .88 |
| 7000 .00 FUTA | |
| 7106 .04 ST1 KY | 350 .44 |
| 7205 .39 SUI KY | |

---

**99-X03-97914**
FLORENCE, STEVE

| | | | | | |
|---|---|---|---|---|---|
| SS-NO | | FRQ | B | STAT | T |
| BASE | 15.2500 | M/S | M | SEX | M |
| FILE# | 97914 | ST1 | KY | | |
| HIRE | 01/01/07 | F#EX | O4 | S#EX | O4 |
| TERM | 03/08/13 | | | | |
| PTO-C | | | | | |
| OT EX | N | | | | |

ALT DATE:
DOB:

11

1  REGULAR

Y-TO-D
499.50    7617.40

| | |
|---|---|
| 6415 .15 GRCOMP | .00 |
| 6415 .15 GRPAY | .00 |
| 397 .74 SSEC | .00 |
| 93 .02 MDCR | .00 |
| 368 .02 FIT | .00 |
| 295 .01 ST1 KY | .00 |
| 83 .05 TOTDED | .00 |
| 5180 .31 NET | .00 |
| --WAGES-- Y-TO-D | --TAXES-- |
| 6415 .15 SSEC | 397 .74 |
| 6415 .15 MDCR | 93 .02 |
| 6415 .15 FIT | 366 .02 |
| 6418 .15 FUTA | |
| 6415 .15 ST1 KY | 295 .01 |
| 7617 .40 SUI KY | |

---

**99-X03-97915**
FLORENCE, STEVEN JR

| | | | | | |
|---|---|---|---|---|---|
| SS-NO | | FRQ | B | STAT | T |
| BASE | 11.5000 | M/S | M | SEX | M |
| FILE# | 97915 | ST1 | KY | | |
| HIRE | 01/01/07 | F#EX | OO | S#EX | O2 |
| TERM | 03/08/13 | PTO-C | S#EX | | |
| PTO-C | 10.00 | FADJ | $ | OO | |
| OT EX | N | | | | |

ALT DATE:
DOB:

12

1  REGULAR

Y-TO-D
407.50    4686.25

| | |
|---|---|
| 4300 .20 GRCOMP | .00 |
| 4300 .20 GRPAY | .00 |
| 266 .61 SSEC | .00 |
| 62 .35 MDCR | .00 |
| 546 .48 FIT | .00 |
| 180 .02 ST1 KY | .00 |
| 31 .15 TOTDED | .00 |
| 3213 .59 NET | .00 |
| --WAGES-- Y-TO-D | --TAXES-- |
| 4300 .20 SSEC | 266 .61 |
| 4300 .20 MDCR | 62 .35 |
| 4300 .20 FIT | 546 .48 |
| 4300 .20 FUTA | |
| 4300 .20 ST1 KY | 180 .02 |
| 4686 .25 SUI KY | |

PAY ANALYSIS REPORTING

7013

CERIDIAN

HEALTH AND BENEFIT SERVICES, LLC

086- ALPHABETIC PAYROLL REGISTER

086

12/27/13
REPORT DATE

B-12/27/13
CHECKS DATED

PAY
26
PERIOD

PAGE NO.
3

| REB | | | | |
| NO. | CO. NAME | | | |
| EMPLOYEE ID | | ...... HOURS AND EARNINGS ...... | .... DED AND ADJ .... | ..... GROSS TO NET ..... |
| EMPLOYEE NAME | | PC DESCR RATE HOURS AMOUNT | DESCR AMOUNT CODES | Y-TO-D TYPE CURRENT CHECK# |

---

99-X02-01543
FLORENCE, WHITNEY E

| | | | |
|---|---|---|---|
| SS-NO | FRQ B | STAT T | 1 REGULAR Y-TO-D 80.00 2884.62 ACHER 294.23 QMO* 72600.06 GRCOMP 2792.31 |
| BASE 8.5000 | M/S S | SEX F | HSA 166.50 1415.26 ONO 23.08 ONO* 71424.94 GRPAY 2745.65 |
| FILE# 1543 | ST1 KY | | 4478.58 SSEC 172.17 |
| HIRE 01/03/12 | F#EX OO | S#EX OO | 23.00 QMO* 1047.41 MDCR 40.26 |
| TERM 03/08/13 | | | 92.31-060E 7408.82 FIT 144.10 |
| PTO-C | | | 1353.85 GRCOMP 2104.48 |
| OT EX N | | | 1353.85 GRPAY 2104.48 |
| DSS PT Y | | | 86.57 SSEC 2776.81 |
| | | | 20.25 MDCR 2776.81 |
| ALT DATE: | | | .00 FIT |
| DOB: | | | 93.29 FIT 31.32 |
| | | | 131.42 NET KY |
| | | | 1112.02 NET KY |
| | | | --WAGES-- Y-TO-D --TAXES-- |
| | | | 1396.31 SSEC 86.57 |
| | | | 1396.31 MDCR 20.25 |
| | | | 1353.85 FIT 93.29 |
| | | | 1396.31 FUTA |
| | | | 1353.85 ST KY |
| | | | 1415.26 SUI KY |

---

99-X02-97897
HURST, DAVID T

| | | | |
|---|---|---|---|
| SS-NO 2884.62 | FRQ B | STAT A | 1 REGUL 80.00 2884.62 ACHER 294.23 QMO* 72600.06 GRCOMP 2792.31 |
| BASE 80.00E | M/S M | SEX M | HSA 92.31-HSAER 92.31-BFO 71424.94 GRPAY 2745.65 |
| FCAST | KY | | 4478.58 SSEC 172.17 |
| FILE# 8797 | F#EX O2 | S#EX O4 | ---- PRE-TAX ITEMS ---- 1047.41 MDCR 40.26 |
| HIRE 11/07/06 | | | 26.54-HSA 26.54 401K 7408.82 FIT 144.10 |
| HIRE 11/07/06 | | | 8.77-401K U 8.77-MED 2104.48 EFT B 144.10 |
| PTO-C | | | 26.92-BFO 54740.66 NET 2104.48 |
| OT EX N | | | 1 REGULAR Q-TO-D 8.77-060E 8.77-060E |
| DSS PT Y | | | 560.00 20192.34 VISN 7.58-060E --WAGES-- Q-TO-D --TAXES-- |
| | | | 3.77-060E 19437.67 SSEC 1205.14 |
| EFT-ACCOUNT# | ID BK TP TRANSIT-NO | 1 REGULAR V-TO-D .000 19437.67 MDCR 281.85 |
| | B JR C 0830-0013-7 | 2080.00 75000.12 LIFE 4.62 OFO* 19219.55 FIT 1992.48 |
| | | 1 REGULAR F-TO-D 1 --LTD 19251.89 ST KY 1008.70 |
| | | 160.00 EFTB2 20192.34 SUI KY |

---

DOB: 05/11/71

| | | |
|---|---|---|
| ALT DATE: | HSAER BAL/LMT -- BAL 600.00 BAL 72235.10 SSEC 4478.58 |
| DOB: | | 600.00 LMT 72235.10 MDCR 1047.41 |
| | HSA Q-TO-D -- 2400.06-BAL 71424.94 FUTA |
| | | 2400.06-LMT 7000.00 FUTA 3748.82 |
| | ACHBR 2059.61 71424.94 ST KY 7409.47 |
| | HSAER 161.43 7500.10 SUI KY |
| | HSA 646.12- --WAGES-- F-TO-D 1 --TAXES-- |
| | 4K 185.78- 5553.62 SSEC 344.33 |
| | DENTL 61.39- 5553.62 MDCR 80.53 |
| | MED 53.06- 5491.30 FIT 569.28 |
| | VISN 26.39- 5500.54 ST KY 288.20 |
| | W2GRP 32.34 5769.24 SUI KY |
| | --------- Y-TO-D -- |
| | ACHBR 7649.98 |
| | HSAER 600.00 |
| | HSA 2400.06- |
| | 401K 600.00 |
| | MED 228.02- |
| | DENTL 174.34- |

A350

PAY ANALYSIS REPORTING

A147

2013

CERIDIAN

PAY ANALYSIS REPORTING

(14)

| REB | HEALTH AND BENEFIT SERVICES, LLC | 086- ALPHABETIC PAYROLL REGISTER | 086 | | | PAY 26 | 4 |
| NO. | CO. NAME | | | 12/27/13 | B-12/27/13 | PERIOD | PAGE NO. |

| EMPLOYEE ID | | PC DESCR | . . . HOURS AND EARNINGS . . . | . . . DED AND ADJ . . . | REPORT DATE | CHECKS DATED | |
| EMPLOYEE NAME | | | RATE    HOURS    AMOUNT    DESCR | DESCR    AMOUNT    CODES | . . . GROSS TO NET . . . | |
| | | | | | Y-TO-D    TYPE    CURRENT | CHECK# |

99-X02-97897
HURST, DAVID T
***** CONTINUED *****

| | VISN | --- Y-TO-D --- |
| | W2GRP | 82.72-- |
| | F-TO-D --- | 120.12 |
| | ACHER | 588.46 |
| | HSAER | 46.08 |
| | HSA | 184.62- |
| | 401K | 53.08-- |
| | MED | 17.54- |
| | DENTL | 15.16-- |
| | VISN | 7.54-- |
| | W2GRP | 9.24 |

99-X01-97923
RAMSAY, SCOTT

| SS-NO |  | 5000.00 |  | STAT A |  | 1 | REGUL | 80.00 | 5000.00 | ACHER | 623.66 | OMO* | 127500.10 | GRCOMP | 4903.85 |
| BASE | 80.00E | | M/S M | SEX M | | | FSAH | | 96.15-- | FSAH | 96.15-OGOE | 120772.60 | GRPAY | 4645.10 |
| FCAST | 97923 | | ST1 KY | STAT A | | | | PRE-TAX ITEMS --- | | MED | 229.10-OGOE | 7049.40 | SSEC | |
| FILE# | | | F#EX 03 | SEX 03 | | | DENTL | | 23.52-DENTL | DENTL | 23.52-OGOE | 1759.61 | MDCR | 67.68 |
| HIRE 01/01/07 | | | FADJ $ | 13.85 | | | MED | | 229.10-VISN | OGOE | 6.13-OGOE | 17423.24 | FIT | 669.64 |
| TPDC | | | | | | | VISN | | 6.13-LTD | | | 6745.44 | ST KY | 359.44 |
| OT EX N | | | | | | 1 | REGULAR | Q-TO-D --- | 35000.00 | LIFE | | OFD* | 87794.91 | EFT A | 3648.34 |
| DSS PT Y | | | | | | | | Q-TO-D --- | 22.29 | OFD* | | | | EFT A | 3648.34 |

401 W2GRP — 4667.39

ALT ACCOUNT#
ID BK TP    TRANSIT-NO
A 54 C    0421-0119-0

| | | | | | 1 | REGULAR | F-TO-D 1 | 130000.00 | ACHER | 4365.62 | CUR MDCR WAGES | 25019.59 | SSEC | 473.74 |
| | | | | | 1 | REGULAR | F-TO-D 1 | 160.00 | FSAH | 673.05-- | --WAGES-- Q-TO-D | 32671.73 | MDCR | 473.74 |
| | | | | | 1 | REGULAR | 160.00 | 10000.00 | FSAH | 2499.90-BAL | BAL/LMT | 2499.90-BAL | 32515.70 | FIT | 4687.48 |
| | | | | | | | | | MED | 1603.70-- | Q-TO-D --- | 2499.90-LMT | 35000.00 | ST KY | 1816.00 |
| | | | | | | | | | DENTL | 164.64-- | | | 32671.73 | ST KY | |

| | | | | | | | | | ACHER | 16215.16 | Y-TO-D --- | 113700.00 | SSEC | --TAXES-- |
| | | | | | | | | | FSAH | 2499.90-- | --WAGES-- Y-TO-D | 121352.14 | MDCR | 6745.44 |
| | | | | | | | | | MED | 5956.60-- | --WAGES-- F-TO-D 1 | 120772.60 | FIT | 1759.61 |
| | | | | | | | | | DENTL | 611.52-- | WAGES-- F-TO-D 1 | 7000.00 | FUTA | 17423.24 |
| | | | | | | | | | VISN | 219.58 | | 121352.14 | ST KY | 6745.44 |
| | | | | | | | | | W1GRP | 579.54 | | 130000.00 | SUI KY | --TAXES-- |

| | | | | | | | | | ACHER | 1247.32 | F-TO-D 1 | 1682.64 | MDCR | 135.32 |
| | | | | | | | | | FSAH | 192.30-- | | 9290.20 | FIT | 135.36 |
| | | | | | | | | | MED | 458.20-- | | 9334.78 | ST KY | 1339.28 |
| | | | | | | | | | DENTL | 47.04-- | | 10000.00 | SUI KY | 518.88 |
| | | | | | | | | | VISN | 12.26-- | | 3352.76 | GRCOMP | |
| | | | | | | | | | W2GRP | 44.58 | | 3352.76 | GRPAY | .00 |
| | | | | | | | | | | | | 214.32 | SSEC | .00 |
| | | | | | | | | | | | | 50.12 | MDCR | .00 |

A351

99-X02-01544
RATLIFF, PALACE ASHTON
2023 WINCHESTER RD
PARIS KY 40361

DOB:    03/23/60
ALT DATE:

| | | | | | 1 | REGULAR | Y-TO-D --- | 408.00 | | | | 3468.00 | | .00 |

CERIDIAN

PAY ANALYSIS REPORTING

REB     HEALTH AND BENEFIT SERVICES, LLC
NO.     CO. NAME

086- ALPHABETIC PAYROLL REGISTER          086

12/27/13          B-12/27/13          PAY
REPORT DATE       CHECKS DATED         26    PERIOD
                                       PAGE NO. 5

EMPLOYEE ID
EMPLOYEE NAME                 PC DESCR RATE HOURS AMOUNT  DESCR AMOUNT CODES  Y-TO-D TYPE CURRENT  CHECK#

..... HOURS AND EARNINGS .....   .... DED AND ADJ ....   ........ GROSS TO NET ........
                                                          Y-TO-D

99-X02-01544
RATLIFF, PALACE ASHTON
     ***** CONTINUED *****

SS-NO                 FRQ  B   STAT  T              BAL/LMT ---------    354.36 FIT          .00 GROOMP       .00
BASE  8.5000          M/S  S   SEX   M              415.44 BAL          132.75 NET           .00 GRPAY        .00
FILE# 1544            ST1  KY                       600.00 LMT         2601.21 ST1 KY        .00 SSEC         .00
HIRE  01/03/12        F#EX OO  S#EX  OO             2456.65-BAL       --WAGES-- Y-TO-D      --TAXES--    1781.55 SSEC        .00
TERM                                                3649.88-LMT        3456.80 SSEC       214.32 MDCR        .00
PTO-C 03/08/13                                                         3456.80 MDCR       50.12 MDCR        .00
OT EX  N                                                               3352.76 FITA      354.36 STI KY       .00
DSS PT  Y                                                              3456.80 FUTA
ALT DATE:                                                              3352.76 ST KY     132.75
DOB:                                                                   3468.00 SUI KY

99-X02-97949
SCHUTTERS, JENNIFER E

                      1  REGULAR         Y-TO-D               ----- Y-TO-D -----   28697.21 GROOMP       .00
                     3P VAC PAYOUT    1400.00  30288.47 HSAER  2745.00       28288.76 GRPAY        .00
                                       40.00     865.39 HSA    415.44 ACHBR                 1781.55 SSEC        .00
                                                               415.44 HSAER     --WAGES-- Y-TO-D      --TAXES--   1781.55 SSEC
                                                               2456.65 HSA      28734.60 SSEC    1781.55 MDCR        .00
                                                               302.92 401K      28734.60 MDCR    416.65 MDCR        .00
SS-NO                 FRQ  B   STAT  T              66.33- DENTL              28288.76 FIT      3877.21 STI KY       .00
BASE  1730.77        M/S  S   SEX   F              39.20- VISN               7000.00 FUTA
FILE# 7949           ST1  KY                       142.92 W2GRP              28431.68 ST KY    1781.55
HIRE  11/30/09       F#EX OO  S#EX  O1                                       31153.86 SUI KY   1413.07
TERM  09/04/13
PTO-C
OT EX  N
DSS PT  Y
ALT DATE:
DOB:     12/04/57



CERIDIAN

# 086- ALPHABETIC PAYROLL REGISTER
## GRAND TOTALS

HEALTH AND BENEFIT SERVICES, LLC

| | | | | | 086 | 12/27/13 REPORT DATE | B-12/27/13 CHECKS DATED | PAY 26 PERIOD | PAGE NO. 6 |

| REB NO. | CO. NAME | | | | |

```
HOURS/EARNS          PC  DESCRIPTION      HOURS        EARNINGS
CURRENT              1   REGULAR          240.00       9,346.16
                         HSA                           192.31-

PRE-TAX ITEMS            PC  DESCRIPTION               EARNINGS
CURRENT                  1   401K                      70.39-
                             MED                       237.87-

*********************************************************
HOURS/EARNS          PC  DESCRIPTION      HOURS        EARNINGS
Q-TO-D               1   REGULAR          1,680.00     65,423.12
Y-TO-D               1   REGULAR          9,610.00     297,680.93

FLX-1                1   REGULAR          480.00        18,692.32

*********************************************************
DEDUCTION TO NET
CURRENT              VOLIN                               .92
QTD                  VOLIN                              6.44
YTD                  $LS1                             160.00
FTD1                 VOLIN                               1.84

EARNINGS FROM DEDUCTIONS
QTD                  FSAH              673.05-      HSA
YTD                  FSAH            2,499.90-      HSA
FTD1                 FSAH              192.30-      HSA

PRE-TAX ITEMS
QTD                  401K              492.73-      DENTL
YTD                  401K            2,133.06-      DENTL
FTD1                 401K              140.78-      DENTL

MEMO DEDUCTION
CURRENT              ACHBR           1,070.39       HSAER
QTD                  ACHBR           7,492.73       HSAER
YTD                  ACHBR          30,575.14       HSAER
FTD1                 ACHBR           2,140.78       HSAER

OTHER DEDUCTIONS
CURRENT              W2GRP              27.87
QTD                  W2GRP             195.09
YTD                  W2GRP             867.54
FTD1                 W2GRP              55.74

DED BALANCES         FSAH                           HSA
GROSS TO NET             WAGES                      FEDERAL
                         2,499.90-                  7,456.71-

CUR  GRPAY       8702.41        SOCSEC
     GRCOMP      9057.70        MEDICR
QTD  GRPAY      60916.87        SDSEC
     GRCOMP     63403.90
YTD  GRPAY     277117.46
     GRCOMP    2867225.41
***********************************
WAGE AND TAXES    QTD WAGES
EE SSEC TO LMT    53952.55
```

Continued columns:

```
DENTL                           34.89-
VISN                             1.14-
TOTAL                          355.29-

PC  DESCRIPTION      HOURS        EARNINGS
    FSAH                          96.15-
    TOTAL            240.00       9,057.70

*********************************************************
EARNINGS                         HOURS        EARNINGS
65,423.12                                    865.39
297,680.93           9,650.00    298,546.32
3P   VAC PAYOUT      40.00
     TOTAL           9,650.00    298,546.32
     TOTAL           480.00       18,692.32

*********************************************************
DESCRIPTION          HOURS        EARNINGS
                                   .92
                                  6.44
                     183.92
                       1.84

                     HSA
                     HSA
                     HSA

MED                  244.23-
MED                  950.73-
MED                   69.78-

HSAER
HSAER
HSAER

DENTL
VISN
TOTAL
```

```
                   FEDERAL          STATE             LOCAL            SDI/UC           DEDUCTION        NET

1098.67            466.56 TOT       1,615.44          PC DESCRIPTION   HOURS            EARNINGS
256.27             466.56 KY                          FSAH                              240.00
127.61             3265.92 TOT      VISN
3345.06            3265.92 KY       TOTAL
893.27             14535.39 TOT     VISN
16901.97           14535.39 KY      TOTAL
4063.84            14535.39 KY      TOTAL

1,346.17-                           VISN                               84.98-
7,456.71-          23.92            TOTAL            2,487.03-
384.62-                             VISN              339.54-
                                    TOTAL            9,607.95-
244.23-   MED                                        24.28-
950.73-   MED      MISC1            1,665.09-   VISN  710.58-
69.78-    MED                       475.74-    MED

46.00
322.96
1,615.44
92.16              20.00-

HSA                HSAER            1,615.44
```

```
QTD TAXES          YTD WAGES        YTD TAXES        FX1 WAGES        FX1 TAXES        FX2 WAGES        FX2 TAXES
3345.06            272612.42        16901.97         9949.20          616.85                            206310.80

                                                                      .92
                                                                      6.44
                                                                     183.92
                                                                       1.84

                                    2,487.03-        84.98-
                                    339.54-          6752.38
                                    9,607.95-        6.44             457715.49
                                    24.28-
                                    710.58-          823.07
```

PAY ANALYSIS REPORTING

CERIDIAN

PAY ANALYSIS REPORTING

**086- ALPHABETIC PAYROLL REGISTER**
**GRAND TOTALS**

| | PAY 26 |
|---|---|
| PERIOD | 7 |
| PAGE NO. | |

REB | HEALTH AND BENEFIT SERVICES, LLC | 086 | 12/27/13 REPORT DATE | B-12/27/13 CHECKS DATED

NO. CO. NAME

**WAGE AND TAXES**

| | QTD WAGES | QTD TAXES | YTD WAGES | YTD TAXES | FX1 WAGES | FX1 TAXES | FX2 WAGES | FX2 TAXES |
|---|---|---|---|---|---|---|---|---|
| MDCR TO LMT | 61604.69 | 893.27 | 280264.56 | 4063.84 | 17601.34 | 255.23 | | |
| FIT | 60916.87 | 7690.69 | 277117.46 | 34482.39 | 17404.82 | 2197.34 | | |
| FUTA TO LMT | | | 50568.46 | | | | | |
| SIT | | | | | | | | |
| KY KENTUCKY | 61111.96 | 3265.92 | 277985.00 | 14535.39 | 17460.56 | 933.12 | | |
| SDI/UC | | | | | | | | |
| KY KENTUCKY | 65423.12 | | 298546.32 | | 18692.32 | | | |

**CURRENT TAX RECAP**

| TYPE | JURISDICTION | TAXABLE WAGES | LIMIT | LIABILITIES WAGES TO LIMIT | RATE | AMOUNT |
|---|---|---|---|---|---|---|
| 0 | VOID/MANUAL CHECKS INCLUDED | | | | | |

**FORM 8109 FEDERAL DEPOSIT**

| | | TAXABLE WAGES | LIMIT | WAGES TO LIMIT | RATE | AMOUNT |
|---|---|---|---|---|---|---|
| EMPLOYEE SSEC | 256.27 | | 8,800.67 | 113700 | 4,133.28 | 6.20 % | 256.26 SSEC |
| EMPLOYEE MDCR | 127.61 | | 8,800.67 | UNLIM | 8,800.67 | 1.45 % | 127.61 MDCR |
| EMPLOYER SSEC | 256.26 | | | | | | |
| EMPLOYER MDCR | 127.61 | | | | | | |
| EMPLOYEE FIT | 1,098.67 | | | | | | |
| TOTAL DEPOSIT | 1,866.42 | | 8,772.80 | 7000 | 50,568.46 | 7.65 % | 383.87 |
| | | STANDARD RATE | 7000 | .00 | .60 % | .00 |
| | FUTA KENTUCKY CR RED | | | | .90 % | 455.12 |
| | FUTA TOTAL | | | | | 455.12 |
| | SUI KY-KENTUCKY | 9,346.16 | 9300 | .00 | 3.20 % | .00 |
| | SUI TOTAL | 9,346.16 | | | | .00 |
| | SIT KY-KENTUCKY | ***** STATE/LOCAL TAXES WITHHELD ***** | | | | AMOUNT |
| | | TAXABLE WAGES | LIMIT | WAGES TO LIMIT | RATE | |
| | SIT TOTAL | 8,730.28 | | | | 256.26 |
| | | 8,730.28 | | | | 127.61 MDCR |

NET PAY ANALYSIS

| | | # DEP ADV | 3 | CHECK TOTAL | 6,752.38 |
|---|---|---|---|---|---|
| | | # EMPS PAID | 3 | EFTS TOTAL | .00 |
| FEDERAL 401-K DEFERRAL LIMIT | 17500 | | | TOTAL NET | 6,752.38 * |
| FEDERAL 401-K CATCH-UP DEFERRAL LIMIT | 5500 | | | TOTAL TAXES | 2,788.10 ** |
| EMPLOYEE CENSUS ACTIVE EMPS | 9 | | | | 9,540.48 *** |
| TERM EMPS | 6 | | | | |
| TOTAL EMPS | 9 | | | | |

A151

2013

CERIDIAN

PAY ANALYSIS REPORTING

| REB NO. | HEALTH AND BENEFIT SERVICES, LLC<br>CO. NAME | 086- ALPHABETIC PAYROLL REGISTER<br>BILLING AUDIT INFORMATION | 086 | | PAY<br>26<br>PERIOD |
|---------|---------|---------|---------|---------|
| | | 12/27/13<br>REPORT DATE | B-12/27/13<br>CHECKS DATED | 8<br>PAGE NO. |

9 EMPLOYEES INCLUDED.                    12 DATA GROUPS SELECTED.        1 COPY PRINTED.

OUTPUT MEDIA - PRINTED - YES          ORCHESTRATOR PRINT - NO                           CD-ROM FILE - NO

REPORT TYPE - PAY ANALYSIS REPORT     DETAIL                                            I/P   13/12/10  11:56.24      R35.78
                                                                                       O/P   13/12/23  09:36.19      R36.07
                                                                                       PRT   13/12/23   9.36.39

A152

085-DIV/DEPT PAYROLL REGISTER    12/27/13    085    B-12/27/13
REPORT DATE    CHECKS DATED
PAY PERIOD 26    PAGE NO. 1

REB NO.
CO. NAME    HEALTH AND BENEFIT SERVICES, LLC
DIV-DEPT    - 99X01    -

```
HOURS/EARNS              PC  DESCRIPTION           HOURS         EARNINGS                     PC  DESCRIPTION               HOURS         EARNINGS
CURRENT                  1   REGULAR               80.00         5,000.00                         FSAH                      80.00         96.15-
                                                                                                  TOTAL                                   4,903.85

PRE-TAX ITEMS               DESCRIPTION                                                           DESCRIPTION                             EARNINGS
CURRENT                     DENTL                                                                 MED                                     229.10-
                            VISN                                                             PC   TOTAL                                   258.75-
                                                                        23.52-
                                                                         6.13-

EARNINGS FROM DEDUCTIONS
    QTD    FSAH            673.05-
    YTD    FSAH          2,499.90-

PRE-TAX ITEMS               DESCRIPTION                                  EARNINGS                      DESCRIPTION               HOURS         EARNINGS
    QTD    DENTL            164.64-       MED                           35,000.00      VISN            TOTAL                     560.00        35,000.00
    YTD    DENTL            611.52-       MED                          130,000.00      VISN            TOTAL                                   130,000.00
    FTD1   DENTL             47.04-       MED                              160.00      VISN            TOTAL                                   160.00

MEMO DEDUCTION
CURRENT    ACHBR            623.66
    QTD    ACHBR          4,365.62
    YTD    ACHBR         16,215.16
    FTD1   ACHBR          1,247.32

OTHER DEDUCTIONS
CURRENT    W2GRP             22.29
    QTD    W2GRP            156.03
    YTD    W2GRP            579.54
    FTD1   W2GRP             44.58

DED BALANCES
           FSAH          2,499.90-

GROSS TO NET             WAGES           SOCSEC        FEDERAL       STATE             LOCAL                SDI/UC              DEDUCTION      NET
                                         MEDICR
CUR   GRPAY              4645.10           0.00         669.64       259.44 TOT                            42.91- TOTAL        1,811.25-      3648.34
      GRCOMP             4903.85          67.68                      259.44 KY                            159.38- TOTAL        6,727.50-
QTD   GRPAY             32515.70        1551.21        4687.48      1816.08 TOT                            12.26- TOTAL          517.50-      23987.19
      GRCOMP            34326.95         473.74                     1816.08 KY                                                                87794.91
YTD   GRPAY           120772.60        7049.40       17423.24      6745.44 TOT
      GRCOMP           127500.10        1759.61                    6745.44 KY

WAGE AND TAXES           QTD WAGES       QTD TAXES     YTD WAGES     YTD TAXES             FX1 WAGES       FX1 TAXES           FX2 WAGES       FX2 TAXES
EE  SSEC  TO LMT        25019.59        1551.21      113700.00      7049.40               1682.64         104.32
    MDCR  TO LMT        32671.73         473.74      121352.14      1759.61               9334.78         135.36
FIT  TO LMT             32515.70        4687.48      120772.60      7000.00               9260.20        1339.28
FUTA  TO LMT                                                        7000.00
SIT
KY  KENTUCKY            32671.73        1816.08      121352.14      6745.44 KY            9334.78         518.88
SDI/UC
KY  KENTUCKY           35000.00                     130000.00                            10000.00                            87794.91
```

GUARDIAN

**085-DIV/DEPT PAYROLL REGISTER**          085

HEALTH AND BENEFIT SERVICES, LLC          REPORT DATE 12/27/13          B-12/27/13 CHECKS DATED

PAY PERIOD 26          PAGE NO. 2

PAY ANALYSIS REPORTING

```
REB                                                                              *********************************
NO.

CURRENT TAX RECAP

FORM 8109 FEDERAL DEPOSIT
 EMPLOYEE MDCR      67.68
 EMPLOYER MDCR      67.68
 EMPLOYEE FIT      669.64
 TOTAL DEPOSIT     805.00
```

**LIABILITIES**

| TYPE | JURISDICTION | | TAXABLE WAGES | LIMIT | WAGES TO LIMIT | RATE | AMOUNT |
|------|--------------|---|--------------:|------:|---------------:|-----:|-------:|
| O | | | | UNLIM | 4,667.39 | 1.45 % | 67.68 MDCR |
| SIT | KY-KENTUCKY | | 4,667.39 | | | | |
| | TOTAL | | 4,667.39 | | | | |
| SUI | KY-KENTUCKY | | 5,000.00 | 9300 | .00 | 3.20 % | .00 |
| | TOTAL | | 5,000.00 | | | | |
| FUTA | STANDARD RATE | | 4,645.10 | 7000 | .00 | 7.65 % | 67.68 |
| FUTA | KENTUCKY | CR RED | | 7000 | 7,000.00 | .60 % | 63.00 |
| | TOTAL | | | | 7,000.00 | .90 % | 63.00 |

STATE/LOCAL TAXES WITHHELD

VOID/MANUAL CHECKS INCLUDED

```
EMPLOYEE CENSUS
 ACTIVE EMPS     1
 TOTAL EMPS      1

FEDERAL 401-K DEFERRAL LIMIT            17500
FEDERAL 401-K CATCH-UP DEFERRAL LIMIT    5500
```

NET PAY ANALYSIS

```
 # DEP ADV       1
 # EMPS PAID     1

                        CK & VM TOT            .00
                        EFTS TOTAL       3,648.34
                        TOTAL NET        3,648.34 *
                                         1,127.44 **
                        TOTAL TAXES      4,775.78 ***
```

PAY ANALYSIS REPORTING

085-DIV/DEPT PAYROLL REGISTER

085

12/27/13
REPORT DATE

B-12/27/13
CHECKS DATED

PAY 26 PERIOD

PAGE NO. 3

REB
NO.
DIV-DEPT   - 99X02   -

CO. NAME   HEALTH AND BENEFIT SERVICES, LLC

```
HOURS/EARNS     PC  DESCRIPTION        HOURS       EARNINGS
CURRENT         1   REGULAR            160.00      4,346.16
```

```
PRE-TAX ITEMS                                      192.31-
CURRENT                                          4,153.85
```

```
HOURS/EARNS     PC  DESCRIPTION        HOURS       EARNINGS
CURRENT         1   REGULAR                        4,346.16
```

```
PRE-TAX ITEMS
CURRENT              401K              70.39-
                     MED               8.77-
```

```
FLX-1           1   REGULAR           320.00      8,692.32
```

****************************************************************

```
DEDUCTION TO NET
CURRENT              VOLIN              .92
QTD                  VOLIN             6.44
YTD                  $LS1             160.00
FTD1                 VOLIN              1.84
```

```
EARNINGS FROM DEDUCTIONS
QTD                  HSA            1,346.17-
YTD                  HSA            7,456.71-
FTD1                 HSA              384.62-
```

```
PRE-TAX ITEMS
QTD                  401K             492.73-
YTD                  401K           2,133.06-
FTD1                 401K             140.78-
```

```
MEMO DEDUCTION
CURRENT              ACHBR            446.73
QTD                  ACHBR          3,127.11
YTD                  ACHBR         14,359.98
FTD1                 ACHBR            893.46
```

```
OTHER DEDUCTIONS
CURRENT              W2GRP             5.58
QTD                  W2GRP            39.06
YTD                  W2GRP           288.00
FTD1                 W2GRP            11.16
```

```
DED BALANCES
                     HSA            7,456.71-
```

****************************************************************

```
GROSS TO NET    WAGES      SOCSEC    FEDERAL    STATE      LOCAL    SDI/UC     DEDUCTION   NET

CUR   GRPAY    4057.31    256.27    429.03     207.12 TOT  1,615.44                        3104.04
      GRCOMP   4153.85     59.93               207.12 KY
QTD   GRPAY   28401.17   1793.85   3003.21    1449.84 TOT  1,615.44                       21728.30
      GRCOMP   28076.95    419.53              1449.84 KY
YTD   GRPAY  138523.47   8747.65  15489.77    6964.48 TOT                                105091.83
      GRCOMP 141403.92   2045.82              6964.48 KY
```

****************************************************************

```
                PC  DESCRIPTION        HOURS       EARNINGS
                    DENTL                           11.37-
                    VISN                             6.01-
                    TOTAL                           96.54-
```

****************************************************************

```
                PC  DESCRIPTION        HOURS       EARNINGS     DEDUCTION
                    HSA              1,120.00       30,423.12
                    TOTAL              40.00          865.39
                3P  VAC PAYOUT       6,174.50      148,171.89
                    TOTAL                           30.423.12
                    TOTAL             320.00        8,692.32
```

```
                    HSA              160.00
```

```
                    HOURS            EARNINGS
            VOLIN   23.92
```

```
                1,120.00    30,423.12
                   40.00       865.39
                6,174.50   149,037.28
                  320.00     8,692.32
```

```
HSAER           1,120.00    30,423.12
HSAER              40.00       865.39
HSAER           1,615.44
HSAER
```

```
            DENTL    79.59-    MED      61.39-     VISN     42.07-
            DENTL   339.21-    MED     228.02-     VISN    675.78-
                                                   TOTAL   180.16-
            DENTL    22.74-    MED      17.54-     VISN   2,880.45-
                                                   VISN     12.02-
                                       MISC1  20.00-        TOTAL   193.08-
```

```
                    46.00
                   322.96
                 1,615.44
                    92.16
```

```
                    TOTAL      .92
                    TOTAL     6.44
                    TOTAL   183.92
                    TOTAL     1.84
```

A155

HEALTH AND BENEFIT SERVICES, LLC
CO. NAME

**085-DIV/DEPT PAYROLL REGISTER**

| | 12/27/13 REPORT DATE | 085 | B-12/27/13 CHECKS DATED | PAY PERIOD 26 | PAGE NO. 4 |

REB NO.

| WAGE AND TAXES | QTD WAGES | QTD TAXES | YTD WAGES | YTD TAXES | FX1 WAGES | FX1 TAXES | FX2 WAGES | FX2 TAXES |
|---|---|---|---|---|---|---|---|---|
| EE SSEC TO LMT | 28932.96 | 1793.85 | 141091.03 | 8747.65 | 8266.56 | 512.53 | | |
| MDCR TO LMT | 28932.96 | 419.53 | 141091.03 | 2045.82 | 8266.56 | 119.87 | | |
| FIT | 28401.17 | 3003.21 | 138523.47 | 15489.77 | 8114.62 | 858.06 | | |
| FUTA TO LMT | | | | | | | | |
| SIT | | | | | | | | |
| KY KENTUCKY | 28440.23 | 1449.84 | 138811.47 | 6964.48 | 8125.78 | 414.24 | | |
| SDI/UC | | | | | | | | |
| KY KENTUCKY | 30423.12 | | 149037.28 | | 8692.32 | | | |

**CURRENT TAX RECAP   TYPE O   VOID/MANUAL CHECKS INCLUDED**

| FORM 8109 FEDERAL DEPOSIT | |
|---|---|
| EMPLOYEE SSEC | 256.27 |
| EMPLOYEE MDCR | 59.93 |
| EMPLOYER SSEC | 256.26 |
| EMPLOYER MDCR | 59.93 |
| EMPLOYEE FIT | 429.03 |
| TOTAL DEPOSIT | 1,061.42 |

**LIABILITIES**

| | JURISDICTION | TAXABLE WAGES | LIMIT | WAGES TO LIMIT | RATE | AMOUNT | |
|---|---|---|---|---|---|---|---|
| FUTA | STANDARD RATE | 4,133.28 | 113700 | 4,133.28 | 6.20 % | 256.26 | SSEC |
| | | 4,133.28 | UNLIM | 4,133.28 | 1.45 % | 59.93 | MDCR |
| FUTA | KENTUCKY CR RED | 4,127.70 | 7000 | .00 | 7.65 % | 316.19 | |
| FUTA | TOTAL | | 7000 | 25,853.11 | .60 % | 232.68 | |
| | | | | | .90 % | 232.68 | |
| SUI | KY-KENTUCKY | 4,346.16 | 9300 | .00 | 3.20 % | .00 | |
| | TOTAL | 4,346.16 | | .00 | | .00 | |

**STATE/LOCAL TAXES WITHHELD**

| | JURISDICTION | TAXABLE WAGES | LIMIT | WAGES TO LIMIT | RATE | AMOUNT |
|---|---|---|---|---|---|---|
| SIT | KY-KENTUCKY | 4,062.89 | | | | 207.12 |
| | TOTAL | 4,062.89 | | | | 207.12 |

**NET PAY ANALYSIS**

| | # DEP ADV | # EMPS PAID | CK & VM TOT | EFTS TOTAL | TOTAL NET | TOTAL TAXES |
|---|---|---|---|---|---|---|
| | 17500 | | 2 | 2 | | |
| | 5500 | | | | | |

| | | | |
|---|---|---|---|
| FEDERAL 401-K DEFERRAL LIMIT | | | .00 |
| FEDERAL 401-K CATCH-UP DEFERRAL LIMIT | | | .00 |
| EMPLOYEE CENSUS | ACTIVE EMPS 2 | | 3,104.04 |
| | TERM EMPS 3 | | 3,104.04 |
| | TOTAL EMPS 5 | | 1,501.22 * |
| | | | 4,605.26 ** |

A156

```
HEALTH AND BENEFIT SERVICES, LLC                    085-DIV/DEPT PAYROLL REGISTER        085

                                                    12/27/13            B-12/27/13        PAY
                                                    REPORT DATE         CHECKS DATED      PERIOD 26   PAGE NO. 5

REB          CO. NAME
NO.
DIV-DEPT    - 99XQ3            -

*************************************************************************************************************

HOURS/EARNS   PC   DESCRIPTION        HOURS       EARNINGS         PC   DESCRIPTION       HOURS       EARNINGS
Y-TO-D        1    REGULAR            1,395.50    19,509.04             TOTAL             1,395.50    19,509.04

GROSS TO NET       WAGES              SOCSEC       STATE                 LOCAL            DEDUCTION       NET
                                      MEDICR
CUR          GRPAY        .00
             GRCOMP       .00

*************************************************************************************************************

YTD          GRPAY     17821.39       1104.92     1569.38                                                13424.06
             GRCOMP    17821.39        258.41

*************************************************************************************************************

WAGE AND TAXES          QTD WAGES     QTD TAXES    YTD WAGES    YTD TAXES          FX1 WAGES    FX1 TAXES    FX2 WAGES    FX2 TAXES
EE SSEC TO LMT                                     17821.39     1104.92
   MDCR TO LMT                                     17821.39      258.41
FIT                                                17821.39
FUTA TO LMT                                        17715.35
SIT
KY KENTUCKY                                        17821.39     1569.38
SDI/UC
KY KENTUCKY                           19509.04

*************************************************************************************************************

CURRENT TAX RECAP        0    VOID/MANUAL CHECKS INCLUDED
                                                               825.47 TOT                                  639.15
                                                               825.47 KY

*************************************************************************************************************

FORM 8109 FEDERAL DEPOSIT      TYPE      JURISDICTION      CR RED      TAXABLE WAGES                        RATE        AMOUNT
                               FUTA      STANDARD RATE                     .00                            .60 %          .00
                               FUTA      KENTUCKY                                                         .90 %          .00
                               TOTAL                                                                                     .00

*************************************************************************************************************

FEDERAL 401-K DEFERRAL LIMIT                                            LIMIT       LIABILITIES
FEDERAL 401-K CATCH-UP DEFERRAL LIMIT                                   17500       WAGES TO LIMIT
EMPLOYEE CENSUS         TERM EMPS    3                                  5500        17,715.35
                       TOTAL EMPS    3

                                                     NET PAY ANALYSIS                CK & VM TOT            .00
                                                                                     TOTAL NET           159.44
                                                                                     TOTAL TAXES         159.44 *
                                                                                                         159.44 **
                                                                                                         159.44 ***

*************************************************************************************************************
```

PAY ANALYSIS REPORTING

**PAY ANALYSIS REPORTING**

CO. NAME: HEALTH AND BENEFIT SERVICES, LLC

REB NO.

**085-DIV/DEPT PAYROLL REGISTER — GRAND TOTALS**

12/27/13 REPORT DATE    085    B-12/27/13 CHECKS DATED    PAY PERIOD 26    PAGE NO. 6

### HOURS/EARNS CURRENT

| PC | DESCRIPTION | HOURS | EARNINGS | PC | DESCRIPTION | HOURS | EARNINGS |
|----|-------------|-------|----------|----|-------------|-------|----------|
| 1 | REGULAR | 240.00 | 9,346.16 | | DENTL | | 34.89- |
| | HSA | | 192.31- | | VISN | | 12.14- |
| | | | | | TOTAL | | 355.29- |
| | | | | | | HOURS 240.00 | EARNINGS 96.15- / 9,057.70 |

### PRE-TAX ITEMS CURRENT

| | | EARNINGS | | | |
|--|--|----------|--|--|--|
| 401K | | 70.39- | DENTL TOTAL | | 34.89- |
| MED | | 237.87- | VISN TOTAL | | 12.14- |
| | | | TOTAL | | 355.29- |

### FLX-1

| PC | DESCRIPTION | HOURS | EARNINGS | PC | DESCRIPTION | HOURS | EARNINGS |
|----|-------------|-------|----------|----|-------------|-------|----------|
| 1 | REGULAR | 480.00 | 18,692.32 | 3P | TOTAL | 480.00 | 18,692.32 |

### HOURS/EARNS

| | PC | DESCRIPTION | HOURS | EARNINGS | DESCRIPTION | HOURS | EARNINGS |
|--|----|-------------|-------|----------|-------------|-------|----------|
| Q-TO-D | 1 | REGULAR | | 65,423.12 | VAC PAYOUT | | 65,423.12 |
| Y-TO-D | 1 | REGULAR | | 297,680.93 | TOTAL | | 865.39 / 298,546.32 |

### PRE-TAX ITEMS

| | DESCRIPTION | EARNINGS | | DESCRIPTION | | EARNINGS |
|--|-------------|----------|--|-------------|--|----------|
| QTD | 401K | 492.73- | DENTL | 244.23- | VISN | 84.98- |
| YTD | 401K | 2,133.06- | DENTL | 950.73- | VISN | 2,487.03- / 339.54- |
| FTD1 | 401K | 140.78- | DENTL | 69.78- / 475.74- | VISN | 9,607.39- / 24.28- / 710.58- |

### DEDUCTION TO NET

| | DESCRIPTION | | DESCRIPTION | | TOTAL |
|--|-------------|--|-------------|--|-------|
| CURRENT | VOLIN | .92 | VOLIN | 23.92 | .92 |
| QTD | VOLIN | 6.44 | | | 6.44 |
| YTD | $LS1 | 160.00 | | | 183.92 |
| FTD1 | VOLIN | 1.84 | | | 1.84 |

### EARNINGS FROM DEDUCTIONS

| | DESCRIPTION | | HOURS | EARNINGS |
|--|-------------|--|-------|----------|
| CURRENT | FSAH / HSA | | HSA | 673.05- / 1,346.17- |
| QTD | FSAH / HSA | | HSA | 2,499.00- / 7,456.71- |
| YTD | FSAH / HSA | | | |
| FTD1 | HSA | | | 384.62- |

### MEMO DEDUCTION

| | DESCRIPTION | | HOURS | EARNINGS |
|--|-------------|--|-------|----------|
| CURRENT | ACHBR | 1,070.39 | HSAER | 46.00 |
| QTD | ACHBR | 7,492.73 | HSAER | 322.96 |
| YTD | ACHBR | 30,575.14 | HSAER | 1,615.44 |
| FTD1 | ACHBR | 2,140.78 | HSAER | 92.16 |

### OTHER DEDUCTIONS

| | DESCRIPTION | | EARNINGS | | | MISC1 |
|--|-------------|--|----------|--|--|-------|
| CURRENT | W2GRP | | 27.87 | | | |
| QTD | W2GRP | | 195.09 | | | |
| YTD | W2GRP | | 867.54 | | | |
| FTD1 | W2GRP | | 55.74 | | | 20.00- |

### DED BALANCES

| | FSAH | HSA | HSAER |
|--|------|-----|-------|
| | 2,499.90- | 7,456.71- | 1,615.44 |

### GROSS TO NET

| | | WAGES | FEDERAL | | STATE | LOCAL | SDI/UC | DEDUCTION | NET |
|--|--|-------|---------|--|-------|-------|--------|-----------|-----|
| | | | SOCSEC | MEDICR | | | | | |
| CUR | GRPAY | 8722.41 | 1098.67 | 256.27 | 466.56 TOT | | | .92 | 6752.38 |
| | GRCOMP | 9057.70 | | 127.61 | 466.56 KY | | | | |
| QTD | GRPAY | 60916.87 | 7690.69 | 3345.06 | 3265.92 TOT | | | 6.44 | 45715.49 |
| | GRCOMP | 63403.90 | | 893.27 | 3265.92 KY | | | | |
| YTD | GRPAY | 271117.46 | 16901.87 | 34482.39 | 14535.39 TOT | | | 823.07 | 206310.80 |
| | GRCOMP | 287725... | | 4063.84 | 14535.39 KY | | | | |

### WAGE AND TAXES

| | QTD WAGES | QTD TAXES | YTD WAGES | YTD TAXES | FX1 WAGES | FX1 TAXES | FX2 WAGES | FX2 TAXES |
|--|-----------|-----------|-----------|-----------|-----------|-----------|-----------|-----------|
| EE SSEC TO LMT | 53952.55 | 3345.06 | 272612.42 | 16901.97 | 9949.20 | 616.85 | | |

**PAY ANALYSIS REPORTING**

A158

GUARDIAN

**085-DIV/DEPT PAYROLL REGISTER**
**GRAND TOTALS**

| 12/27/13 REPORT DATE | 085 | B-12/27/13 CHECKS DATED | PAY PERIOD 26 | PAGE NO. 7 |

**PAY ANALYSIS REPORTING**

| REB NO. | CO. NAME |
|---|---|
| | HEALTH AND BENEFIT SERVICES, LLC |

**WAGE AND TAXES**

| | QTD WAGES | QTD TAXES | YTD WAGES | YTD TAXES | FX1 WAGES | FX1 TAXES | FX2 WAGES | FX2 TAXES |
|---|---|---|---|---|---|---|---|---|
| MDCR TO LMT | 61604.69 | 893.27 | 280264.56 | 4063.84 | 17601.34 | 255.23 | | |
| FUTA TO LMT | | | | | | | | |
| FIT | 60916.87 | 7690.69 | 277117.46 | 17404.82 | 17404.82 | 2197.34 | | |
| SIT | | | 50568.46 | 34482.39 | | | | |
| KY KENTUCKY | 61111.96 | 3265.92 | 279985.00 | 14535.39 | 17460.56 | 933.12 | | |
| SDI/UC | | | | | | | | |
| KY KENTUCKY | 65423.12 | | 298546.32 | | 18692.32 | | | |

**************************************************

**CURRENT TAX RECAP        O  VOID/MANUAL CHECKS INCLUDED**

| TYPE | JURISDICTION | TAXABLE WAGES | LIMIT | STATE/LOCAL TAXES WITHHELD WAGES TO LIMIT | RATE | AMOUNT |
|---|---|---|---|---|---|---|

**FORM 8109 FEDERAL DEPOSIT**

| | | | LIABILITIES WAGES TO LIMIT | LIMIT | RATE | AMOUNT |
|---|---|---|---|---|---|---|
| EMPLOYEE SSEC | 256.27 | | 8,800.67 | 113700 | 4,133.28 | 6.20 % | 256.26 SSEC |
| EMPLOYEE MDCR | 127.61 | | 8,800.67 | UNLIM | 8,800.67 | 1.45 % | 127.61 MDCR |
| EMPLOYER SSEC | 256.26 | | | | | | |
| EMPLOYER MDCR | 127.61 | | | | | | |
| EMPLOYEE FIT | 1,098.67 | | | | | | |
| EMPLOYEE MDCR | 1,866.42 | | | | | | |
| TOTAL DEPOSIT | 1,866.42 | | | | | | |

| FUTA | STANDARD RATE | 8,772.80 | 7000 | .00 | .60 % | 383.87 |
| FUTA | CR RED | | 7000 | 50,568.46 | .90 % | 455.12 |
| TOTAL | | | | | 7.65 % | 455.12 |

| SUI | KY-KENTUCKY | 9,346.16 | 9300 | .00 | 3.20 % | .00 |
| TOTAL | | 9,346.16 | | | | .00 |

| SIT | KY-KENTUCKY | 8,730.28 | | | | 466.56 |
| TOTAL | | 8,730.28 | | | | 466.56 |

**NET PAY ANALYSIS**

| | # DEP ADV | # EMPS PAID | | |
|---|---|---|---|---|
| | 17500 | 5500 | | |
| | | | CHECK TOTAL | 6,752.38 |
| | | | EFTS TOTAL | 6,752.38 * |
| | | | TOTAL NET | 2,788.10 T |
| | | | TOTAL TAXES | 9,540.48 *** |

| | ACTIVE EMPS | TERM EMPS | TOTAL EMPS |
|---|---|---|---|
| FEDERAL 401-K DEFERRAL LIMIT | | | |
| FEDERAL 401-K CATCH-UP DEFERRAL LIMIT | | | |
| EMPLOYEE CENSUS | 3 | 6 | 9 |
| | 3 | 3 | 9 |

*********************************************************************



PAY ANALYSIS REPORTING

HEALTH AND BENEFIT SERVICES, LLC
CO. NAME

085-DIV/DEPT PAYROLL REGISTER
BILLING AUDIT INFORMATION

085

12/27/13
REPORT DATE

B-12/27/13
CHECKS DATED

PAY
26
PERIOD

8
PAGE NO.

REB
NO.

9 EMPLOYEES INCLUDED.

11 DATA GROUPS SELECTED.

1 COPY PRINTED.

OUTPUT MEDIA - PRINTED - YES

ORCHESTRATOR PRINT - NO

CD-ROM FILE - NO

REPORT TYPE - PAY ANALYSIS REPORT

SUMMARY

I/P  13/12/10  11.56.24     R35.78
O/P  13/12/23  09.36.19     R36.07
PRT  13/12/23   9.36.39

A160



PAY ANALYSIS REPORTING

GRIDIAN

086- ALPHABETIC PAYROLL REGISTER

HEALTH AND BENEFIT SERVICES, LLC

12/27/13   REPORT DATE          086          B-12/27/13 CHECKS DATED

PAY PERIOD 26          PAGE NO. 1

| REB NO. | EMPLOYEE ID | | CO. NAME PC DESCR | ...HOURS AND EARNINGS... RATE HOURS AMOUNT | DESCR | DED AND ADJ AMOUNT CODES | CHECKS TO... GROSS NET TYPE Y-TO-D | CURRENT | CHECK# |
|---|---|---|---|---|---|---|---|---|---|
| | EMPLOYEE NAME | | | | | | | | |

99-XO2-01615
BROWN, WYATT W

BASE  1461.54        FRQ B      STAT A
FCAST  80.00E        M/S S      SEX M
FILE#  1615          ST1  KY
HIRE  01/16/12       F#EX 01    S#EX 01
PTO-C                SADJ NRES
OT EX N
DSS PT Y

EFT-ACCOUNT#         ID BK TP    TRANSIT-NO
                     A  PQ C     2421-7612-9

ALT DATE:
DOB:  02/01/79

1 REGUL          80.00   1461.54    ACHBR    152.50 OMO*      354.00.04 GRCOMP   1361.54
1 HSA            100.00-HSAER         23.08 ONO *           34103.16 GRPAY      1311.66
                                      23.00                  2186.63 SSEC          84.10
---- PRE-TAX ITEMS ----               100.00-O6OE *           511.39 MDCR          19.67
1 401K           43.85-HSA             3.00-O6OE            3755.44 FIT           144.39
1 DENTL           3.79-401K U         43.85- E             1638.52 ST1 KY          63.02
1 VISN            2.24-                                      183.92 TOTDED          .92

---MED---                              060                 25827.26 NET           999.56
1 REGULAR  560.00  1020.78 DENTL       3.79-060E                    NET           999.56
Y-TO-D                     VISN        2.24-060E           CUR SSEC WAGES        1356.47
1 REGULAR  2080.00         VOLIN         .92 000*          CUR MDCR WAGES        1356.47
1 REGULAR  38000.04                                        ---TAXES---
F-TO-D 1   --LTD
1 REGULAR  160.00  2923.00 LIFE          000               ---WAGES--- Q-TO-D
                           W2GRP          .96 OFO*         9495.29 SSEC           588.71
                           EFTA1                           9495.29 MDCR           137.68

HSAER                      BAL/LMT ---                     9181.62 FIT           1010.73
                           600.00 BAL                      9188.34 ST KY          441.14
                           2600.00-BAL                    10230.78 SUI KY
Q-TO-D                                                     ---WAGES--- Y-TO-D
HSA                        2600.00-LMT                    35268.22 SSEC          2186.63
ACHBR    1067.50                                          35268.22 MDCR           511.39
HSAER     161.48                                          34103.16 FIT           3755.44
HSA       700.00-                                          7000.00 FUTA
ACHBR     306.95-                                         34128.12 ST KY         1638.52
401K       26.53-                                         38000.04 SUI KY
DENTL      15.68-                                         ---WAGES--- F-TO-D 1
VISN        6.44                                           2712.94 SSEC           168.20
VOLIN                                                      2712.94 MDCR            39.34
Y-TO-D                                                     2623.32 FIT            288.78
ACHBR     160.00                                           2625.24 ST KY          126.04
$LS1      305.00
ACHBR    3965.00
HSAER      46.08
HSA       200.00-
401K       87.70-
DENTL       7.58-
VISN        4.48-
VOLIN       1.84-
W2GRP       1.92

A349



HEALTH AND BENEFIT SERVICES, LLC

086- ALPHABETIC PAYROLL REGISTER

12/27/13 REPORT DATE    086    B-12/27/13 CHECKS DATED

PAY PERIOD 26    PAGE NO. 2

| REB NO. EMPLOYEE ID / CO. NAME / EMPLOYEE NAME | PC DESCR | HOURS AND EARNINGS — RATE HOURS | AMOUNT | DED AND ADJ DESCR — AMOUNT CODES | GROSS TO NET — Y-TO-D | CURRENT | CHECK# |
|---|---|---|---|---|---|---|---|

**99-X03-97913  FLORENCE, OTIS**
BASE 14.7500  FRQ B  STAT T
FILE# 97913  M/S M  SEX M
HIRE 01/01/07  ST1 KY
TERM 03/08/13  F#EX OO  S#EX OO
PTO-C
OT EX N
ALT DATE:
DOB:

1 REGULAR   Y-TO-D 488.50   7205.39

```
                          .00
              7106.04 GRCOMP
              7106.04 GRPAY
               440.57 SSEC
               103.04 MDCR
               656.88 FIT
               350.44 ST1 KY
               524.95 TOTDED
              5030.16 NET
--WAGES-- Y-TO-D        --TAXES--
              7106.04 SSEC    440.57
              7106.04 MDCR    103.04
              7106.04 FIT     656.88
              7000.00 FUTA       .00
              7106.04 ST KY   350.44
              7205.39 SUI KY     .00
```

**99-X03-97914  FLORENCE, STEVE**
BASE 15.2500  FRQ B  STAT T
FILE# 97914  M/S S  SEX M
HIRE 01/01/07  ST1 KY
TERM 03/08/13  F#EX O4  S#EX O4
PTO-C
OT EX N
ALT DATE:
DOB:

1 REGULAR   Y-TO-D 499.50   7617.40

```
              6415.15 GRCOMP      .00
              6415.15 GRPAY       .00
               397.74 SSEC        .00
                93.02 MDCR        .00
               366.02 FIT         .00
               295.01 ST1 KY      .00
                83.05 TOTDED      .00
              5180.31 NET         .00
--WAGES-- Y-TO-D        --TAXES--
              6415.15 SSEC    397.74
              6415.15 MDCR     93.02
              6415.15 FIT     366.02
              6415.15 FUTA       .00
              6415.15 ST KY   295.01
              7617.40 SUI KY     .00
```

**99-C03-97915  FLORENCE, STEVEN JR**
BASE 11.5000  FRQ B  STAT T
FILE# 97915  M/S S  SEX M
HIRE 01/01/07  ST1 KY
TERM 03/08/13  F#EX OO  S#EX O2
PTO-C    FADJ $ OO  10.00
OT EX N
ALT DATE:
DOB:

1 REGULAR   Y-TO-D 407.50   4686.25

```
              4300.20 GRCOMP      .00
              4300.20 GRPAY       .00
               266.61 SSEC        .00
                62.35 MDCR        .00
               546.48 FIT         .00
               180.02 FIT         .00
                31.15 TOTDED      .00
              3213.59 NET         .00
--WAGES-- Y-TO-D        --TAXES--
              4300.20 SSEC    266.61
              4300.20 MDCR     62.35
              4300.20 FIT     546.48
              4300.20 FUTA       .00
              4300.20 ST KY   180.02
              4686.25 SUI KY     .00
```

PAY ANALYSIS REPORTING

PAY ANALYSIS REPORTING



HEALTH AND BENEFIT SERVICES, LLC

086- ALPHABETIC PAYROLL REGISTER          086

| | 12/27/13 REPORT DATE | CHECKS DATED B-12/27/13 | PAY PERIOD 26 | PAGE NO. 3 |

| REB NO. EMPLOYEE ID EMPLOYEE NAME | CO. NAME | PC DESCR RATE | ...HOURS AND EARNINGS... HOURS AMOUNT | DESCR DED AND ADJ AMOUNT CODES | Y-TO-D GROSS TO NET TYPE CURRENT | CHECK# |

**99-XO2-01543  FLORENCE, WHITNEY E**

BASE 8.5000   FRQ B   STAT T
FILE# 1543    M/S S   SEX F
HIRE 01/03/12 ST1 KY
TERM          F#EX OO  S#EX OO
PTO-C
OT EX N
DSS PT Y
ALT DATE:
DOB:

1 REGULAR   Y-TO-D 166.50   Y-TO-D 1415.26

| | | | |
|---|---|---|---|
| | | 1353.85 GRCOMP | 2792.31 |
| | | 1353.85 GRPAY | 2745.65 |
| | | 86.57 SSEC | 172.17 |
| | | 20.25 MDCR | 40.26 |
| | | .00 FIT | 284.64 |
| | | 31.32 ST1 KY | .00 |
| | | .00 NET | 144.10 |
| | WAGES-- Y-TO-D | 1122.42 NET | .00 |
| | | 1396.31 SSEC | 2104.48 |
| | | 1396.31 MDCR | 2104.48 |
| | | 1353.85 FIT | 2776.81 |
| | | 1396.31 FUTA | 2776.81 |
| | | 1353.85 ST KY | |
| | | 1415.26 SUI KY | 31.32 |

**99-XO2-97897  HURST, DAVID T**

BASE 2884.62   FRQ B   STAT A
FCAST 80.00E   M/S M   SEX M
FILE# 97897    ST1 M   S#EX O4
HIRE 11/07/06  F#EX O2  S#EX OO
PTO-C
OT EX
DSS PT Y
EFT-ACCOUNT#   ID BK TP  TRANSIT-NO
               B JR C   0830-0013-7
ALT DATE:
DOB: 05/11/71

| PC DESCR | HOURS | AMOUNT | DESCR | DED AMOUNT CODES | Y-TO-D |
|---|---|---|---|---|---|
| 1 REGUL | 80.00 | 2884.62 | ACHBR | 294.21 OMO* | 72600.06 GRCOMP 2792.31 |
| 1 HSA | | 92.31-HSAER | ACHBR | 23.08 ONO | 71424.94 GRPAY 2745.65 |
| PRE-TAX ITEMS | | | HSAER | 23.00 * | 4478.58 SSEC 172.17 |
| 1 401K | | 26.54-HSA | | 92.31-O60E | 1047.41 MDCR 40.26 |
| 1 DENTL | | 7.58-401K U | HSAER | .92-8FO | 7409.47 FIT 284.64 |
| 1 MED | | 8.77-MED | ACHBR | 26.54-- E | 3748.82 ST1 KY 144.10 |
| 1 VISN | | 3.77-MED | | 8.77-O60E | 54740.66 NET |
| | | | DENTL | 7.58-O60E | 2104.48 EFT B 2104.48 |
| | | | LTD | 3.77-O60E | CUR SSEC WAGES 2776.81 |
| 1 REGULAR Q-TO-D | | | VISN | .000 | CUR MDCR WAGES 2776.81 |
| 1 REGULAR Y-TO-D 560.00 | | 20192.34 | LIFE | .000 | WAGES-- Q-TO-D --TAXES-- |
| 1 REGULAR F-TO-D 1 | 2080.00 | 75000.00 | W2GRP | 4.62 OFO* | 19437.67 SSEC 1205.14 |
| 1 REGULAR | 160.00 | 5769.24 | | | 19437.67 MDCR 281.85 |
| | | | EFTB2 | .000 | 13219.55 FIT 1992.48 |
| | | | HSAER | BAL/LMT | 19251.89 ST KY 1008.70 |
| | | | | 600.00 BAL | WAGES-- Y-TO-D --TAXES-- |
| | | | | 600.00 LMT | 72233.10 SSEC 4478.58 |
| | | | HSA | 2400.00-BAL | 71424.94 MDCR 1047.41 |
| | | | ACHBR | 2400.06-LMT | 71424.94 FUTA 7409.47 |
| | | | ACHBR | 2059.61 | 7000.00 FIT 3748.82 |
| | | | HSAER | 161.17 | 71545.06 SUI KY |
| | | | HSA | 646.17-- | 75000.12 F-TO-D 1 |
| | | | 401K | 185.78- | WAGES-- --TAXES-- |
| | | | HSA | 61.39- | 5553.62 SSEC 344.33 |
| | | | DENTL | 53.06- | 5553.62 MDCR 80.53 |
| | | | VISN | 26.39- | 5491.30 FIT 569.28 |
| | | | W2GRP | 32.34 | 5500.54 ST KY 288.20 |
| | | | ACHBR | Y-TO-D -- | 5769.24 SUI KY |
| | | | HSAER | 7643.98 | |
| | | | HSA | 600.00 | |
| | | | 401K | 2400.00 | |
| | | | HSA | 690.04 | |
| | | | MED | 228.02 | |
| | | | DENTL | 174.34- | |

A350

**086- ALPHABETIC PAYROLL REGISTER    086**

| REB NO. CO. NAME | HEALTH AND BENEFIT SERVICES, LLC | 12/27/13 REPORT DATE | B-12/27/13 CHECKS DATED | PAY 26 PERIOD | PAGE NO. 4 |

**PAY ANALYSIS REPORTING**

Column headers: EMPLOYEE ID / EMPLOYEE NAME … PC DESCR · RATE · HOURS · AMOUNT … DESCR · DED AND ADJ AMOUNT CODES … Y-TO-D · TYPE · NET · CURRENT · CHECK#

---

**99-XO2-97897   HURST, DAVID T   ***** CONTINUED *******

```
                                VISN ------ Y-TO-D ------
                                VISN          82.72-
                                W2GRP        120.12
                                F-TO-D 1
```

---

**99-XO1-97923   RAMSAY, SCOTT**

```
BASE    5000.00      FRQ  B        STAT  A
FCAST   80.OOE       M/S  M        SEX   M
FILE#   97923        ST1  KY
HIRE    01/01/07     F/#EX O3       SEX  M
PTO-C                FADU $ O3     S#EX  O3
OT EX   N                          13.85
DSS PT  Y
EFT-ACCOUNT#    ID BK TP   TRANSIT-NO
                A  54 C    O421-O119-O
ALT DATE:
DOB:    03/23/60
```

| PC DESCR | RATE | HOURS | AMOUNT | DESCR | DED AND ADJ AMOUNT CODES | Y-TO-D | CURRENT | CHECK# |
|---|---|---|---|---|---|---|---|---|
| 1 REGUL | | 80.00 | 5000.00 | ACHBR | 623.66 OMO* | 127500.10 GRCOMP | 4903.85 | |
| 1 FSAH | | | 96.15- | FSAH | 96.15-O6OE | 120772.60 GRPAY | 4645.10 | |
| PRE-TAX ITEMS | | | | MED | 229.10-O6OE | 7049.40 SSEC | .00 | |
| DENTL | | | 23.52- | DENTL | 23.52-O6OE | 1759.61 MDCR | 67.68 | |
| MED | | | 229.10- | VISN | 6.13-O6OE | 17423.24 FIT | 669.64 | |
| VISN | | | 6.13- | LTD | | 6745.44 ST1 KY | 259.44 | |
| | | | | LIFE | | 6745.45 ST1 KY | 259.44 | |
| 1 REGULAR | Q-TO-D | | 35000.00 | W2GRP | | 87794.91 NET | 3648.30 | |
| 1 REGULAR | Y-TO-D | | 560.00 | W2GRP | 22.29 OFO* | 3648.34 EFT A | 3648.34 | |
| 1 REGULAR | F-TO-D | | 2080.00 | EFTA1 | | 4667.39 | | |
| 1 REGULAR | F-TO-D 1 | | 130000.00 | FSAH | | | | A351 |
| | | | | BAL/LMT | | CUR MDCR WAGES Q-TO-D | | |
| | | | | ACHBR | 4365.62 | WAGES | | |
| | | | | ACHBR | 2499.90-BAL | 25019.59 SSEC | 1551.21 | |
| | | | | FSAH | 2499.90-LMT | 32671.73 MDCR | 473.74 | |
| | | | | MED | | 32515.70 FIT | 4687.48 | |
| | | | | DENTL | | 3500.00 SUI KY | 1816.08 | |
| | | | | VISN | | WAGES Y-TO-D TAXES | | |
| | | | | W2GRP | | 113700.00 SSEC | 7049.40 | |
| | | | | ACHBR | 1603.70- | 121351.14 MDCR | 1759.61 | |
| | | | | FSAH | 164.64- | 120772.60 FIT | 17423.24 | |
| | | | | MED | 42.91- | 7000.00 FUTA | | |
| | | | | DENTL | 156.03 | 121352.14 ST KY | 6745.44 | |
| | | | | VISN | 673.05- | 130000.00 SUI KY | | |
| | | | | W2GRP | | WAGES F-TO-D 1 TAXES | | |
| | | | | ACHBR | 16215.16 | 1682.64 SSEC | 104.32 | |
| | | | | FSAH | 2499.90- | 3334.78 MDCR | 135.36 | |
| | | | | MED | 5956.60- | 3334.78 FIT | 135.36 | |
| | | | | DENTL | 611.52- | 9290.20 FIT | 1339.28 | |
| | | | | VISN | 159.38- | 9334.78 ST KY | 518.88 | |
| | | | | W2GRP | 579.54 | 10000.00 SUI KY | | |
| | | | | ACHBR | 1247.32 | | | |
| | | | | FSAH | 192.30- | | | |
| | | | | MED | 458.20- | | | |
| | | | | DENTL | 47.04- | | | |
| | | | | VISN | 12.26- | | | |
| | | | | W2GRP | 44.58 | | | |

---

**99-XO2-O1544   RATLIFF, PALACE ASHTON**

| PC DESCR | RATE | HOURS | AMOUNT | Y-TO-D | CURRENT | CHECK# |
|---|---|---|---|---|---|---|
| 1 REGULAR | | 408.00 | 3468.00 | 3352.76 GRCOMP | .00 | |
| | Y-TO-D | 408.00 | 3468.00 | 3352.76 GRPAY | .00 | |
| | | | | 214.32 SSEC | .00 | |
| | | | | 50.12 MDCR | .00 | |





**086- ALPHABETIC PAYROLL REGISTER**

HEALTH AND BENEFIT SERVICES, LLC

12/27/13 REPORT DATE     086     B-12/27/13 CHECKS DATED

PAY PERIOD 26     PAGE NO. 5

PAY ANALYSIS REPORTING

| EMPLOYEE ID | | | | PC DESCR | RATE | HOURS | AMOUNT | DESCR | AMOUNT | CODES | Y-TO-D | CURRENT | CHECK# |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

**99-XO2-O1544    RATLIFF, PALACE ASHTON    ***** CONTINUED *******

| BASE | 8.5OOO | FRQ B | STAT T | | | | | | | | 354.36 FIT | .OO | |
| FILE# | 1544 | M/S S | SEX M | | | | | | | | 132.75 ST1 KY | .OO | |
| HIRE | O1/O3/12 | ST1 KY | | | | | | | | | 26O1.21 NET | .OO | |
| TERM | | F#EX OO | S#EX OO | | | | | | | | --WAGES-- Y-TO-D | --TAXES-- | |
| PTO-C | O3/O8/13 | | | | | | | | | | 3456.8O SSEC | 214.32 | |
| OT EX N | | | | | | | | | | | 3456.8O MDCR | 5O.12 | |
| DSS PT Y | | | | | | | | | | | 3352.76 FIT | 354.36 | |
| ALT DATE: | | | | | | | | | | | 3456.8O FUTA | | |
| DOB: | | | | | | | | | | | 3352.76 ST KY | 132.75 | |
| | | | | | | | | | | | 3468.OO SUI KY | | |

**99-XO2-97949    SCHUTTERS, JENNIFER E**

| BASE | 173O.77 | FRQ B | STAT T | 1 REGULAR | Y-TO-D | 14OO.OO | 3O288.47 | HSAER | 415.44 BAL | | 28697.21 GRCOMP | .OO | |
| FILE# | 97949 | M/S S | SEX F | 3P VAC PAYOUT | | 4O.OO | 865.39 | | 6OO.OO LMT | | 28288.76 GRPAY | .OO | |
| HIRE | 11/3O/O9 | ST1 KY | | | | | | HSA | 2456.65-BAL | | 1781.55 SSEC | .OO | |
| TERM | | F#EX OO | S#EX O1 | | | | | | 3649.88-LMT | | 416.65 MDCR | .OO | |
| PTO-C | O9/O4/13 | | | | | | | | Y-TO-D -- | | 3877.21 FIT | .OO | |
| OT EX N | | | | | | | | | | | 1413.O7 ST1 KY | .OO | |
| DSS PT Y | | | | | | | | ACHBR | 2745.OO | | .OO NET | .OO | |
| ALT DATE: | | | | | | | | HSAER | 415.44 | | 2O8OO.28 NET | .OO | |
| DOB: | 12/O4/57 | | | | | | | HSA | 2456.65- | | --WAGES-- Y-TO-D | --TAXES-- | |
| | | | | | | | | 4O1K | 3O2.92- | | 28734.6O SSEC | 1781.55 | |
| | | | | | | | | DENTL | 66.33- | | 28734.6O MDCR | 416.65 | |
| | | | | | | | | VISN | 39.2O- | | 28288.76 FIT | 3877.21 | |
| | | | | | | | | W2GRP | 142.92 | | 7OOO.OO FUTA | | |
| | | | | | | | | | | | 28431.68 ST KY | | |
| | | | | | | | | | | | 31153.86 SUI KY | 1413.O7 | |

GUARDIAN

HEALTH AND BENEFIT SERVICES, LLC
CO. NAME

**086- ALPHABETIC PAYROLL REGISTER**
GRAND TOTALS

086

12/27/13 REPORT DATE

B-12/27/13 CHECKS DATED

PAY PERIOD 26   PAGE NO. 6

**REB NO.**

| | PC | DESCRIPTION | HOURS | EARNINGS | PC | DESCRIPTION | HOURS | EARNINGS |
|---|---|---|---|---|---|---|---|---|
| **HOURS/EARNS CURRENT** | 1 | REGULAR | 240.00 | 9,346.16 | | FSAH | 240.00 | 96.15- |
| | | HSA | | 192.31- | | TOTAL | | 9,057.70 |

**PRE-TAX ITEMS CURRENT**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 401K | | | 70.39- | | DENTL | | 34.89- |
| | MED | | | 237.87- | | VISN | | 12.14- |
| | | | | | | TOTAL | | 355.29- |

**DEDUCTION TO NET CURRENT**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| FLX-1 | 1 | REGULAR | 480.00 | 18,692.32 | | TOTAL | 480.00 | 18,692.32 |
| | VOLIN | | .92 | | | TOTAL | | .92 |
| | VOLIN | | 6.44 | | | TOTAL | | 6.44 |
| | $LS1 | | 160.00 | VOLIN | 23.92 | TOTAL | | 183.92 |
| | VOLIN | | 1.84 | | | TOTAL | | 1.84 |

**EARNINGS FROM DEDUCTIONS**

| | PC | DESCRIPTION | HOURS | EARNINGS | PC | DESCRIPTION | HOURS | EARNINGS |
|---|---|---|---|---|---|---|---|---|
| QTD | FSAH | REGULAR | 673.05- | 1,346.17- | | | | |
| YTD | FSAH | REGULAR | 2,499.90- | 7,456.71- | | | | |
| FTD1 | FSAH | HSA | 192.30- | 384.62- | | | | |

**PRE-TAX ITEMS**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| QTD | 401K | HSA | 492.73- | 244.23- | | MED | | 1,665.08- |
| YTD | 401K | DENTL | 2,133.06- | 950.73- | | MED | | 6,184.62- |
| FTD1 | 401K | DENTL | 140.78- | 69.78- | | MED | | 475.74- |

**MEMO DEDUCTION**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CURRENT | ACHBR | HSAER | 1,070.39 | 46.00 | | VISN | | 84.98- |
| QTD | ACHBR | HSAER | 7,492.73 | 322.96 | | VISN | | 2,487.03- |
| YTD | ACHBR | HSAER | 30,575.14 | 1,615.44 | MISC1 | VISN | | 339.54- |
| FTD1 | ACHBR | HSAER | 2,140.78 | 92.16 | | VISN | | 9,607.09- |
| | | | | | | TOTAL | | 24.28- |

**OTHER DEDUCTIONS**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CURRENT | W2GRP | | 27.87 | | | | | 710.58- |
| QTD | W2GRP | | 195.09 | | | | | |
| YTD | W2GRP | | 867.54 | | | | | |
| FTD1 | W2GRP | | 55.74 | | | | | |

**DED BALANCES**

| | FSAH | HSA | 2,499.90- | 7,456.71- | HSAER | 1,615.44 | |

**GROSS TO NET**

| | WAGES | SOCSEC | FEDERAL | STATE | LOCAL | SDI/UC | DEDUCTION | NET |
|---|---|---|---|---|---|---|---|---|
| | | MEDICR | | | | | | |
| CUR | 8702.41 | 256.27 | 1098.67 | 466.56 TOT | 1,665.08- | | .92 | 6752.38 |
| | | 127.61 | | 466.56 KY | | | | |
| QTD | 60916.87 | 3345.06 | 7690.69 | 3265.92 TOT | | | 6.44 | 45715.49 |
| | | 893.27 | | 3265.92 KY | | | | |
| YTD | 63403.90 | 1601.97 | 34482.39 | 14535.39 TOT | | | 823.07 | 206310.80 |
| | 271117.46 | | | 14535.39 KY | | | | |
| | 267725.11 | | | | | | | |

**WAGE AND TAXES**

| | QTD WAGES | QTD TAXES | YTD WAGES | YTD TAXES | FX1 WAGES | FX1 TAXES | FX2 WAGES | FX2 TAXES |
|---|---|---|---|---|---|---|---|---|
| EE SSEC TO LMT | 53952.55 | 3345.06 | 272612.42 | 16901.97 | 9949.20 | 616.85 | | |

**086- ALPHABETIC PAYROLL REGISTER**
**GRAND TOTALS**

086          B-12/27/13          PAY PERIOD 26          PAGE NO. 7

12/27/13 REPORT DATE          CHECKS DATED 12/27/13

HEALTH AND BENEFIT SERVICES, LLC

| REB NO. | CO. NAME | QTD WAGES | QTD TAXES | YTD WAGES | YTD TAXES | FX1 WAGES | FX1 TAXES | FX2 WAGES | FX2 TAXES |
|---|---|---|---|---|---|---|---|---|---|
| | **WAGE AND TAXES** | | | | | | | | |
| | MDCR TO LMT | 61604.69 | 893.27 | 280264.56 | 4063.84 | 17601.34 | 255.23 | | |
| | FIT | 60916.87 | 7690.69 | 277117.46 | 34482.39 | 17404.82 | 2197.34 | | |
| | FUTA TO LMT | 50568.46 | | | | | | | |
| | SIT | | | | | | | | |
| | KY KENTUCKY | 61111.96 | 3265.92 | 279985.00 | 14535.39 | 17460.56 | 933.12 | | |
| | SDI/UC | | | | | | | | |
| | KY KENTUCKY | 65423.12 | | 298546.32 | | 18692.32 | | | |

************************************************************

**CURRENT TAX RECAP          0**

| TYPE | JURISDICTION | VOID/MANUAL CHECKS INCLUDED |
|---|---|---|

FORM 8109 FEDERAL DEPOSIT          256.27
EMPLOYEE SSEC          127.61
EMPLOYEE MDCR          256.26
EMPLOYER SSEC          127.61
EMPLOYER MDCR          1,098.67
EMPLOYEE FIT          1,866.67
TOTAL DEPOSIT          1,866.42

************************************************************          LIABILITIES          ************************************************************

| TYPE | JURISDICTION | | TAXABLE WAGES | LIMIT | WAGES TO LIMIT | RATE | AMOUNT |
|---|---|---|---|---|---|---|---|
| EMPLOYER SSEC | | | 8,800.67 | 113700 | 4,133.28 | 6.20 % | 256.26 SSEC |
| EMPLOYER MDCR | | | 8,800.67 | UNLIM | 8,800.67 | 1.45 % | 127.61 MDCR |
| FUTA | FUTA | STANDARD RATE | 8,772.80 | 7000 | .00 | 7.65 % | 383.87 |
| FUTA | KENTUCKY | CR RED | | 7000 | 50,568.46 | .60 % | .00 |
| TOTAL | | | | | | .90 % | 455.12 |
| | | | | | | | 455.12 |
| SUI | KY-KENTUCKY | | 9,346.16 | 9300 | | 3.20 % | .00 |
| TOTAL | | | 9,346.16 | | | | .00 |
| SIT | KY-KENTUCKY | | 8,730.28 | | | | 466.56 |
| TOTAL | | | 8,730.28 | | | | 466.56 |

**NET PAY ANALYSIS**

| | | | |
|---|---|---|---|
| # DEP ADV | 17500 | CHECK TOTAL | 6,752.38 |
| # EMPS PAID | 5500 | EFTS TOTAL | 6,752.38 |
| | | TOTAL NET | 2,788.10 * |
| | | TOTAL TAXES | 9,540.48 *** |

FEDERAL 401-K DEFERRAL LIMIT          17500
FEDERAL 401-K CATCH-UP DEFERRAL LIMIT          5500
EMPLOYEE CENSUS
ACTIVE EMPS          3
TERM EMPS          6
TOTAL EMPS          9

*************************************************************



HEALTH AND BENEFIT SERVICES, LLC
CO. NAME

086- ALPHABETIC PAYROLL REGISTER
BILLING AUDIT INFORMATION

086

12/27/13
REPORT DATE

B-12/27/13
CHECKS DATED

PAY
26
PERIOD

8
PAGE NO.

REB
NO.

9 EMPLOYEES INCLUDED.                    12 DATA GROUPS SELECTED.            1 COPY PRINTED.        CD-ROM FILE - NO

OUTPUT MEDIA - PRINTED - YES            ORCHESTRATOR PRINT - NO                                   I/P  13/12/10 11.56.24    R35.78
                                                                                                  O/P  13/12/23 09.36.19    R36.07
REPORT TYPE - PAY ANALYSIS REPORT       DETAIL                                                     PRT  13/12/23  9.36.39

PAY ANALYSIS REPORTING

A168

PAYROLL REPORTS

REB    HEALTH AND BENEFIT SERVICES, LLC    INDIV DED REG *HSAER*    6A5    PD   26    12/27/13    PAGE    1

| ID NUMBER | EMPLOYEE NAME | CURRENT | TO-DATE | BALANCE | LIMIT | REMAINDER | PERM AMT | CODES |
|---|---|---|---|---|---|---|---|---|
| 99-XO2-01615 | BROWN,WYATT W | 23.00 | 600.00 | 600.00 | 600.00 | .00 | 23.08 | ONO |
| 99-XO2-97897 | HURST,DAVID T | 23.00 | 600.00 | 600.00 | 600.00 | .00 | 23.08 | ONO |
| 99-XO2-97949 | SCHUTTERS,JENNIFER E | | 415.44 | 415.44 | 600.00 | 184.56 | | OND |
| * | COMPANY TOTALS | 46.00 | 1615.44 | 1615.44 | 1800.00 | 184.56 | | |

| EMPLOYEE COUNTS | * | TOTAL | ACTIVE | INACT | TERM |
|---|---|---|---|---|---|
| | | 3 | 2 | | 1 |

PAYROLL REPORTS

REB        HEALTH AND BENEFIT SERVICES, LLC          INDIV DED REG *ACHBR*          6A6  PD 26   12/27/13   PAGE    1



| ID NUMBER | EMPLOYEE NAME | CURRENT | TO-DATE | BALANCE | LIMIT REMAINDER | PERM AMT | CODES |
|---|---|---|---|---|---|---|---|
| 99-XO2-O1615 | BROWN,WYATT W | 152.50 | 3965.OO | | | 152.50 | OMO |
| 99-XO2-97897 | HURST,DAVID T | 294.23 | 7649.98 | | | 294.23 | OMO |
| 99-XO1-97923 | RAMSAY,SCOTT | 623.66 | 16215.16 | | | 623.66 | OMO |
| 99-XO2-97949 | SCHUTTERS,JENNIFER E | | 2745.OO | | | | OMD |
| * | COMPANY TOTALS | 1070.39 | 30575.14 | | | | |

EMPLOYEE COUNTS          *          TOTAL     ACTIVE     INACT     TERM
                                      4          3                  1

A170



PAYROLL REPORTS

REB    HEALTH AND BENEFIT SERVICES, LLC        INDIV DED REG *FSAH *        6B5   PD 26   12/27/13   PAGE   1

| ID NUMBER | EMPLOYEE NAME | CURRENT | TO-DATE | BALANCE | LIMIT | REMAINDER | PERM AMT | CODES |
|---|---|---|---|---|---|---|---|---|
| 99-X01-97923 | RAMSAY,SCOTT | 96.15- | 2499.90- | 2499.90- | 2499.90- | .00 | 96.15- | 060 |
| * COMPANY TOTALS | | 96.15- | 2499.90- | 2499.90- | 2499.90- | | | |

EMPLOYEE COUNTS    *    TOTAL 1    ACTIVE 1    INACT    TERM

PAYROLL REPORTS

REB   HEALTH AND BENEFIT SERVICES, LLC          INDIV DED REG *HSA *          6B7   PD 26   12/27/13   PAGE   1



| ID NUMBER | EMPLOYEE NAME | CURRENT | TO-DATE | BALANCE | LIMIT | REMAINDER | PERM AMT | CODES |
|---|---|---|---|---|---|---|---|---|
| 99-XO2-01615 | BROWN,WYATT W | 100.00- | 2600.00- | 2600.00- | 2600.00- | .00 | 100.00- | 060 |
| 99-XO2-97897 | HURST,DAVID T | 92.31- | 2400.06- | 2400.06- | 2400.06- | .00 | 92.31- | 060 |
| 99-XO2-97949 | SCHUTTERS,JENNIFER E | | 2456.65- | 2456.65- | 3649.88- | 1193.23- | | 0GD |
| * | COMPANY TOTALS | 192.31- | 7456.71- | 7456.71- | 8649.94- | 1193.23- | | 0GD |

EMPLOYEE COUNTS          *          TOTAL 3          ACTIVE 2          INACT          TERM 1



PAYROLL REPORTS

| REB    HEALTH AND BENEFIT SERVICES, LLC | | $LS1-6E1-TDR | | | 6E1   PD 26   12/27/13   PAGE   1 | | | |
|---|---|---|---|---|---|---|---|---|
| ID NUMBER | EMPLOYEE NAME | CURRENT TO-DATE | BALANCE | LIMIT | REMAINDER | PERM AMT | CODES |
| 99-XO2-O1615 BROWN,WYATT W | | 160.00 | | | | | |
| * COMPANY TOTALS | | 160.00 | | | | | OOD |
| EMPLOYEE COUNTS | * | TOTAL 1 | ACTIVE 1 | INACT | TERM | | |

PAYROLL REPORTS

REB    HEALTH AND BENEFIT SERVICES, LLC          401K-611-IDR                                                    611  PD  26    12/27/13    PAGE    1



| ID NUMBER | EMPLOYEE NAME | AT $17500 DEFER LMT | CURRENT | TO-DATE | BALANCE | LIMIT REMAINDER | PERM AMT | CODES |
|---|---|---|---|---|---|---|---|---|
| 99-XO2-01615 | BROWN,WYATT W | | 43.85- | 1140.10- | | | | 8FO |
| 99-XO2-97897 | HURST,DAVID T | | 26.54- | 690.04- | | | 3.00- U | 8FO |
| 99-XO2-97949 | SCHUTTERS,JENNIFER E | | | 302.92- | | | .92- U | 8FO |
| * | COMPANY TOTALS | | 70.39- | 2133.06- | | | % 8FD | |

| EMPLOYEE COUNTS | * | TOTAL 3 | ACTIVE 2 | INACT | TERM 1 |
|---|---|---|---|---|---|

PAYROLL REPORTS

REB    HEALTH AND BENEFIT SERVICES, LLC        W2GRP-616-1DR



616  PD  26    12/27/13    PAGE    1

| ID NUMBER | EMPLOYEE NAME | CURRENT | TO-DATE | BALANCE | LIMIT | REMAINDER | PERM AMT | CODES |
|---|---|---|---|---|---|---|---|---|
| 99-XO2-O1615 | BROWN,WYATT W | .96 | 24.96 | | | | .96 | OFO |
| 99-XO2-97897 | HURST,DAVID T | 4.62 | 120.12 | | | | 4.62 | OFO |
| 99-XO1-97923 | RAMSAY,SCOTT | 22.29 | 579.54 | | | | 22.29 | OFO |
| 99-XO2-97949 | SCHUTTERS,JENNIFER E | | 142.92 | | | | | OFD |
| * | COMPANY TOTALS | 27.87 | 867.54 | | | | | |

EMPLOYEE COUNTS        *    TOTAL    ACTIVE    INACT    TERM
                            4        3                 1




REB    HEALTH AND BENEFIT SERVICES, LLC    MED-620-IDR    620  PD  26    12/27/13    PAGE    1

| ID NUMBER | EMPLOYEE NAME | CURRENT | TO-DATE | BALANCE | LIMIT | REMAINDER | PERM AMT | CODES |
|---|---|---|---|---|---|---|---|---|
| 99-XO2-97897 | HURST,DAVID T | 8.77- | 228.02- | | | | 8.77- | 060 |
| 99-XO1-97923 | RAMSAY,SCOTT | 229.10- | 5956.60- | | | | 229.10- | 060 |
| * | COMPANY TOTALS | 237.87- | 6184.62- | | | | | |

EMPLOYEE COUNTS    *    TOTAL 2    ACTIVE 2    INACT    TERM

PAYROLL REPORTS



REB    HEALTH AND BENEFIT SERVICES, LLC        DENTL-626-IDR                                    626  PD  26    12/27/13    PAGE    1

| ID NUMBER | EMPLOYEE NAME | CURRENT | TO-DATE | BALANCE | LIMIT | REMAINDER | PERM AMT | CODES |
|---|---|---|---|---|---|---|---|---|
| 99-XO2-01615 | BROWN,WYATT W | 3.79- | 98.54- | | | | 3.79- | 060 |
| 99-XO2-97897 | HURST,DAVID T | 7.58- | 174.34- | | | | 7.58- | 060 |
| 99-XO1-97923 | RAMSAY,SCOTT | 23.52- | 611.52- | | | | 23.52- | 060 |
| 99-XO2-97949 | SCHUTTERS,JENNIFER E | | 66.33- | | | | | 06D |
| * | COMPANY TOTALS | 34.89- | 950.73- | | | | | 06D |

EMPLOYEE COUNTS        *    TOTAL    ACTIVE    INACT    TERM
                            4         3                  1

PAYROLL REPORTS

A177



PAYROLL REPORTS

REB    HEALTH AND BENEFIT SERVICES, LLC        VISN-627-IDR        627  PD 26    12/27/13    PAGE   1

| ID NUMBER | EMPLOYEE NAME | CURRENT | TO-DATE | BALANCE | LIMIT | REMAINDER | PERM AMT | CODES |
|---|---|---|---|---|---|---|---|---|
| 99-XO2-01615 | BROWN,WYATT W | 2.24- | 58.24- | | | | 2.24- | 060 |
| 99-XO2-97897 | HURST,DAVID T | 3.77- | 82.72- | | | | 3.77- | 060 |
| 99-XO1-97923 | RAMSAY,SCOTT | 6.13- | 159.38- | | | | 6.13- | 060 |
| 99-XO2-97949 | SCHUTTERS,JENNIFER E | | 39.20- | | | | | 06D |
| * | COMPANY TOTALS | 12.14- | 339.54- | | | | | |

EMPLOYEE COUNTS           *        TOTAL    ACTIVE    INACT    TERM
                                    4         3                  1



PAYROLL REPORTS

REB        HEALTH AND BENEFIT SERVICES, LLC              INDIV DED REG *VOLIN*                                653  PD 26   12/27/13   PAGE   1

| ID NUMBER | EMPLOYEE NAME | CURRENT | TO-DATE | BALANCE | LIMIT | REMAINDER | PERM AMT | CODES |
|---|---|---|---|---|---|---|---|---|
| 99-XO2-01615 | BROWN,WYATT W | .92 | 23.92 | | | | | |
| * | COMPANY TOTALS | .92 | 23.92 | | | | .92 | 000 |

| EMPLOYEE COUNTS | * | TOTAL | ACTIVE | INACT | TERM |
|---|---|---|---|---|---|
| | | 1 | 1 | | |



PAYROLL REPORTS

REB    HEALTH AND BENEFIT SERVICES, LLC        MISC1-697-IDR        697  PD 26   12/27/13   PAGE   1

| ID NUMBER | EMPLOYEE NAME | CURRENT TO-DATE | BALANCE | LIMIT | REMAINDER | PERM AMT | CODES |
|---|---|---|---|---|---|---|---|
| 99-X02-01615 BROWN,WYATT W | | 20.00- | | | | | OND |
| * COMPANY TOTALS | | 20.00- | | | | | |
| EMPLOYEE COUNTS * | TOTAL 1 | ACTIVE 1 | INACT | TERM | | | |

A180



SHERIDAN

PAY ANALYSIS REPORTING

**086- ALPHABETIC PAYROLL REGISTER    086**

HEALTH AND BENEFIT SERVICES, LLC
CO. NAME

| | 01/11/13 REPORT DATE | 01/11/13 CHECKS DATED | B-01/11/13 CHECKS TO | | |
|---|---|---|---|---|---|
| | | | Y-TO-D GROSS TYPE | NET CURRENT | CHECK# |

PAY Q1 PERIOD    PAGE NO. 1

REB
NO.
EMPLOYEE ID
EMPLOYEE NAME

99-XQ2-01615
BROWN, WYATT W

| | | | |
|---|---|---|---|
| BASE | 1461.54 | FRQ B | STAT A |
| FCAST | 80.00E | M/S S | SEX M |
| FILE# | 1615 | ST1 KY | |
| HIRE | 01/16/12 | F#EX 01 | S#EX 01 |
| PTO-C | | SADJ NRES | |
| OT EX | N | | |
| DSS PT | Y | | |

EFT-ACCOUNT#
DOB:
ALT DATE:
DOB: 02/01/79

ID BK TP  TRANSIT-NO
A PQ C   2421-7612-9

HOURS AND EARNINGS / PC DESCR RATE HOURS AMOUNT

| PC | DESCR | RATE | HOURS | AMOUNT | DED DESCR | AMOUNT AND ADJ | CODES | Y-TO-D | CURRENT | CHECK# |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | REGUL | | 80.00 | 1461.54 | $LS1 | 20.00 | 000* | 1361.54 GRCOMP | 1361.54 | |
| | HSA | | 80.00 | 100.00* | HSA | 152.50 | ONO* | 1311.66 GRPAY | 1311.66 | |
| | 401K | PRE-TAX ITEMS | | 43.85-HSA | ACHBR | 23.08 | ONO* | 84.10 SSEC | 84.10 | |
| | DENTL | | | 3.79-401K U | HSAER | 100.00- | | 19.67 MDCR | 19.67 | |
| | VISN | | | 2.24- | 401K | 3.00- | OEOE | 145.69 FIT | 145.69 | |
| | | | | | VISN | 43.85- | E | 63.02 ST 1 KY | 63.02 | |
| | | | | ---MED--- | | | 060 | 20.92 TOTDED | | |
| | | | | | DENTL | 3.79- | 060E | 978.26 NET | 978.26 | |
| 1 | REGULAR | Q-TO-D | 80.00 | 1461.54 | VISN | 2.24- | 060E | 20.92 ST 1 KY | | |
| | | | | | VOLIN | .92 | 000* | 978.26 NET | | |
| 1 | REGULAR | Y-TO-D | 80.00 | 1461.54 | ---LTD--- | | | | | |
| | | | | VOLIN | W2GRP | .96 | 0F0* | ---WAGES--- Q-TO-D | ---TAXES--- | |
| 1 | REGULAR | F-TO-D 1 | 80.00 | 1461.54 | ---LIFE--- | | | 1356.47 SSEC | 84.10 | |
| | | | | ---LTD--- | | | | 1356.47 MDCR | 19.67 | |
| | | | | EFTA1 | BAL/LMT | | | 1356.47 FIT | 145.69 | |
| | | | | | | 160.00 BAL | | 1311.66 SUI KY | | |
| | | | | $LS1 | | 427.43 LMT | | 1312.62 ST KY | 63.02 | |
| | | | | | | 23.08 BAL | | 1461.54 SUI KY | | |
| | | | | HSAER | | 600.00 LMT | ---WAGES--- Y-TO-D | | | |
| | | | | | | 100.00-BAL | | 1356.47 SSEC | 84.10 | |
| | | | | HSA | | 2600.00-LMT | | 1356.47 MDCR | 19.67 | |
| | | | | | | | | 1461.54 FIT | 145.69 | |
| | | | | $LS1 | Q-TO-D | 20.00 | ---WAGES--- F-TO-D 1 | | | |
| | | | | ACHBR | | 152.50 | | 1356.47 SSEC | 84.10 | |
| | | | | HSAER | | 23.08 | | 1356.47 MDCR | 19.67 | |
| | | | | HSA | | 100.00- | | 1461.54 FIT | 145.69 | |
| | | | | 401K | | 43.85- | | 1355.51 SUI KY | | |
| | | | | DENTL | | 3.79- | | 1312.62 ST KY | 63.02 | A231 |
| | | | | VISN | | 2.24- | | | | |
| | | | | VOLIN | | .92 | | | | |
| | | | | W2GRP | | .96 | | | | |
| | | | | $LS1 | Y-TO-D | 20.00 | ---TAXES--- | | | |
| | | | | ACHBR | | 152.50 | | 1356.47 SSEC | 84.10 | |
| | | | | HSAER | | 23.08 | | 1356.47 MDCR | 19.67 | |
| | | | | HSA | | 100.00- | | 1461.54 FIT | 145.69 | |
| | | | | 401K | | 43.85- | | 1355.51 FUTA | | |
| | | | | DENTL | | 3.79- | | 1311.66 FIT | 145.69 | |
| | | | | VISN | | 2.24- | | 1356.47 SSEC | 84.10 | |
| | | | | VOLIN | | .92 | | 1356.47 MDCR | 19.67 | |
| | | | | W2GRP | | .96 | | 1461.54 FIT | 145.69 | |
| | | | | | F-TO-D 1 | | | 1355.51 FUTA | | |
| | | | | $LS1 | | 20.00 | | 1311.66 FIT | 145.69 | |
| | | | | ACHBR | | 152.50 | | 1355.51 SUI KY | | |
| | | | | HSAER | | 23.08 | | 1312.62 ST KY | 63.02 | |
| | | | | HSA | | 100.00- | | 1461.54 SUI KY | | |
| | | | | 401K | | 43.85- | | 1312.62 ST KY | 63.02 | |
| | | | | DENTL | | 3.79- | | 1355.51 FUTA | | |
| | | | | VISN | | 2.24- | | | | |
| | | | | VOLIN | | .92 | | | | |
| | | | | W2GRP | | .96 | | | | |

HEALTH AND BENEFIT SERVICES, LLC

086- ALPHABETIC PAYROLL REGISTER        086

| REB NO. | | | |
|---|---|---|---|
| EMPLOYEE ID | | REPORT DATE | 01/11/13 |
| EMPLOYEE NAME | CO. NAME | | B-01/11/13 |

| | | | PC DESCR | HOURS AND EARNINGS | RATE | HOURS | AMOUNT | DESCR DED AND ADJ | AMOUNT | CODES | CHECKS DATED | GROSS TO NET TYPE | CURRENT | CHECK# |

99-XO3-97913
FLORENCE, OTTIS

| BASE | 14.7500 | FRQ B | STAT A | 1 | REGUL | 14.7500 | 92.00 | 1357.00 | DENTL | 7.58-060E | | 1357.00 | GRCOMP | 1357.00 | |
| FCAST | .00 E | M/S M | SEX A | | DENTL | | | | VISN | 3.77-060E | | 1337.13 | GRPAY | 1337.13 | |
| FILE# | 97913 | ST1 KY | KY | | VISN | | | 7.58-AFLPT | VOLIN | 8.52-060E | | 82.90 | SSEC | 82.90 | |
| HIRE | 01/01/07 | F#/EX OO | S#/EX OO | | AFLPT | | | 3.77-VOLIN | | | | 19.39 | MDCR | 19.39 | |
| PTO-C | | | | | | | 8.52-STD | | | | 120.38 | FIT | 120.38 | |
| OT EX N | | | | | | | | LIFE | 27.55 000* | | 65.21 | ST1 KY | 65.21 | |
| | | | | | Q-TO-D | 92.00 | 1357.00 | SPOUS | | | 104.99 | TOTDED | 104.99 | |
| EFT-ACCOUNT# | | ID BK TP | TRANSIT-NO | 1 | REGULAR | 92.00 | 1357.00 | DENTL | | | 944.26 | NET | 944.26 | |
| | | A KY C | 0421-0117-4 | | | | | AFLPT | 8.52- | | 1337.13 | EFT A | 1337.13 | A232 |
| DOB: | 05/11/46 | | | 1 | Y-TO-D | 92.00 | 1357.00 | VISN | 3.77- | | 1337.13 | ST KY | | |
| ALT DATE: | | | | | | | | STD | 22.33 | | 1337.13 | FIT | | |
| | | | | 1 | F-TO-D 1 | 92.00 | 1357.00 | SPOUS | 27.55 | | 1337.13 | SSEC | | |
| | | | | | | | | VOLIN | 55.11 | | 1337.13 | MDCR | | |
| | | | | | | | | STD | 22.33 | | 1337.13 | FUTA | | |
| | | | | | | | | SPOUS | 27.55 | Q-TO-D | --WAGES-- | Q-TO-D | --TAXES-- | |
| | | | | | | | | AFLPT | 8.52- | | 1337.13 | ST KY | 65.21 | |
| | | | | | | | | VISN | 3.77- | | 1357.00 | SUI KY | | |
| | | | | | | | | DENTL | 7.58- | Y-TO-D | 1337.13 | FIT | | |
| | | | | | | | | SPOUS | 27.55 | | 1337.13 | ST KY | 65.21 | |
| | | | | | | | | VOLIN | 55.11 | | 1357.00 | SUI KY | | |
| | | | | | | | | STD | 22.33 | | 1337.13 | SSEC | 82.90 | |
| | | | | | | | | AFLPT | 8.52- | | 1337.13 | MDCR | 19.39 | |
| | | | | | | | | VISN | 3.77- | | 1337.13 | FIT | 120.38 | |
| | | | | | | | | DENTL | 7.58- | F-TO-D 1 | 1337.13 | ST KY | 65.21 | |
| | | | | | | | | SPOUS | 27.55 | | 1337.13 | FUTA | | |
| | | | | | | | | | | | 1337.13 | ST KY | 65.21 | |
| | | | | | | | | | | Y-TO-D | 1337.13 | SUI KY | | |

99-XO3-97914
FLORENCE, STEVE

| BASE | 15.2500 | FRQ B | STAT A | 1 | REGUL | 15.2500 | 106.50 | 1624.13 | ACHBR | 623.66 | OMO* | 1624.13 | GRCOMP | 1624.13 | |
| FCAST | .00 E | M/S S | SEX M | | DENTL | | | | MED | 229.10-060E | | 1383.68 | GRPAY | 1383.68 | |
| FILE# | 97914 | ST1 KY | KY | | MED | | | 7.58-DENTL | DENTL | 7.58-060E | | 85.79 | SSEC | 85.79 | |
| HIRE | 01/01/07 | F#/EX O4 | S#/EX O4 | | VISN | | | 229.10-VISN | VISN | 3.77-060E | | 20.06 | MDCR | 20.06 | |
| PTO-C | | | | | | | 3.77-VOLIN | VOLIN | 12.46 000* | | 90.73 | FIT | 90.73 | |
| OT EX N | | | | | | | 12.46 000* | | | | 64.84 | ST1 KY | 64.84 | |
| | | | | | Q-TO-D | 106.50 | 1624.13 | LIFE | 4.15 000* | | 16.61 | FIT | 16.61 | |
| EFT-ACCOUNT# | | ID BK TP | TRANSIT-NO | 1 | REGULAR | 106.50 | 1624.13 | SPOUS | | | 1105.65 | TOTDED | 1105.65 | |
| | | A Fa C | 0421-0155-6 | | | | | EFTA1 | | Q-TO-D | 1105.65 | NET | 1105.65 | |
| DOB: | 08/27/70 | | | 1 | Y-TO-D | 106.50 | 1624.13 | ACHBR | 623.66 | | --WAGES-- | EFT A | 1383.68 | |
| ALT DATE: | | | | | | | | MED | 229.10- | | 1383.68 | ST KY | | |
| | | | | 1 | F-TO-D 1 | 106.50 | 1624.13 | DENTL | 7.58- | | 1383.68 | SSEC | | |
| | | | | | | | | VISN | 3.77- | | 1383.68 | MDCR | | |
| | | | | | | | | VOLIN | 12.46 | | 1383.68 | FIT | | |
| | | | | | | | | SPOUS | 4.15 | Y-TO-D | 1624.13 | FUTA | | |
| | | | | | | | | ACHBR | 623.66 | | 1383.68 | SUI KY | | |
| | | | | | | | | MED | 229.10- | | 64.84 | ST KY | 64.84 | |
| | | | | | | | | DENTL | 7.58- | | | --TAXES-- | | A233 |



CERIDIAN

PAY ANALYSIS REPORTING

086- ALPHABETIC PAYROLL REGISTER                086

HEALTH AND BENEFIT SERVICES, LLC

| | | | 01/11/13 | B-01/11/13 | | PAY |
| | | | REPORT DATE | CHECKS DATED | | Q1 PERIOD    PAGE NO. 3 |

| REB NO. EMPLOYEE ID EMPLOYEE NAME | PC DESCR | RATE | HOURS AND EARNINGS | | DED AND ADJ | | CHECKS TO NET | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | HOURS | AMOUNT | DESCR | AMOUNT  CODES | Y-TO-D | TYPE | CURRENT | CHECK# |

99-X03-97914
FLORENCE, STEVE
***** CONTINUED *****

99-X03-97915
FLORENCE, STEVEN JR

```
BASE   11.5000        FRQ   B    STAT  A
FCAST  .00   E         M/S   S    SEX   M
FILE#  97915          ST1   KY
HIRE   01/01/07        F/#EX
PTO-C                  FADJ  $
OT EX  N

EFT-ACCOUNT#           ID  BK  TP    TRANSIT-NO
                        A   KY  S    0421-0117-4

ALT DATE:              OO  02
DOB:       06/01/89

S#EX   02
FADJ   $    OO  10.00
```

```
1  REGUL  11.5000  90.50  1040.75
                   PRE-TAX ITEMS--
                   DENTL          3.79-DENTL   3.79-
                   MED            73.42-VOLIN  6.23 OOO*
                                  LIFE
                                  EFTA1
```

```
                       ----- Y-TO-D -----           -----WAGES-- Y-TO-D       --TAXES--
                       VISN         3.77-            1040.75 GRCOMP            85.79 SSEC
                       VOLIN        12.46            1383.68 SSEC              20.06 MDCR
                       SPOUS        4.15             1383.68 MDCR              90.73 FIT
                       --- F-TO-D 1 ---              1383.68 FIT               13.97 KY
                       VISN         3.77-            1383.68 FUTA              64.84
                       VOLIN        12.46            1383.68 ST  KY
                       SPOUS        4.15             1624.13 SUI KY

                       ACHBR        169.18  OMO*     1040.75 GRCOMP            1040.75
                       ----MED      73.42-O6OE       963.54 GRPAY             963.54
                       DENTL        3.79-O6OE        59.74 SSEC               59.74
                       VOLIN        6.23  O6OE       13.97 MDCR               13.97
                       --- Y-TO-D ---               125.40 FIT               125.40
                       ACHBR        169.18           42.01 ST  KY             42.01
                       MED          73.42-           6.23 ST1 KY              6.23
                       DENTL        3.79-            716.19 TOTDED            716.19
                       VOLIN        6.23             6.23 NET                 6.23
                       --- Q-TO-D ---               716.19 EFT A             716.19
                       ACHBR        169.18           963.54 WAGES            963.54
                       MED          73.42-           963.54 WAGES            963.54
                       DENTL        3.79-            -----WAGES-- Q-TO-D       --TAXES--
                       VOLIN        6.23             963.54 SSEC              59.74
                       --- F-TO-D 1 ---              963.54 MDCR              13.97
                       ACHBR        169.18           963.54 FIT               125.40
                       MED          73.42-           1040.75 ST  KY           42.01
                       DENTL        3.79-            -----WAGES-- F-TO-D 1 --- --TAXES--
                       VOLIN        6.23             963.54 SSEC              59.74
                                                     963.54 MDCR              13.97
                                                     963.54 FIT               125.40
                                                     963.54 FUTA
                                                     963.54 ST  KY
                                                     1040.75 SUI KY           42.01

A234
```



PAY ANALYSIS REPORTING

086- ALPHABETIC PAYROLL REGISTER    086

HEALTH AND BENEFIT SERVICES, LLC

01/11/13  REPORT DATE
B-01/11/13  CHECKS DATED
Y-TO-D  GROSS TO NET TYPE
PAY PERIOD Q1
PAGE NO. 4

| REB NO. EMPLOYEE ID CO. NAME EMPLOYEE NAME | PC DESCR | RATE | HOURS | AMOUNT | DESCR | DED AND ADJ AMOUNT AND ADU CODES | CUR | NET CURRENT | CHECK# |
|---|---|---|---|---|---|---|---|---|---|

**FLORENCE, WHITNEY E**
SS-NO 99-XO2-01543
BASE 8.5000   FRQ B   M/S S   ST1 KY   F#EX OO
FCAST .00 E   STAT A   SEX F   S#EX OO
FILE# 1543
HIRE 01/03/12
PTO-C
OT EX N
DSS PT Y
EFT-ACCOUNT#   ID BK TP A KY S   TRANSIT-NO 0421-0117-4
ALT DDB: 11/15/92

1 REGUL   8.5000   11.25   95.63   401K U   3.00-BFO   GRCOMP 95.63   95.63
              PRE-TAX ITEMS          2.87- E   GRPAY 88.97   88.97
1 401K                               3.79-OOO   SSEC 5.69   5.69
  DENTL                                         MDCR 1.33   1.33
                                                FIT .63   .63
                                                NET 81.32   81.32

1 REGULAR          11.25   95.63   -401K-   2.87-   CUR SSEC WAGES   81.32
  Q-TO-D                            DENTL    3.79-   CUR MDCR WAGES
1 REGULAR  Y-TO-D  11.25   95.63   401K     2.87-   -Q-TO-D----- -TAXES--
  DENTL                             DENTL    3.79-   SSEC 5.69   5.69
1 REGULAR  F-TO-D 1             LIFE        Y-TO-D-- MDCR 1.33   1.33
                                                    FIT .63   .63

  401K     2.87-
  DENTL    3.79-
  F-TO-D 1

--WAGES--Q-TO-D--   SSEC 91.84   MDCR 91.84   FIT   ST KY   FUTA   SUI KY
95.63   88.97   88.97   88.97   91.84   91.84   91.84   91.84

**HURST, DAVID T**
SS 99-XO2-97897
BASE 2884.62   FRQ B   M/S M   ST1 KY   F#EX O2
FCAST 80.00E   STAT A   SEX M   S#EX O4
FILE# 97897
HIRE 11/07/06
PTO-C
OT EX N
DSS PT Y
EFT-ACCOUNT#   ID BK TP B JR C   TRANSIT-NO 0830-0013-7
ALT DDB: 05/11/71

1 REGUL          80.00   2884.62   ACHBR   294.23   OMO*   GRCOMP 2792.31   2792.31
  HSA                              HSAER   92.31-OOO*   GRPAY 2747.18   2747.18
1 HSA            PRE-TAX ITEMS     HSA     92.31-OOOE   SSEC 172.26   172.26
1 401K                            26.54-401K U        MDCR 40.29   40.29
  DENTL                            8.77-MED           MDCR 40.29   40.29
  MED                              2.24-DENTL         ST 1 KY 144.19   144.19
  VISN                                               NET B 2102.40   2102.40
                                 26.54-OOGE
1 REGULAR  Q-TO-D  80.00   2884.62  8.77-OOGE   EFT B 2102.40   2102.40
  LTD                              7.58-LIFE         CUR SSEC WAGES 2778.34
  LIFE                             2.24-VISN         CUR MDCR WAGES 2778.34
1 REGULAR  Y-TO-D  80.00   2884.62  W2GRP           WAGES-Q-TO-D-- -TAXES--
                                   4.62-OFO*        SSEC 172.26   172.26
1 REGULAR  F-TO-D 1  80.00  2884.62                 MDCR 40.29   40.29
                                 BAL/LMT ----       FIT 288.04   288.04
                                 ACHBR  23.08 BAL   ST KY 144.19
                                 HSA   600.00 LMT   FUTA
                                 HSAER  92.31-BAL   SUI KY
                                 2400.06-LMT        WAGES-Y-TO-D--
                                 2884.62 SUI KY     SSEC 2778.34
  ACHBR   294.23  Q-TO-D         MDCR 2778.34
  HSA      23.08                 FIT
  HSAER    92.31-                ----WAGES-- Y-TO-D  -TAXES--
                                 SSEC 172.26   172.26
                                 MDCR 40.29   40.29
                                 FIT 288.04   288.04

A235

A236



PAY ANALYSIS REPORTING

086- ALPHABETIC PAYROLL REGISTER                086

| | | | | | | B-01/11/13 | | PAY Q1 | |
| REB | HEALTH AND BENEFIT SERVICES, LLC | | | 01/11/13 | | CHECKS DATED | | PERIOD | PAGE NO. 5 |
| NO. | CO. NAME | | | REPORT DATE | | GROSS TO | | | |
| EMPLOYEE ID | | | | Y-TO-D | | TYPE | | | |
| EMPLOYEE NAME | | | | | | | | | |

HURST, DAVID T          ***** CONTINUED *****

| | PC DESCR | RATE | HOURS | AMOUNT | DESCR | AMOUNT | CODES | | |
| ..... HOURS AND EARNINGS ..... | | | | | ..... DED AND ADJ ..... | | ..... NET ..... | | |
| | | | | | | AMOUNT ADJ | | CURRENT | CHECK# |

99-XO1-979923
RAMSAY, SCOTT

| | 1 REGUL | | 80.00 | 5000.00 | ACHBR | 623.66 OM0* | | 4903.85 GRCOMP | 4903.85 |
| | 1 FSAH | | | 96.15 | FSAH | 96.15-OGOE | | 4645.10 GRPAY | 4645.10 |
| | PRE-TAX ITEMS | | | | ACHBR | 229.10-OGOE | | 289.38 SSEC | 289.38 |
| | 1 DENTL | | 23.52 | DENTL | 23.52-OGOE | | 67.68 MDCR | 67.68 |
| | 1 MED | | 229.10 | MED | 229.10-VISN | | 682.24 FIT | 682.24 |
| | 1 VISN | | 6.13 | VISN | 6.13-LTD | | 259.44 ST1 KY | 259.44 |
| | | | | LIFE | 000 | | 3346.36 NET | 3346.36 |
| | Q-TO-D | | 5000.00 | ACHBR | 000 | | EFT A | 3346.36 |
| | | | | EFTA1 | 22.29 0F0* | | 4667.39 WAGES | 4667.39 |
| | 1 REGULAR | 80.00 | 5000.00 | FSAH | | BAL/LMT | CUR SSEC WAGES | 289.38 |
| | Y-TO-D | | 5000.00 | ACHBR | 96.15-BAL | | CUR MDCR WAGES | 67.68 |
| | | | | FSAH | 2499.90-LMT | | Q-TO-D WAGES | 682.24 |
| | 1 REGULAR | 80.00 | 5000.00 | | | F-TO-D 1 | --WAGES-- | A237 |
| | F-TO-D 1 | | 5000.00 | | | | | |

| EFT-ACCOUNT#  0421-0119-0 | | | | | | | | | |
| ALT DATE: | ID BK TP TRANSIT-NO | | | | | | | | |
| DOB: 03/23/60 | A 54 C | | | | | | | | |

GRIDIAN

PAY ANALYSIS REPORTING

# 086- ALPHABETIC PAYROLL REGISTER    086

| | | |
|---|---|---|
| 01/11/13 REPORT DATE | B-01/11/13 CHECKS DATED | PAY Q1 PERIOD |
| | GROSS TO NET | PAGE NO. 6 |

REB
NO.
EMPLOYEE ID
EMPLOYEE NAME
CO. NAME   HEALTH AND BENEFIT SERVICES, LLC

---

**99-X01-97923   RAMSAY, SCOTT      ***** CONTINUED *******

| PC DESCR | RATE | HOURS | AMOUNT | DESCR | DED AND ADJ AMOUNT AND CODES | Y-TO-D TYPE | CURRENT | CHECK# |
|---|---|---|---|---|---|---|---|---|
| | | | | ----- F-TO-D 1 ----- | | -----WAGES-- F-TO-D 1 -----TAXES----- | | |
| | | | | ACHBR | 623.66 | 4667.39 MDCR | 67.68 | |
| | | | | FSAH | 96.15- | 4645.10 FIT | 682.24 | |
| | | | | MED | 229.10- | 4645.10 FUTA | | |
| | | | | DENTL | 23.52- | 4667.39 ST KY | | |
| | | | | VISN | 6.13- | 5000.00 SUI KY | 259.44 | |
| | | | | W2GRP | 22.29 | | | A238 |

---

**99-XO2-01544   RATLIFF, PALACE ASHTON**

SS-NO
BASE  8.5000    FRQ B
FCAST  .00       M/S S       STAT A
FILE#  1544      ST1 KY       SEX M
HIRE  01/09/12   F#EX OO      S#EX OO
PTO-C
OT EX
DSS PT Y

| PC DESCR | RATE | HOURS | AMOUNT | DESCR | DED AND ADJ AMOUNT AND CODES | Y-TO-D TYPE | CURRENT | CHECK# |
|---|---|---|---|---|---|---|---|---|
| 1 REGUL | 8.5000 | 90.00 | 765.00 | ACHBR | 152.50 OMO* | 765.00 GRCOMP | 765.00 | |
| | | PRE-TAX ITEMS | 22.95- | HSAER | 23.08 ONO* | 739.81 GRPAY | 739.81 | |
| | | | 2.24- | 401K | 3.00-BFO | 47.29 SSEC | 47.29 | |
| | | | | VISN | 22.95- E | 11.06 MDCR | 11.06 | |
| | | | | | | 81.84 FIT | 81.84 | |
| | | | | MED | .060 | 30.57 ST KY | 30.57 | |
| 1 REGULAR | Y-TO-D | 90.00 | 765.00 | VISN | 2.24- OOGOE | 569.05 NET | 569.05 | |
| | | | | LIFE | 000 | 569.05 NET A | | |
| | | | | EFTA1 | | | | |
| | | | | | | -----WAGES-- Q-TO-D ----- | | |
| | | | | BAL/LMT | 23.08 BAL | 762.76 SSEC | 762.76 | |
| | | | | | 152.50 LMT | 762.76 MDCR | 762.76 | |
| | | | | | 600.00 LMT | 762.76 FIT | 762.76 | |
| 1 Q-TO-D | | 90.00 | 765.00 | HSAER | 152.50 | 765.00 SUI KY | 11.06 | |
| | | | | 401K | 23.08 | 739.81 FUTA | 81.84 | |
| | | | | VISN | 2.24- | 739.81 ST KY | 30.57 | |
| | | | | | | -----WAGES-- Y-TO-D ----- | | |
| 1 Y-TO-D | | 90.00 | 765.00 | ACHBR | 152.50 | 762.76 SSEC | 47.29 | |
| | | | | HSAER | 23.08 | 762.76 MDCR | 11.06 | |
| | | | | 401K | 22.95- | 762.76 FIT | 81.84 | |
| | | | | VISN | 2.24- | 762.76 FUTA | | |
| 1 REGULAR | F-TO-D 1 | 90.00 | 765.00 | HSAER | 23.08 | 765.00 SUI KY | 30.57 | A239 |

ALT DATE:
DOB:  06/17/93

EFT-ACCOUNT#          ID BK TP   TRANSIT-NO
                       A KY S    0421-0117-4

---

**99-XO2-97949   SCHUTTERS, JENNIFER E**

SS-NO
BASE         FRQ B
FCAST        M/S S       STAT A
FILE#        ST1 KY      SEX F
HIRE 11/30/09  F#EX OO    S#EX O1

| PC DESCR | RATE | HOURS | AMOUNT | DESCR | DED AND ADJ AMOUNT AND CODES | Y-TO-D TYPE | CURRENT | CHECK# |
|---|---|---|---|---|---|---|---|---|
| 1 REGUL | 80.00 | 1730.77 | ACHBR | 152.50 OMO* | 1590.39 GRCOMP | 1590.39 | | |
| | | | HSAER | 23.08 ONO* | 1567.05 GRPAY | 1567.05 | | |
| | | HSA | 140.38-HSAER | 140.38-OGOE | 98.72 SSEC | 98.72 | | |
| | | PRE-TAX ITEMS | HSA | 1.00-BFO | 23.09 MDCR | 23.09 | | |
| | | | 401K | 17.31-401K U | 218.40 FIT | 218.40 | | |
| 1 REGULAR | VISN | 80.00 | 1730.77 | VISN | 2.24-MED | 78.24 ST KY | 78.24 | |
| | DENTL | | DENTL | 3.79-OGOE | 1148.60 NET | 1148.60 | | |
| 1 REGULAR | Q-TO-D | 80.00 | 1730.77 | 401K | 17.31- | 1148.60 NET A | | |
| | | | | | | -----WAGES-- F-TO-D 1 -----TAXES----- | | |
| 1 REGULAR | Y-TO-D | 80.00 | 1730.77 | VISN | 2.24-OGOE | 1592.30 SSEC | 98.72 | |
| | LTD | | LIFE | 1730.77 | 1592.30 WAGES | 1592.30 | | |

PAY ANALYSIS REPORTING

086- ALPHABETIC PAYROLL REGISTER    086    B-01/11/13

| | | | | |
|---|---|---|---|---|
| REB | | | 01/11/13 | CHECKS DATED |
| NO. | | | REPORT DATE | 01/11/13 |

PAY PERIOD Q1    PAGE NO. 7

HEALTH AND BENEFIT SERVICES, LLC

| EMPLOYEE ID | CO. NAME | ...... HOURS AND EARNINGS ...... | ....... DED AND ADJ ....... | ...... GROSS TO NET ...... | |
|---|---|---|---|---|---|
| EMPLOYEE NAME | | PC DESCR  RATE  HOURS  AMOUNT | DESCR  AMOUNT  CODES | Y-TO-D  TYPE  CURRENT | CHECK# |

99-XO2-97949

SCHUTTERS, JENNIFER E    ***** CONTINUED *****

PTO-C

OT EX  N

DSS PT  Y

EFT-ACCOUNT# ▮▮▮▮▮▮▮    ID BK TP  TRANSIT-NO

ALT DATE:                A 54 C   0421-0119-O

DDB:  12/04/57

| 1 REGULAR  80.00  1730.77 | W2GRP | 7.94 OFO*-- | --WAGES-- | Q-TO-D | --TAXES-- |
| | EFTA1 | | 1592.30 SSEC | | 98.72 |
| | | BAL/LMT | 1592.30 MDCR | | 23.09 |
| | | | 1567.05 FIT | | 218.40 |
| | HSAER | 23.08 BAL | 1584.36 FUTA | | |
| | | 600.00 LMT | 1574.99 ST  KY | | 78.24 |
| | HSA | 140.38-BAL | 1730.77 SUI KY | | |
| | | 3649.88-LMT | | | |
| | HSA | Q-TO-D | --WAGES-- | Y-TO-D | --TAXES-- |
| | ACHBR | 152.50- | 1592.30 SSEC | | 98.72 |
| | HSAER | 23.08 | 1592.30 MDCR | | 23.09 |
| | HSA | 140.38- | 1567.05 FIT | | 218.40 |
| | 401K | 17.31- | 1584.36 FUTA | | |
| | DENTL | 3.79- | 1574.99 ST  KY | | 78.24 |
| | VISN | 2.24- | 1730.77 SUI KY | | |
| | W2GRP | 7.94 | | | |
| | | Y-TO-D | --WAGES-- | F-TO-D 1 | --TAXES-- |
| | ACHBR | 152.50- | 1592.30 SSEC | | 98.72 |
| | HSAER | 23.08 | 1592.30 MDCR | | 23.09 |
| | HSA | 140.38- | 1567.05 FIT | | 218.40 |
| | 401K | 17.31- | 1584.36 FUTA | | |
| | DENTL | 3.79- | 1574.99 ST  KY | | 78.24 |
| | VISN | 2.24- | 1730.77 SUI KY | | |
| | W2GRP | 7.94 | | | |
| | | F-TO-D 1 | | | |
| | ACHBR | 152.50 | | | |
| | HSAER | 23.08 | | | |
| | HSA | 140.38- | | | |
| | 401K | 17.31- | | | |
| | DENTL | 3.79- | | | |
| | VISN | 2.24- | | | |
| | W2GRP | 7.94 | | | |

A187

HEALTH AND BENEFIT SERVICES, LLC   CO. NAME

**086- ALPHABETIC PAYROLL REGISTER**
GRAND TOTALS

086

01/11/13 REPORT DATE          B-01/11/13 CHECKS DATED

PAY Q1 PERIOD      PAGE NO. 8

PAY ANALYSIS REPORTING

| REB NO. | | | | | | | | | HOURS | EARNINGS | NET |
|---|---|---|---|---|---|---|---|---|---|---|---|

**HOURS/EARNS CURRENT**

| PC | DESCRIPTION | HOURS | EARNINGS | PC | DESCRIPTION | HOURS | EARNINGS | | HOURS | EARNINGS |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | REGULAR | 710.25 | 15,959.44 | | DENTL | | | | 710.25 | 15,959.44 |
| | HSA | | 332.69- | | FSAH | | | | | 332.69- |
| | | | | | TOTAL | 710.25 | | | | |

**PRE-TAX ITEMS CURRENT**

| PC | DESCRIPTION | EARNINGS | PC | DESCRIPTION | EARNINGS | | EARNINGS |
|---|---|---|---|---|---|---|---|
| 1 | 401K | 113.52- | | DENTL | 61.42- | | 61.42- |
| 1 | MED | 540.39- | | VISN | 22.63- | | 22.63- |
| 1 | AFLPT | 8.52- | | TOTAL | 746.48- | | 746.48- |
| 1 | FLX-1 | 15,959.44 | | REGULAR | 15,959.44 | | 15,959.44 |

**DEDUCTION TO NET CURRENT**

| | $LS1 | REGULAR | 20.00 | SPOUS | 31.70 | STD | 22.33 | VOLIN | 74.72 |
|---|---|---|---|---|---|---|---|---|---|

**EARNINGS FROM DEDUCTIONS**

| | | DESCRIPTION | HOURS | EARNINGS | DESCRIPTION | HOURS | EARNINGS | DESCRIPTION | HOURS | EARNINGS |
|---|---|---|---|---|---|---|---|---|---|---|
| QTD | $LS1 | FSAH | 96.15- | | SPOUS | 31.70 | | STD | 22.33 | VOLIN 74.72- |
| YTD | $LS1 | FSAH | 96.15- | | SPOUS | 31.70 | | STD | 22.33 | VOLIN 148.75- |
| FTD1 | $LS1 | FSAH | 96.15- | | SPOUS | 31.70 | | STD | 22.33 | VOLIN 148.75- |

**PRE-TAX ITEMS**

| | | EARNINGS | | EARNINGS | | EARNINGS | | EARNINGS |
|---|---|---|---|---|---|---|---|---|
| QTD | $LS1 | 20.00 | DENTL | 61.42- | STD | 31.70 | TOTAL | 746.48- |
| YTD | $LS1 | 20.00 | DENTL | 61.42- | STD | 31.70 | TOTAL | 746.48- |
| FTD1 | $LS1 | 20.00 | DENTL | 8.52- | STD | 31.70 | TOTAL | 746.48- |

**OTHER DEDUCTIONS**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CURRENT | ACHBR | 2,168.23 | HSAER | 92.32 | MED | 61.42- | VISN 540.39- |
| QTD | ACHBR | 2,168.23 | HSAER | 92.32 | MED | 61.42- | VISN 540.39- |
| YTD | ACHBR | 2,168.23 | HSAER | 92.32 | MED | | VISN 540.39- |
| FTD1 | ACHBR | 2,168.23 | HSAER | 92.32 | | | TOTAL |

**MEMO DEDUCTION**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| CURRENT | 401K | 113.52- | DENTL | 61.42- | MED | 540.39- | VISN |
| QTD | AFLPT | 8.52- | | | | | TOTAL |
| YTD | W2GRP | 35.81 | HSAER | | | | |
| FTD1 | W2GRP | 35.81 | HSAER | | | | |
| | W2GRP | 35.81 | HSAER | | | | |

**DED BALANCES**

| | $LS1 | 160.00 | FSAH | | HSA | 332.69- | HSAER | 92.32 |
|---|---|---|---|---|---|---|---|---|

**GROSS TO NET**

| | WAGES | FEDERAL | STATE | LOCAL | SDI/UC | DEDUCTION | NET |
|---|---|---|---|---|---|---|---|
| | | SDC SEC / MEDIC | | | | | |
| CUR | GRPAY 14784.12 | 925.87 / 216.54 | 1753.35 | 747.52 TOT | | 148.75 | 10992.09 |
| QTD | GRCOMP 1530.60 | 925.87 / 216.54 | 1753.35 | 747.52 KY | | 148.75 | 10992.09 |
| QTD | GRPAY 14784.12 | 925.87 / 216.54 | 1753.35 | 747.52 TOT | | 148.75 | 10992.09 |
| YTD | GRCOMP 1530.60 | 925.87 / 216.54 | 1753.35 | 747.52 KY | | 148.75 | 10992.09 |
| YTD | GRPAY 14784.12 | 925.87 / 216.54 | 1753.35 | 747.52 TOT | | 148.75 | 10992.09 |

GRIDIAN

**PAY ANALYSIS REPORTING**

HEALTH AND BENEFIT SERVICES, LLC

086- ALPHABETIC PAYROLL REGISTER
GRAND TOTALS

| PAY PERIOD | Q1 |
|---|---|
| PAGE NO. | 9 |

01/11/13   REPORT DATE   B-01/11/13
086   CHECKS DATED

| REB NO. CO. NAME | | | | |
|---|---|---|---|---|
| GROSS TO NET | GRCOMP | WAGES | SOCSEC MEDICR | FEDERAL | STATE | LOCAL | SDI/UC | DEDUCTION | NET |
| | 15530.60 | | 216.54 | | | | | | |

************************************************************

| WAGE AND TAXES | QTD WAGES | QTD TAXES | YTD WAGES | YTD TAXES | FX1 WAGES | FX1 TAXES | FX2 WAGES | FX2 TAXES |
|---|---|---|---|---|---|---|---|---|
| EE SSEC TO LMT | 14933.45 | 925.87 | 14933.45 | 925.87 | | 925.87 SSEC |
| MDCR TO LMT | 14933.45 | 216.54 | 14933.45 | 216.54 | | 216.54 MDCR |
| FIT | 14784.12 | 1753.35 | 14784.12 | 1753.35 |
| FUTA TO LMT | 14897.64 | | 14897.64 |
| SIT |
| KY KENTUCKY | 14819.93 | 747.52 | 14819.93 | 747.52 |
| SDI/UC |
| KY KENTUCKY | 15959.44 | | 15959.44 |

************************************************************

| CURRENT TAX RECAP | TYPE | JURISDICTION | VOID/MANUAL CHECKS INCLUDED | TAXABLE WAGES | LIMIT | LIABILITIES WAGES TO LIMIT | RATE | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| FORM 8109 FEDERAL DEPOSIT | 0 | | | | | | | |
| EMPLOYEE SSEC | | | | 14,933.45 | 113700 | 14,933.45 | 6.20 % | 925.87 SSEC |
| EMPLOYEE MDCR | | | | 14,933.45 | UNLIM | 14,933.45 | 1.45 % | 216.54 MDCR |
| EMPLOYER SSEC | | | | | | | | 925.87 |
| EMPLOYER MDCR | | | | | | | | 216.54 |
| EMPLOYEE FIT | | | | | | | | 1,753.35 |
| TOTAL DEPOSIT | 4,038.17 |

| | SUI | STANDARD RATE | | 15,959.44 | 9300 | 14,897.64 | 7.65 % | 1,142.41 |
| | KY-KENTUCKY | | | 15,959.44 | 7000 | | .60 % | 89.39 |

| | FUTA | KY-KENTUCKY | | 14,897.64 | | 14,897.64 | | |

| | SIT | KY-KENTUCKY | | 14,819.93 | | 14,819.93 | 2.70 % | 430.90 |
| | TOTAL | | | 14,819.93 | | 14,819.93 | | 430.90 |
| | TOTAL | | | | | | | 430.90 |

************************************************************
STATE/LOCAL TAXES WITHHELD
LIMIT WAGES TO LIMIT RATE AMOUNT

| | | | | TAXABLE WAGES | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | NET PAY ANALYSIS | 14,819.93 | | | | AMOUNT |
| | | | | 14,819.93 | | | | 747.52 |
| | | | | | | | | 747.52 |

| | | | | 17500 | EFTS TOTAL | 10,992.09 |
| | | | # DEP ADV | 5500 | 9 | TOTAL NET | 10,992.09 * |
| | | | # EMPS PAID | | 9 | TOTAL NET | 5,305.98 ** |
| | | | | | | TOTAL TAXES | 16,298.07 *** |

| FEDERAL 401-K DEFERRAL LIMIT | | |
| FEDERAL 401-K CATCH-UP DEFERRAL LIMIT | | |
| EMPLOYEE CENSUS | ACTIVE EMPS | 9 |
| | TOTAL EMPS | 9 |

A189



PAY ANALYSIS REPORTING

REB NO.

HEALTH AND BENEFIT SERVICES, LLC
CO. NAME

086- **ALPHABETIC PAYROLL REGISTER**
BILLING AUDIT INFORMATION

086

01/11/13
REPORT DATE

B-01/11/13
CHECKS DATED

PAY
Q1
PERIOD

10
PAGE NO.

9  EMPLOYEES INCLUDED.

12 DATA GROUPS SELECTED.

1 COPY PRINTED.

CD-ROM FILE - NO

OUTPUT MEDIA - PRINTED - YES

ORCHESTRATOR PRINT - NO

I/P  12/12/21 13.54.23      R34.73
O/P  13/01/08 10.51.41      R34.74
PRT  13/01/08 10.52.30

REPORT TYPE - PAY ANALYSIS REPORT      DETAIL

A190



PAY ANALYSIS REPORTING

HEALTH AND BENEFIT SERVICES, LLC

086- ALPHABETIC PAYROLL REGISTER      086

| | 12/28/12 | | B-12/28/12 | PAY 26 |
| | REPORT DATE | | CHECKS DATED | PERIOD PAGE NO. 1 |

| REB NO. | EMPLOYEE ID EMPLOYEE NAME | CO. NAME | | PC DESCR | · · · HOURS AND EARNINGS · · · RATE HOURS AMOUNT | DESCR | DED AND ADJ AMOUNT CODES | Y-TO-D | · · · GROSS TO NET · · · TYPE CURRENT | CHECK# |

99-XO2-01615
BROWN, WYATT W

| FRQ | B | | STAT A | | 1 | REGUL | 80.00 | 1461.54 | $LS1 | | 20.00 | 000* | 34738.50 | GRCOMP | 1361.54 |
| M/S | S | | SEX M | | | HSA | | 100.00 | | ONO- | | 152.50 | ONO* | 33840.66 | GRPAY | 1311.66 |
| ST1 | KY | | | | | | | | | HSAER | | 23.08 | ONO* | 1455.18 | SSEC | 56.97 |
| F#EX | 01 | | S#EX 01 | | | --- PRE-TAX ITEMS --- | | | | 401K | | 100.00-060E | | 3799.61 | FIT | 19.66 |
| SADJ | NRES | | | | 401K | | | 43.85-HSA | DENTL | | 3.00-BFO | | 1639.91 | ST1 KY | 145.69 |
| BASE | 1461.54 | | | | DENTL | | | 3.79-401K U | MED | | 43.85- E | | 140.00 | FIT | 63.18 |
| FCAST | 80.00E | | | | VISN | | | 2.24- | | | | | | TOTDED | 20.00 |
| FILE# | 1615 | | | | | | Q-TO-D | | | 060 | | | | NET | 1006.16 |
| HIRE | 01/16/12 | | | | 1 | REGULAR | 560.00 | 10230.78 | DENTL | | 3.79-060E | | 26303.58 | EFT A | 1006.16 |
| PTO-C | | | | | 1 | DENTL | | | | VISN | | 2.24-060E | | 1356.47 | TOTDED | |
| OT EX | N | | | | 1 | DENTL | Y-TO-D | 1200.00 | | 060 | | | 000 | | 20.00 | |
| DSS PT | Y | | | | 1 | LTD | | 36538.50 | | | | | OF0* | 1356.47 | | |

EFT-ACCOUNT#
ALT DATE:
DOB: 02/01/79

| ID BK TP | TRANSIT-NO | | | | 1 | LIFE | | 4384.62 | W2GRP | | | | 1356.47 | | |
| A PQ C | 2421-7612-9 | | | | | REGULAR | 240.00 | | EFTA1 | | .96 | | | Q-TO-D | |
| | | | | | | F-TO-D 1 | | | | | | | | 9495.29 | SSEC | 399.80 |

WAGES--
| | | | | | | | | | $LS1 | | 140.00 BAL | | 9495.29 | MDCR | 137.68 |
| | | | | | | | | | | BAL/LMT | | 427.43 LMT | | 9181.62 | FIT | 370.58 |
| | | | | | | | | | | | | 415.44 BAL | | 9188.34 | ST KY | 442.26 |
| | | | | | | | | | $LS1 | HSAER | | 600.00 LMT | | 10230.78 | SUI KY | |
| | | | | | | | | | | | | 1800.00-BAL | | | Q-TO-D | |
| | | | | | | | | | | | | 1800.00-LMT | | | TAXES-- | |

Y-TO-D--
| | | | | | | | | $LS1 | | | 140.00 | | 7000.00 | FUTA | |
| | | | | | | | | | ACHBR | | 1067.50 | | 33857.94 | ST KY | 1639.91 |
| | | | | | | | | | HSAER | | 161.56 | | 36538.50 | SSEC | |
| | | | | | | | | | HSA | | 700.00- | | 33840.66 | FIT | |
| | | | | | | | | | 401K | | 789.30- | | 4069.41 | MDCR | |
| | | | | | | | | | DENTL | | 68.22- | | 3934.98 | FIT | |
| | | | | | | | | | VISN | | 40.32- | | 4069.41 | SSEC | |
| | | | | | | | | | W2GRP | | 17.28 | | 3937.86 | MDCR | |
| | | | | | | | | | | F-TO-D 1 | | | | 3934.98 | FIT | |
| | | | | | | | | | | Y-TO-D-- | | | | 4069.41 | SUI KY | A222 |

| | | | | | | | | $LS1 | | | 140.00 | | | TAXES-- | |
| | | | | | | | | ACHBR | | 2745.00 | | 1455.18 | SSEC | |
| | | | | | | | | HSAER | | 457.50 | | 502.38 | MDCR | |
| | | | | | | | | HSA | | 415.44 | | 3799.61 | FIT | |
| | | | | | | | | HSAER | | 69.24 | | | | |
| | | | | | | | | 401K | | 300.00- | | | TAXES-- | |
| | | | | | | | | DENTL | | 131.55- | | 170.91 | SSEC | |
| | | | | | | | | VISN | | 11.37- | | 59.00 | MDCR | |
| | | | | | | | | DENTL | | 6.72- | | 437.07 | FIT | |
| | | | | | | | | VISN | | 2.88 | | 189.54 | ST KY | |
| | | | | | | | | W2GRP | | | | | | |

99-XO3-97913
FLORENCE, OTTIS

| | | | | | 1 | REGUL | 90.00 | 1305.00 | DENTL | | 7.58-060E | | 37866.75 | GRCOMP | 1305.00 |
| | | | | | 1 | REGUL | 14.5000 | | VISN | | 3.77-060E | | 37856.73 | GRPAY | 1293.13 |
| | | | | | | --- PRE-TAX ITEMS --- | | | DENTL | | 7.58-AFLPT | | 1568.71 | SSEC | 53.98 |
| | | | | | | DENTL | | | VISN | | 8.52-060E | | 541.58 | MDCR | 18.64 |
| | | | | | | VISN | | | VOLIN | | 55.11 | 000* | | | |

CO. NAME    HEALTH AND BENEFIT SERVICES, LLC

## 086- ALPHABETIC PAYROLL REGISTER     086

REPORT DATE    12/28/12
CHECKS DATED    B-12/28/12
PAY PERIOD 26    PAGE NO. 2

| REB NO. | EMPLOYEE ID / EMPLOYEE NAME | PC DESCR RATE | HOURS | AMOUNT | DESCR | DED AND ADJ AMOUNT | CODES | Y-TO-D | GROSS TO NET TYPE | NET CURRENT | CHECK# |
|---|---|---|---|---|---|---|---|---|---|---|---|

**99-XO3-97913  FLORENCE, OTTIS   ***** CONTINUED *******

BASE 14.5000   FCAST .00 E   FILE# 97913   HIRE 01/01/07   PTO-C   OT EX N

FRQ B   M/S M   ST1 KY   F#EX QO   STAT A   SEX M   S#EX QO

ID BK TP  A KY C   TRANSIT-NO  0421-0117-4

EFT-ACCOUNT#
DOB:
ALT DATE:  05/11/46

```
PRE-TAX ITEMS
                        AFLPT          8.52-STD        22.33 000*   3517.50 FIT            112.58
                                            -LIFE                    1849.47 ST1 KY          62.35
                        Q-TO-D         SPOUS   27.55 000*            2866.90 TOTDED         104.99
1  REGULAR     686.50   9954.25        EFTA1                        27005.97 NET            932.59
               Y-TO-D                  -DNTL   53.06-                 932.59 EFT A          932.59
1  REGULAR    2611.50  37866.75        VISN    26.39-   --WAGES--   Q-TO-D   --TAXES--
                                            -DNTL                    1285.13 CUR SSEC WAGES 412.24
1  REGULAR  F-TO-D 1  275.50  3994.75  VISN    59.64-   --WAGES--   Q-TO-D   --TAXES--
                        AFLPT                               385.77   1285.13 CUR MDCR WAGES 142.32
                        STD    156.31    VOLIN            9815.16 SSEC           910.93
                        SPOUS  192.85    VISN             9815.16 MDCR           483.97
                        ACHBR           Y-TO-D  1471.15   9815.16 FIT
                        DENTL           197.08-           9954.25 SUI KY
                        DENTL            98.02-   --WAGES--  Y-TO-D  --TAXES--
                        AFLPT   221.52-  VISN             3750.13 SSEC          1568.71
                        VOLIN  1487.96   AFLPT            3750.13 MDCR           541.58
                        STD    635.08    VOLIN            3750.13 FIT          3517.50
                        SPOUS  743.86    STD              7000.00 FUTA
                                         SPOUS           37350.13 ST KY
                        DENTL   22.74-   F-TO-D 1        37866.75 SUI KY        1849.47
                        VISN    11.31-   --WAGES--  F-TO-D 1  --TAXES--
                        AFLPT   25.56-   VISN            3935.14 SSEC           165.28
                        VOLIN   66.39    AFLPT           3935.14 MDCR            57.06
                        STD     82.65    VOLIN           3935.14 FIT            349.70
                                         STD             3935.14 ST KY          191.68
                                         SPOUS           3994.75 SUI KY
```

A223

---

**99-XO3-97914  FLORENCE, STEVE**

BASE 15.0000   FCAST .00 E   FILE# 97914   HIRE 01/01/07   PTO-C   OT EX N

FRQ B   M/S M   ST1 KY   F#EX Q4   STAT A   SEX M   S#EX Q4

ID BK TP  A Fa C   TRANSIT-NO  0421-0155-6

EFT-ACCOUNT#
DOB:
ALT DATE:  08/27/70

```
1  REGUL  15.0000  94.00  1410.00  ACHBR          623.66 OMO*   42836.25 GRCOMP       1410.00
                        PRE-TAX ITEMS            -MED  229.10-060E  36443.47 GRPAY      1173.32
1  DENTL                MED   7.58-DENTL           1530.63 SSEC          49.28
                        MED  229.10-VOLIN             528.43 MDCR          17.01
1  REGULAR     719.25  10788.75  CHILD  12.46 000*    2429.05 FIT          52.79
                                     -LIFE           1716.96 ST1 KY        59.17
1  REGULAR   Y-TO-D                CHILD   1.06 000*   455.28 TOTDED        17.67
1  REGULAR   2855.75  42836.25    EFTA1   4.15 000*  29783.12 NET          977.40
1  REGULAR  F-TO-D 1  293.50  4402.50  MED             977.40 EFT A        977.40
                        CHILD  4365.62   --WAGES--  F-TO-D 1  --TAXES--
                        VOLIN  1603.70-  9131.99 SSEC          1173.32
                        CHILD   53.06-   9131.99 MDCR          1173.32
                        MED     87.22    CUR SSEC WAGES         383.55
                        ACHBR  Y-TO-D    9131.99 FIT           132.41
                        --WAGES--  Q-TO-D  9131.99 ST KY        552.02
                                 7.42    CUR MDCR WAGES         422.83
                        ACHBR   29.05
                        DENTL  595.60-   CUR SSEC             1530.63
                        VOLIN  468.18-   CUR MDCR              528.43
                        CHILD  323.96    2429.05 FIT
                        CHILD   27.96
                        SPOUS  103.76    7000.00 FUTA
                        F-TO-D 1  -----  1716.96 ST KY         1716.96
```

A224



086- ALPHABETIC PAYROLL REGISTER

HEALTH AND BENEFIT SERVICES, LLC

086

12/28/12  REPORT DATE

B-12/28/12  CHECKS DATED

PAY PERIOD 26   PAGE NO. 3

REB
NO.
EMPLOYEE ID
EMPLOYEE NAME

99-XO3-97914
FLORENCE, STEVE
***** CONTINUED *****

| PC DESCR | RATE | HOURS | AMOUNT | DESCR | DED AND ADJ | AMOUNT | ADU CODES | Y-TO-D | CURRENT | CHECK# |
|---|---|---|---|---|---|---|---|---|---|---|

99-XO3-97915
FLORENCE, STEVEN JR

SS-NO 11.0000   FRQ B   STAT A
BASE .00 E   M/S S   SEX M
FCAST   ST1 KY
FILE# 97915   F#EX   S#EX 02
HIRE 01/01/07   FADJ $   OO   10.00
PTO-C
OT EX N

1 REGUL 11.0000 90.00 990.00 ACHBR 169.18 OMO* WAGES-- 28847.50 GRCOMP 990.00
-- -- MED 73.42-OGOE 26840.04 GRPAY 912.79
DENTL 3.79-DENTL 1127.28 SSEC 38.34
MED 6.23 OOO* 389.18 MDCR 13.23
-LIFE 3528.48 FIT 117.78
EFT1A1 Y-TO-D 1199.92 ST1 KY 39.22
7510.25 NET 6.23

1 REGULAR Q-TO-D 682.75 7510.25 EFT1A1 CUR SSEC WAGES 697.999
2622.50 28847.50 ACHBR Q-TO-D 20433.20 MDCR 912.79
Y-TO-D MED 513.94- CUR MDCR WAGES 912.79
VOLIN 26.53- --WAGES-- --TAXES--

1 REGULAR F-TO-D 1 VOLIN 43.61 6969.78 SSEC 292.73
281.00 3091.00 DENTL Y-TO-D 6969.78 MDCR 101.06
VOLIN 4398.68 FIT 911.52
MED 1908.92- ST KY 308.19
DENTL 98.54-
VOLIN 161.98 CUR SSEC WAGES 697.999
CHILD 3.18 F-TO-D 1 911.52
SPOUS 12.45 VOLIN 18.69

ALT DATE:
DOB: 06/01/89

EFT-ACCOUNT#   ID BK TP  TRANSIT-NO
A KY S  0421-0117-4

099-XO2-01543
FLORENCE, WHITNEY E

SS-NO 7.5000   FRQ B   STAT A
BASE .00 E   M/S S   SEX F
FCAST   ST1 KY
FILE# i00   F#EX   S#EX OO
HIRE 1543   F-TO-D 1
PTO-C 01/03/12

1 REGUL 7.5000 28.00 210.00 401K U --WAGES-- --TAXES--
401K PRE-TAX ITEMS 6.30-8FO 6037.55 GRCOMP 210.00
DENTL 6.30- E 5819.44 GRPAY 199.91
DENTL 3.79-LIFE 3.79-OGOE 250.39 SSEC 8.66
OOO 86.45 MDCR 2.99
1 REGULAR Q-TO-D 199.25 1494.38 -EFTA1 366.96 FIT 11.72
44.83- 82.08 ST1 KY 1.24
1 REGULAR Y-TO-D 805.00 6037.55 DENTL 5033.56 NET 174.30
142.31-
1 REGULAR F-TO-D 1 675.00 Y-TO-D 401K CUR SSEC WAGES 174.30
90.00 75.80- DENTL EFT A 371.49
CUR MDCR WAGES 206.21
--WAGES-- Q-TO-D 206.21
--TAXES--

2859.37 SSEC 120.09
2859.37 MDCR 41.46
2859.37 FIT 389.18
2859.37 ST KY 124.68

7000.00 FUTA 1199.92
26840.04 ST KY
26840.04 SSEC
26840.04 MDCR
26840.04 FIT
7510.25 SUI KY

42836.25 SUI KY
687.30-
3692.46
3692.46
3692.46
3692.46

A225

A226



CERIDIAN

086- ALPHABETIC PAYROLL REGISTER    086

HEALTH AND BENEFIT SERVICES, LLC

12/28/12 REPORT DATE    B-12/28/12 CHECKS DATED    PAY PERIOD 26    PAGE NO. 4

| REB NO. | EMPLOYEE ID | EMPLOYEE NAME | PC DESCR | RATE | HOURS | AMOUNT | DESCR | DED AND ADJ AMOUNT | CODES | GROSS TO Y-TO-D | NET TYPE | CURRENT | CHECK# |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

99-XQ2-01543
FLORENCE, WHITNEY E
***** CONTINUED *****

OT EX  N
DSS PT  Y

ALT DATE:
DOB:  11/15/92

EFT-ACCOUNT#    ID BK TP  TRANSIT-NO
                A KY S    0421-0117-4

| FRQ B | STAT A |
| M/S M | SEX M |
| ST1 KY | |
| F#/EX O2 | S#/EX O4 |

1  REGUL    80.00    2884.62    ACHBR    294.23  OMO*
                                          --- --- F-TO-D 1 --- ---
   HSA            92.31-HSAER            23.08  ONO
                                          23.00 *
          PRE-TAX ITEMS                  92.31-060E
1  401K           26.54-HSA
8  DENTL          7.58-401K U
   MED            2.24-MED
   VISN                    26.54- E
                           7.58-060E
                           2.24-060E
          Q-TO-D           000
1  REGULAR  560.00  20192.34  VISN    000
8  BONUS            7500.00  LTD     000
          Y-TO-D           ---DENTL
1  REGULAR  2080.00  74281.05  W2GRP    3.97  OFO*
7  OTHER            769.23    EFTB2
8  BONUS            7500.00
          F-TO-D 1  BAL/LMT --- ---
1  REGULAR  240.00  8653.86  600.00 BAL
8  BONUS            7500.00  600.00 LMT
                             2400.06-BAL
                             2400.06-LMT
          Q-TO-D ---
                 2059.61
          HSA            646.17-
                         185.78-
                         61.39-
                         53.06-
                         15.58-
                         27.79-
          Y-TO-D
                 7649.98

--- WAGES --- Q-TO-D ---    --- TAXES ---
80150.22 GRCOMP  2792.31 GRCOMP    2792.31
78984.77 GRPAY            2747.18
3350.34 SSEC    116.66 SSEC
1156.67 MDCR     40.28 MDCR
9370.72 FIT     288.04 FIT
4176.81 ST1      144.30 ST1
6930.23 KY       2157.90 KY
--- WAGES --- Y-TO-D ---    --- TAXES ---
2730.26 SSEC    1131.64 SSEC
2943.83 SSEC    2157.90 SSEC
2943.83 MDCR     3891.28 MDCR
2730.26 FIT      3891.28 FIT
2675.05 ST       1438.89 ST
27692.34 KY      1438.89 KY
--- WAGES --- Y-TO-D ---    --- TAXES ---
79770.10 SSEC    3350.34 SSEC
79770.10 MDCR    1156.67 MDCR
78984.77 FIT     9370.72 FIT
--- WAGES --- F-TO-D 1 --- --- TAXES ---
8250.28 SUI KY   4176.81 SUI KY
15833.07 SSEC    664.98 SSEC
15833.07 MDCR    233.58 MDCR
15833.07 FIT     2739.12 FIT
15741.54 ST      1753.45 ST
16153.86 SUI KY   861.69 SUI KY

99-XQ2-97897
HURST, DAVID T

OT EX  N
DSS PT  Y

EFT-ACCOUNT#    ID BK TP  TRANSIT-NO
                B JR C    0830-0013-7

SS-NO
BASE    2884.62
FCAST   80.00E
FILE#   97897
HIRE    11/07/06
PTO-C
PTO-O
PTD-C

ALT DATE:  05/11/71
DOB:

1  REGUL    80.00    2884.62    ACHBR    294.23  OMO*
                                          --- F-TO-D 1 ---
   HSA            92.31-HSAER            20.25-
                                          11.37-
          PRE-TAX ITEMS            401K    --- F-TO-D 1 ---
                                  DENTL
1  401K           26.54-HSA
8  DENTL
   MED
   VISN

--- WAGES --- Q-TO-D ---    --- TAXES ---
1467.85  SSEC    61.65 SSEC
1467.85  MDCR    21.29 MDCR
1423.02  FIT     84.42 FIT
1467.85  FUTA
1423.02  ST      17.11 ST
1494.38  SUI KY
--- WAGES --- Y-TO-D ---    --- TAXES ---
5961.75  SSEC    250.39 SSEC
5961.75  MDCR     86.45 MDCR
5819.44  FIT      366.96 FIT
5961.75  FUTA
6037.55  SUI KY   82.08 FUTA
--- WAGES --- F-TO-D 1 --- --- TAXES ---
663.63  SSEC     27.87 SSEC
663.63  MDCR      9.63 MDCR
663.63  FIT       39.53 FIT
643.38  ST
675.00  SUI KY    8.30 SUI KY

A227

A194

086- ALPHABETIC PAYROLL REGISTER                086

HEALTH AND BENEFIT SERVICES, LLC

REPORT DATE 12/28/12    B-12/28/12    PAY PERIOD 26    PAGE NO. 5

| REB NO. | EMPLOYEE ID | EMPLOYEE NAME | ... HOURS AND EARNINGS ... | DED AND ADJ CODES | ... GROSS TO NET ... | CHECK# |
|---|---|---|---|---|---|---|
| | | | PC DESCR  RATE  HOURS  AMOUNT | DESCR  AMOUNT  CODES | TYPE  Y-TO-D  CURRENT | |

**HURST, DAVID T    ***** CONTINUED *******
EMPLOYEE ID: 99-XO2-97897

| DESCR | Y-TO-D |
|---|---|
| HSAER | 600.00 |
| HSA | 2400.06- |
| 4O1K | 682.11- |
| MED | 228.02- |
| DENTL | 197.08- |
| VISN | 58.24- |
| W2GRP | 103.22 |
| MISC1 | 67.22 |

F-TO-D 1

| DESCR | AMOUNT |
|---|---|
| ACHBR | 882.69 |
| HSAER | 69.16 |
| HSA | 276.93- |
| 4O1K | 79.62- |
| MED | 26.31- |
| DENTL | 22.74- |
| VISN | 6.72- |
| W2GRP | 11.91 |

| TYPE | Y-TO-D | CURRENT |
|---|---|---|
| GRCOMP | 167215.25 | 4873.08 |
| GRPAY | 166128.19 | 4831.27 |
| SSEC | 4624.20 | .00 |
| MDCR | 2416.86 | 70.36 |
| FIT | 31483.60 | 728.78 |
| ST1 KY | 9418.03 | 270.71 |
| NET A | 118185.50 | 3761.42 |

EFT A 3761.42
--TAXES--
SSEC 730.27
MDCR 730.27

.00 GRCOMP    .00
.00 NET    .00

---

**LITTON, ALLISON R**
EMPLOYEE ID: 99-XO2-99826
SS-NO
BASE 1538.46
FILE# 99826
HIRE 10/27/10
TERM 01/05/12
PTO-C
OT EX Y
ALT DATE:
DDB: 12/07/78

FRQ B    M/S S    ST1 KY    F#EX OO
STAT T    SEX F    S#EX O1

| PC | DESCR | HOURS/AMOUNT | DESCR | AMOUNT | | TYPE | CURRENT |
|---|---|---|---|---|---|---|---|
| 1 | REGUL | 80.00 | ACHBR | 5000.00 | OMO* 542.31 | GRCOMP | 4873.08 |
| 1 | HSA | 126.92- | HSAER | 126.92- | ONO 23.08 | GRPAY | 4831.27 |
| | | | | | ONO 23.00 * | SSEC | .00 |

PRE-TAX ITEMS
DENTL   23.52-HSA
12.16-MED
6.13-DENTL
VISN

Q-TO-D
MED   12.16-OGOE   23.00 *
DENTL   6.13-OGOE
VISN

---

**RAMSAY, SCOTT**
EMPLOYEE ID: 99-XO1-97923
BASE 80.00E
FCST 5000.00
FILE# 97923
HIRE 01/01/07
OT-C
OT EX N
DSS PT Y

FRQ B    M/S M    ST1 KY    F#EX O3
STAT A    SEX M    S#EX O3

$ 13.85    FADJ

| PC | DESCR | AMOUNT | DESCR | AMOUNT | | TYPE | CURRENT |
|---|---|---|---|---|---|---|---|
| 1 | REGULAR | 560.00 | VISN | 6.13- | OGOE 23.52-OGOE | ST1 KY | 270.71 |
| 1 | REGULAR LTD | 35000.00 | LTD | | OGO 9418.03 | FIT | 728.78 |
| 8 | BONUS | 40000.00 | LIFE | | VISN 118185.50 | NET | 3761.42 |
| | Y-TO-D | 2080.00 | W2GRP | 21.23 | OFO*--WAGES-- | EFT A | 3761.42 |
| 1 | REGULAR | 129230.76 | EFTA1 | | 17387.33 | SSEC | 730.27 |
| 7 | OTHER | 1284.41 | | | 17367.50 BAL | MDCR | 730.27 |
| 8 | BONUS | 40000.00 | HSAER | | 73818.83 | FIT | 2852.53 |
| | F-TO-D 1 | 240.00 | | 600.00 LMT | 7367.50 | ST KY | 1665.87 |
| | REGULAR | 15000.00 | HSA | 3299.92-BAL | 75000.00 | SUI KY | 4274.53 |

.00 GRCOMP    .00
.00 NET    .00

A228

EFT-ACCOUNT#
ID BK TP TRANSIT-NO



**086- ALPHABETIC PAYROLL REGISTER**   086

HEALTH AND BENEFIT SERVICES, LLC

| Field | Value |
|---|---|
| CO. NAME | HEALTH AND BENEFIT SERVICES, LLC |
| REPORT DATE | 12/28/12 |
| CHECKS DATED | 12/28/12 |
| GROSS TO NET | B-12/28/12 |
| PAY PERIOD | 26 |
| PAGE NO. | 6 |

Column headings:
- EMPLOYEE ID / EMPLOYEE NAME
- HOURS AND EARNINGS: PC DESCR · RATE · HOURS · AMOUNT
- DED AND ADJ: DESCR · AMOUNT AND ADJ · CODES
- Y-TO-D TYPE · CURRENT · CHECK#

---

**RAMSAY, SCOTT   ***** CONTINUED *******

- 99-XO1-97923
- 0015471307
- ALT DATE:
- DOB: 03/23/60
- STAT: A 54 C   0421-0119-0   8

Hours and Earnings:
| PC | DESCR | RATE | HOURS | AMOUNT |
|---|---|---|---|---|
| 1 | BONUS | F-TO-D 1 | | 40000.00 |

DED AND ADJ:
```
---- BAL/LMT ----
          3299.92-LMT
ACHBR     3796.17
HSAER     161.48
HSA       888.44-
MED       85.12-
DENTL     164.64-
VISN      42.91-
MISC1
W2GRP     148.61
```
Y-TO-D:
```
Q-TO-D
ACHBR     14100.06
HSAER     600.00
HSA       3299.92-
MED       316.16-
DENTL     611.52-
VISN      159.38-
W2GRP     551.98
MISC1     525.18
```

Wages / Taxes:
```
--WAGES--  Y-TO-D        --TAXES-- --Y-TO-D--
110100.00  SSEC          4624.20
166680.17  MDCR          2416.86
161128.19  MDCR          31483.60
7000.00    FUTA
166680.17  ST KY
170515.17  SUI KY        9418.03

--WAGES--  F-TO-D 1      --TAXES--
54557.50   MDCR          791.08
54493.81   FIT           14750.75
54557.50   ST KY         3191.69
55000.00   SUI KY
```

---

**RATLIFF, PALACE ASHTON**

- 99-XO2-01544
- SS-NO
- BASE
- FCAST  .00  E
- FILE#  1544
- HIRE  01/03/12
- PTO-C
- OT EX  N
- DSS PT  Y
- FRQ B   STAT A   TP TRANSIT-NO
- M/S S   SEX M
- ST1 KY  ID BK   A KY S   0421-0117-4
- F#EX    S#EX  OO
- EFT-ACCOUNT#
- ALT DATE:
- DOB: 06/17/93

Hours and Earnings:
| PC | DESCR | RATE | HOURS | AMOUNT |
|---|---|---|---|---|
| 1 | REGUL | 7.5000 | 90.00 | 675.00 |
| | 401K | PRE-TAX ITEMS | | 20.25-HSA |
| | | | | -401K U |
| 1 | REGULAR | Q-TO-D | 687.50 | 5156.25 |
| 1 | REGULAR | Y-TO-D | 2026.25 | 15196.88 |
| 1 | REGULAR | F-TO-D 1 | 276.50 | 2073.75 |

DED AND ADJ:
```
ACHBR     152.50 ONO*
HSAER     23.08  ONO*
401K U    3.00-8FO     20.25- E
MED LIFE
EFTA1
---- BAL/LMT ----
          461.60 BAL
ACHBR     600.00 LMT
401K

Q-TO-D
ACHBR     1067.50
HSAER     161.56
401K      154.70-

Y-TO-D
ACHBR     2897.50
HSAER     461.60
401K      447.05-

F-TO-D 1
ACHBR     457.50
HSAER     69.24
401K      62.21-
```

Wages / Taxes:
```
--WAGES-- Q-TO-D        --TAXES--
15196.88  GRCOMP        675.00
14749.83  GRPAY         654.75
638.27    SSEC          28.35
          SSEC          9.78
220.35    MDCR
1609.57   FIT           69.08
600.67    ST1 KY        25.79
          ST1 KY        521.75
CUR SSEC  WAGES         675.00
CUR MDCR  WAGES         675.00
NET A                   675.00
EFT A                   675.00        A229
```



PAY ANALYSIS REPORTING

086- ALPHABETIC PAYROLL REGISTER    086

HEALTH AND BENEFIT SERVICES, LLC

| REB | | |
| NO. | | |
| EMPLOYEE ID | | |
| CO. NAME | | |
| EMPLOYEE NAME | | |

12/28/12    B-12/28/12    PAY 26
REPORT DATE    CHECKS DATED    PERIOD
    PAGE NO. 7

99-XQ2-01544
RATLIFF, PALACE ASHTON
***** CONTINUED *****

99-XQ2-97949
SCHUTTERS, JENNIFER E

SS-NO
BASE        1730.77        FRQ    B        STAT    A
FCAST       80.00E         M/S    S        SEX     F
FILE#       97949          ST1    KY
HIRE        11/30/09       F#EX   OO       S#EX   O1
PTO-C
OT EX   N
DSS PT  Y

                           ID BK TP    TRANSIT-NO
                           A 54 C      0421-0119-0 8

ALT DATE:                  12/04/57
DOB:

EFT-ACCOUNT#

PC DESCR    RATE    HOURS    AMOUNT    DESCR    AMOUNT    CODES    TYPE    CURRENT    CHECK#

| PC | DESCR | RATE | HOURS | AMOUNT | DESCR | AMOUNT | CODES | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | REGUL | 80.00 | 1730.77 | ACHBR | 152.50 | OMO* | --WAGES-- | F-TO-D 1 | --TAXES-- | |
| 1 | HSA | | 92.31 | HSAER | 23.08 | OMO | 47567.32 | GRCOMP | 1638.46 | |
| | | | | | | * | 2073.75 | SSEC | 87.10 | |
| 1 | 401K | PRE-TAX ITEMS | | ACHBR | 23.00 | * | 46966.27 | GRPAY | 1615.12 | |
| 1 | DENTL | | 17.31- | HSA | 92.31 | O6OE | 1997.31 | SSEC | 68.79 | |
| 1 | VISN | | 3.79- | 401K U | 1.00- | BFO | 689.55 | MDCR | 23.75 | |
| | | | 2.24- | | 17.31- | E | 7223.55 | FIT | 230.41 | |
| | | Q-TO-D | | --MED | | O6O | 2382.01 | ST1 KY | 81.05 | |
| 8 | REGULAR | 560.00 | 12115.39 | DENTL | 3.79- | O6OE | 34673.85 | NET | 1211.12 | |
| 8 | BONUS | 5000.00 | 5000.00 | VISN | 2.24- | O6OE | --WAGES-- | Q-TO-D | --TAXES-- | |
| | | Y-TO-D | | --LTD | | OOO | 16465.93 | SSEC | 691.56 | |
| 1 | REGULAR | 2080.00 | 44505.84 | LIFE | | OOO | 16465.93 | MDCR | 238.76 | |
| 7 | OTHER | | 461.54 | W2GRP | | OFO* | 16305.84 | FIT | 2862.87 | |
| 8 | BONUS | | 5000.00 | EFTA1 | 5.56 | OFO* | 13344.76 | ST KY | 848.45 | |
| | | | | | BAL/LMT | | 17115.39 | SUI KY | | |
| 1 | REGULAR | F-TO-D 1 | 5192.31 | HSAER | 600.00 | BAL | --WAGES-- | F-TO-D 1 | --TAXES-- | |
| 8 | BONUS | 240.00 | 5000.00 | | 600.00 | LMT | 47555.10 | SSEC | 1997.31 | A230 |
| | | | | ACHBR | 2400.00 | -BAL | 47555.10 | MDCR | 689.55 | |
| | | | | | 2400.00 | -LMT | 46966.27 | FIT | 7223.55 | |
| | | | | HSA | | Q-TO-D | 7000.00 | FUTA | | |
| | | | | ACHBR | 1067.50 | | 47110.83 | ST KY | 2382.01 | |
| | | | | HSAER | 161.48 | | 49967.38 | SUI KY | | |
| | | | | HSA | 646.17- | | --WAGES-- | F-TO-D 1 | --TAXES-- | |
| | | | | 401K | 121.17- | | 9913.97 | SSEC | 416.38 | |
| | | | | DENTL | 26.53- | | 9913.97 | MDCR | 143.75 | |
| | | | | VISN | 15.68- | | 9913.97 | FIT | 1941.23 | |
| | | | | W2GRP | 38.92 | | 9845.36 | ST KY | 524.25 | |
| | | | | | Y-TO-D | | 9862.04 | SUI KY | | |
| | | | | ACHBR | 3965.00 | | 10192.31 | | | |
| | | | | 401K | 600.00 | | | | | |
| | | | | DENTL | 444.27- | | | | | |
| | | | | HSA | 2400.00- | | | | | |
| | | | | 401K | 98.54- | | | | | |
| | | | | VISN | 58.24- | | | | | |
| | | | | W2GRP | 144.56 | | | | | |
| | | | | MISC1 | 78.07 | | | | | |
| | | | | | F-TO-D 1 | | | | | |
| | | | | ACHBR | 457.50 | | | | | |
| | | | | HSAER | 69.16 | | | | | |
| | | | | HSAER | 276.93- | | | | | |
| | | | | 401K | 51.93- | | | | | |
| | | | | DENTL | 11.37- | | | | | |
| | | | | VISN | 6.72- | | | | | |
| | | | | W2GRP | 16.68 | | | | | |



PAY ANALYSIS REPORTING

086- ALPHABETIC PAYROLL REGISTER          086

HEALTH AND BENEFIT SERVICES, LLC

| | | 12/28/12 | | B-12/28/12 | | PAY PERIOD 26 |
| | | REPORT DATE | | CHECKS DATED | | PAGE NO. 8 |

REB
NO.
EMPLOYEE ID . . . . . . . . . HOURS AND EARNINGS . . . . . . . . DED AND ADJ . . . . . GROSS TO NET . . . . . .
EMPLOYEE NAME          CO. NAME          PC DESCR   RATE   HOURS   AMOUNT   DESCR   AMOUNT   CODES   Y-TO-D   TYPE   CURRENT   CHECK#

99-XQ2-97912
WILSON, PATRICIA

| SS-NO | | FRQ | B | STAT | T |
| BASE | 1600.00 | M/S | S | SEX | F |
| FILE# | 97912 | ST1 | KY | | |
| HIRE | 06/18/07 | F#EX | 01 | S#EX | 01 |
| TERM | 12/13/11 | | | | |
| PTO-C | | | | | |
| OT EX | N | | | | |
| DSS PT | Y | | | | |

ALT DATE:
DDB:                                    07/12/54

.00 GRCOMP          .00
.00 NET             .00

HEALTH AND BENEFIT SERVICES, LLC
CO. NAME

**086 - ALPHABETIC PAYROLL REGISTER**
GRAND TOTALS

12/28/12 REPORT DATE    086    B - 12/28/12 CHECKS DATED

PAY PERIOD 26    PAGE NO. 9

PAY ANALYSIS REPORTING

REB NO.

**HOURS/EARNS CURRENT**

| PC | DESCRIPTION | HOURS | EARNINGS | PC | DESCRIPTION | HOURS | EARNINGS |
|----|-------------|-------|----------|----|-------------|-------|----------|
| 1 | REGULAR | 712.00 | 15,666.93 | | HSA | 712.00 | 411.54- |
| | | | | | TOTAL | | 15,255.39 |

**PRE-TAX ITEMS CURRENT**

| | DESCRIPTION | | | | DESCRIPTION | | |
|---|-------------|---|---|---|-------------|---|---|
| | 401K | | | | DENTL | | 61.42- |
| | MED | | | | VISN | | 16.62- |
| | AFLPT | | | | TOTAL | | 524.26- |

Detail: DENTL 114.25-, VISN 323.45-, TOTAL 8.52-

**HOURS/EARNS Q-TO-D**

| PC | DESCRIPTION | HOURS | EARNINGS | PC | DESCRIPTION | HOURS | EARNINGS |
|----|-------------|-------|----------|----|-------------|-------|----------|
| 1 | REGULAR | 5,215.25 | 112,442.39 | 8 | BONUS | 5,215.25 | 2,515.18 |
| | | | | 7 | OTHER | | 470,356.26 |
| | | | | 8 | TOTAL | | 52,500.00 |
| | | | | | TOTAL | | 99,967.79 |

**Q-TO-D / Y-TO-D / FTD1 / FLX-1**

| | | | | | | |
|---|---|---|---|---|---|---|
| Y-TO-D | 1 | REGULAR | 18,361.00 | 415,341.08 | CHILD | SPOUS |
| | 8 | BONUS | | 52,500.00 | | |
| FLX-1 | 1 | REGULAR | 2,176.50 | 47,467.79 | | |

YTD totals area: 2,515.18 / 470,356.26 / 52,500.00 / 99,967.79
HSA TOTAL 18,361.00 / 2,176.50

**EARNINGS FROM DEDUCTIONS**

| | $LS1 | VOLIN | VOLIN | $LS1 | $LS1 | $LS1 | VOLIN | VOLIN | |
|---|------|-------|-------|------|------|------|-------|-------|---|
| QTD | | 2,880.78- | | | | | | 221.40 | |
| YTD | | 9,900.04- | | | | | | | |
| FTD1 | | 1,234.62- | | | | | | | |

**DEDUCTION TO NET — CURRENT**

| DESCRIPTION | Amount | | DESCRIPTION | Amount | DESCRIPTION | Amount |
|-------------|--------|---|-------------|--------|-------------|--------|
| HSA | 20.00 | | CHILD | 1.06 | SPOUS | 31.70 | STD | 22.33 |
| $LS1 | 73.80 | | | | SPOUS | 221.90 | TOTAL | 148.89 |
| VOLIN | 140.00 | | | | | | STD | 156.31 |
| $LS1 | 516.60 | | | | | | TOTAL | 1,042.20- |
| VOLIN | 140.00 | | | | | | STD | 635.08 |
| $LS1 | 1,973.90 | | | | | | TOTAL | 3,624.16 |
| VOLIN | 60.00 | | | | | | VISN | 49.86- |
| VOLIN | 221.40 | | | | | | TOTAL | 1,575.59- |

**PRE-TAX ITEMS — QTD / YTD / FTD1**

| | 401K | AFLPT | 401K | AFLPT | 401K | AFLPT | DENTL | DENTL | DENTL |
|---|------|-------|------|-------|------|-------|-------|-------|-------|
| QTD | 813.43- | 59.64- | 2,505.04- | 221.52- | 345.56- | 25.56- | 428.94- | SPOUS | MED |
| YTD | | | | | | | 1,782.96- | SPOUS | MED |
| FTD1 | | | | | | | 3.18 | SPOUS | MED |

Detail: 428.94- MED 2,264.15-, 7.42 SPOUS 221.90, 1.06 MED, STD values
VISN 116.34-, TOTAL 3,683.50-, VISN 414.20-, TOTAL 13,333.42-, VISN 49.86-, TOTAL 66.99, 446.67

**MEMO DEDUCTION — CURRENT / QTD / YTD / FTD1**

| | W2GRP | ACHBR | W2GRP | ACHBR | W2GRP | ACHBR | W2GRP | HSAER | |
|---|-------|-------|-------|-------|-------|-------|-------|-------|---|
| CURRENT | 31.72 | 2,086.88 | | HSAER | 115.16 | MED | 970.35- | VISN | STD |
| QTD | 222.04 | 14,608.16 | | HSAER | 807.56 | MED | | | |
| YTD | 817.04 | 53,442.53 | | HSAER | 2,677.04 | MISC1 670.47 | | | |
| FTD1 | 95.16 | 6,260.64 | | HSAER | 345.96 | MED 184.26- | | | |

**OTHER DEDUCTIONS**

(see ACHBR / HSAER detail above)

**DED BALANCES**

| | $LS1 | HSA | HSAER |
|---|------|-----|-------|
| | 140.00 | 9,900.04- | 2,677.04 |

**GROSS TO NET**

| | | WAGES | SOCSEC / MEDICR / FEDERAL | STATE | LOCAL | SDI/UC | DEDUCTION | NET |
|---|------|-------|---------------------------|-------|-------|--------|-----------|-----|
| CUR | GRPAY | 14731.13 | 1763.25 | 741.63 TOT / 741.63 KY | | | 148.89 | 11440.63 |
| | GRCOMP | 15255.39 | 421.03 | 215.70 | | | | |
| QTD | GRPAY | 156378.11 | 28445.04 | 8441.02 TOT | | | 1042.23 | 113819.32 |

A199

GUARDIAN

**086- ALPHABETIC PAYROLL REGISTER**
**GRAND TOTALS**

REPORT DATE 12/28/12          086

HEALTH AND BENEFIT SERVICES, LLC
CO. NAME

B- 12/28/12 CHECKS DATED

PAY PERIOD 26   PAGE NO. 10

REB
NO.

| GROSS TO NET | WAGES | SOCSEC MEDICR | FEDERAL | STATE | LOCAL | SDI/UC | DEDUCTION | NET |
|---|---|---|---|---|---|---|---|---|
| YTD GRCOMP | 162061.61 | 2311.50 | | | | | | |
| GRPAY | 447122.80 | 16542.31 | 63329.04 | | | 3624.16 | 334029.98 | |
| GRCOMP | 460456.22 | 6531.45 | | | | | | |

**WAGE AND TAXES**

| | QTD WAGES | QTD TAXES | YTD WAGES | YTD TAXES | FX1 WAGES | FX1 TAXES | FX2 WAGES | FX2 TAXES |
|---|---|---|---|---|---|---|---|---|
| EE SSEC TO LMT | 102833.41 | 4319.00 | 393864.71 | 16542.31 | 43040.80 | 1807.70 | | |
| MDCR TO LMT | 159413.58 | 2311.50 | 450444.88 | 6531.45 | 97598.30 | 1415.16 | | |
| FIT | 158378.11 | 28445.04 | 447122.80 | 63329.04 | 97157.58 | 21046.61 | | |
| FUTA TO LMT | 1467.85 | | 61961.75 | 663.63 | | | | |
| SIT | | | | | | | | |
| KY KENTUCKY | 158600.15 | 8441.02 | 447939.84 | 23065.86 | 97252.74 | 5340.32 | | |
| SDI/UC | | | | | | | | |
| KY KENTUCKY | 164942.39 | | 470356.26 | | 99967.79 | | | |

**CURRENT TAX RECAP   O**

*VOID/MANUAL CHECKS INCLUDED*

| FORM 8109 FEDERAL DEPOSIT | TYPE | JURISDICTION | TAXABLE WAGES | LIMIT | LIABILITIES WAGES TO LIMIT | RATE | AMOUNT |
|---|---|---|---|---|---|---|---|
| EMPLOYEE SSEC | | | | | | | 421.03 |
| EMPLOYEE MDCR | | | | | | | 215.70 |
| EMPLOYER SSEC | | | | | | | 621.53 |
| EMPLOYER MDCR | | | | | | | 215.72 |
| EMPLOYEE FIT | | | | | | | 1,763.25 |
| TOTAL DEPOSIT | | | | | | | 3,237.23 |

| | STATE | | |
|---|---|---|---|
| | 8441.02 KY | 23065.86 TOT | 23065.86 KY |

| | STANDARD RATE | | TAXABLE WAGES | LIMIT | WAGES TO LIMIT | RATE | AMOUNT |
|---|---|---|---|---|---|---|---|
| FUTA | | | 14,877.10 | 110100 | 10,024.60 | 6.20 % | 837.25 |
| FUTA | | | 14,877.10 | UNLIM | 14,877.10 | 1.45 % | 215.72 |
| FUTA | KENTUCKY | CR RED | 14,845.38 | 7000 | 206.21 | 7.65 % | 206.21 |
| FUTA | | | | 7000 | .60 % | .60 % | 1.24 |
| FUTA TOTAL | | | | | | .60 % | 371.77 |
| TOTAL | | | 61,961.75 | | 61,961.75 | | 373.01 |

**NET PAY ANALYSIS**

| | KY-KENTUCKY | TAXABLE WAGES | STATE/LOCAL TAXES WITHHELD | LIMIT WAGES | RATE | AMOUNT |
|---|---|---|---|---|---|---|
| KY KENTUCKY | | | | 9000 | | |
| SUI KY-KENTUCKY | | 15,666.93 | | 9000 | 210.00 | 5.67 |
| SIT KY-KENTUCKY | | 15,666.93 | | | 2.70 % | 5.67 |
| TOTAL | | | | | | |

| | TAXABLE WAGES | #DEP ADV | #EMPS PAID | | |
|---|---|---|---|---|---|
| | 14,762.85 | 5500 | 7000 | 9 | |
| | 14,762.85 | 17000 | | 9 | |

FEDERAL 401-K DEFERRAL LIMIT            17000
FEDERAL 401-K CATCH-UP DEFERRAL LIMIT   5500
EMPLOYEE CENSUS

| | | #DEP ADV | #EMPS PAID |
|---|---|---|---|
| ACTIVE EMPS | 9 | 9 | |
| TERM EMPS | 2 | | 9 |
| TOTAL EMPS | 11 | | |

| | EFTS TOTAL | AMOUNT |
|---|---|---|
| | TOTAL NET | 11,440.63 |
| | | 11,440.63 * |
| | TOTAL TAXES | 4,357.54 *** |
| | | 15,798.17 *** |



PAY ANALYSIS REPORTING

HEALTH AND BENEFIT SERVICES, LLC
CO. NAME

086- ALPHABETIC PAYROLL REGISTER
BILLING AUDIT INFORMATION

086

| | 12/28/12<br>REPORT DATE | B-12/28/12<br>CHECKS DATED | PAY<br>PERIOD 26 | 11<br>PAGE NO. |

REB NO.

11 EMPLOYEES INCLUDED.

12 DATA GROUPS SELECTED.

1 COPY PRINTED.

CD-ROM FILE - NO

OUTPUT MEDIA - PRINTED - YES
ORCHESTRATOR PRINT - NO

| | | | |
| I/P | 12/12/11 | 10.04.43 | R34.08 |
| O/P | 12/12/21 | 13.54.23 | R34.73 |
| PRT | 12/12/21 | 13.54.42 | |

REPORT TYPE - PAY ANALYSIS REPORT    DETAIL

A201

# EXHIBIT E

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>REVSTONE INDUSTRIES, LLC, et al.,[1]<br>                  Reorganized Debtors. | Chapter 11<br>Case No. 12-13262 (BLS)<br>Jointly Administered |
| FRED C. CARUSO, solely in his capacity as<br>the Revstone/Spara Litigation Trustee for the<br>Revstone/Spara Litigation Trust,<br>                  Plaintiff,<br>     v.<br>SCOTT R. HOFMEISTER, et al.,<br>                  Defendants. | Adv. No. 14-50984 (BLS) |

## <u>TRUSTEE'S INITIAL EXPERT WITNESS DESIGNATION</u>

Plaintiff Fred C. Caruso, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust (the "Trustee"), successor in interest to Spara, LLC ("Spara") in the above-captioned Adversary Proceeding, hereby designates the person identified below, whose expert opinion testimony the Trustee expects to offer into evidence, at trial and otherwise, in the Adversary Proceeding. The Trustee reserves all rights to designate additional rebuttal expert witnesses in response to any expert designation(s) by any Defendant(s) in the Adversary Proceeding.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool & Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each Debtor is: Revstone Industries, LLC, et al., c/o Huron Consulting Group Inc., 900 Wilshire Drive, Suite 270, Troy, MI 48084, Attn: John C. DiDonato, Chief Restructuring Officer.

The Trustee designates:

**James M. Lukenda, CIRA, CFF**
**Managing Director**
**Huron Consulting Group, Inc.**
**599 Lexington Avenue, 25th Floor**
**New York, NY 10022-7656**
**Telephone: (646) 277-2207**

The Trustee expects Mr. Lukenda to testify, and to provide expert evidence and opinions at trial and otherwise, as to the following general subject areas:

1.   Spara's insolvency.

2.   The fraudulent pre-petition transfer identified in the operative complaint in the Adversary Proceeding.

3.   Spara's predicate creditor(s) pursuant to 11 U.S.C. § 544.

4.   The contents of Mr. Lukenda's expert report (including exhibits) regarding Spara, served concurrently herewith.

Mr. Lukenda charges an hourly rate of $725.00 for deposition and trial testimony in the Adversary Proceeding, against which the Revstone/Spara Litigation Trust receives a 20% accommodation.

[remainder of page intentionally blank]

Dated:  October 7, 2016

PACHULSKI STANG ZIEHL & JONES LLP

_____

Laura Davis Jones (Bar No. 2436)
Alan J. Kornfeld (CA Bar No. 130063)
Elissa A. Wagner (CA Bar No. 213589)
Colin R. Robinson (Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:  ljones@pszjlaw.com
        akornfeld@pszjlaw.com
        ewagner@pszjlaw.com
        crobinson@pszjlaw.com

Counsel for the Revstone/Spara Litigation Trustee

DOCS_LA:301582.1 73864-026

A205

# EXHIBIT F

INITIAL EXPERT REPORT OF JAMES M. LUKENDA, CIRA, CFF
Spara, LLC

James M. Lukenda, CIRA, CFF
Huron Consulting Services LLC

October 7, 2016

# Initial Expert Report of James M. Lukenda, CIRA, CFF

## Table of Contents

**Introduction** ............................................................................................................... 1

    *PREFACE* ............................................................................................................ 1

    *SCOPE* ................................................................................................................ 2

    *QUALIFICATIONS* ............................................................................................ 3

    *SUMMARY OF OPINIONS* ............................................................................. 4

    *BACKGROUND ON SPARA, LLC* ................................................................ 5

**Approach to Determining Solvency** ..................................................................... 5

    *BALANCE SHEET TEST* ................................................................................. 5

    *SPARA – INSOLVENT* ................................................................................... 11

**Transactions** .......................................................................................................... 12

**Predicate Creditors** ............................................................................................. 13

Appendices

Exhibits

# Initial Expert Report of James M. Lukenda, CIRA, CFF
Appendices

A.    *Curriculum Vitae* of James M. Lukenda, CIRA, CFF

B.    List of Adversary Proceedings

C.    List of Documents Relied Upon

## Exhibits

I.    Spara, LLC Organization as of June 30, 2012

II.    Liquidity Communications Examples

III.    Wire Confirmation and Correspondence – Scott Hofmeister Transfer

## Introduction

*PREFACE*

Pachulski Stang Ziehl & Jones LLP ("PSZJ" or "Counsel"), in its capacity as legal counsel for Spara, LLC ("Spara" or the "Debtor") and Fred C. Caruso, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust, retained Huron Consulting Services LLC ("Huron" or "we") and through Huron, James M. Lukenda, CIRA, a Managing Director, as its financial expert in the adversary proceedings filed in the Debtor's Chapter 11 case.[1]

Counsel requested that Huron evaluate a transaction that is the subject of the adversary proceeding captioned as *Caruso v. Scott Hofmeister, et al.*, Adv. No. 14-50984 (BLS).  In this transaction, George S. Hofmeister ("Hofmeister Senior") caused to be made a cash transfer of Spara's funds to his son, Scott R. Hofmeister.  Counsel requested that Huron determine whether there were Spara creditors as of the bankruptcy petition date that also had amounts owed to them since the date of this transaction (the "Predicate Creditors").  Counsel also requested that Huron evaluate the Debtor's insolvency at the time of this transaction, and determine the additional damages Spara suffered as a result of this transaction.

For purposes of this Report, the relevant period Huron considered was the month of June 2011 (inclusive of the transaction date, June 29, 2011, the "Relevant Period").

---

[1] Spara's Chapter 11 case is pending in the United States Bankruptcy Court for the District of Delaware as *In re Revstone Industries, LLC, et al.*, Case No. 12-13262 (BLS).  This report pertains to two of the adversary proceedings filed in the Debtor's Chapter 11 case, both of which are identified on Appendix B hereto.  A third adversary proceeding filed in the Debtor's Chapter 11 case (Adv. No. 14-50985) currently is stayed in its entirety and thus is not the subject of this Report.

Initial Expert Report of James M. Lukenda, CIRA, CFF
October 7, 2016
**1** | P a g e

*SCOPE*

Huron is a management consulting firm and not a CPA firm. Huron does not provide attest services, audits, or other engagements in accordance with standards established by the American Institute of Certified Public Accountants ("AICPA") or auditing standards promulgated by the Public Company Accounting Oversight Board ("PCAOB"). The procedures that Huron performed do not constitute an audit of the financial statements of the Debtor in accordance with the AICPA's or PCAOB's auditing standards. Accordingly, Huron expresses no opinion or other form of assurance on any financial statements, management representations, or other data provided by any of the parties included in or underlying the accompanying report.

*QUALIFICATIONS*

I am a Managing Director of Huron's Business Advisory practice. I have served in this capacity since Huron's founding in 2002. Prior to that time I was a Partner in Arthur Andersen LLP's Corporate Recovery Services practice based in New York. My work in the Huron Business Advisory practice and prior to that, my work with Arthur Andersen's Corporate Recovery practice, going back to 1989, has been focused on assisting clients with turnaround, restructuring, and bankruptcy matters, working on behalf of companies and their directors, lenders, committees of creditors, and other parties-in-interest including individual creditors, in capacities ranging from consultant and advisor to financial expert and chief restructuring officer. My industry experience tracks the cycles of troubled industries in the United States and abroad: manufacturing, publishing and media, energy, telecommunications, construction contracting, airlines, and retail, to name a few. Among the hallmark cases with which I have been involved are Federated Department Stores, JWP, Pocket Communications and DCR PCS, Global Crossing Ltd., Northwest Airlines, Nortel Networks, The Great Atlantic and Pacific Tea Company, Residential Capital, LLC, and Sherwin Alumina Company. I have also worked on assignments for many middle market companies, providing a range of services including valuation and solvency analyses, analysis in avoidance matters, forensic accounting, and investigations. I am well familiar with the Debtor's Chapter 11 case, and the reasons the Debtor sought Chapter 11 protection. I served as the Deputy Chief Restructuring Officer for Revstone Industries, LLC ("Revstone") and Spara during their Chapter 11 case.

I regularly lend my experience to industry education programs addressing bankruptcy and restructuring topics for groups such as Practising Law Institute, American Bankruptcy Institute and Association of Insolvency and Restructuring Advisors ("AIRA"). I am one of the authors of the AICPA/AIRA publication, *2005 Bankruptcy Revisions Implications for Businesses and Financial Advisors*.

I am a Certified Insolvency and Restructuring Advisor ("CIRA"), Certified in Financial Forensics ("CFF"), and an active member of AIRA.

I hold a Bachelor of Science in Business Administration degree, *cum laude,* in Accounting from Georgetown University. Attached as **Appendix A** is a copy of my *curriculum vitae* with citations of publications and speaking engagements, and matters involving depositions and expert testimony.

During my 27 plus years of experience in bankruptcy and restructuring, my work has regularly included the analysis of transfers and Chapter 5 causes of action, solvency, and other valuation questions, as well as analyses of the affirmative defenses available to creditors under applicable statutes related to avoidable transactions. As a result, I have the necessary familiarity and expertise to address the matters for which Counsel has engaged Huron.

The opinions presented in this report are based on my analyses of available information and my many years of experience as a financial advisor and Certified Insolvency and Restructuring Advisor. As part of performing my analyses, I utilized Huron's professional staff who worked under my direction and control.

The defendants in the adversary proceedings filed in the Debtor's Chapter 11 case have not fully responded to discovery requests and fact discovery continues. I reserve my right to amend my statements and conclusions if necessary for additional information I may receive after the date of this Report.

Counsel's engagement of Huron provides for payment on an hourly basis for the services my colleagues and I are providing. My standard billing rate is $725 per hour. Huron agreed to provide a discount of 20% against its invoices calculated at the standard rates.

### SUMMARY OF OPINIONS

Based on my analysis of the information currently available in the adversary proceedings, my opinions are summarized as follows.

It is my opinion (1) the transfer to Scott R. Hofmeister, as discussed herein, constituted a transfer of Spara's property to Scott R. Hofmeister, (2) Spara did not receive reasonably equivalent value in exchange for this transfer; I have concluded that Spara received no value at all, (3) there were at least two creditors to whom Spara was indebted during the Relevant Period who remained unpaid as of December 3, 2012, namely, Boston Finance Group, LLC ("BFG") and Gratiot 26 Mile Industrial 1, LLC ("Gratiot"), a Spara landlord, and (4) Spara was insolvent at the time the transfer was made, in that Spara's liabilities were at least $46,387,000 greater than its assets at fair value.

James M. Lukenda, CIRA, CFF

October 7, 2016

*BACKGROUND ON SPARA, LLC*

The Debtor was formed on August 2, 2010 as a Delaware limited liability company, pursuant to an operating agreement, effective August 2, 2010, by and among three irrevocable trusts established for Hofmeister Senior's three children – the Megan G. Hofmeister Irrevocable  Trust, the Scott R. Hofmeister Irrevocable Trust, and the Jamie S. Hofmeister Irrevocable Trust (collectively, the "Children's Trusts").

On or about July 1, 2011, the Children's Trusts assigned all of their membership interests in the Debtor to Ascalon Enterprises, LLC ("Ascalon"), which currently has, pursuant to Spara's confirmed plan of reorganization, a suspended 100% of the membership interests in Spara.

The Debtor, through its non-debtor subsidiary operating companies, was a manufacturer of engineered components for the automotive aftermarket industry, plastic injection molding and other industrial sectors.  The Debtor is a holding company, the assets of which at the time of the transfer to Scott R. Hofmeister consisted of related entity receivables, cash, and interests in certain non-debtor subsidiaries.

On December 3, 2012, Spara commenced its bankruptcy case under Chapter 11 of the Bankruptcy Code.  At all relevant times up to the bankruptcy, Hofmeister Senior was the Chairman and sole member of Ascalon's Board of Managers, and was the Chairman and sole member of Spara's Board of Managers.  With the appointments of independent board members and the Chief Restructuring Officer, by January 17, 2013, Hofmeister Senior's executive and decision making authority with respect to Spara was effectively terminated.

Spara's organization chart as of the Relevant Period is provided in EXHIBIT I.

## Approach to Determining Solvency

*BALANCE SHEET TEST*

The Bankruptcy Code defines "insolvent" as:

> *a financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522*[2]

---

[2] 11 U.S.C. § 101 (32)(a).

In evaluating solvency from a balance sheet perspective, whether assets at fair value exceed liabilities, the valuation of the assets may be approached from a number of perspectives. These include, among other methods, valuation based on projected cash flows, comparable market multiple analysis, and comparative market transactions.

In evaluating Spara's solvency and reaching my conclusion that Spara was insolvent during the Relevant Period, I largely relied on a market transaction approach given the nature of Spara's holdings and the timing of Spara's acquisition of those assets as discussed below.

As stated above, Spara is a holding company organized under the laws of Delaware.  On a standalone basis, Spara had no manufacturing operations and no known amounts of tangible assets such as furnishings and equipment during the Relevant Period.  Spara shared a management team with its sister entity, Revstone, which team varied in size and cost over time, and simply managed its controlling interest in its investments that were a result of acquisitions. Throughout the Relevant Period, Spara's assets consisted of cash, investments in subsidiaries, and some receivables from other Hofmeister entities.

Between August 2, 2010 (when Spara was formed) and December 31, 2010, Spara appears to have been a paper entity with no activity.  Spara's Form 1065 US Partnership Tax return shows no income or expense for the period from Spara's inception to December 31, 2010.

*Acquisitions:  T Cast Holdings, LLC*

As of December 31, 2010, Spara acquired the membership interest in T Cast Holdings, LLC ("T Cast").

T Cast was purchased by Revstone Tool & Engineering, LLC ("Tool & Engineering"), a Revstone subsidiary, on March 12, 2010.  On July 14, 2010, T Cast formed its one and only subsidiary, Spara Tactical Mobility, LLC ("Spara Tactical").  Collectively, the two entities were member managed as one.

Tool & Engineering assigned its membership interest in T Cast to Spara on December 31, 2010. The transfer documents state the assignment was for "valuable consideration"; however, there is no evidence of any consideration provided between the assignee and assignor. At the time of the transfer, Spara had no bank account or any other identified assets.

From the initial acquisition by Tool & Engineering, T Cast reported operating profit with $1.548 million of operating income in FY2010 and $550,000 of operating income through June 30, 2011.  On a trailing twelve month basis ("TTM"), T Cast's June 30, 2011 EBITDA was $1.8 million.  T Cast managed to remain shielded from active management by Hofmeister Senior, and thus avoided the proliferation of stripping cash for the benefit of the Hofmeister family, the Children's Trusts, and third parties that other Hofmeister entities experienced. As a result, T Cast continued on the path of profitable operations.

T Cast was ultimately sold on December 12, 2014 for $17 million and realized net proceeds of $15.9 million after transaction costs and settling its outstanding debt.   At that time (December 2014), T Cast's TTM EBITDA was $4.2 million, which garnered a 4x sale multiple.  If applying the inverse multiple of 24.8% (1 less 4X) with a growth rate of 1.8% (2012 IMF growth rate) to the June 30, 2010 TTM EBITDA of $1.8 million, the June 30, 2011 terminal value for T Cast would be $8.2 million.  This is substantially less than the sale value in 2014, which I attribute to a far greater improvement in T Cast's operations over the period than originally forecast.  In order to avoid any doubt regarding the T Cast valuation, I have chosen to use the 2014 sale proceeds as the value for T Cast during the Relevant Period.

Spara Tactical failed to gain any operating traction and incurred losses resulting in negative equity as of June 30, 2011.  Spara Tactical ultimately closed its doors and was liquidated with no recovery to either T Cast or Spara.

*Acquisitions – RPM-TEC, LLC*

RPM-TEC, LLC ("RPM") consisted of a group of companies including: RPM Towing, LLC, RPM Retail Sales (non-operating), LLC, Saleen, LLC, Saleen Distribution & Sales (non-operating), LLC, Power-Tech Manufacturing, LLC, Arrow Racing, LLC and Arrow Racing Engines, LLC (non-operating).

The membership interests of all the above noted RPM entities, including RPM, were assigned via an Assignment of Membership interest from Revstone to Spara on June 1, 2011.   Like the T Cast assignment, the documents indicate that the assignment was made for "valuable consideration"; however, there is no evidence of any consideration provided between the assignee and assignor.

From the time the RPM entities were acquired in April 14, 2010 by Tool and Engineering, excluding the Arrow Racing entity, RPM generated losses measured on an EBITDA basis (as reflected in their audited and internal financial statements) of negative $1.6 million for FY2010 and negative $3.9 million through June 30, 2011.  Interest due on various loans with which the RPM entities were encumbered and capital investment needs further eroded the value of these entities to the point where RPM reported negative $5.9 million in equity as of June 30, 2011.

Arrow Racing was sold back to its original owner on July 7, 2011 for a promissory note discharge on outstanding notes payable by Power-Tec, Arrow Racing, and Saleen from the original purchase by Revstone.  Even with the non-cash gain realized from the note discharge, the RPM entities were unable to continue and their respective businesses and operations ceased in or around November 2011 for RPM Towing, the summer 2012 for Saleen, and in or around November 2012 for Power-Tec.

Eventually, all the remaining RPM assets were liquidated, with the minimal proceeds paid to its creditors.  Spara realized nothing from its investment in these entities.

As indicated above, by June 2011, it was clear that Spara's investment in the RPM entities had no value.

*Acquisitions – Lexington Logistics, LLC*

On June 7, 2011 Spara incorporated Spara Logistics, LLC (whose name was subsequently changed to Lexington Logistics, LLC and is referred to herein as "Lexington") to acquire, through an Article 9 sale, the assets of TriEnda, LLC and TriEnda DISC, Inc. ("TriEnda") from a lender group agented by Fifth Third Bank ("Fifth Third"). The transaction closed on June 24, 2011 for a purchase price of $27,112,208, with $4 million paid by Spara as an equity investment in Lexington and Fifth Third rolling over its outstanding TriEnda loan to Lexington for the balance.

Spara funded its Lexington investment through a $6 million loan from BFG (the "BFG Loan") on June 20, 2011.

Spara purchased the TriEnda assets for Fifth Third's asking price. The available information indicates that Fifth Third's agreement to roll the balance of the TriEnda debt, and only require $4 million of cash to purchase the assets, was a sufficient market test for Hofmeister Senior.

It quickly became clear that Hofmeister Senior had overpaid for the Lexington assets. By early 2012, Spara was shopping Lexington for sale with no success. In November 2012, BFG foreclosed on an assignment of membership interest in Lexington that it had taken as collateral for the BFG Loan. In 2013, Fifth Third began state court foreclosure proceedings against the Lexington assets. In April 2014, the Lexington business and assets were sold for less than the value of the Fifth Third debt.

As of December 31, 2011, Lexington's financial statements indicated a members' equity of $8,746,164. This balance is comprised of the $4 million cash investment, an operating loss of almost $2.1 million for the approximately 5 months from the acquisition date to year end 2011, and an extraordinary gain of $6.8 million to record a so called "bargain purchase" at the acquisition date. The resulting economics of the Lexington situation illustrate that the "bargain purchase" gain had no basis in fact.

While all properly considered evidence indicates that the value of Spara's investment as of June 20, 2011 and thereafter was less than the $4 million paid at acquisition, I conservatively have chosen to use that value for purposes of my insolvency analysis.

*Other assets*

Other than its investments in subsidiaries, Spara's assets during the Relevant Period consisted of receivables from related entities and the remaining unspent cash from the BFG loan. The

following chart details the disbursements made from the BFG loan proceeds between June 20, 2011 and June 30, 2011.

| Date | Payee/Beneficiary | Description | Amount | Classification |
|---|---|---|---|---|
| 6/20/2011 | Boston Finance | Deal Cost | (60,000.00) | Financing Expense |
| 6/24/2011 | 5th 3rd Bank | Trienda Funding | (4,000,000.00) | Investment in Lexington Logistics |
| 6/24/2011 | Nelson Clemens | Financing Fee | (100,000.00) | Financing Expense |
| 6/27/2011 | Estate of Arnold S Schafer | 1Q Payment | (30,000.00) | Due from Trust |
| 6/27/2011 | Villa Ford | Saleen Chassis DS | (17,063.96) | Intercompany Saleen |
| 6/27/2011 | Sheldon S Toll PLLC | Trienda LTR | (10,000.00) | Legal Expense |
| 6/27/2011 | Chongqing Revstone Boao Automotive | ChML JV | (255,000.00) | Due from Trust |
| 6/27/2011 | DSA Exhaust LLC | Frank Arlasky | (10,000.00) | Consulting Expense |
| 6/27/2011 | Employee | Saleen Chassis AS | (26,663.96) | Intercompany Saleen |
| 6/27/2011 | RPM Towing | Sinosure vs. RPM Towing | (50,000.00) | Intercompnay Towing |
| 6/28/2011 | Jeffery Owen | SouthCarolina Property | (100,000.00) | Consulting Expense |
| 6/28/2011 | Plant One Properties LLC | Repayment of Loan | (100,000.00) | Intercompany Plant One |
| 6/28/2011 | Don Lifton | Consulting Fee | (30,000.00) | Consulting Expense |
| 6/28/2011 | Scott S. Hofmeister | Harvard Tuition Payment | (70,000.00) | Employee Bonus Expense |
| 6/28/2011 | Unidentified Employee | Wharton Tuition Payment | (30,000.00) | Employee Bonus Expense |
| 6/29/2011 | GE Capital Lease | Palm Payments on Equipment | (40,496.75) | Intercompany Palm |
| 6/30/2011 | Balance | Cash | 1,070,775.33 | |

Spara recorded intercompany receivables of $519,224.67 consisting of amounts due from the Children's Trusts of $285,000 and $234,224.67 due from Spara companies within RPM.  As none of these balances had characteristics that could allow them to be considered collectible, I have adjusted these receivables to zero value in my insolvency analysis.

*Spara Obligations and Pension Plan Controlled Group Liability*

During the Relevant Period, Spara was obligated to a landlord, Gratiot, and to BFG for its $6 million loan.  As discussed below, as a member of the ERISA controlled group with other Hofmeister entities, Spara also was an obligor for the underfunded pension plans at other Revstone entities.

Hofmeister Senior, though Revstone Transportation, began his Revstone acquisitions with the purchase of the membership interest in Hillsdale Automotive, LLC  (renamed Metavation, LLC and now known and referred to herein as TPOP, LLC or "TPOP") and its Mexican subsidiary Eptec, S.A. de C.V. ("Eptec") for one dollar ($1.00) on November 28, 2008.  In acquiring the member interest in TPOP, the Revstone and subsequently Spara entities became obligated as a group for any underfunding of the Hillsdale pension plans under the controlled group liability provisions of ERISA.  Upon the acquisition of the entity now known as Fairfield Castings, LLC ("Fairfield"), Revstone, Spara and their affiliates became obligated for the underfunding of the Fairfield pension plan.  My analysis includes the obligations presented on the TPOP and Fairfield financial statements representing the difference between plan assets as reported and the accumulated benefit obligations.  These obligations are valued based on the assumption that the pension plans continue.  Since an actuarial valuation of the Hillsdale and Fairfield pension plans has not been performed as of mid-year 2011, for purposes of this analysis I have used the

underfunded amount reported by TPOP and Fairfield as of December 31, 2010, rather than the higher underfunded amount reported at December 31, 2011.  From this conservative starting point, it is reasonable to conclude that the actual underfunding during the Relevant Period, for which Spara was liable as a member of the controlled group, fell between the amounts measured at both year ends.  Pursuant to the settlement reached with Pension Benefit Guaranty Corporation (the "PBGC Settlement"), which was approved by the United States Bankruptcy Court for the District of Delaware, the pension plans were terminated, resulting in a claim against the controlled group entities of $95 million.  After considering the adjustment discussed below for the uncollectible prohibited investments, Spara's insolvency reflected on Table 1 below would be at least $31 million greater when considering the additional liability under the PBGC Settlement and pension plan terminations.

*Adjustment for Uncollectible Prohibited Investments*

Starting in January 2009, Hofmeister Senior caused the Hillsdale and Fairfield pension plans to convert third party investments to loans and notes and other related party assets.  These transactions were prohibited under ERISA regulations.  Many of these loans went to purchase other distressed assets, and many of the borrowing entities did not have the collateral or ability to repay the amounts borrowed.  Despite the poor credit profile of these investments, Hofmeister Senior had the loans and investments reported at face value in the calculation of the unfunded pension obligations.  The amount of the uncollectible prohibited investments that were not recognized as such in the calculations of the unfunded pension obligation rose from $4.9 million in 2009 to over $31 million in 2012.  As of June 2011, most of the diversion of pension assets into these prohibited transactions had already taken place.  The adjustment for Hillsdale Pension Plan Liability Prohibited Loans adjusts Spara's controlled group liability for the unfunded pension obligations not recognized in the financial statements because of the overstatement of the value of the prohibited transactions.

*SPARA – INSOLVENT*

*Balance Sheet Test*

Table 1 below illustrates that even after giving recognition to the value contained in the T Cast investment, Spara was hopelessly insolvent on June 30, 2011 and at all times surrounding that date. The total of liabilities for which Spara was an obligor exceeded the fair value of its assets by not less than $46,367,000.

| TABLE 1 | | as of June 30, 2011 | | |
|---|---|---|---|---|
| | | | Fair Value | |
| (in thousands) | | Book Balance | Adjustments | Fair Value |
| Cash | $ | 1,071 | | $    1,071 |
| Intercompany A/R | | 519 | (519) | - |
| Investment in Subs: | | | | |
| T Cast, LLC | | 3,819 | 12,063 | 15,882 |
| RPM-Tec, LLC | | (5,902) | (5,902) | - |
| Lexington Logistics | | 8,746 | (4,746) | 4,000 |
| BFG Note | | (6,000) | | (6,000) |
| **Spara Net Value** | $ | **2,254** | | $    **14,953** |
| | | | | |
| *Controlled Group Liability* | | | | |
| Controlled Group Pension Liability - Hillsdale Pension Plan | | | | (29,039) |
| Controlled Group Pension Liability - Fairfield Pension Plan | | | | (2,276) |
| Hillsdale Pension Plan Liability Prohibited Loans | | | | (30,025) |
| **Controlled Group Pension Plan Liability** | | | | $    **(61,340)** |
| | | | | |
| **Spara, LLC Insolvency (Liabilities exceed Assets)** | | | | $    **(46,387)** |

*Capitalization*

I found no evidence in the records that Spara was ever capitalized with any monetary equity investment. While the transfer into Spara of RPM and T Cast could be considered an equity investment from Spara's ultimate parent, these transfers provided Spara with no liquidity. In my opinion, Spara was without adequate capital from inception.

*Cashflow and Ability to Pay Debts as They Came Due*

Leading up to, during, and after the Relevant Period, Hofmeister Senior played a constant shell game moving cash among Revstone, Spara, and non-Revstone/Spara entities, borrowing at one entity and using the cash at another, and generally not paying obligations as they came due.

One of the most glaring examples of this type of activity relates to the self-insured health plan that was initially a Revstone subsidiary and later moved to Ascalon.  At the time the CRO was appointed in January 2013, the Ascalon Health Plan was owed almost $5.1 million from various Revstone entities.  Because of cash constraints at the entity level, Hofmeister Senior allowed the individual entities whose employees participated in the health plan to defer making the employer's portion of the health and dental plan monthly premiums. At least $741,000 of that amount was outstanding related to periods prior to the end of 2011.

Probably the most illustrative way to demonstrate the constant pressure the Revstone and Spara employees were under for paying bills is to let them speak through their e-mail correspondence. The e-mail correspondence my staff and I reviewed during our work is replete with discussion of the pressure Revstone and Spara were under because of a lack of adequate funding. The accompanying Exhibit II presents examples of that e-mail correspondence involving Revstone, Spara, and Spara's investments.

## Transactions

Payment information underlying the statements and conclusions in this report originated from one primary source.  Huron reviewed the majority of the transactions in Spara's sole operating bank account, Fifth Third Account No. 7381005722 (the "Spara Bank Account").  The Spara Bank Account was controlled and maintained by Spara, and was used to transact Spara's business including the receipt and payment of various intercompany loans, loans from third parties, and subsidiary operations.  The Spara Bank Account was opened on June 20, 2011 and closed on March 7, 2012.

<u>**SCOTT HOFMEISTER – HARVARD TRANSFER**</u>

According to Spara's books and records, a total of $70,000 of Spara's funds was transferred to Hofmeister Senior's son, Scott R. Hofmeister ("<u>Scott Hofmeister</u>"), for a Harvard Business School tuition payment (the "<u>Harvard Transfer</u>") on June 29, 2011.  The Harvard Transfer was made via wire transfer from the Spara Bank Account.  A copy of the wire confirmation and related correspondence for the Harvard Transfer is attached as EXHIBIT III to this Report.

There is no evidence indicating (i) that Spara was repaid for the Harvard Transfer, (ii) that Spara received any promissory notes, written agreements, or verbal repayment promises in exchange for the Harvard Transfer, (iii) that Spara owed any debt to any recipient or beneficiary of the

Harvard Transfer at the time of the Harvard Transfer, (iv) that Scott Hofmeister provided any services or anything else of value to Spara in exchange for the Harvard Transfer, or (v) that Spara otherwise had any obligation to make the Harvard Transfer or received any value in exchange for the Harvard Transfer.  In fact, the information available indicates that Scott Hofmeister was a student at Harvard Business School, and that the Harvard Transfer was made to pay his tuition.

Based on the foregoing, it is my opinion that (i) the Harvard Transfer was made to Scott Hofmeister on June 29, 2011, (ii) Spara did not receive reasonably equivalent value in exchange for the Harvard Transfer, and (iii) as discussed in the Insolvency Section of this Report, Spara was insolvent at the time of the Harvard Transfer. The Trustee is entitled to recover the principal amount of the Harvard Transfer plus prejudgment interest at the federal judgment rate from the date of the Harvard Transfer.

## Predicate Creditors

As discussed in the *Acquisitions – Lexington Logistics, LLC* section of this Report, BFG loaned Spara $6 million on June 20, 2011.  Spara remained indebted to BFG on this loan as of the December 3, 2012 petition date.

On June 10, 2011, Spara entered into a real property lease with Gratiot for an industrial facility known as 31271, 31281, 31291 Comcast Drive in New Haven, Michigan.  Obligations under the lease remained unpaid as of the petition date, and Gratiot filed Claim No. 527 against the Debtor.

APPENDIX A
Page 1 of 3

# James M. Lukenda, CIRA, CFF

## MANAGING DIRECTOR

Jim provides assistance to clients with troubled debt restructurings, mergers, acquisitions and dispositions, litigation and claims analysis, fraud investigations, and other financial consulting and bankruptcy assignments.

His experience spans numerous industries including heavy manufacturing, retailing, electronics, consumer products and distribution, construction and contracting, communications and publishing, real estate, and hospitality.



P 646-277-2207
F 508-445-0256
jlukenda@huronconsultinggroup.com

Jim's extensive experience includes:

**Financial Forensics**
- Analysis of a multimillion dollar construction contract and lost profits claim from a troubled state highway contract;
- Financial records disentanglement assignment to locate misappropriated funds;
- Analysis of inventory procedures and record keeping to explain product shortages and operating losses;
- Investigation of trading pattern velocity and investment portfolio mismanagement of a not-for-profit institution.

**Bankruptcy & Restructuring**
- Expert testimony on issues of business plans, liquidations, avoidance actions, substantive consolidation, and other reorganization and bankruptcy issues;
- Development and evaluation of strategic business plans on behalf of debtors and creditors including the evaluation of customer and product profitability, store and plant profitability, overhead structure, and industry viability;
- Analysis for providing expert testimony on business performance, lost profits, and claims for damages;
- Preparation of valuation reports including enterprise value and liquidation analyses;
- Negotiation and evaluation of out-of-court debt restructuring proposals;
- Implementation of "fresh start" accounting

**Representative engagements**
- American Community Newspapers – Secured Lenders
- Revstone Industries – DCRO
- Nortel Networks Inc. – Debtors
- Sherwin Alumina Company – Debtors
- Olympia & York – Committee of Tower B Bondholders
- Petrie Retail, Inc. – Equity Investors and DIP Lender
- Robert Maxwell Group – Joint Administrators
- WP Steel Ventures – Official Committee of Unsecured Creditors

**Education and certifications**
- BSBA, cum laude, Georgetown University School of Business Administration
- Certified Public Accountant (New Jersey and New York)
- Certified Insolvency and Restructuring Advisor
- Certified in Financial Forensics
- Instructor, AIRA coursework, Certified Insolvency and Restructuring Advisor and Certification in Distressed Business Valuation

**Professional associations**
- Association of Insolvency & Restructuring Advisors, Board of Directors (1992 to present), President (2002 to 2003), Chairman (2004 to 2005)
- INSOL International, Board of Directors (1999 to 2003)
- Association for Corporate Growth, New Jersey Chapter, Treasurer
- American Bankruptcy Institute, Member

© 2016 Huron Consulting Group. All rights reserved.
Proprietary & Confidential.
JMI HBA_CV_P 04.16

**Huron** Business Advisory

# James M. Lukenda, CIRA, CFF

## EXPERT TESTIMONY AND DEPOSITIONS

Matters of Accounting, Financial Analysis, Operations and Business Viability, and Solvency

### Testimony

In re Sherwin Alumina Company, LLC, et al. U.S. Bankruptcy Court, Southern District of Texas 16-20012 (DRJ), January 13, 2016

In re The Great Atlantic & Pacific Tea Company, Inc., et al. U.S. Bankruptcy Court, Southern District of New York No. 10-24549 (RDD) February 6, 2012

In the Matter of the Arbitration Between Airline Pilots Association, and United Airlines, Inc. Board No. 2008-06 June 4, 2008

In re Pocket Communications, Inc. and DCR PCS, Inc. Adversary Proceeding No. 98-6223-ESD. U.S. Bankruptcy Court, District of Maryland No. 97-4105-ESD May 4, 2000

In re PPI Enterprises (U.S.), Inc., & Polly Peck Produce, Inc. U.S. Bankruptcy Court, District of Delaware, 96-539 (PJW) November 18, 1998

David W. Allard, Jr., Trustee of De Lorean Motor Company, Plaintiff, vs. Arthur Andersen & Co., et al. Supreme Court of the State of New York County of New York – Civil Term – Part: 11, March 3, 1998

In re Who's Who Worldwide Registry, Inc. U.S. Bankruptcy Court, Eastern District of New York 894-81496-478 October 12, 1994

### Testimony, continued

In re Maurice Bidermann U.S. Bankruptcy Court, Southern District of New York 93 B 43525 (JLG) June 22, 1994

In re Estate of Bessie Setzer Frisch Circuit Court, Fourth Judicial Circuit In and for Duval County, Florida May/June 1993

In re Capital Resources Corporation U.S. Bankruptcy Court, District of New Jersey 89-20620 March 20, 1990; December 18, 1990

### Depositions

In re Energy Conversion Devices, Inc., et al., U.S. Bankruptcy Court, Eastern District of Michigan, Southern Division, Adv. Proc. No. 13-04958 (TJT), October 20, 2014

In re Revstone Industries, LLC, et al., U.S. Bankruptcy Court, District of Delaware, No. 12-13262 (BLS) September 12, 2013

In re Global Crossing Ltd., et al. U.S. Bankruptcy Court, Southern District of New York No. 02-40188 (REG) November 20, 2002

In re Pocket Communications, Inc. and DCR PCS, Inc. Adversary Proceeding No. 98-6223-ESD. U.S. Bankruptcy Court, District of Maryland No. 97-4105-ESD March 15, 2000

### Depositions, continued

In re PPI Enterprises (U.S.), Inc., & Polly Peck Produce, Inc. U.S. Bankruptcy Court District of Delaware 96-539 (PJW) May 15, 1998

In re Lomas Financial Corporation, et al. Lomas Financial Corporation, et al. vs. CDC Servicing, Inc. vs. Nomas Corporation U.S. Bankruptcy Court, District of Delaware 95-1235 (PJW) September 11, 1997

McDevitt Machinery, Inc., Plaintiff vs. Kobelco America Inc., et al., Defendants United States District Court for the District of New Hampshire C.A. No. C-94-537-JRM February 11, 1997

In re Buckhead America Corp., et al. Buckhead America Corporation vs.Reliance Capital Group, Inc. et al. U.S. Bankruptcy Court, District of Delaware C.A. No. 93-392-SLR June 19 and 22, 1995

In re Estate of Bessie Setzer Frisch Circuit Court, Fourth Judicial Circuit In and for Duval County, Florida May/June 1993

In re Advanced Mining Systems, Inc., et al. U.S. Bankruptcy Court, Southern District of New York 92 B 43471 (CB) January 13, 1993

© 2016 Huron Consulting Group. All rights reserved.
Proprietary & Confidential.
JMI HBA_CV_P 04 16



APPENDIX A
Page 3 of 3

# James M. Lukenda, CIRA, CFF

## PUBLICATIONS AND SPEAKING ENGAGEMENTS

### Publications

"Pension Plan Minefields for Distressed Auto Cos." with L. Marcero, Law360, July 31, 2014

"Liquidation Basis of Accounting: FASB Proposes Guidance for a Topic for Which Little Has Been Written" AIRA Journal, Volume 26, Number 3, 2012

"Accounting for Liabilities Subject to Compromise when a Debtor is Discontinuing an Operation," AIRA Journal, Volume 23, Number 5, December 2009/January 2010

"International Financial Reporting Standards: Hello Accounting Convergence, Goodbye GAAP?," American Bankruptcy Institute Journal, Volume XXVIII, No. 3, April 2009

2005 Bankruptcy Revisions, Implications for Businesses and Financial Advisors, Edited by Grant W. Newton, AIRA/AICPA, Contributing Author.

"Fair Value Measurement: Proposed FASB Standard to Bring Greater Consistency to Financial Reporting," American Bankruptcy Institute Journal, Volume XXIV, No. 8, October 2005

Statement of Financial Accounting Standards No. 150, American Bankruptcy Institute Journal, Volume XXII, No. 8, October 2003

"Underfunded Pension Plans: A Looming Crisis for Corporate America?," American Bankruptcy Institute Journal, Volume XXII, No. 1, February 2003

"New Rules for Business Combinations, Intangibles and Goodwill Accounting," American Bankruptcy Institute Journal, December/January 2002

"New Accounting Standards for Distinguishing Between Liabilities and Equity May Be Close at Hand," American Bankruptcy Institute Journal, Volume XIX, No. 8, October 2000

### Recent Speaking Engagements

"Asset Sales/Labor & Employment" American Bankruptcy Institute, 34th Annual Spring Conference, April 16, 2106

Recent Developments in Distressed Debt, Restructurings & Workouts 2016 Webinar, Practising Law Institute, January 2016

"Liquidating Trusts" VALCON 2015, Emerging Valuation Issues in Bankruptcy and Beyond, February 25, 2015

"Presenting Experts in Bankruptcy Litigation" American Bankruptcy Institute, Northeast 21st Annual Bankruptcy Conference, July 18-19, 2014

"Revenue and Cash Flow Forecasting" American Bankruptcy Institute, VALCON 2014, February 26, 2014

Recent Developments in Distressed Debt, Restructurings & Workouts 2014 Webinar, Practising Law Institute, January 2014

"Law Firm Bankruptcies" American Bankruptcy Institute New York City Bankruptcy Conference, May 16, 2013

Bankruptcy Litigation Roundtable, Institutional Investor Educational Foundation, March 14, 2012

Previous speaking engagements include:

Association of Insolvency and Restructuring Advisors
The Bank Lending and Law Institutes
The Beard Group Distressed Investing Conference
Financial Management Association – New York City
Foundation for Accounting Education
The George Washington University National Law Center Government Contracts Program
New Jersey State Society of CPAs

© 2016 Huron Consulting Group. All rights reserved.
Proprietary & Confidential.
JMI HBA_CV_P 04 16

HuronBusinessAdvisory

**APPENDIX B**
**Spara, LLC**
**List of Adversary Proceedings**

1.     Caruso v. Scott R. Hofmeister, et al., Adv. No. 14-50984 (BLS) (Bankr. D. Del.)

2.     Caruso v. Homer W. McClarty, et al., Adv. No. 14-50986 (BLS) (Bankr. D. Del.)

APPENDIX C
Spara, LLC
Documents and Other Information Relevant to Expert's Analysis and Conclusions

1. Debtor's shared database of electronically stored information, including emails
2. 2010 and 2011 internal financials for Spara and Spara subsidiaries
3. 2010 Consolidated Financial Statements with Supplementary Information, T Cast Holdings, LLC and Subsidiary
4. Lexington Logistics, LLC  Financial Statements and Independent Auditors' Report for the Period From June 24, 2011 (Date of inception) Through December 31, 2011  (draft form)
5. Tax related documents from Debtor's shared database of electronically stored information
6. Pension Plan documents: 2007-2011 Form 5500 filings; 2011 Determination Letter; 2006 IRS Review; 2009-2012 Schedule of Assets
7. Fifth Third Bank Account: wire transfer confirmations, internal wire log
8. Transactional records for Spara and its subsidiaries, including purchase and sale agreements
9. Spara and its operating subsidiaries' credit agreements, promissory notes, and guarantees
10. Organizational records of Spara and its subsidiaries
11. Organizational records of Hofmeister's related entities
12. Organizational records of the Children's Trusts and their related entities
13. Organizational records of the Family Trust and its related entities
14. Documents produced and/or filed by Spara or the Trustee in the Adversary Proceedings and related proceedings
15. Documents produced and/or filed by the Defendants in the Adversary Proceedings and the defendants in related proceedings
16. Documents filed by Spara or other parties in Spara and TPOP's Chapter 11 cases
17. Documents produced by Mellen, Smith & Pivoz, PLC
18. Spara's creditor files and proofs of claim.
19. Accounting for Business Combinations (ASC 805)

EXHIBIT I

Spara, LLC
Organizational Chart
As of June 30, 2011



**Exhibit II**

**Spara, LLC**
**Liquidity Communications Examples**

| Date | From | To | Subject Entity | Subject |
|------|------|----|----------------|---------|
| 2/1/2011 | D. Lindlbauer | M. Putz, M. Bourdage | Power Tec | Medical Insurance |
| 4/7/2011 | C. Saurini | D. Smith, T. Herzinger, J. Stipp | Power Tec | Corporate AP 04-06-11 |
| 5/30/2011 | D. Smith | A. Smith, B. Smith, D. Lifton, J. O'Toole, J. Brown, M. Mitchell, M. Carr | Power Tec, Valley | Cash Forecasts |
| 5/30/2011 | M. Putz | J. O'Toole, D. Smith, R. LaCourciere | Power Tec, Valley | Cash Forecasts |
| 6/2/2011 | J. Ackley | G. Hofmeister, D. Smith, J. O'Toole, G. Wheeler | Spara | Boston Finance Meeting |
| 7/1/2011 | H. Harvey | G. Hofmeister | Valley | Valley Funding |
| 7/18/2011 | M. Bourdage | M. Putz | Power Tec | PowerTec Consumers |

**From:**          Putz, Mike <mputz@mpi-int.com>
**Sent:**          Tuesday, February 01, 2011 9:39 PM
**To:**            Dave Lindlbauer
**Subject:**       RE: Medical Insurance

**Importance:**    Low

From: Dave Lindlbauer [mailto:dlindlbauer@saleen.com]
Sent: Tue 2/1/2011 3:41 PM
To: Putz, Mike; 'Bourdage, Michelle'
Subject: FW: Medical Insurance

FYI- we have employees getting coverage declined.

DL

From: tbach@power-tec.com [mailto:tbach@power-tec.com]
Sent: Tuesday, February 01, 2011 3:06 PM
To: dlindlbauer@power-tec.com
Subject: Fw: Medical Insurance

Do we have any updates?

Sent from my Verizon Wireless BlackBerry

From: "Mark Terryberry" <mterryberry@power-tec.com>

Date: Tue, 1 Feb 2011 15:01:16 -0500

To: 'Theresa Bach'<tbach@power-tec.com>

Subject: Medical Insurance

Hi Theresa -

1

We are having a problem with filling prescriptions right now, with Kroger and Walgreens in Dundee. They are saying that the group number is no longer valid. Can you double check on this?


Thanks! Have a fun snow-day!


- Mark


Mark Terryberry

Prototype Manufacturing Manager

Power-Tec Engineering

5550 S. Occidental Rd.

Tecumseh, MI  49286


Direct Line:   (517) 424-6785

Cell Phone:   (734) 718-4536

Email:        mterryberry@power-tec.com

Web:         www.power-tec.com <http://www.power-tec.com/>


The information transmitted is intended only for the person or entity to which it is addressed and may contain privileged and/or confidential material.  If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify me immediately by replying to this message and deleting it and all copies and backups thereof.  Thank you.

**From:**        Janice Stipp <jstipp@revstone.com>
**Sent:**        Thursday, April 07, 2011 2:49 PM
**To:**          Christine Saurini; Dan Smith
**Cc:**          Terry Herzinger
**Subject:**     RE: Corporate AP 04-06-11.xlsx
**Attachments:** image001.png

**Importance:**  Low


All,

I am not a**ware of any equi**pment sale at power Tec – we do not have it in the **CIM**

**Please advise**

**JANICE STIPP  | CFO**

**REVSTONE INDUSTRIES, LLC**
21177 Hilltop St.
Southfield, MI 48033
Email Jstipp@Revstone.com
Phone 248.351.1111
Mobile 248.346.4277
Fax 248.351.1005
www.revstone.com



Note: To view our e-mail disclaimer please click here.

**From:** Christine Saurini [mailto:csaurini@revstone.com]
**Sent:** Thursday, April 07, 2011 9:58 AM
**To:** Dan Smith
**Cc:** Terry Herzinger; Janice Stipp
**Subject:** RE: Corporate AP 04-06-11.xlsx

Dan,

Per our conversation this morning, please find attached the plan for payments.  I did speak with Terry & you were right I had overlooked the Fairfield rent.  That helps cover the AT&T Data line shut off notice.  Please keep us aware of the progress on the sale of equipment at Power Tec as I have removed the interest payment to GSL / Loeb due the 15th as I am expecting you will have that covered with this sale.  We will also need to inform Mike Putz as I'm sure he had it in his forecast to cover something.

This is really the bare bones & most items not paid will become hot issues in the very near future.  Please have James start working on recovering the deposit with Prestige of $100k as that will help tremendously.

I will work with Glenn on a mgmt. fee agreement for Mexico so we can start to have them pay the monthly fees.

Let us know how the conversation is with George about a moratorium on travel for everyone including him.  Also, please let him know that we cannot afford to pay the AMEX bill at this time.

1

Rent is not being paid for either Hilltop or Lexington.

None of the legal bills are on the list for payment.

Intralinks is not being paid which could jeopardize access to the data room at some point.

Also, as discussed you were instructed by George & found $25k to send to Don Lifton for the Town Center Rent (current through April) and the October rent for the Revstone Town Center portion. Please let us know how the money entered the company so we can account for this properly.

I believe this covers our discussions. We'll keep you informed as best possible to try to avoid any "surprises".

Terry – I will come see you so we can review what is to be paid. If anything else comes out of the woodwork today I don't see how we can manage it.

Kind regards,

**CHRISTINE SAURINI, CTP | Director of Treasury**

**REVSTONE INDUSTRIES, LLC**
21177 Hilltop St.
Southfield, MI 48033
OFFICE 248.351.1121    MOBILE 248.971.4506

www.revstone.com



Note: To view our e-mail disclaimer please click here.

--------------------------------------------------------------------

**From:** Christine Saurini [mailto:csaurini@revstone.com]
**Sent:** Wednesday, April 06, 2011 7:44 PM
**To:** Dan Smith
**Cc:** Terry Herzinger; Janice Stipp
**Subject:** Corporate AP 04-06-11.xlsx
**Importance:** High

Dan - Can we discuss tomorrow? I need you to look for some money if possible. We can collectively make a decision about what not to pay so you can be the voice in Lexington that explains to the group how dire things are. What time works for you?

Note: To view our e-mail disclaimer please click here.

| | |
|---|---|
| **From:** | Dan Smith <dsmith@revstone.com> |
| **Sent:** | Monday, May 30, 2011 11:49 PM |
| **To:** | Alex Smith; Bob Smith; Don Lifton; James OToole; Jay Brown; Mark Mitchell; Mike Putz; Mikk Carr |
| **Subject:** | Fwd: Cash Forecasts |
| **Importance:** | Low |

All,

One of the first items to address is finding cash to help out Powertec and Valley.

Dan

**DANIEL V. SMITH, ESQ.  |  General Counsel**

**REVSTONE INDUSTRIES, LLC**
2250 Thunderstick Drive Suite 1203
Lexington KY 40505
OFFICE 859.568.1760    FAX 859.294.9568
www.revstone.com

Note: To view our e-mail disclaimer please click here.


---------- Forwarded message ----------
From: **Mike Putz** <mputz@revstone.com>
Date: Mon, May 30, 2011 at 6:54 PM
Subject: Cash Forecasts
To: James O'Toole <jotoole@revstone.com>
Cc: Dan Smith <dsmith@revstone.com>, Robert LaCourciere <rlacourciere@revstone.com>

James,

Based on next week's forecast for Valley & Power-Tec there will be significant deficits.  Tat means PT will not be able to pay Clark-Hill, Boston, and still cannot cover payroll and the Consumers security deposit.  Valley will not be able to make the $215k pmt to Express.  However, if Prestige comes through, we can use the funds for both companies.

Mike

--
Michael D. Putz, CPA
Chief Financial Officer
Revstone Aftermarket
Revstone Power-Tec

1

Note: To view our e-mail disclaimer please click here.

| From: | George Hofmeister <ghofmeister@revstone.com> |
|-------|----------------------------------------------|
| Sent: | Saturday, June 04, 2011 9:55 AM |
| To: | nclemmens@amwestentertainment.com |
| Subject: | Fwd: Boston Finance Meeting |
| Importance: | Low |

Nelson: Not sure why they went down their without including/notifying you. Some times we do dumb stuff. I am home. Call when you can. george

---------- Forwarded message ----------
From: **Jan Ackley** <jackley@revstone.com>
Date: Thu, Jun 2, 2011 at 9:32 PM
Subject: Boston Finance Meeting
To: George Hofmeister <ghofmeister@revstone.com>
Cc: Dan Smith <dsmith@revstone.com>, James OToole <jotoole@revstone.com>, George Wheeler <gwheeler@revstone.com>

GH

James and I spent the afternoon and evening meeting with Boston Finance in Tampa. James and I double teamed the meeting which I thought went very well. Actually, my expectations of how the meeting was going to go turned out to be wrong. They (Boston) like us and want to do more business with us. They liked the TriEnda transaction quite a bit as well.

The issue they have right now is liquidity. Regarding the TriEnda funding request, they will let us know Monday or Tuesday what they can do. I see five scenarios:

1. They provide the full $6,000,000 request
2. They provide staged funding such as $2,000,000 in separate tranches over a few months time
3. They provide partial funding from Boston and bring in a partner for the rest
4. They find a partner to do the entire funding
5. They can't do anything for us right now.

Beginning this evening they are to meet and try and get us the funding we need. Listening to their language it doesn't appear they have the liquidity to do the full funding. Hopefully they come up with a plan to find a way to help us in some way.

However, for the TriEnda deal to work, we must get up and running pallets as soon as possible. The plan calls for 90 days to get set up with day 91 in production. This is an aggressive schedule and for it to be met we must have funding on day one. Any delay will cause the cash bleed to continue, something we can't have happen.

Overall, James did a wonderful job and hopefully I added something to the meeting to as well. The Boston guys are good people to work with.

--
Jan Allen Ackley
Chief Financial Officer
Spara Group
2250 Thunderstick Drive

1

Lexington, Ky 40505
jackley@revstone.com
513-445-4502 office
513-383-9591 mobile


Note: To view our e-mail disclaimer please click here.


--
George

**From:**      Hank Harvey <HHarvey@TechcastLLC.com>
**Sent:**      Friday, July 01, 2011 3:27 PM
**To:**        George Hofmeister
**Subject:**   FW: Valley Funding

**Importance:**      Low

George
As promised
The information in this email is where the last injection of money went when we funded Valley Towing. AS you read you can see that $823,000 went for everything except for product to make and  ship hitches. The funding of $750,000 that you and I talked about will be used for raw mtl; to make and ship hitches. I sending you a separate e-mail showing the time line of cash flow from that funding.

**From:** Mike Putz [mailto:mputz@revstone.com]
**Sent:** Thursday, June 30, 2011 11:01 AM
**To:** Hank Harvey
**Cc:** Robert LaCourciere
**Subject:** Valley Funding

Hank,

Per our conversation, the following is a partial list of the sources and uses of outside funds received by Valley since May 1, 2011.

Sources:

Spara - $50k
Prestige - $400k
Eptec - $550k

Total - $1.0M

Uses:

USTC - Freight - $200k
Nossaman - Express Employment Lawsuit - $200k
Thule - Rent for Lodi Mfg - $136k
Thule - JCI lawsuit - $47k
Accountabilities - delay lawsuite - $5k
Boston Finance - Power-Tec Debt - $46k
Eptec - past due - $60k
PCG Campbell - Saleen Internet Access- $39k
Power-Tec - Payroll - $90k

Total - $823k

Again, this list is not comprehensive of all non-operating expenses, but it clearly shows how little of the additional funding was allocated to the production of hitches.  If you need additional information, please let me know.

1

Mike

--
Michael D. Putz, CPA
Chief Financial Officer
Revstone Aftermarket
Revstone Power-Tec


Note: To view our e-mail disclaimer please click here.

| | |
|---|---|
| **From:** | Bourdage, Michelle <Michelle.Bourdage@vtowing.com> |
| **Sent:** | Monday, July 18, 2011 9:13 PM |
| **To:** | Mike Putz |
| **Subject:** | Power Tec Consumers |

**Importance:**    Low

Mike,

So we are in a jam with Consumers Power.  We were forced to pay $86k today or they shut the electricity off tomorrow.  Then we are forced to pay $79k on Wednesday for gas or they shut the gas off.  Further, once the $86k is paid we will go back in a cycle and have to pay $85k within 10 days or they shut us off.  What do I do now?  I have attached the cash sheet, but as you can see, there is not miracle that is going to happen between before the end of the week that will allow me to handle this burden.  I know this is not your problem, but do you have any suggestions on how to work through this?  I did have Trina call Duratec and they have an $18k check ready for us, but they are not convinced that they want to send it directly to us.

S.O.S.,

**MICHELLE M BOURDAGE |  Controller**

**REVSTONE INDUSTRIES, LLC**
Aftermarket Group
Valley Towing Products - Saleen Perfomance Vehicles
**2129 Austin Drive**
**Rochester Hills, MI 48309**
**PHONE 248.641.4269**
**FAX 248.853.1445**
**MOBILE 248.217.3932**
**Email: michelle.bourdage@vtowing.com**
    **www.revstone.com**

1

# EXHIBIT III

page 1 of 2

```
RCVD FROM SPARA LLC                     2250 THUNDERSTICK DRIVE
SENDER'S DDA # 7381005722

TRN REF #: 20110629-00001495
--------------------------------------------------------------------------------
  **** MESSAGE ENVELOPE ****              ( BANK : FTB )

SND DATE: 11/06/29
SRC:FFI CALLER:                              EXT:

RPT#        AMT:70,000.00           CUR:USD                  TRDR#
TEST: DUE:                          TYP:FTR/1000 FNDS:S CHG:DB:N CD:N COM:N CBL:N
--------------------------------------------------------------------------------
DBT D/7381005722/                   CDT *A/042100146                ADV:FED
DEBIT VAL: 11/06/29                 CREDIT VAL: 11/06/29
SPARA LLC                           CENTRAL BANK AND TRUST COMPANY
2250 THUNDERSTICK DRIVE             LEXINGTON, KY
LEXINGTON KY  40505
SNDR REF NUM:         864844        BNF:/042100146              CHG:O BK?N
ORIG:/                              SCOTT HOFMEISTER
'''

ORIG TO BNF INFO:
HARVARD TUITION PAYMENT
```

EXHIBIT III

page 2 of 2

| | |
|---|---|
| **From:** | George Hofmeister <ghofmeister@revstone.com> |
| **Subject:** | Fwd: Spring Tuition |
| **Date:** | November 15, 2011 2:30:45 PM EST |
| **To:** | asmith@revstone.com |

Alex: We need $50k to Scott in next couple weeks.   george

---------- Forwarded message ----------
From: **Hofmeister, Scott** <shofmeister@mba2013.hbs.edu>
Date: Mon, Nov 14, 2011 at 5:41 PM
Subject: Spring Tuition
To: "ghofmeister@revstone.com" <ghofmeister@revstone.com>

Babson Tuition Dues: $27,248

HBS Tuition Dues:

| DATE | TERM | DESCRIPTION | CHARGES | CREDITS |
|---|---|---|---|---|
| ----------- NEW ITEMS ----------- | | | | |
| 10/17/2011 | 12S | Tuition - HBS 1st Year | $25,600.00 | |
| 10/18/2011 | 12S | HUSHP Student Health Ins Plan | $917.00 | |
| 10/18/2011 | 12S | HUSHP Student Health Fee- Grad | $593.00 | |
| 10/17/2011 | 12S | Program Support Fee - Year 1 | $3,195.00 | |
| 10/17/2011 | 12S | Student Assoc. Dues - HBS | $51.00 | |
| 10/17/2011 | 12S | Shad Hall - HBS | $160.00 | |

AMOUNT DUE:      $30,516.00

Remaining from June funding:

$70,000
(29,516)
(27,248)
(2,251)
=$10,985

Due: 30,516 + 27,248 - 10,985 = $46,779

Scott Hofmeister
HARVARD | BUSINESS | SCHOOL
MBA Class of 2013
cell: (859)576-7261

# EXHIBIT G

1              IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE DISTRICT OF DELAWARE
2

     In Re:
3    REVSTONE INDUSTRIES, LLC, et al.,
          Reorganized Debtors.
4    _____        Chapter 11
                                             Case No. 12-13262 BLS
5    FRED C. CARUSO, solely in his           Jointly Administered
     capacity as the Revstone/Spara
6    Litigation Trustee for the
     Revstone/Spara Litigation Trust,
7              Plaintiff,
     v.                                      Adv. No. 14-50984 BLS
8    SCOTT R. HOFMEISTER, et al.,
               Defendant.
9    _____/

10   and

11             IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE DISTRICT OF DELAWARE
12

     In Re:
13   REVSTONE INDUSTRIES, LLC, et al.,
          Reorganized Debtors.
14   _____        Chapter 11
                                             Case No. 12-13262 BLS
15   FRED C. CARUSO, solely in his           Jointly Administered
     capacity as the Revstone/Spara
16   Litigation Trustee for the
     Revstone/Spara Litigation Trust,
17             Plaintiff,
     v.                                      Adv. No. 14-50977 BLS
18   SCOTT R. HOFMEISTER, et al.,
               Defendant.
19   _____/

20

21             DEPOSITION OF SCOTT HOFMEISTER

22          Troy, Michigan | December 15, 2016

23

24   Reported by: Anne Vosburgh, CSR, RPR, CRR

25   Job No: 116554

1                SCOTT HOFMEISTER

2    contract presently.

3        Q    How much is it under contract for?

4        A    900,000.

5        Q    When is that contract expected to

6    close?

7        A    Expected close is January 15th,

8    2017.

9        Q    There are no liens listed in

10   connection with Bourbon Street 2, LLC, and

11   its single asset.

12             Are there any liens?

13       A    Not that I'm aware of.

14       Q    No mortgages?

15       A    No mortgages.

16       Q    Have you ever worked for

17   Spara LLC?

18       A    Can you be more specific about

19   "worked"?

20       Q    Have you ever been employed by

21   Spara, LLC.

22       A    As in, on my paycheck, did it say

23   Spara, LLC?

24       Q    We'll start with that.

25       A    Not that I recall.  I don't

1              SCOTT HOFMEISTER

2   remember specifically.

3        Q    Let's get to a little broader

4   definition of "worked for Spara."

5             Have you ever held any titles at

6   Spara, LLC, like president or vice president

7   or CFO?

8        A    Not that I recall.

9        Q    Have you ever performed any

10  services for Spara, LLC?

11       A    I believe so.

12       Q    What services did you perform for

13  Spara, LLC?

14       A    Similar services that I provided

15  to Revstone.

16       Q    What were those services?

17       A    Those services were mergers and

18  acquisitions, due diligence, operations

19  improvement.

20       Q    What is Spara, LLC?

21       A    I presume it's a corporate entity.

22       Q    Is it an operating company?

23       A    I believe it has or had assets

24  that are operating entities.

25       Q    What are or were Spara, LLC's,

                    SCOTT HOFMEISTER

1

2  operating entities?

3       A    I don't want to misspeak because I

4  don't recall specifically which companies

5  were in Spara versus Revstone versus who

6  knows what other legal structures.

7            But I believe Techcast was a Spara

8  company.  And I believe -- actually, I don't

9  know that Techcast was Spara.

10      Q    Besides T-Cast, are you aware of

11 any other companies that were Spara, LLC,

12 operating companies?

13      A    I'm aware of other operating

14 companies.  I don't know if they fell under

15 the Spara, LLC, legal entity.

16      Q    What M&A services did you provide

17 to T-Cast?

18      A    M&A services to TechCast.

19            In general, the mergers and

20 acquisitions sourcing were deal-sourcing,

21 identifying potential bolt-on acquisitions,

22 other companies that fit with the business

23 model.  It would promote vertical or

24 horizontal integration.

25      Q    Tell me specifically what M&A

1              SCOTT HOFMEISTER

2   services did you provide to T-Cast.

3           I understand, in general, what M&A

4   services are.  Tell me what you did for

5   T-Cast.  What transactions?

6       A    It's hard for me to say

7   specifically which parts of the M&A

8   activities were specifically allocated to one

9   of many operating companies.

10      Q    Can you tell me any M&A activity

11  you did specifically for T-Cast?

12      A    Not that I remember.

13      Q    What M&A activity did you do for

14  any other Spara, LLC, entity?

15      A    Again, it would be harder for me

16  to say specifically because I don't recall

17  which companies were within the legal

18  structure of Spara, LLC.

19      Q    So as you sit here today, it would

20  be fair to say you're not sure whether you

21  did any M&A activity for a Spara entity

22  because you can't remember, other than

23  T-Cast, what Spara had owned?

24          MR. TOLL:  Object as to form.  You

25      may answer.

1                   SCOTT HOFMEISTER

2                   THE WITNESS:  I don't think that's

3       fair to say.

4   BY MR. KORNFELD:

5       Q    Why not?

6       A    Because I'm aware that there are

7   companies that were in Spara, similar to

8   Revstone.  And I recall doing these

9   activities I explained before, just -- I just

10  don't recall which companies were in which

11  legal entity.

12      Q    Well, tell me which companies you

13  did M&A activities for.

14                  T-Cast, you couldn't remember what

15  you did, correct?

16      A    Correct.

17      Q    You don't remember whether you did

18  M&A activities for T-Cast, correct?

19      A    I recall doing M&A activities.

20      Q    For T-Cast?

21      A    I don't recall specifically if

22  they were for TechCast.

23      Q    So it's fair to say you don't

24  recall whether you did any M&A activities for

25  TechCast, correct?

1                SCOTT HOFMEISTER
2        A     Correct.
3        Q     Who did you do M&A activities for,
4    which entities?
5              MR. TOLL:  I'm going to object to
6        form.  You may answer.
7              THE WITNESS:  Specifically for
8        Revstone?
9    BY MR. KORNFELD:
10       Q     Revstone Industries.
11       A     I'm afraid my knowledge of the
12   legal entities and the different LLCs is
13   probably not as good as yours.
14       Q     Don't say that.  You're being too
15   kind and assuming too much.
16             So you did M&A activities for
17   Revstone.  Who else did you do M&A activities
18   for?
19       A     For all of our operating entities.
20       Q     Let's get names, because you know
21   I'm going to ask you after I ask you for the
22   names -- I'll put my cards on the table.  I'm
23   going to ask you what you did for each of the
24   entities.
25             Let's get the name of the entities

1                    SCOTT HOFMEISTER

2              So my M&A activities, in general,

3     could benefit our general holdings, some

4     included in Spara, some in other entities.

5     BY MR. KORNFELD:

6         Q    Besides TechCast, which of the

7     holdings were with Spara?

8         A    I do not remember.

9         Q    Which transactions do you believe

10    benefited Spara that you worked on?

11              What specific transactions

12    benefited Spara?

13        A    How do you define "benefit"?

14        Q    Do you know what the word

15    "benefit" means?

16        A    I know what the -- I believe so.

17        Q    What's your definition?

18        A    Provided value to.

19        Q    That's my definition too.

20              What specific transactions

21    provided value to Spara that you were

22    involved in?

23        A    I would say the purchase of an

24    Edscha die casting plant in Chihuahua and the

25    purchase of a stamping company in Matamoros

1                SCOTT HOFMEISTER

2  are the two specifics that jump immediately

3  to mind.

4       Q    What was your purpose in the role

5  of the die casting plant in Chihuahua?

6            And it's Chihuahua Mexico, of

7  course?

8       A    Yes.

9            I provided general advisory

10 services.

11      Q    Was there an investment manager

12 involved in the purchase of the die casting

13 plant in Chihuahua?

14      A    There may have been.

15      Q    Who was that investment banker?

16      A    I don't recall.

17      Q    Was that investment banker paid a

18 fee?

19      A    I don't know.

20      Q    Was there a realtor involved in

21 the purchase of the die casting plant in

22 Chihuahua?

23      A    Not to my knowledge.

24      Q    When was the die casting plant in

25 Chihuahua purchased?

1              SCOTT HOFMEISTER

2        A     Sometime between 2009 and 2011.

3        Q     What was your position at the

4   Revstone family companies in the period 2009

5   to 2011.

6        A     I provided general mergers and

7   acquisition services, operations services,

8   due diligence services, financial services.

9        Q     In connection with the purchase of

10  the die casting plant in Chihuahua, did

11  Revstone have a lawyer?

12       A     Yes.

13       Q     Did it have a lawyer in Mexico?

14       A     Yes.

15       Q     Did it have lawyers in the

16  United States?

17       A     I assume so.

18       Q     Who were the lawyers in Mexico?

19       A     The lawyer in Mexico was, I

20  believe, Roberto Fernandez.

21       Q     Who was the lawyer in the

22  United States?

23       A     I assume we used our general

24  counsel's office, and perhaps they outsourced

25  to somebody else.  I don't know.

1            SCOTT HOFMEISTER

2       Q     Did you have any role in the due

3  diligence in connection with Revstone's

4  purchase of the die casting plant in

5  Chihuahua?

6       A     Briefly.

7       Q     What was your role?

8       A     I was involved in several

9  conversations about the purchase with our

10 team and with the external team, the selling

11 team.

12      Q     Which conversations?  In person

13 conversations or phone conversations?

14      A     With my team, in person.  And then

15 I had phone conversations with the external

16 teams.

17      Q     Who was on your team?

18      A     I don't recall specifically.

19      Q     Do you recall anybody on your

20 team?

21      A     It could have been any number of

22 people in our office in Lexington.

23      Q     Do you recall a single person who

24 was on your team in connection with the

25 purchase of the die casting plant at

1                SCOTT HOFMEISTER

2    Chihuahua?

3         A    I assume Dan had to have been

4    involved.

5         Q    That would be Dan Smith?

6         A    Correct.

7         Q    Anybody else?

8         A    Not specifically.

9         Q    How much did Revstone pay for that

10   die casting plant?

11        A    I don't recall specifically.

12        Q    Do you recall approximately?

13        A    Approximately less than

14   $5 million.

15        Q    Who brought the die casting plant

16   opportunity to Revstone's attention?

17        A    I don't know.

18        Q    It wasn't you, was it?

19        A    No.

20        Q    Did you get to fly down to

21   Chihuahua before Revstone purchased that die

22   casting plant?

23        A    No.

24        Q    Who did Revstone purchase that die

25   casting plant from?

1                SCOTT HOFMEISTER

2        A    I think I originally said Edscha,

3   but I might have been that with the Matamoros

4   plant.

5        Q    So you're not sure who Revstone

6   purchased that from?

7        A    Not sure.

8        Q    Can you name anybody who was

9   associated with the entity that Revstone

10  purchased the die casting plant in Chihuahua

11  from?

12       A    I can't say specifically.

13       Q    You can't name a single person?

14       A    From the seller's side?

15       Q    From the seller's side.

16       A    I don't specifically remember.

17       Q    So you don't know the name of the

18  seller either, do you?

19       A    Like I said, I -- I think I'd said

20  Edscha originally, but I'm not sure if that

21  is pertinent to that plant or the Matamoros

22  plant.

23       Q    Do you know which Revstone entity

24  bought the die casting plant in Chihuahua?

25       A    Not specifically.

1          SCOTT HOFMEISTER

2      Q    Do you know whether the die

3  casting plant in Chihuahua was purchased by a

4  Revstone company or a Spara company?

5      A    I do not know specifically.

6      Q    Did you go down to the Chihuahua

7  plant ever?

8      A    I tried.

9      Q    Did you succeed?

10     A    We were in an airplane flying to

11  Chihuahua, and the airplane turned around

12  halfway to Chihuahua and landed back in

13  Mexico City.

14     Q    So you did not succeed?

15     A    I did not succeed.

16     Q    I'll bite.  Why did the airplane

17  turn around?

18     A    I don't know.  It was a commercial

19  flight from Mexico City to Chihuahua.  We

20  were sitting on this airplane, and about an

21  hour-and-a-half into this two-hour plant, it

22  turns back around and goes back to

23  Mexico City.  We still don't know what

24  happened, if there was a gun fight at the

25  airport or -- who knows what it was.

1                SCOTT HOFMEISTER

2        Q     Did you try to get to Chihuahua

3   the next day?

4        A     No.

5        Q     So you never successfully got to

6   Chihuahua, Mexico?

7        A     Correct.

8        Q     So you didn't provide any

9   operations improvement advice to that

10  Chihuahua, Mexico, plant that you were never

11  at, correct?

12             MR. TOLL:  Object as to form.

13             You may answer.

14             THE WITNESS:  The Chihuahua plant

15        had, if I remember correctly, some HP

16        die casting machines that were similar

17        to machines we had in other facilities.

18        And so on the operations side, for that

19        specific transaction, there were some

20        opportunities that I didn't have to be

21        there in person to try to create with

22        some of our other operating entities.

23  BY MR. KORNFELD:

24        Q     How many people worked at that

25  Chihuahua plant?

1          SCOTT HOFMEISTER

2     A     I don't know.

3     Q     Do you know whether it was ten or

4 a hundred or a thousand?

5     A     It was less than a thousand.

6     Q     But do you know with any

7 specificity how many people worked at the

8 Chihuahua plant?

9     A     With more specificity, less than

10 500.

11     Q     But no more specificity than that?

12     A     It wasn't very many people.

13     Q     You said you worked to create

14 opportunities or synergies between the

15 Chihuahua plant and other plants.

16          What other plants did you try to

17 create synergies with?

18     A     I think I mentioned HP die casting

19 machines.  Texas Die Casting had some of

20 those machines.  Of course, we had Contact,

21 which is an aluminum die casting company.

22 And so we were looking at expanding some of

23 our footprints into Mexico to better serve

24 our customers who had facilities down there.

25     Q     So what did you do?

1                    SCOTT HOFMEISTER

2    when I started until sometime in 2010, I

3    would say, maybe 2011.

4         Q     So 2009 to 2010, maybe early 2011,

5    you're president of green technologies for

6    Revstone, correct?

7         A     Correct.

8         Q     The end of 2010, early 2011, you

9    become director of special projects for

10   Revstone?

11        A     Correct.

12        Q     How long did that position last?

13        A     That lasted through until I was no

14   longer employed with Revstone.

15        Q     When was that?

16        A     2012 or 2013.

17        Q     What did you do after you were

18   director of special products at Revstone?

19        A     That's when I was focused mostly

20   on providing the mergers and acquisitions,

21   helping that mergers and acquisitions team,

22   doing operations, improvements, conducting

23   due diligence, working on financing.

24        Q     Is that what you did as director

25   of special projects?

1                    SCOTT HOFMEISTER

2        A     Correct.

3        Q     So that was 2011 to late 2012,

4   early 2013?

5        A     That's when I had that title.  I

6   was doing that work earlier, and that's part

7   of why the title changed.

8        Q     So after late 2012, early 2013,

9   did you do anything for Revstone?

10       A     After my employment was -- after I

11  was done with my employment with them?

12       Q     Uh-huh.  Yes.

13       A     After I was no longer employed

14  with them, I did not work with them.

15       Q     During the period 2009/2010, when

16  you were present of green technologies for

17  Revstone, where were you based?

18       A     Lexington.

19       Q     During the period 2011 through

20  2013, where were you based?

21       A     Part of 2011 was in Lexington.

22  Part of 2011 was in Cambridge, Massachusetts,

23  where I was until 2013.

24       Q     When did you move to Cambridge,

25  Massachusetts?

1              SCOTT HOFMEISTER

2        A    July 2011.

3        Q    Why did you move to Cambridge,

4   Massachusetts?

5        A    To attend Harvard Business School.

6        Q    Harvard Business School doesn't

7   have a part-time program, does it?

8        A    I don't know.

9        Q    Were you in a part-time program at

10  Harvard?

11       A    I was not in a part-time program.

12       Q    So you were in a full-time program

13  at Harvard Business School starting

14  September 2011?

15       A    Correct.

16       Q    You graduated about May 2013?

17       A    Correct.

18       Q    During the period you were a

19  full-time student at Harvard Business School,

20  you lived in Cambridge, Massachusetts,

21  correct?

22       A    Correct.

23       Q    We'll get back to Harvard, but I

24  want to focus on that stamping plant in

25  Matamoros.  We talked a lot about Chihuahua.

Page 51

1              SCOTT HOFMEISTER

2              The stamping plant in Matamoros,

3   when was that purchased by a Revstone entity?

4        A    It was before I left for business

5   school.

6        Q    Can you be any more specific?

7        A    It would have been sometime in

8   2009, 2010, or 2011.

9        Q    Which Revstone entity purchased

10  that Matamoros stamping plant?

11       A    I do not recall, specifically.

12       Q    Do you recall whether it was a

13  Spara entity or a Revstone entity?

14       A    I do not recall.

15       Q    What was your role in connection

16  with -- strike that.

17            Who was the seller of the

18  Matamoros stamping plant?

19       A    I believe it was Edscha.

20       Q    Did you speak to anybody from that

21  entity?

22       A    We hired a gentleman from that

23  entity to continue on with us.

24       Q    Who was that?

25       A    Ernesto Garcia.

1          SCOTT HOFMEISTER

2      Q    In connection with the purchase of

3  the stamping plant in Matamoros, did you

4  speak to anybody?

5      A    I spoke to our team about the

6  transaction.  I spoke to several third-party

7  lenders about financing the acquisition.  I

8  spoke to several entities about the lease and

9  moving the factory.

10     Q    Did you speak to anybody from the

11  seller, besides Mr. Garcia?

12     A    I don't recall.

13     Q    How much did Revstone pay for the

14  stamping plant in Matamoros?

15     A    I don't recall.

16     Q    Approximately?

17     A    A few million perhaps.

18     Q    Are you speculating or do you have

19  a basis for saying a few million?

20     A    I don't think it was -- yeah.  It

21  wasn't over 10 million.

22     Q    Did Revstone have an investment

23  banker in connection with the purchase of a

24  stamping plant in Matamoros?

25     A    I don't recall.

1          SCOTT HOFMEISTER

2      Q     Did you ever visit the stamping

3  plant in Matamoros?

4      A     Yes.

5      Q     How many times?

6      A     Several.

7      Q     When did you first visit the

8  stamping plant in Matamoros?

9      A     Shortly after the acquisition.

10     Q     Why did you visit the stamping

11  plant in Matamoros?

12     A     I was thinking about the previous

13  question.

14           I may have visited it before the

15  acquisition, so I don't recall -- it was

16  right around the time of the acquisition when

17  I visited the first time.

18     Q     When was the purpose of that first

19  visit?

20     A     To see the facility and to see the

21  equipment that we had available, what assets

22  were there.

23     Q     Did you provide any valuation

24  advice to anybody at Revstone about that

25  transaction?

1                    SCOTT HOFMEISTER

2    systems program.

3         Q    A Six Sigma class?

4         A    Toyota production system.  They

5    didn't call it Six Sigma.

6         Q    But something like Six Sigma?

7         A    Right.

8         Q    How long was that class?

9         A    That was a 12-week program.

10         Q    Did you learn anything in that

11    12-week Six Sigma-like program that you could

12    apply at Revstone?

13         A    Yes.

14         Q    When did you take that program

15    from Toyota?

16         A    In 2010.

17         Q    Was the Matamoros plant purchased

18    by a Revstone, Spara, or Ascalon entity?

19         A    I don't know.

20         Q    Was the Chihuahua entity purchased

21    by a Revstone, Spara, or Ascalon entity?

22         A    I don't know.

23         Q    You mentioned those two

24    transactions.  Were you involved in any other

25    transactions, M&A transactions, for Revstone,

```
 1                SCOTT HOFMEISTER
 2  Spara, or Ascalon?
 3       A    Yes.
 4       Q    How many more?
 5       A    Many more.
 6       Q    Tell us the ones you remember, and
 7  then we'll talk about each one.
 8       A    While we're in Mexico, Tisamatic
 9  was an acquisition that I worked on.
10       Q    Can you spell that, please?
11       A    T-i-s-a-m-a-t-i-c .
12       Q    What other transactions did you
13  work on?
14       A    There was a Texas machining
15  operation by the name of Demay, D-e-m-a-y,
16  and others as well.  Specifically -- many of
17  their names escape me.
18       Q    Do you recall any other
19  transactions?
20       A    There was HK Engine was another
21  potential acquisition, Interlock Commando,
22  Stadco.  It's been a while.  Some of these
23  names are a little bit dusty.
24            Those are the specific names of
25  the acquisitions that I can remember.
```

1            SCOTT HOFMEISTER

2       Q    Did the Tisamatic acquisition

3   close?

4       A    No.

5       Q    Did the Demay acquisition close?

6       A    No.

7       Q    Did the HK Engine acquisition

8   close?

9       A    I don't recall.

10       Q    Did the Interlock Commando

11   acquisition close?

12       A    Yes.

13       Q    When did it close?

14       A    2009 or '10.

15       Q    Did a Revstone, Spara, or Ascalon

16   entity purchase Interlock Commando?

17       A    I don't know.

18       Q    What was the name of the seller of

19   Interlock Commando?

20       A    I don't know.

21       Q    Do you recall the name of any

22   person who was associated with the seller of

23   Interlock Commando?

24       A    Patrick Smith.

25       Q    What was your role in connection

1                    SCOTT HOFMEISTER

2    entity that purchased it?

3         A    I don't recall.

4         Q    What happened with Interlock

5    Commando?

6         A    I don't recall.

7         Q    Were you and Mr. Smith able to

8    commercialize that new lock technology?

9         A    Not fully.

10        Q    Did Interlock Commando obtain any

11   patents for that new lock technology?

12        A    I don't know.

13        Q    What about Stadco?  Did that

14   transaction close?

15        A    No.

16        Q    Were you involved in any other

17   transactions for Revstone, Spara, or Ascalon?

18        A    Yes.

19        Q    What other transactions?

20        A    I don't remember the specific

21   names.

22        Q    Do you remember when those

23   transactions -- strike that.

24             Did any of those other

25   transactions close?

1                SCOTT HOFMEISTER

2        A    Yes.

3        Q    What other transactions closed?

4        A    We refinanced EPTEC.

5        Q    Who owned EPTEC, a Revstone,

6    Spara, or Ascalon entity?

7        A    EPTEC was a Revstone entity.

8        Q    When was EPTEC refinanced?

9        A    In 2010 or 2011.

10        Q    Were there any investment bankers

11    in connection with that refi?

12        A    Not that I'm aware of.

13        Q    Where there any outside advisers

14    to Revstone in connection with the

15    refinancing of EPTEC?

16        A    Not that I'm aware of.

17        Q    How much, approximately, was that

18    refinance for?

19        A    I don't recall.

20        Q    Do you recall whether it was

21    millions, tens of millions, hundreds of

22    millions?

23        A    It certainly wasn't hundreds of

24    millions.  10 million, order of magnitude.

25        Q    What was the entity that provided

1                   SCOTT HOFMEISTER

2        A     Correct.

3        Q     Did George explain to you why

4   $50,000 wasn't paid for 2010?

5        A     No.

6        Q     How much did you receive from

7   Revstone in -- and by "Revstone," I mean, all

8   of Revstone entities -- 2011.

9        A     In 2011, my salary was 125,000.

10        Q     Did you receive a bonus for 2011?

11        A     No.

12        Q     Was one discussed?

13        A     No.

14        Q     Did you ask to receive a bonus for

15   2011?

16        A     No.

17        Q     Why not?

18        A     I never asked to receive a bonus.

19        Q     In 2011, did you receive any other

20   consideration from Revstone entities besides

21   medical, dental?

22        A     Yes.

23        Q     What did you receive?

24        A     I should clarify.  I don't know if

25   it was Revstone or Spara.  This is my mental

1              SCOTT HOFMEISTER

2    block of not knowing which legal entity is

3    which and where things fell.  But I was

4    also -- part of my tuition was paid by the

5    companies, starting in 2011.

6         Q    How much of your -- are you

7    referring to your Harvard Business School

8    tuition?

9         A    Yes, the first semester's tuition.

10        Q    How much was paid of your tuition

11   in 2011?

12        A    The 2011 fall semester was paid.

13        Q    How much was that?

14        A    I don't recall, specifically.

15        Q    Did any of the Revstone companies

16   pay any of your wife's tuition?

17        A    I don't recall, specifically.

18        Q    Let's get a little foundation

19   there.

20             Are you married?

21        A    I am married.

22        Q    What's your wife's name?

23        A    Julia Hofmeister.

24        Q    What was her maiden name?

25        A    Hanna, H-a-n-n-a.

1              SCOTT HOFMEISTER

2    Plaintiff Spara has filed against you for a

3    70,000-dollar wire transfer made to you on

4    June 29, 2011.

5              Have you seen Exhibit 5 before?

6        A    I believe so.

7        Q    Exhibit 4 is a wire transfer

8    confirmation.

9              Have you seen Exhibit 4 before?

10       A    I believe so.

11       Q    What is Exhibit 4?

12       A    A wire confirmation receipt.

13       Q    Is this a receipt of a wire

14   transfer made to you on June 29, 2011?

15       A    Yes.

16       Q    Did you receive $70,000 on or

17   about June 29, 2011?

18       A    Yes.

19       Q    That $70,000 came from Spara, LLC;

20   is that correct?

21       A    That's what it says here.

22       Q    Do you have any reason to believe

23   Exhibit 4 is incorrect?

24       A    No.

25       Q    Why did Spara, LLC, pay you

1           SCOTT HOFMEISTER

2    $70,000 on June 29th, 2011?

3         A    For purposes of paying Harvard

4    Business School tuition.

5         Q    Why did Spara, LLC, pay a portion

6    of your Harvard Business School tuition in

7    the amount of $70,000?

8         A    Presumably, they thought I would

9    be valuable with that education.

10        Q    Who at Spara, LLC, decided to pay

11   $70,000 towards your Harvard Business School

12   education?

13        A    There were several people involved

14   in the decision.

15        Q    Who were those people?

16        A    George Hofmeister, Dan Smith.

17   There may have been others.  I don't recall.

18        Q    Did Dan Smith tell you -- did

19   Dan Smith recommend that Spara, LLC, pay your

20   tuition?

21        A    I don't recall.

22        Q    Who ultimately was the person who

23   decided on behalf of Spara, LLC, to pay your

24   tuition?

25        A    George Hofmeister.

```
 1                SCOTT HOFMEISTER
 2   been marked as Exhibit 4 as income during the
 3   year 2011?
 4             MR. TOLL:  Object to form.
 5             You can answer.
 6             THE WITNESS:  I don't know.
 7   BY MR. KORNFELD:
 8        Q    It was income to you, wasn't it?
 9        A    I don't know.
10        Q    How much was the first year of
11   tuition at Harvard Business School?
12        A    I don't know, specifically.
13        Q    Was it $70,000?
14        A    I don't know.Harvard Business
15   School
16             (Email, November 15, 2011, "FWD:
17             Spring Tuition," marked as
18             Exhibit 7.)
19   BY MR. KORNFELD:
20        Q    Is Exhibit 7, all but the first
21   line, an email that you sent to your father
22   on or about November 14th, 2011?
23        A    Yes.
24        Q    Does this email refresh your
25   recollection as to how much tuition
```

1                    SCOTT HOFMEISTER

2    Harvard Business School was for the first

3    year?

4         A    Yes.

5         Q    How much was tuition at Harvard

6    Business School for your first year?

7         A    According to this document,

8    $25,600.

9         Q    Then there are other charges from

10   Harvard listed on the document in the table

11   that appears there, such as student health

12   insurance plan, student health fee, program

13   support fee, student association dues, and

14   Shad Hall.  And that amount is, in total,

15   $30,516.

16             That's the tuition and those other

17   amounts, correct?

18        A    Correct.

19        Q    What was the rest of the $70,000

20   that you received on June 9, 2011, used for?

21        A    I used it for my first semester

22   tuition.

23        Q    Right.

24        A    And Babson tuition.

25        Q    Babson tuition was tuition for

1                SCOTT HOFMEISTER

2  your wife at Babson College, correct?

3        A    Correct.

4        Q    Did your wife ever work for any of

5  the Revstone entities?

6        A    No.

7        Q    Did she ever provide anything of

8  value to any of the Revstone entities?

9        A    I don't know.

10       Q    Did your wife ever work for Spara,

11 LLC?

12       A    Not that I know of.

13       Q    Why did Spara, LLC, pay your

14 wife's Babson tuition and then -- strike

15 that.

16            The Babson tuition that

17 Spara, LLC, paid for your wife with that

18 $70,000 that you received on June 29th, 2011,

19 the Babson tuition, of course, was $27,248,

20 correct?

21       A    That sounds right.

22       Q    That's what the email says in

23 front of you, right?  "Babson Tuition Dues:

24 $27,248," right?

25       A    Right.

1              SCOTT HOFMEISTER

2       A    I did not.

3       Q    Who made the decision to pay your

4   wife's Babson tuition of $27,248?

5            MR. TOLL:  Object as to form.

6            You may answer.

7            THE WITNESS:  George Hofmeister.

8   BY MR. KORNFELD:

9       Q    Did George Hofmeister explain to

10  you why Spara, LLC, paid your wife's

11  Babson College tuition that amounted to

12  $27,248?

13           MR. TOLL:  Object as to form.

14           You may answer.

15           THE WITNESS:  I don't know.

16  BY MR. KORNFELD:

17      Q    Did you ever ask him?

18      A    No.

19      Q    Did you ever discuss with your

20  wife why Spara paid her Babson tuition?

21           MR. TOLL:  Object as to form.

22           You may answer.

23           THE WITNESS:  No.

24  BY MR. KORNFELD:

25      Q    What did your wife major in at

1                  SCOTT HOFMEISTER

2    Babson?

3         A     It was an MBA program.

4         Q     Did she graduate from Babson?

5         A     Yes.

6         Q     Did your wife work for any

7    Revstone or Spara entity after she graduated

8    from Babson?

9              MR. TOLL:  Objection, asked and

10        answered.

11              You may answer.

12              THE WITNESS:  No.

13   BY MR. KORNFELD:

14        Q     Did anybody on behalf of Spara

15   ever provide you with any justification for

16   Spara's decision to pay your wife's Babson

17   tuition in the amount of $27,248?

18              MR. TOLL:  Object as to form.  You

19        may answer.

20              THE WITNESS:  No.

21   BY MR. KORNFELD:

22        Q     As you sit here today, do you have

23   any justification for that payment?

24        A     I don't know.

25        Q     Is that 27,248-dollar payment

1           SCOTT HOFMEISTER

2      A    I don't recall.

3      Q    That $50,000 is over and above the

4  $70,000 that you received on June 29, 2011,

5  correct?

6      A    The $50,000 we just discussed?

7      Q    The $50,000 we just discussed,

8  correct.

9      A    Correct.

10      Q    When you were at Harvard Business

11  School, typically how many classes did you

12  take a semester?

13      A    You were required to take five

14  classes.

15      Q    How many hours in class was that,

16  on average?

17      A    It was about -- I would say about

18  five hours a day, give or take a few hours.

19      Q    So, on average, give or take, you

20  spent 25 hours a week in class?

21      A    On average.  Probably around

22  there.

23      Q    And then there was a little bit of

24  work outside of class, too, right?

25      A    What type of work?

Page 84

1             SCOTT HOFMEISTER

2        Q    Preparing for class projects,

3    reports, papers.

4        A    Class-related work.

5        Q    That's it.  Class-related work

6    outside of class, right?

7        A    Correct.

8        Q    On average, how many hours?

9        A    At least as much, another 25 or

10   so.

11       Q    And when finals would come along,

12   would that number increase?

13       A    Maybe a little bit.  Not too much.

14       Q    So you spent, on average, at

15   Harvard Business School, 50 hours a week,

16   correct?

17       A    Yes.

18       Q    A little bit more than a full-time

19   job, correct?

20       A    Depends what job you have, I

21   guess.

22       Q    That's a good answer.  A little

23   bit more than a 40-hour-a-week full-time job.

24            Is it fair to say that during

25   2011, once you started at Harvard Business

```
 1              SCOTT HOFMEISTER
 2   School up until you graduated from Harvard
 3   Business School, you were out of the picture
 4   on day-to-day activities at Revstone?
 5        A    That's fair to say.
 6              (Email chain, February 27, 2012,
 7              "RE: Interest in Revstone's
 8              Queretaro Facility," marked as
 9              Exhibit 8.)
10   BY MR. KORNFELD:
11        Q    Let's go ahead and talk about
12   Exhibit 8.
13              Is Exhibit 8 an email exchange
14   between you and David Cosgrove of Revstone on
15   February 27, 2012?
16        A    It's an email between me and
17   David Cosgrove, CFO of Matcor.
18        Q    Thank you for the correction.
19              And you told Mr. Cosgrove, really,
20   what you just testified to, that you're on
21   leave at business school and out of the
22   picture on day-to-day activities.  And as a
23   result, you referred Mr. Cosgrove to
24   Mikk Carr, somebody at Revstone, correct?
25        A    Correct.
```

1          SCOTT HOFMEISTER

2      Q    You speak Spanish, don't you?

3      A    I did.  It's gotten a little bit

4   rusty.

5           (Email, April 2, 2012, "RE:

6           Reminder Revstone Industries,"

7           marked as Exhibit 9.)

8   BY MR. KORNFELD:

9      Q    What is Exhibit 9?

10     A    This is an email between myself

11  and Aida Vasallo from Goodrich Riquelme.

12     Q    Can you read and translate the

13  email that you wrote at the top of page 9?

14     A    I will try.

15         "Dear Mr. Vasallo, Please pardon

16          the tardiness of my answer.  Right

17          now I am just starting newly in

18          school to get my MBA, thanks to

19          Revstone.  Because of this, I'm not

20          well-connected with the daily

21          details of the office.  My advice is

22          to directly communicate with the

23          managers at EPTEC.  Chau."

24     Q    So this is another email where you

25  referred a business matter -- or suggested to

1          SCOTT HOFMEISTER

2    somebody that you weren't the right person to

3    handle a business matter because you were at

4    business school, and requested that that

5    person go to somebody else at one of the

6    Revstone companies, in this case, EPTEC,

7    right?

8        A    Correct.

9            (Email chain, June 6 through June

10           18, 2012, "RE: Pallet Project

11           Update," marked as Exhibit 10.)

12   BY MR. KORNFELD:

13       Q    Exhibit 10 is a two-page exhibit.

14   Can you tell us what is Exhibit 10?

15       A    Exhibit 10 is a series of emails

16   between myself and Russ LaBelle.

17       Q    And the first email in the chain,

18   which is the last email on page 2, is an

19   email from Russ LaBelle to you dated June 6,

20   2012, at 9:50 a.m.

21           Do you see that email?

22       A    I do.

23       Q    And in that email, Mr. LaBelle

24   says:

25           "I have tried to follow up with

```
 1              SCOTT HOFMEISTER
 2         Rob, Terry, and Mark A.  They cannot
 3         tell me anything about the status of
 4         the project."
 5              Who are those people?
 6      A    It looks like earlier in the email
 7 he mentions Rob States and Terry Brandl and
 8 Mark Lorey.
 9      Q    And were those people at Revstone
10 or somebody doing business at Revstone?
11      A    Terry Brandl worked in a company
12 called Palm Plastics.
13      Q    And that was one of the Revstone
14 companies, right?
15      A    Whether it was part of Revstone or
16 another legal entity, I'm not sure.
17      Q    You don't know whether it was a
18 Spara or whether it was an Ascalon entity,
19 but it was somewhere within the family
20 office, right?
21              MR. TOLL:  Object as to form.
22              THE WITNESS:  Correct.
23 BY MR. KORNFELD:
24      Q    Mr. LaBelle hopes that you can
25 provide information about the status of the
```

1               SCOTT HOFMEISTER

2    project, he says in the last line before the

3    signature of this email.

4         Do you see that?

5         A    Yes.

6         Q    And your response -- actually he

7    sends a second email, which is on the first

8    page of Exhibit 10.  In the second email, he

9    complains that you haven't gotten back to

10   him.

11        Do you see that email?

12        A    I do.

13        Q    Was that an email that he sent you

14   on or about June 13?

15        A    Yes.

16        Q    And in your email to him -- that's

17   the very top email, right?

18        A    Yes.

19        Q    You apologize to him and say:

20           "Sorry for my delayed response

21            and the general lack of follow-up.

22            I am currently on leave at business

23            school."

24        And then you refer him to

25   Matt Bailey.  Is that what you did?

1             SCOTT HOFMEISTER

2        A    That's what it says here.

3        Q    And since you were at business

4   school, you couldn't help Mr. LaBelle with

5   his inquiry, right?

6        A    Other than connecting him with

7   people involved in the day-to-day management

8   of the project.

9        Q    That's all you could do at that

10  point?

11       A    It would appear so.

12       Q    Who paid your tuition at Harvard

13  Business School for your second year?

14       A    I paid part of it.  And the other

15  part, I'm not sure.

16       Q    Did George Hofmeister ever pay any

17  portion of your Harvard Business School

18  tuition?

19       A    I don't think so.  For the second

20  year?

21       Q    Yes.

22       A    I don't think so for the second

23  year.

24       Q    For the first year at Harvard

25  Business School, did George Hofmeister pay

1                    SCOTT HOFMEISTER

2    trust that continued to exist and, as a

3    result, you didn't list any such interest on

4    your financial statement?

5         A    Correct.

6         Q    And since you made the assumption,

7    if I understood your testimony, that the

8    trust either didn't exist or didn't have

9    assets, you didn't attempt to find out

10   anything more about those trusts; is that

11   correct?

12        A    Correct.

13             MR. KORNFELD:  Let's take a short

14        break.

15             (Break in proceedings.)

16   BY MR. KORNFELD:

17        Q    With respect to the $70,000 that

18   you received on June 29, 2011, is there any

19   written agreement between you and Spara with

20   respect to that $70,000?

21        A    Not that I'm aware of.

22        Q    Is there any written agreement

23   between you and any other entity with respect

24   to that $70,000?

25        A    Not that I remember.

```
 1              SCOTT HOFMEISTER
 2        Q    Is there any written agreement
 3   between you and George Hofmeister with
 4   respect to that $70,000?
 5        A    Not that I remember.
 6        Q    Is there a promissory note that
 7   you were asked to sign with respect to that
 8   $70,000?
 9             MR. TOLL:  Object as to form.
10             You may answer.
11             THE WITNESS:  Not that I remember.
12   BY MR. KORNFELD:
13        Q    Did you sign any document with
14   respect to that $70,000?
15        A    Not that I remember.
16        Q    Was there any conversation that
17   you had with anybody about that $70,000 and
18   an obligation on your behalf to pay back that
19   $70,000?
20             MR. TOLL:  Object as to form.
21             You may answer.
22             THE WITNESS:  Not that I recall.
23   BY MR. KORNFELD:
24        Q    Did anybody ask you to pay back
25   that $70,000?
```

```
 1              SCOTT HOFMEISTER
 2       A    Not that I recall.
 3       Q    Did anybody ask you to agree to
 4  pay back that $70,000 at some point in the
 5  future?
 6       A    Not that I recall.
 7       Q    Do you intend to pay that $70,000
 8  back to Spara?
 9            MR. TOLL:  Object as to form.
10            You may answer.
11            THE WITNESS:  I don't realize that
12        it was owed back to Spara.
13  BY MR. KORNFELD:
14       Q    Is it owed back to anybody?
15       A    I don't know.
16       Q    Do you intend to pay it back to
17  anybody?
18       A    As I said, I do not know who is
19  owed what money.
20       Q    Well, you know you got it from
21  Spara?
22       A    There's a document that says I
23  received it from Spara.
24       Q    Do you have any reason to believe
25  that document is not true?
```

1              SCOTT HOFMEISTER

2      A    No.

3      Q    So you got the money from Spara.

4  Do you owe that money to Spara?

5           MR. TOLL:  Object as to form.

6           You may answer.

7           THE WITNESS:  Not that I'm aware

8      of.

9  BY MR. KORNFELD:

10      Q    Do you owe that money to anybody?

11      A    Not that I'm aware of.

12      Q    Was it a gift from Spara?

13      A    I don't know.

14      Q    Did George Hofmeister ever ask you

15  to agree to pay that $70,000 back?

16      A    Not that I recall.

17      Q    Did anybody ever ask you to agree

18  to pay that $70,000 back?

19      A    Not that I recall.

20      Q    To your knowledge, did anybody

21  besides you and your wife ever receive MBA

22  tuition reimbursement at Revstone?

23           MR. TOLL:  Object as to form.

24           You may answer.

25

1                   SCOTT HOFMEISTER

2    company had a tuition reimbursement plan?

3         A    I don't know if they had a tuition

4    reimbursement plan.

5         Q    How is this article relevant?

6              MR. TOLL:  Object as to form.

7              You may answer.

8              THE WITNESS:  This is an example

9         of how some companies might pay for an

10        MBA education, under the belief that

11        their employees will become more

12        valuable.

13   BY MR. KORNFELD:

14        Q    In your situation, you didn't go

15   back and work at Spara or Revstone after you

16   graduated from Harvard Business School,

17   correct?

18        A    Correct.

19        Q    And second to the last paragraph,

20   first page of the New York Times article

21   we've marked as Exhibit 11 references

22   companies that had a tuition program.

23              So you just testified you don't

24   know whether Revstone or Spara had tuition

25   fund programs, correct?

Page 106

1                    SCOTT HOFMEISTER

2                      CERTIFICATE

3

4    STATE OF MICHIGAN  )
                        )ss.
5    COUNTY OF OAKLAND  )

6

7        I, Anne Vosburgh, Certified Shorthand Reporter,

8    Registered Professional Reporter, and Certified Realtime

9    Reporter affirm that on December 15, 2016,

10   Scott Hofmeister, was by me duly sworn to testify

11   truthfully, and that this is a true and correct record of

12   the testimony given, to the best of my knowledge and

13   ability.

14       I further affirm that I am not a relative or

15   employee of any parties involved in this case, nor am I

16   financially interested in the outcome of the action.

17   Dated: December 19, 2016

18       _____

19            Anne E. Vosburgh, CSR-6804

20            Certified Shorthand Reporter

21            Registered Professional Reporter

22            Certified Realtime Reporter

23            Notary Public, Oakland County, Michigan

24            My Commission Expires July 20, 2022

25

# EXHIBIT H

```
RCVD FROM SPARA LLC                     2250 THUNDERSTICK DRIVE
SENDER'S DDA # 7381005722

TRN REF #: 20110629-00001495
-------------------------------------------------------------------------------
  **** MESSAGE ENVELOPE ****              ( BANK : FTB )

SND DATE: 11/06/29
SRC:FFI CALLER:                           EXT:

RPT#        AMT:70,000.00              CUR:USD                    TRDR#
TEST: DUE:                            TYP:FTR/1000 FNDS:S CHG:DB:N CD:N COM:N CBL:N
-------------------------------------------------------------------------------
DBT D/7381005722/                     CDT *A/042100146              ADV:FED
DEBIT VAL: 11/06/29                   CREDIT VAL: 11/06/29
SPARA LLC                             CENTRAL BANK AND TRUST COMPANY
2250 THUNDERSTICK DRIVE               LEXINGTON, KY
LEXINGTON KY  40505
SNDR REF NUM:        864844           BNF:/042100146              CHG:O BK?N
ORIG:/                                SCOTT HOFMEISTER
, , ,

ORIG TO BNF INFO:
HARVARD TUITION PAYMENT
```

EXHIBIT

12-15-16  4.
Hofmeister

PENGAD 800-631-6989

# EXHIBIT I

**From:** George Hofmeister <ghofmeister@revstone.com>
**Subject:** Fwd: Spring Tuition
**Date:** November 15, 2011 2:30:45 PM EST
**To:** asmith@revstone.com

---

Alex: We need $50k to Scott in next couple weeks.   george

---------- Forwarded message ----------
**From: Hofmeister, Scott** <shofmeister@mba2013.hbs.edu>
Date: Mon, Nov 14, 2011 at 5:41 PM
Subject: Spring Tuition
To: "ghofmeister@revstone.com" <ghofmeister@revstone.com>


Babson Tuition Dues: $27,248

HBS Tuition Dues:

| DATE | TERM | DESCRIPTION | CHARGES | CREDITS |
|------|------|-------------|---------|---------|
| ------------ NEW ITEMS ------------ | | | | |
| 10/17/2011 | 12S | Tuition - HBS 1st Year | $25,600.00 | |
| 10/18/2011 | 12S | HUSHP Student Health Ins Plan | $917.00 | |
| 10/18/2011 | 12S | HUSHP Student Health Fee- Grad | $593.00 | |
| 10/17/2011 | 12S | Program Support Fee - Year 1 | $3,195.00 | |
| 10/17/2011 | 12S | Student Assoc. Dues - HBS | $51.00 | |
| 10/17/2011 | 12S | Shad Hall - HBS | $160.00 | |

AMOUNT DUE:    $30,516.00

Remaining from June funding:

$70,000
(29,516)
(27,248)
(2,251)
=$10,985

Due: 30,516 + 27,248 - 10,985 = $46,779

Scott Hofmeister
HARVARD I BUSINESS I SCHOOL
MBA Class of 2013
cell: (859)576-7261



Â

--
SCOTT HOFMEISTERâ€‚|â€‚**Special Projects**
**REVSTONE INDUSTRIES, LLC**
2250 Thunderstick Drive Suite 1203
Lexington KY 40505
PHONE: 859.576.7261
E-MAIL: shofmeister@revstone.com
**www.revstone.com**



2

# EXHIBIT J



## O86- ALPHABETIC PAYROLL REGISTER    O86

```
REA    REVSTONE INDUSTRIES LLC                                          PAY
NO.    CO. NAME                                                      PERIOD  26      19
                                                                                  PAGE NO.
EMPLOYEE ID                                  12/28/12          B-12/28/12
EMPLOYEE NAME                                REPORT DATE       CHECKS DATED
                                                                                CHECK#

     :.....HOURS AND EARNINGS.....:  :...DED AND ADJ...:  :.....GROSS TO NET.....:
  PC DESCR  RATE  HOURS    AMOUNT    DESCR  AMOUNT  CODES  Y-TO-D  TYPE  CURRENT

OO-OO8-97917                   1 REGUL    80.00   W2GRP    4807.69            124999.94 GRCOMP     4807.69
HOFMEISTER, SCOTT R                        Q-TO-D          --EFTA1            124999.94 GRPAY      4807.69
53 PUTNAM AVENUE               1 REGULAR  560.00  33653.83 -----Q-TO-D-----     4624.20 SSEC         .OO
3                                          Y-TO-D           38.78             1814.59 MDCR         69.79
CAMBRIDGE MA O2139             1 REGULAR 2080.00 124999.94 -----Y-TO-D-----   19385.08 FIT        745.58
                                           F-TO-D 1        144.04             6997.12 ST1 KY      269.12
            FRQ  B     STAT A   1 REGULAR  160.00  9615.38 -----F-TO-D 1----- 92178.95 NET       3723.20
SS-NO             M/S  M   SEX  M                  W2GRP    11.08                       EFT A     3723.20
BASE   48O7.69    ST1  KY                                                 CUR MDCR WAGES         4813.23
FCAST  8O.OOE     F#EX O2   S#EX O2                                    --WAGES-- Q-TO-D          --TAXES--
FILE#  97917                                                            18648.63 SSEC            783.24
HIRE   O4/O1/O9                                                         33692.61 MDCR            488.55
OT EX  Y                                                                33653.83 FIT            5219.06
                  ID BK TP  TRANSIT-NO                                  33692.61 ST KY
EFT-ACCOUNT#                                                            33653.83 SUI KY         1883.84
```

PAY ANALYSIS REPORTING



086- ALPHABETIC PAYROLL REGISTER    086

REA    REVSTONE INDUSTRIES LLC
NO.    CO. NAME

PAY PERIOD 26    20. PAGE NO.

12/28/12    B-12/28/12
REPORT DATE    CHECKS DATED

EMPLOYEE ID
EMPLOYEE NAME

00-008-97917
HOFMEISTER, SCOTT R
***** CONTINUED *****
A PP C

ALT DATE:
DOB:

.......HOURS AND EARNINGS........    .......DED AND ADJ......    ....GROSS TO NET.....
PC DESCR  RATE  HOURS  AMOUNT    DESCR  AMOUNT  CODES    Y-TO-D  TYPE  CURRENT  CHECK#

--WAGES--  Y-TO-D
110100.00 SSEC
125143.98 MDCR
124999.94 FIT
7000.00 FUTA
125143.98 ST  KY
124999.94 SUI KY
--WAGES--F-TO-D 1
9626.46 MDCR
9615.38 FIT
9626.46 ST  KY
9615.38 SUI KY

--TAXES--
4624.20
1814.59
19385.08

6997.12

--TAXES--
139.59
1491.16
538.24

PAY ANALYSIS REPORTING

A301

# EXHIBIT K

**Alexa Mahnken**

| | |
|---|---|
| **From:** | Scott Hofmeister <shofmeister@revstone.com> |
| **Sent:** | Monday, February 27, 2012 12:29 PM |
| **To:** | David Cosgrove |
| **Cc:** | Mikk Carr |
| **Subject:** | Re: Interest in Revstone's Queretaro Facility |

David,

Thanks for the note. Hope all is well with you. I'll refer you to Mikk Carr - I'm on leave at business school and out of the picture on the day-to-day activities.

Peace
srh

On Mon, Feb 27, 2012 at 9:11 AM, David Cosgrove <dcosgrove@matcor-matsu.com> wrote:

Scott,

Â

Matcor remains interested in acquiring Revstoneâ€™s Queretaro facility if that location is still being marketed.Â  If the Queretaro facility is available either individually or as part of a sale of a business unit as a whole we would be interested in continuing the discussions we commenced with Revstone in 2011.Â  Please advise accordingly.

Â

Regards,

David

Â

David Cosgrove

CFO Matcor Automotive - USA

1401 E. 12 Mile Road

Madison Heights, MI 48071

248-336-1545 Office

248-336-0636 Fax

616-902-7652 Cell

1



# EXHIBIT L

**Alexa Mahnken**

| | |
|---|---|
| **From:** | Scott Hofmeister <shofmeister@revstone.com> |
| **Sent:** | Monday, April 02, 2012 11:40 AM |
| **To:** | Aida Vasallo |
| **Subject:** | Re: REMINDER REVSTONE INDUSTRIES |

Sr Vasallo -

Por favor perdona la tardanza en contestarles. En realidad estoy de nuevo en escuela para sacar mi MBA, gracias a Revstone. Por eso no estoy bien conectado con los detalles diarios de la oficina. Mi consejo es comunicar directamente con los gerentes en EPTEC.

Chau

scott

On Tue, Mar 27, 2012 at 3:55 PM, Aida Vasallo <avasallo3@goodrichriquelme.com> wrote:
Dear Mr. Hofmeister,

Please open the attached document.

If you have any questions do not hesitate to contact us.

Have a nice day!
Best Regards,
GOODRICH RIQUELME Y ASOCIADOS

--
SCOTT HOFMEISTERâ€‚| â€‚**Special Projects**
REVSTONE INDUSTRIES, LLC
2250 Thunderstick Drive Suite 1203
Lexington KY 40505
PHONE: 859.576.7261
E-MAIL: shofmeister@revstone.com
**www.revstone.com**

1



# EXHIBIT M

**Alexa Mahnken**

| | |
|---|---|
| **From:** | Scott Hofmeister <shofmeister@revstone.com> |
| **Sent:** | Monday, June 18, 2012 10:18 AM |
| **To:** | Russ LaBelle |
| **Cc:** | Matt Bailey |
| **Subject:** | Re: PALLET PROJECT UPDATE |

Hi Russ,

Sorry for my delayed response and the general lack of follow-up. I am currently on leave at business school, but can tell you that Matt Bailey at Revstone is probably the most up-to-date on our pallet plans.

Peace
srh


On Wed, Jun 13, 2012 at 4:35 PM, Russ LaBelle <Russ@wilmingtonmachinery.com> wrote:

Dear Scott:

Â

I sent you the attached email on June 6 and had hoped to hear something from you by now.Â  We are not asking for anything more than the courtesy of an update on the status of the project.

Â

Thank you that!

Â

Sincerely,Â

Â

**Russ La Belle, President**

Â



*Transforming Technology*  Â Â Â

4628 Northchase Parkway, NE

Wilmington, NC 28405



EXHIBIT
Hofmeister 10.
12.15.16

russ@wilmingtonmachinery.com

www.wilmingtonmachinery.com

(910) 452-5090 x102Â Â Â Â  Office

(910) 452-5191Â Â Â Â  Fax

Â

**From:** Russ LaBelle
**Sent:** Wednesday, June 06, 2012 9:58 AM
**To:** shofmeister@revstone.com
**Subject:** PALLET PROJECT UPDATE

Â

Dear Scott:

Â

We began working with REVSTONE on the pallet making project in January, 2011.Â  During the course of our work, the pallet concept changed many times as you probably know.

Â

We became extensively involved with the foam-filled two-piece pallet concept with Terry Brandl and Mark Lorey.Â  We developed a unique injection/turntable system capable of matching the output of the two high pressure molding machines.

Â

I met with Rob States of Stress Engineering at NPE in early April.Â  He showed me yet another multi-piece pallet concept.

Â

Since that time, I have tried to follow-up with Rob, Terry and Mark.Â  They cannot tell me anything about the status of the project.Â  I am hoping you can and look forward to hearing from you.

Â

Sincerely,Â

Â

**Russ La Belle, President**

Â

2



**Transforming Technology**  Â Â Â

4628 Northchase Parkway, NE

Wilmington, NC 28405

russ@wilmingtonmachinery.com

www.wilmingtonmachinery.com

(910) 452-5090 x102Â Â Â Â  Office

(910) 452-5191Â Â Â Â  Fax

Â

--
SCOTT HOFMEISTERâ€‚|â€‚**Special Projects**
**REVSTONE INDUSTRIES, LLC**
2250 Thunderstick Drive Suite 1203
Lexington KY 40505
PHONE: 859.576.7261
E-MAIL: shofmeister@revstone.com
www.revstone.com