## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| REVSTONE INDUSTRIES, LLC, et al.,[1] | Case No. 12-13262 (BLS) |
| Reorganized Debtors. | Jointly Administered |
| FRED C. CARUSO, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust, Plaintiff, v. SCOTT R. HOFMEISTER, et al., Defendants. | Adv. No. 14-50977 (BLS) |
| FRED C. CARUSO, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust, Plaintiff, v. SCOTT R. HOFMEISTER, et al., Defendants. | Adv. No. 14-50984 (BLS) |

### TRUSTEE'S OPENING BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT SCOTT R. HOFMEISTER

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool & Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each Debtor is: Revstone Industries, LLC, et al., c/o Huron Consulting Group Inc., PO Box 1720, Birmingham, MI 48012, Attn: John C. DiDonato, Chief Restructuring Officer.

Dated:  April 14, 2017

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (Bar No. 2436)
Alan J. Kornfeld (CA Bar No. 130063)
Elissa A. Wagner (CA Bar No. 213589)
Colin R. Robinson (Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email:  ljones@pszjlaw.com
        akornfeld@pszjlaw.com
        ewagner@pszjlaw.com
        crobinson@pszjlaw.com

Counsel for the Revstone/Spara Litigation Trustee

## <u>TABLE OF CONTENTS</u>

Preliminary Statement.................................................................................................. 1

Nature and Stage of Proceedings .............................................................................. 4

Summary of Argument .............................................................................................. 7

Statement of Material Facts ...................................................................................... 9

    A.   Organization of Revstone and Spara.................................................................9

    B.   The Spara Transfer............................................................................................9

    C.   The Revstone Transfers ..................................................................................13

    D.   Insolvency........................................................................................................16

    E.   Predicate Creditors..........................................................................................17

Argument ................................................................................................................. 18

    A.   The Trustee Is Entitled to Summary Judgment on His 11 U.S.C. § 544(b) and
        Delaware UFTA Claims ...............................................................................19

        1.   The Spara Transfer Was A Transfer of Spara's Property, and the
                Revstone Pre-Petition Transfers Were Transfers of Revstone's Property ................20

        2.   Spara Received No Value for the Spara Transfer, and Revstone
                Received No Value for the Revstone Pre-Petition Transfers .....................21

        3.   Spara Was Insolvent At the Time of the Spara Transfers, and Revstone
                Was Insolvent At the Time of the Revstone Pre-Petition Transfers .........................22

        4.   Spara Had At Least One Predicate Creditor At the Time of the Spara
                Transfer, and Revstone Had At Least One Predicate Creditor At the
                Time of the Revstone Pre-Petition Transfers .............................................24

        5.   Scott Hofmeister Was the Initial Transferee of the Spara Transfer, and
                Was the Initial Transferee or Beneficiary of the Revstone Pre-Petition
                Transfers .....................................................................................................25

    B.   The Trustee Is Entitled to Summary Judgment on His 11 U.S.C. § 548 Claim in the
        Spara Action....................................................................................................26

    C.   The Trustee Is Entitled to Summary Judgment on His Post-Petition Transfer Claim
        in the Revstone Action....................................................................................28

Conclusion ............................................................................................................... 31

DOCS_LA:303556.4 73864/030

# TABLE OF AUTHORITIES

## Cases

*Adderly v. Ferrier*, 419 F. App'x 135 (3d Cir. 2011) .................................................................. 19

*In re Pitt Penn Holding Co., Inc.*, 2011 WL 4352373 (Bankr. D. Del. Sept. 16, 2011)......... 22, 24

*In re TSIC, Inc.*, 428 B.R. 103 (Bankr. D. Del. 2010) .................................................................. 30

## Statutes

11 U.S.C. § 101 .................................................................................................................. 22, 30

11 U.S.C. § 1107 ....................................................................................................... 4, 19, 26, 28

11 U.S.C. § 541 ........................................................................................................................ 29

11 U.S.C. § 544 ................................................................................................................. passim

11 U.S.C. § 548 ................................................................................................................. passim

11 U.S.C. § 549 ................................................................................................................. passim

11 U.S.C. § 550 ................................................................................................................. passim

6 Del. C. § 1302 ....................................................................................................................... 22

6 Del. C. § 1305 ............................................................................................................... passim

6 Del. C. § 1307 ....................................................................................................................... 20

## Rules

Fed. R. Bankr. P. 7056 .............................................................................................................. 19

Fed. R. Civ. P. 26 ................................................................................................................ 23, 24

Fed. R. Civ. P. 56 ..................................................................................................................... 19

DOCS_LA:303556.4 73864/030

Plaintiff Fred C. Caruso, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust (the "Trustee"), successor in interest to Revstone Industries, LLC ("Revstone") and Spara, LLC ("Spara") in the above-captioned adversary proceedings, respectfully submits this opening brief in support of the *Trustee's Motion for Summary Judgment Against Defendant Scott R. Hofmeister* (the "Motion"), filed concurrently herewith.[2]

## **Preliminary Statement**

1.      By the Motion, the Trustee seeks to recover a total of $194,999.94 that was wrongfully transferred to or for the benefit of George Hofmeister's son, Scott Hofmeister, in 2011 and 2012.  This amount includes $70,000 that George Hofmeister caused Spara to transfer to Scott Hofmeister in June 2011, which Scott Hofmeister then used to pay his tuition at Harvard Business School and his wife's tuition at Babson College.  Significantly, Scott Hofmeister was never employed by Spara, and never provided any services or anything else of value to Spara in exchange for this transfer.  The remainder of the amount at issue – $124,999.94 – was transferred by Revstone in 2012 as gross wages to Scott Hofmeister, including employee withholding amounts transferred to taxing authorities on behalf of Scott Hofmeister.[3]  At the times these transfers were made, Scott Hofmeister was not performing any services for Revstone.  Instead, he was a full-time student in Cambridge, Massachusetts.  In fact, Scott Hofmeister has testified that he spent approximately 50 hours per week on his classes, and was "out of the picture" with respect to Revstone's activities at the times of these transfers.

---

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Motion.

[3] With respect to the amounts transferred by Revstone, the Trustee seeks summary judgment only as to the amounts transferred to Scott Hofmeister or to federal and state taxing authorities on behalf of Scott Hofmeister.  The Trustee does not seek summary judgment as to the remaining balance ($8,986.70) identified in the Revstone complaint.  The remaining balance consists of employer taxes paid as a result of the payroll transfers made to or for the benefit of Scott Hofmeister.  Lukenda Declaration ¶¶ 14-15.

2.       As specified below, the Trustee seeks to avoid the majority of these transfers as fraudulent pre-petition transfers, which requires (among other things) the Trustee to establish that Spara and Revstone were insolvent at the time of the pre-petition transfers.  The Trustee's expert witness – James M. Lukenda – is the only expert witness designated by any party on the issue of Spara's insolvency, and is the only expert witness designated by any party on the issue of Revstone's insolvency in or around 2012.  As discussed below, Mr. Lukenda has concluded that Spara and Revstone were hopelessly insolvent at all relevant times.

3.       With respect to the $70,000 transferred by Spara to Scott Hofmeister, the Trustee seeks summary judgment on the First Claim for Relief set forth in the complaint filed in the Spara Action (defined below).  That claim seeks to avoid and recover the Spara transfer pursuant to 11 U.S.C. § 544, 11 U.S.C. § 550 and Delaware's fraudulent transfer law.  There are no disputed facts as to any element of the Trustee's claim:  the transfer was a transfer of $70,000 of Spara's property, which Scott Hofmeister has admitted he received; Spara did not receive anything of value in exchange for the transfer; as set forth in Mr. Lukenda's expert report, Spara was insolvent by over $46,000,000 at the time of the transfer; and Spara had at least one predicate creditor at the time of the transfer.  Thus, the Trustee is entitled to summary judgment against Scott Hofmeister on the First Claim for Relief in the Spara Action.

4.       The Trustee also seeks summary judgment on the Second Claim for Relief in the Spara Action, which seeks to avoid and recover the Spara transfer pursuant to 11 U.S.C. § 548 and 11 U.S.C. § 550.  There are no disputed facts as to any element of this claim:  this was a transfer of Spara's property to Scott Hofmeister; Spara did not receive anything of value in exchange for the transfer; Spara was undeniably insolvent at the time of the transfer; and the transfer, which was made in June 2011, was made within two years of the date on which Spara

filed its chapter 11 petition (*i.e.*, December 3, 2012). As a result, the Trustee is entitled to summary judgment against Scott Hofmeister on the Second Claim for Relief in the Spara Action.

5.     With respect to the amounts transferred by Revstone, the Trustee seeks summary judgment on the First Claim for Relief in the Revstone Action (defined below). Specifically, the Trustee seeks to avoid and recover $115,384.56 of the transfers as fraudulent pre-petition transfers pursuant to 11 U.S.C. § 544, 11 U.S.C. § 550 and Delaware's fraudulent transfer law. Once again, there are no disputed facts as to any element of this claim: the transfers were transfers of $115,384.56 of Revstone's property to Scott Hofmeister or to taxing authorities on behalf of Scott Hofmeister; Revstone did not receive anything of value in exchange for the transfers, all of which purported to be gross wages but were made while Scott Hofmeister was a full-time student at Harvard Business School; as set forth in Mr. Lukenda's expert report, Revstone was hopelessly insolvent at the times of the transfers; and Revstone had at least one predicate creditor at the times of the transfers. Thus, the Trustee is entitled to summary judgment against Scott Hofmeister on the First Claim for Relief in the Revstone Action.

6.     Finally, the Trustee seeks summary judgment on the Second Claim for Relief in the Revstone Action, by which the Trustee seeks to avoid and recover $9,615.38 of the transfers as unauthorized post-petition transfers pursuant to 11 U.S.C. § 549 and 11 U.S.C. § 550. There are no disputed facts as to any element of the Trustee's claim: the transfers were transfers of $9,615.38 of property of Revstone's bankruptcy estate; the transfers were made to Scott Hofmeister or to taxing authorities on behalf of Scott Hofmeister; the transfers were made after the date on which Revstone filed its chapter 11 petition (*i.e.*, December 3, 2012); and the transfers were not authorized under the Bankruptcy Code or by this Court. Accordingly, the

Trustee is entitled to summary judgment against Scott Hofmeister on the Second Claim for Relief in the Revstone Action.

## **Nature and Stage of Proceedings**

7.      Revstone and Spara commenced the above-captioned chapter 11 case in this Court on December 3, 2012 (the "Petition Date").  Prior to confirmation of the plan of reorganization [D.I. 1941] in the chapter 11 case, Revstone and Spara managed their assets as debtors in possession pursuant to 11 U.S.C. § 1107.

8.      On December 1, 2014, Revstone commenced Adv. No. 14-50977 against Scott Hofmeister (the "Revstone Action"), and filed its *Complaint to Avoid and Recover Fraudulent Transfers, Unauthorized Post-Petition Transfers and Related Relief* [D.I. 1] and *Exhibit 1 to Complaint to Avoid and Recover Fraudulent Transfers, Unauthorized Post-Petition Transfers and Related Relief* [D.I. 5] (collectively, the "Revstone Complaint").[4]  The Revstone Complaint asserts, among other things, (i) an 11 U.S.C. § 544 claim against Scott Hofmeister to avoid and recover the pre-petition fraudulent transfers that were made to or for the benefit of Scott Hofmeister between January 13, 2012 and November 30, 2012, and (ii) an 11 U.S.C. § 549 claim against Scott Hofmeister to avoid and recover the unauthorized post-petition transfers that were made to or for the benefit of Scott Hofmeister in December 2012.  A006-008, A014.[5]  Scott Hofmeister filed his answer on October 2, 2015 [D.I. 35], after the Court denied his motion to dismiss the Revstone Complaint [D.I. 29].

9.      On December 2, 2014, Spara commenced Adv. No. 14-50984 against Scott Hofmeister (the "Spara Action"), and filed its *Complaint to Avoid and Recover Fraudulent*

---

[4] A copy of the Revstone Complaint is attached as **Exhibit A** to the Appendix.

[5] Citations to page numbers preceded by an "A" refer to the Appendix submitted by the Trustee concurrently herewith.

*Transfers and Related Relief* [D.I. 1] (the "Spara Complaint").[6]   The Spara Complaint asserts, among other things, (i) an 11 U.S.C. § 544 claim against Scott Hofmeister to avoid and recover the fraudulent pre-petition transfer of $70,000 that was made to Scott Hofmeister on June 29, 2011, and (ii) an 11 U.S.C. § 548 claim against Scott Hofmeister based on the same transfer. A019-021.   Scott Hofmeister filed his answer on October 2, 2015 [D.I. 34], after the Court denied his motion to dismiss the Spara Complaint [D.I. 28].

10.     In accordance with, among other things, the plan of reorganization [D.I. 1941] confirmed in the above-captioned chapter 11 case, the Revstone Action and Spara Action were transferred, assigned and conveyed to the Revstone/Spara Litigation Trust, and the Trustee was authorized to litigate the Revstone Action and Spara Action.   The Trustee filed his *Notice of Substitution of Plaintiff* in the Revstone Action [D.I. 27] and Spara Action [D.I. 26] on August 27, 2015.

11.     The Revstone Action and Spara Action have been set on the same pre-trial schedule, pursuant to scheduling orders entered in the Revstone Action [D.I. 66] and Spara Action [D.I. 65] on October 4, 2016.   Under those scheduling orders, initial expert reports were due to be exchanged by October 7, 2016.   On October 7, 2016, the Trustee served the following on Scott Hofmeister: (i) the *Trustee's Initial Expert Witness Designation* in the Revstone Action, by which the Trustee designated James M. Lukenda as the Trustee's expert witness on Revstone's insolvency, the fraudulent pre-petition transfers made by Revstone to Scott Hofmeister and other parties, Revstone's predicate creditors, the unauthorized post-petition transfers to Scott Hofmeister, and the contents of Mr. Lukenda's expert report regarding Revstone; (ii) the *Initial Expert Report of James M. Lukenda Regarding Revstone Industries,*

---

[6] A copy of the Spara Complaint is attached as **Exhibit B** to the Appendix.

LLC (the "Revstone Report"); (iii) the *Trustee's Initial Expert Witness Designation* in the Spara Action, by which the Trustee designated James M. Lukenda as the Trustee's expert witness on Spara's insolvency, the fraudulent pre-petition transfer made by Spara to Scott Hofmeister, Spara's predicate creditors, and the contents of Mr. Lukenda's expert report regarding Spara; and (iv) the *Initial Expert Report of James M. Lukenda Regarding Spara, LLC* (the "Spara Report"). *See Notice of Service* [Revstone Action D.I. 68] and *Notice of Service* [Spara Action D.I. 67].[7] Rebuttal expert reports were due to be exchanged in the Revstone Action and Spara Action by December 2, 2016.

12.     Neither Scott Hofmeister nor any other defendant in the Revstone Action or Spara Action designated any expert witnesses or served any expert reports on the Trustee.  Instead, on December 2, 2016, Scott Hofmeister filed a *Notice of Reservation of Rights Regarding Defendants' Rebuttal Experts* in the Revstone Action [D.I. 76] and Spara Action [D.I. 75].  That notice states that Scott Hofmeister intends "to use any experts (initial, rebuttal, or otherwise) and their reports already disclosed, or in the future disclosed, by any other parties in these cases or in other cases filed in the Revstone matters, whether settled or ongoing."  The notice does not, however, disclose the identity of any expert witness, identify the subjects of any expert testimony, or identify any particular expert report.

13.     More importantly, there are no other expert witnesses or reports that Scott Hofmeister can "use" as contemplated in his notice.  No party other than the Trustee designated an expert witness regarding Spara.  Robinson Declaration ¶ 3.  Moreover, only one party other than the Trustee designated an expert witness regarding Revstone.  *Id*. at ¶ 4.  The report

---

[7] Copies of the Trustee's expert disclosures are attached as follows to the Appendix:  (i) the Trustee's expert designation in the Revstone Action is attached as **Exhibit C**; (ii) the Revstone Report is attached as **Exhibit D**; (iii) the Trustee's expert designation in the Spara Action is attached as **Exhibit E**; and (iv) the Spara Report is attached as **Exhibit F**.

prepared by that witness, however, is limited to an analysis of Revstone's financial condition as of April 2, 2009 – approximately three years before the transfers at issue in the Revstone Action, all of which occurred in 2012. *Id.* Thus, the Trustee's expert, Mr. Lukenda, remains the only expert witness designated by any party with respect to the matters at issue in the Spara Action and the Revstone Action.

14. Finally, the scheduling orders in the Revstone Action and Spara Action provide that "[a]ll expert discovery and fact depositions must be completed, and discovery will close, on January 20, 2017." The Trustee deposed Scott Hofmeister on December 15, 2016.[8] Neither Scott Hofmeister nor any other party deposed Mr. Lukenda prior to the discovery cut-off in the Revstone Action and Spara Action.

### Summary of Argument

15. The Trustee is entitled to summary judgment against Scott Hofmeister on the First Claim for Relief in the Spara Action, which seeks the avoidance and recovery of the Spara Transfer (defined below) pursuant to 11 U.S.C. § 544, 11 U.S.C. § 550 and 6 Del. C. § 1305. In particular, the undisputed facts and evidence presented by the Trustee establish that: (a) Spara transferred $70,000 of its property to Scott Hofmeister in June 2011; (b) Spara did not receive reasonably equivalent value in exchange for the Spara Transfer; (c) Spara was insolvent by over $46,000,000 at the time of the Spara Transfer; and (d) Spara had at least one predicate creditor at the time of the Spara Transfer.

16. The Trustee is entitled to summary judgment against Scott Hofmeister, in the amount of $115,384.56, on the First Claim for Relief in the Revstone Action, which seeks the avoidance and recovery of the Revstone Pre-Petition Transfers (defined below) pursuant to 11

---

[8] Relevant excerpts from the Trustee's December 15, 2016 deposition of Scott Hofmeister are attached as **Exhibit G** to the Appendix.

U.S.C. § 544, 11 U.S.C. § 550 and 6 Del. C. § 1305.  In particular, the undisputed facts and evidence presented by the Trustee establish that: (a) Revstone transferred $115,384.56 of its property to Scott Hofmeister or to taxing authorities on behalf of Scott Hofmeister between January 13, 2012 and November 30, 2012; (b) Revstone did not receive reasonably equivalent value in exchange for the Revstone Pre-Petition Transfers; (c) Revstone was insolvent at the times of the Revstone Pre-Petition Transfers; and (d) Revstone had at least one predicate creditor at the times of the Revstone Pre-Petition Transfers.

17.    The Trustee is entitled to summary judgment against Scott Hofmeister on the Second Claim for Relief in the Spara Action, which seeks the avoidance and recovery of the Spara Transfer pursuant to 11 U.S.C. § 548 and 11 U.S.C. § 550.  The undisputed facts and evidence presented by the Trustee establish that:  (a) Spara transferred $70,000 of its property to Scott Hofmeister in June 2011; (b) Spara did not receive reasonably equivalent value in exchange for the Spara Transfer; (c) Spara was insolvent by over $46,000,000 at the time of the Spara Transfer; and (d) the Spara Transfer was made within two years of the Petition Date.

18.    The Trustee is entitled to summary judgment against Scott Hofmeister on the Second Claim for Relief in the Revstone Action, which seeks the avoidance and recovery of the Revstone Post-Petition Transfers (defined below) pursuant to 11 U.S.C. § 549 and 11 U.S.C. § 550.  In particular, the undisputed facts presented by the Trustee establish that:  (a) Revstone transferred $9,615.38 of property of its bankruptcy estate to Scott Hofmeister or to taxing authorities on behalf of Scott Hofmeister; (b) the Revstone Post-Petition Transfers were made after the Petition Date; and (c) the Revstone Post-Petition Transfers were not authorized under the Bankruptcy Code or by this Court.

## Statement of Material Facts

### A.    Organization of Revstone and Spara

19.    Revstone was founded on December 2, 2008 as a Delaware limited liability company, pursuant to an operating agreement dated December 2, 2008 between the Scott R. Hofmeister Irrevocable Trust, the Megan G. Hofmeister Irrevocable Trust and the Jamie S. Hofmeister Irrevocable Trust (collectively, the "Children's Trusts").  Lukenda Declaration ¶ 5. Spara was founded on August 2, 2010 as a Delaware limited liability company, pursuant to an operating agreement effective as of August 2, 2010 between the Children's Trusts.  *Id*.  Revstone and Spara's operating agreements identified Scott Hofmeister's father, George Hofmeister, as the Chairman and sole manager of both Revstone and Spara.  *Id*.  Revstone never held an ownership interest in Spara, and Spara never held an ownership interest in Revstone.  *Id*.

### B.    The Spara Transfer

20.    On June 29, 2011, George Hofmeister caused Spara to transfer $70,000 of its funds to Scott Hofmeister (the "Spara Transfer").  Ex. G, A273-274 at 70:11-71:4, A274 at 71:22-25, A278 at 78:3-7; A295.[9]  The Spara Transfer was made via wire transfer from Spara's operating account, Account No. 7381005722, at Fifth Third Bank (the "Fifth Third Account"). A295; Lukenda Declaration ¶ 6.  The Fifth Third Account was controlled and maintained by Spara, and was used to conduct Spara's business.  Lukenda Declaration ¶ 6.  The wire confirmation for the Spara Transfer identifies Spara as the originator of the Spara Transfer, and identifies Scott Hofmeister as the beneficiary of the Spara Transfer.  A295.  At his deposition, Scott Hofmeister admitted that he received the Spara Transfer.  Ex. G, A273-274 at 70:11-71:4. Scott Hofmeister further testified that, in 2011 and in addition to the Spara Transfer, he also

---

[9] The wire confirmation for this transfer, which was marked as Exhibit 4 to the deposition of Scott Hofmeister, is attached as **Exhibit H** to the Appendix.

received an annual salary of $125,000 for 2011 as the "director of special projects" for Revstone. Ex. G, A260 at 48:8-16, A271 at 63:6-9, A271-272 at 63:19-64:12.

21.    Scott Hofmeister, who attended Harvard Business School from September 2011 to May 2013, testified that the Spara Transfer was used to pay his tuition at Harvard Business School and his wife's ("Julia Hofmeister") tuition at Babson College. Ex. G, A261-262 at 49:24-50:22, A273-274 at 70:25-71:4, A275-277 at 74:20-76:3; A297.[10]  While Scott Hofmeister may have been employed by Revstone during part of 2011 – for which he received a $125,000 salary – neither Scott Hofmeister nor Julia Hofmeister was ever employed by Spara. Ex. G, A245-246 at 31:20-32:8, A277 at 76:10-12, A279 at 79:6-12, A292 at 103:14-18.

22.    Scott Hofmeister never provided anything of value to Spara in exchange for the Spara Transfer.  He did not provide Spara with a written agreement or promissory note with respect to the Spara Transfer, and does not believe he is obligated to repay the Spara Transfer. Ex. G, A288-291 at 96:17-99:19.  Moreover, while Scott Hofmeister testified at his deposition that he performed "mergers and acquisitions, due diligence [and] operations improvement" services for Spara (a holding company), he was unable to identify any specific operating subsidiaries of Spara, or any specific work he performed for Spara or its subsidiaries. Ex. G, A246-247 at 32:9-33:15, A248 at 34:10-18.

23.    For instance, Scott Hofmeister testified at one point in his deposition that he had performed M&A services for T Cast Holdings, LLC, but he could not identify any specific M&A services that he performed for that entity.  Ex. G, A247-248 at 33:16-34:12, A249-250 at 35:12-36:2.  Scott then testified that, in fact, he could not recall whether he had performed any M&A services for T Cast Holdings, LLC.  Ex. G, A249-250 at 35:12-36:2.

---

[10] Attached as **Exhibit I** to the Appendix is a November 14, 2011 email from Scott Hofmeister to George Hofmeister discussing the tuition payments, which was marked as Exhibit 7 to the deposition of Scott Hofmeister.

24.     Scott also testified that he was involved in the purchase of a die casting plant in Chihuahua, Mexico.  Ex. G, A251-252 at 38:20-39:10.  Spara never acquired a die casting plant in Chihuahua.  Lukenda Declaration ¶ 9.  Moreover, Scott could not recall:  what entity purchased the die casting plant; what entity sold the die casting plant; when the transaction occurred; who was on "his team" other than perhaps Revstone's general counsel; what purchase price was paid, except that it was "approximately less than" $5 million; whether an investment banker was involved or what investment banking fee was paid; what U.S. counsel was involved; or who brokered or "found" the transaction.  Ex. G, A252 at 39:11-19, A252-253 at 39:24-40:2, A253 at 40:21-25, A254-255 at 41:17-42:19, A255-256 at 42:24-43:7, A256-257 at 43:23-44:5.  Scott never visited the plant, and did not know how many people were employed at the plant, except that it was less than 500.  Ex. G, A257 at 44:6-15, A258-259 at 45:24-46:10.  Finally, Scott testified that he tried to create "synergies" between the die casting plant and two other entities, Contech and Texas Die.  Ex. G, A259 at 46:13-24.  Neither Contech Castings, LLC nor MW Texas Die Casting, Inc. was a subsidiary of Spara.  Lukenda Declaration ¶ 9.

25.     Scott testified that he was involved in the purchase of a stamping company in Matamoros, Mexico.  Ex. G, A251-252 at 38:20-39:3.  Spara never acquired a stamping company in Matamoros.  Lukenda Declaration ¶ 10.  In fact, the stamping company appears to have been acquired by Matamoros Stamping, LLC ("Matamoros Stamping") in or around April 2010, well before Spara's formation in August 2010.  *Id*.  Matamoros Stamping was not a Spara subsidiary.  *Id*.  Moreover, Scott could not recall:  what entity purchased the stamping company; whether he ever spoke with anyone from the seller other than one individual who was hired to continue on after the acquisition; when the transaction occurred; what purchase price was paid;

whether an investment banker was involved; or whether Scott visited the stamping plant prior to the acquisition.  Ex. G, A263 at 51:2-14, A263-265 at 51:17-53:17.

26.    Finally, Scott testified that he was involved in six other transactions, which he identified as:  Tisamatic, Demay, HK Engine, Interlock Commando, Stadco and Eptec.  Ex. G, A266-267 at 55:23-56:25, A270 at 60:3-4.  None of these transactions benefited Spara, or involved Spara or its subsidiaries.  Lukenda Declaration ¶ 11.  In particular:

- Tisamatic – This was a potential acquisition of certain assets of Tisamatic S. de RL de C.V. by Revstone or one of its subsidiaries.  Lukenda Declaration ¶ 11. The acquisition process began in or around January 2009, almost two years prior to Spara's formation in August 2010.  *Id*.  Scott testified at his deposition that the Tisamatic acquisition did not close.  Ex. G, A268 at 57:2-4.

- Demay – This was a potential acquisition of certain assets of Demay International, LLC by Revstone or one of its subsidiaries.  Lukenda Declaration ¶ 11.  The acquisition process began in or around December 2009, almost one year prior to Spara's formation in August 2010.  *Id*.  Scott testified at his deposition that the Demay acquisition did not close.  Ex. G, A268 at 57:5-6.

- HK Engine – This was a potential acquisition of certain assets of HK Engine Components, LLC by Revstone or one of its subsidiaries. Lukenda Declaration ¶ 11.  The acquisition process began in or around August 2010, and ended in or around October 2010, approximately nine months prior to the Spara Transfer.  *Id*. The HK Engine acquisition did not close.  *Id*.

- Interlock Commando – This was an acquisition in or around June 2009 of (i) certain assets of Interlock Die Company, LLC ("Interlock Die") by Arete Interlock, LLC ("Arete Interlock"), and (ii) a controlling membership interest in Commando Lock Company, LLC ("Commando Lock") by Arete Commando, LLC ("Arete Commando"). Lukenda Declaration ¶ 11.  Neither Spara nor any of its subsidiaries had any interest in Interlock Die, Arete Interlock, Commando Lock or Arete Commando.  *Id.*

- Stadco – This was a potential acquisition of an ownership interest in Stadco, Inc. by Revstone or one of its subsidiaries.  Lukenda Declaration ¶ 11.  The acquisition process began in or around October 2009, almost one year prior to Spara's formation in August 2010.  *Id.*  Scott testified at his deposition that the Stadco acquisition did not close.  Ex. G, A269 at 59:13-15.

- The Eptec transaction was a refinancing in (according to Scott Hofmeister) either 2010 or 2011.  Ex. G, A270 at 60:3-9.  Eptec was not a Spara subsidiary.  Ex. G, A270 at 60:5-7; Lukenda Declaration ¶ 11.

27.     In sum, the undisputed evidence establishes that the Spara Transfer was a transfer of $70,000 of Spara's property to Scott Hofmeister on June 29, 2011.  The undisputed evidence also establishes that Spara did not receive anything of value in exchange for the Spara Transfer.

## C.     The Revstone Transfers

28.     Between January 13, 2012 and December 28, 2012, a total of $124,999.94 of Revstone's funds were transferred (the "Revstone Transfers") to or for the benefit of Scott Hofmeister.[11]  Lukenda Declaration ¶ 14.  The Revstone Transfers were made via twenty-six

---

[11] The dates and amounts of each of the Revstone Transfers are set forth on Exhibit 1 to the Revstone Complaint.  A014; Lukenda Declaration ¶ 14.  As stated above, the Trustee seeks entry of summary judgment only as to the amounts transferred to Scott Hofmeister or to federal and state taxing authorities

biweekly wire transfers from Revstone's payroll processor, Ceridian HCM, Inc., using Revstone's funds. Lukenda Declaration ¶¶ 14-15. Revstone's payroll records establish that twenty-four of the Revstone Transfers, totaling $115,384.56, were made prior to the Petition Date (the "Revstone Pre-Petition Transfers") as gross wages to Scott Hofmeister, including employee withholding amounts transferred to federal and state taxing authorities on behalf of Scott Hofmeister. Lukenda Declaration ¶ 14. Revstone's payroll records also establish that the last two Revstone Transfers, totaling $9,615.38, were made after the Petition Date on December 14, 2012 and December 28, 2012 (the "Revstone Post-Petition Transfers") as gross wages to Scott Hofmeister, including employee withholding amounts transferred to federal and state taxing authorities on behalf of Scott Hofmeister. *Id.*[12]

29. Scott Hofmeister never provided anything of value to Revstone in exchange for the Revstone Transfers. Lukenda Declaration ¶ 16. While the Revstone Transfers purported to be wages paid to Scott Hofmeister as an employee of Revstone in 2012, Scott did not perform any work for Revstone during 2012. In particular:

- At his deposition, Scott Hofmeister testified that he moved to Cambridge, Massachusetts in July 2011 to attend Harvard Business School, and continued to live in Cambridge until he graduated in May 2013. Ex. G, A261-262 at 49:24-50:22. Revstone was located in Lexington, Kentucky in 2012. Lukenda Declaration ¶ 16

- All of the Revstone Transfers, which occurred between January 13, 2012 and December 28, 2012, were made while Scott Hofmeister was a full-time

---

on behalf of Scott Hofmeister. The Trustee does not seek entry of summary judgment as to the remaining balance ($8,986.70) identified on Exhibit 1 to the Revstone Complaint. The remaining balance consists of employer taxes paid as a result of the Revstone Transfers. Lukenda Declaration ¶ 14 fn. 4.

[12] Revstone's payroll records pertaining to the Revstone Transfers are attached as **Exhibit J** to the Appendix.

student.  Lukenda Declaration ¶¶ 14-15; A014; Ex. G, A261-262 at 49:24-50:22.  As a full-time student, Scott Hofmeister was required to take five classes each semester, and spent approximately 25 hours per week in class and another approximately 25 hours per week doing "class-related" work outside of class.  Ex. G, A280-281 at 83:10-84:17.

- With approximately 50 hours per week spent as a full-time student in 2012, Scott Hofmeister was "out of the picture" on day-to-day activities at Revstone. Ex. G, A281-282 at 84:24-85:5.  While Scott Hofmeister's email account at Revstone (shofmeister@revstone.com) remained open in 2012, Scott responded to business inquiries received at that email address by informing people that he was "on leave" at business school, was "not well-connected with the daily details of the office" and was not the right person to handle business matters for Revstone.  Ex. G, A282 at 85:11-25; A303; Ex. G, A283-284 at 86:9-87:8; A305; Ex. G, A284-287 at 87:13-90:11; A307.[13]

30.    In sum, the undisputed evidence establishes that the Revstone Transfers were transfers of $124,999.94 of Revstone's property, that the Revstone Transfers were made to or for the benefit of Scott Hofmeister, and that the Revstone Transfers were made on a biweekly basis between January 13, 2012 and December 28, 2012.  The undisputed evidence also establishes that Revstone did not receive anything of value in exchange for the Revstone Transfers.  Finally, there is no evidence that the Revstone Post-Petition Transfers were authorized under the Bankruptcy Code or by this Court.

---

[13] Attached as **Exhibit K** to the Appendix is the February 27, 2012 email exchange that was marked as Exhibit 8 to the deposition of Scott Hofmeister.  Attached as **Exhibit L** to the Appendix is the April 2, 2012 email exchange that was marked as Exhibit 9 to the deposition of Scott Hofmeister.  Attached as **Exhibit M** to the Appendix is the June 18, 2012 email exchange that was marked as Exhibit 10 to the deposition of Scott Hofmeister.

-15-

DOCS_LA:303556.4 73864/030

D.      **Insolvency**

31.      As set forth above, the Trustee has designated James M. Lukenda as the Trustee's expert witness on, among other things, Spara's insolvency at the time of the Spara Transfer and Revstone's insolvency at the time of each of the Revstone Pre-Petition Transfers.  Mr. Lukenda's expert report regarding Spara (*i.e.*, the Spara Report) is incorporated into the Lukenda Declaration, and is attached as Exhibit F to the Appendix.   Mr. Lukenda's expert report regarding Revstone (*i.e.*, the Revstone Report) also is incorporated into the Lukenda Declaration, and is attached as Exhibit D to the Appendix.

32.      As set forth in the Spara Report, Mr. Lukenda has opined that, as of the date of the Spara Transfer (June 29, 2011), Spara's liabilities exceeded the fair value of Spara's assets by at least $46,387,000.  A213.  This amount was conservative.  For instance, in valuing Spara's assets – which consisted of approximately $1 million in cash, investments in subsidiaries that with one exception had little or no value, and uncollectible account receivables – Mr. Lukenda used the $15.9 million net sale value obtained for Spara's only profitable subsidiary in 2014, notwithstanding that the terminal value of that subsidiary at the time of the Spara Transfer was much less ($8.2 million). A216.  Similarly, in valuing Spara's liabilities – which included an approximately $61 million liability for underfunded pension plans – Mr. Lukenda used, as a starting point, a lower underfunded amount reported as of December 31, 2010 rather than a higher underfunded amount reported as of December 31, 2011.  A218-219.  Even with this conservative approach, Mr. Lukenda concluded that Spara was hopelessly insolvent at the time of the Spara Transfer.  Lukenda Declaration ¶ 12.

33.      Mr. Lukenda also has opined, in the Revstone Report, that Revstone was without adequate capitalization from its inception in December 2008, and was insolvent at all times from

December 2008 through the filing of its bankruptcy petition on December 3, 2012.  A039, A049-A050.  Specifically, Mr. Lukenda has concluded that Revstone's liabilities greatly exceeded its assets at all relevant times, with liabilities exceeding assets by over $4 million at the end of 2008, over $23 million at the end of 2009, over $57 million at the end of 2010, over $81 million at the end of 2011 and over $53 million at the end of 2012.  A044.  This calculation of Revstone's insolvency does not include the numerous guarantees that Revstone issued for its subsidiaries, for other Hofmeister-related entities, and for George Hofmeister and his family.  A049.  As set forth in the Revstone Report, Revstone issued guarantees of over $32 million in 2009, over $90 million in 2010, over $20 million in 2011 and $45 million in 2012.  A049.  Even without adding these guarantees to the calculation of Revstone's liabilities, Mr. Lukenda concluded, among other things, that Revstone was insolvent at the time of the Revstone Pre-Petition Transfers, which were made between January 2012 and November 2012.  Lukenda Declaration ¶ 17.

## E.    **Predicate Creditors**

34.    The Trustee also designated Mr. Lukenda as the Trustee's expert witness regarding the predicate creditors of Spara and Revstone, *i.e.*, those creditors with unsecured claims that arose prior to the transfers at issue and remained outstanding on the Petition Date.  With respect to Spara, and as set forth in the Spara Report, Spara had at least one predicate creditor: Gratiot 26 Mile Industrial 1, LLC ("Gratiot"), a lessor that entered into a lease with Spara on June 10, 2011, with lease obligations owed by Spara that remained outstanding on the Petition Date.  A222; Lukenda Declaration ¶ 13.  After the Petition Date, Gratiot filed Claim No. 527 against Spara.  Robinson Declaration ¶ 5.  No interested party has objected to Claim No. 527.  *Id.*

35.     With respect to Revstone, and as set forth in the Revstone Report, Revstone had at least two predicate creditors: (i) the Commonwealth of Kentucky Division of Unemployment Insurance ("Kentucky UI Division"), with a claim for unpaid unemployment insurance taxes that arose in January 2009 and remained outstanding on the Petition Date; and (ii) the Indiana Department of Workforce Development Collections Unit ("Indiana Collections Unit"), with a claim for employer contributions under the Indiana Employer Security Act that arose in the first quarter of 2009 and remained outstanding on the Petition Date.   A083; Lukenda Declaration ¶ 18.  After the Petition Date, the Kentucky UI Division filed Claim No. 542 against Revstone, and the Indiana Collections Unit filed Claim No. 62 against Revstone.  Robinson Declaration ¶ 6. No interested party has objected to Claim No. 542 or Claim No. 62.  *Id.*

## Argument

36.     By the Motion, the Trustee seeks entry of summary judgment against Scott Hofmeister on the following avoidance claims: (i) the First Claim for Relief asserted in the Spara Complaint, by which the Trustee seeks to avoid and recover the Spara Transfer as a pre-petition fraudulent transfer pursuant to 11 U.S.C. § 544(b), 11 U.S.C. § 550(a) and 6 Del. C. § 1305; (ii) the Second Claim for Relief asserted in the Spara Complaint, by which the Trustee seeks to avoid and recover the Spara Transfer as a pre-petition fraudulent transfer pursuant to 11 U.S.C. § 548 and 11 U.S.C. § 550(a); (iii) the First Claim for Relief asserted in the Revstone Complaint, by which the Trustee seeks to avoid and recover the Revstone Pre-Petition Transfers as fraudulent transfers pursuant to 11 U.S.C. § 544(b), 11 U.S.C. § 550(a) and 6 Del. C. § 1305; and (iv) the Second Claim for Relief asserted in the Revstone Complaint, by which the Trustee seeks to avoid and recover the Revstone Post-Petition Transfers as unauthorized post-petition transfers pursuant to 11 U.S.C. § 549 and 11 U.S.C. § 550(a).

37.     Under Fed. R. Civ. P. 56(a), made applicable herein by Fed. R. Bankr. P. 7056, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once the moving party establishes the absence of any genuine issue of material fact, the burden of proof then "shifts to the non-moving party to set forth specific facts demonstrating a genuine issue for trial." *Adderly v. Ferrier*, 419 F. App'x 135, 136 (3d Cir. 2011) (citation omitted).

38.     In this case, as set forth in further detail below, the undisputed evidence establishes each element of the Trustee's avoidance claims against Scott Hofmeister. Accordingly, the Trustee is entitled to summary judgment on each of his avoidance claims.

A.     **The Trustee Is Entitled to Summary Judgment on His 11 U.S.C. § 544(b) and Delaware UFTA Claims**

39.     A chapter 11 trustee or debtor in possession "may avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." 11 U.S.C. § 544(b)(1); *see also* 11 U.S.C. § 1107(a) (providing that a debtor in possession shall have the rights and powers of a chapter 11 trustee). Here, the Trustee is the successor in interest to both Spara and Revstone, which commenced the Spara Action and the Revstone Action (respectively) as debtors in possession.  In his capacity as successor in interest to Spara and Revstone, the Trustee seeks to avoid the Spara Transfer and the Revstone Pre-Petition Transfers pursuant to 11 U.S.C. § 544(b)(1) and Delaware's Uniform Fraudulent Transfer Act, 6 Del. C. § 1301 *et seq*. (the "Delaware UFTA").

40.     Section 1305(a) of the Delaware UFTA provides that a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the

transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."  6 Del. C. § 1305(a).  Pursuant to 6 Del. C. § 1307(a), a creditor is entitled to avoid a transfer that is fraudulent as to that creditor.

41.    Thus, to avoid the Spara Transfer and the Revstone Pre-Petition Transfers pursuant to section 544(b)(1) of the Bankruptcy Code and section 1305(a) of the Delaware UFTA, the Trustee must prove, as to each transfer, that: (i) the transfer was a transfer of the relevant Debtor's interest in property; (ii) the relevant Debtor made the transfer without receiving reasonably equivalent value; (iii) the relevant Debtor was insolvent at the time of the transfer, or became insolvent as a result of the transfer; and (iv) at least one creditor of the relevant Debtor held an unsecured, allowable claim against the Debtor that arose before the transfer was made.  Upon avoidance of each transfer pursuant to 11 U.S.C. § 544, the Trustee can recover the value of the property transferred from Scott Hofmeister if the Trustee establishes that Scott Hofmeister was the "initial transferee of such transfer or the entity for whose benefit such transfer was made."  11 U.S.C. § 550(a)(1).  Here, as discussed in further detail below, the undisputed facts establish each of these elements as to the Spara Transfer and each of the Revstone Pre-Petition Transfers.

**1.    The Spara Transfer Was A Transfer of Spara's Property, and the Revstone Pre-Petition Transfers Were Transfers of Revstone's Property**

42.    The Spara Transfer was a wire transfer of $70,000 from Spara's operating account at Fifth Third Bank.  The Fifth Third Account was controlled and maintained by Spara, and was used to conduct Spara's business.  The wire confirmation for the Spara Transfer identifies Spara as the originator of the Spara Transfer, and Scott Hofmeister has admitted that he received the

-20-

Spara Transfer. Thus, it is indisputable that the Spara Transfer was a transfer of Spara's property, *i.e.*, its money.

43.    It is likewise indisputable that the Revstone Pre-Petition Transfers, totaling $115,384.56, were transfers of Revstone's property. The Revstone Pre-Petition Transfers were wire transfers made by Revstone's payroll processor using Revstone's funds. Revstone's payroll records establish that the Revstone Pre-Petition Transfers were gross wages to Scott Hofmeister, including employee withholding amounts transferred to federal and state taxing authorities on behalf of Scott Hofmeister. Thus, the undisputed evidence in this case establishes that the Revstone Pre-Petition Transfers were transfers of Revstone's interest in its property, *i.e.*, its money.

### 2.    Spara Received No Value for the Spara Transfer, and Revstone Received No Value for the Revstone Pre-Petition Transfers

44.    As set forth above, the Spara Transfer was a transfer of $70,000 of Spara's funds to Scott Hofmeister, which was used to pay Scott's tuition at Harvard Business School and his wife's tuition at Babson College. Spara was not obligated to make the Spara Transfer, was not repaid for the Spara Transfer, and did not receive any promissory notes, written agreements, verbal repayment promises or anything else of value in exchange for the Spara Transfer. Moreover, neither Scott Hofmeister nor his wife provided any goods or services to Spara. While Scott Hofmeister testified at his deposition that he performed various M&A services, the services that Scott Hofmeister allegedly performed were undertaken (if at all) on behalf of entities other than Spara, and provided no economic benefit to Spara or its subsidiaries. Based on these facts, Spara did not receive reasonably equivalent value in exchange for the Spara Transfer.

45.    Similarly, Revstone did not receive anything of value in exchange for the Revstone Pre-Petition Transfers. As set forth above, the Revstone Pre-Petition Transfers

purported to be wages paid to Scott Hofmeister as an employee of Revstone in 2012, but Scott did not perform any work for Revstone during 2012. Between July 2011 and May 2013, Scott Hofmeister was a full-time student at Harvard Business School and lived in Cambridge, Massachusetts. Revstone, on the other hand, was located in Lexington, Kentucky. Moreover, as a full-time student, Scott Hofmeister spent approximately 50 hours per week attending class and doing "class-related" work, and therefore was "out of the picture" on Revstone's activities. Thus, the undisputed evidence establishes that Revstone did not receive reasonably equivalent value in exchange for the Revstone Pre-Petition Transfers.

### 3.   Spara Was Insolvent At the Time of the Spara Transfers, and Revstone Was Insolvent At the Time of the Revstone Pre-Petition Transfers

46.    Section 101(32)(A) of the Bankruptcy Code defines insolvency as the "financial condition such that the sum of [an] entity's debts is greater than all of such entity's property." 11 U.S.C. § 101(32)(A). Similarly, the Delaware UFTA provides that a debtor "is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation." 6 Del. C. § 1302(a). In the context of an avoidance action, a debtor's insolvency is measured "at the time the debtor transferred value, not at some later or earlier time." *In re Pitt Penn Holding Co., Inc.*, 2011 WL 4352373, *10 (Bankr. D. Del. Sept. 16, 2011) (BLS) (citation omitted).

47.    Attached as Exhibit F to the Appendix, and incorporated by reference into the Lukenda Declaration, is the written expert report of the Trustee's designated witness on Spara's insolvency. As discussed above, Mr. Lukenda has concluded that Spara was hopelessly insolvent as of the date of the Spara Transfer (June 29, 2011), with liabilities that exceeded assets at a fair valuation by at least $46,387,000.

48.    Attached as Exhibit D to the Appendix, and incorporated by reference into the Lukenda Declaration, is the written expert report of the Trustee's designated witness on

Revstone's insolvency.    As discussed above, Mr. Lukenda has concluded that Revstone's liabilities greatly exceeded its assets at all times from December 2008 through the Petition Date, with liabilities exceeding assets by over $4 million at the end of 2008, over $23 million at the end of 2009, over $57 million at the end of 2010, over $81 million at the end of 2011 and over $53 million at the end of 2012.    Even without adding the substantial amounts of Revstone's guarantees (which totaled over $20 million in 2011 and $45 million in 2012) to this calculation of Revstone's liabilities, Mr. Lukenda easily concluded that Revstone was insolvent at the time of the Revstone Pre-Petition Transfers, which were made between January 13, 2012 and November 30, 2012.

49.    The Trustee's expert witness, Mr. Lukenda, is the only expert designated by any party with respect to Spara's insolvency.    Mr. Lukenda also is the only expert designated by any party with respect to Revstone's insolvency at the time of the Revstone Pre-Petition Transfers. Pursuant to the scheduling orders entered in the Spara Action [D.I. 65]  and Revstone Action [D.I. 66], all "initial expert disclosures and initial expert reports required pursuant to Fed. R. Civ. P. 26(a)(2)" were due to be exchanged by October 7, 2016, and rebuttal expert disclosures and rebuttal expert reports were due to be exchanged by December 2, 2016.  *See* Fed. R. Civ. P. 26(a)(2)(A) (requiring each party to disclose the identity of any witness it may use at trial to present evidence under Fed. R. Evid. 702, 703 or 705); Fed. R. Civ. P. 26(a)(2)(B) (requiring for certain types of experts a written report containing, among other things, a "complete statement of all opinions the witness will express and the basis and reasons for them"); Fed. R. Civ. P. 26(a)(2)(C) (requiring for all other experts a disclosure of the subject matter on which the witness is expected to present evidence and "a summary of the facts and opinions to which the witness is expected to testify").

50.     The "reservation of rights" that Scott Hofmeister served on the Trustee on December 2, 2016 contains none of the information required by Fed. R. Civ. P. 26(a)(2), and thus fails to satisfy Scott Hofmeister's disclosure obligations under this Court's scheduling orders and Fed. R. Civ. P. 26(a)(2).  The "reservation of rights" also fails for two additional, and equally significant, reasons: (i) Scott cannot rely on any other defendant's expert witness regarding Spara's insolvency, because no other defendant designated an expert witness with respect to Spara; and (ii) Scott cannot rely on any other defendant's expert witness regarding Revstone's insolvency, because the only other expert witness designated with respect to Revstone only opined as to Revstone's financial condition in April 2009, approximately three years prior to the Revstone Pre-Petition Transfers.  *See, e.g., Pitt Penn Holding Co., Inc.*, 2011 WL 4352373 at \*10 (a debtor's insolvency is measured "at the time the debtor transferred value, not at some later or earlier time") (citation omitted).   Thus, based on Mr. Lukenda's uncontradicted expert analysis, Spara was insolvent at the time of the Spara Transfer and Revstone was insolvent at the time of the Revstone Pre-Petition Transfers.

**4.      Spara Had At Least One Predicate Creditor At the Time of the Spara Transfer, and Revstone Had At Least One Predicate Creditor At the Time of the Revstone Pre-Petition Transfers**

51.     As discussed above, to avoid the Spara Transfer and the Revstone Pre-Petition Transfers pursuant to section 544(b)(1) of the Bankruptcy Code and section 1305(a) of the Delaware UFTA, the Trustee must show that at least one creditor held an unsecured, allowable claim against Spara and Revstone, respectively, that arose before the relevant transfers were made.  With respect to Spara, Gratiot holds an unsecured claim against Spara based on Spara's lease obligations, which arose as of June 10, 2011 and remained outstanding on the Petition Date.  Claim No. 527 filed by Gratiot is an unsecured, allowable claim against Spara that arose

before the Spara Transfer was made on June 29, 2011.  Thus, Spara has at least one predicate

creditor for purposes of section 544(b)(1) of the Bankruptcy Code and section 1305(a) of the

Delaware UFTA.

52.     With respect to Revstone, the Kentucky UI Division and the Indiana Collections

Unit hold unsecured claims against Revstone that arose in early 2009 and remained outstanding

on the Petition Date.  Claim No. 542 filed by the Kentucky UI Division and Claim No. 62 filed

by the Indiana Collections Unit are unsecured, allowable claims against Revstone that arose

before the Revstone Pre-Petition Transfers were made in 2012.  Thus, Revstone has at least two

predicate creditors for purposes of section 544(b)(1) of the Bankruptcy Code and section 1305(a)

of the Delaware UFTA.

### 5.     Scott Hofmeister Was the Initial Transferee of the Spara Transfer, and Was the Initial Transferee or Beneficiary of the Revstone Pre-Petition Transfers

53.     To recover the Spara Transfer and the Revstone Pre-Petition Transfers from Scott

Hofmeister, the Trustee must show that Scott Hofmeister was the "initial transferee of such

transfer or the entity for whose benefit such transfer was made."  11 U.S.C. § 550(a)(1).  With

respect to the Spara Transfer, Scott Hofmeister has admitted that he received the Spara Transfer.

With respect to the Revstone Pre-Petition Transfers, as set forth in the Revstone Report and

Lukenda Declaration, Revstone's payroll records establish that the Revstone Pre-Petition

Transfers were gross wages to Scott Hofmeister, including employee withholding amounts

transferred to federal and state taxing authorities on behalf of Scott Hofmeister.  Thus, the

undisputed facts establish that Scott Hofmeister was the initial transferee of the Spara Transfer,

and was the initial transferee or beneficiary of each of the Revstone Pre-Petition Transfers.

54.     As set forth above, the undisputed facts establish each element of the Trustee's 11

U.S.C. § 544 and Delaware UFTA claim against Scott Hofmeister in the Spara Action:  the Spara

Transfer was a transfer of $70,000 of Spara's property to Scott Hofmeister; Spara did not receive reasonably equivalent value in exchange for the Spara Transfer; Spara was insolvent at the time of the Spara Transfer; Spara has at least one predicate creditor whose claim arose before the Spara Transfer was made; and Scott Hofmeister was the initial transferee of the Spara Transfer. The undisputed facts also establish each element of the Trustee's 11 U.S.C. § 544 and Delaware UFTA claim against Scott Hofmeister in the Revstone Action: the Revstone Pre-Petition Transfers were transfers of $115,384.56 of Revstone's property; Revstone did not receive reasonably equivalent value in exchange for the Revstone Pre-Petition Transfers; Revstone was insolvent at the time of the Revstone Pre-Petition Transfers; Revstone has at least one predicate creditor whose claim arose before the Revstone Pre-Petition Transfers were made; and Scott Hofmeister was the initial transferee or beneficiary of each of the Revstone Pre-Petition Transfers. Therefore, the Trustee is entitled to summary judgment against Scott Hofmeister on the First Claim for Relief asserted in the Spara Complaint, and the First Claim for Relief asserted in the Revstone Complaint.

**B.**    **The Trustee Is Entitled to Summary Judgment on His 11 U.S.C. § 548 Claim in the Spara Action**

55.    Pursuant to section 548(a)(1)(B)(ii)(I) of the Bankruptcy Code, a chapter 11 trustee or debtor in possession "may avoid any transfer … of an interest of the debtor in property … that was made … on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily … received less than a reasonably equivalent value in exchange for such transfer … and was insolvent on the date that such transfer was made." 11 U.S.C. § 548(a)(1)(B)(ii)(I); *see also* 11 U.S.C. § 1107(a) (providing that a debtor in possession shall have the rights and powers of a chapter 11 trustee). The Trustee is the successor in interest to Spara, which commenced the Spara Action as a debtor in possession. In his capacity as successor in

interest to Spara, the Trustee seeks to avoid the Spara Transfer pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(I).  Upon avoidance of the Spara Transfer pursuant to 11 U.S.C. § 548, the Trustee can recover the value of the property transferred from Scott Hofmeister if the Trustee establishes that Scott Hofmeister was the "initial transferee of such transfer or the entity for whose benefit such transfer was made."  11 U.S.C. § 550(a)(1).  Here, the undisputed facts establish each of these elements as to the Spara Transfer.

56.    First, the undisputed facts establish that the Spara Transfer was a transfer of Spara's property.  The Spara Transfer was a wire transfer of funds from Spara's operating account at Fifth Third Bank.  The Fifth Third Account was controlled and maintained by Spara, and was used to conduct Spara's business.  The wire confirmation for the Spara Transfer identifies Spara as the originator of the Spara Transfer, and Scott Hofmeister has admitted that he received the Spara Transfer.

57.    Second, the undisputed facts establish that the Spara Transfer was made within two years of the Petition Date.  The Spara Transfer was made on June 29, 2011.  Spara filed its bankruptcy petition on December 3, 2012.

58.    Third, Spara did not receive reasonably equivalent value in exchange for the Spara Transfer.  As discussed in the previous section, Spara was not obligated to make the Spara Transfer, was not repaid for the Spara Transfer, and did not receive any promissory notes, written agreements, verbal repayment promises or anything else of value in exchange for the Spara Transfer.  Moreover, neither Scott Hofmeister nor his wife provided any goods or services to Spara.  While Scott Hofmeister testified at his deposition that he performed various M&A services, the services that Scott Hofmeister allegedly performed were undertaken (if at all) on behalf of entities other than Spara, and provided no economic benefit to Spara or its subsidiaries.

-27-

59.     Fourth, as also discussed in the previous section, Spara was hopelessly insolvent at the time of the Spara Transfer.  Based on Mr. Lukenda's uncontradicted expert analysis, as of the date of the Spara Transfer (June 29, 2011), Spara's liabilities exceeded its assets at a fair valuation by at least $46,387,000.

60.     Fifth, and finally, the undisputed facts establish that Scott Hofmeister was the initial transferee of the Spara Transfer.  Among other things, Scott Hofmeister has admitted that he received the Spara Transfer.

61.     Thus, the Trustee has established each element of his 11 U.S.C. § 548 claim against Scott Hofmeister in the Spara Action: the Spara Transfer was a transfer of $70,000 of Spara's property; the Spara Transfer was made within two years of the Petition Date; Spara did not receive reasonably equivalent value in exchange for the Spara Transfer; Spara was insolvent at the time of the Spara Transfer; and Scott Hofmeister was the initial transferee of the Spara Transfer. Therefore, the Trustee is entitled to summary judgment against Scott Hofmeister on the Second Claim for Relief asserted in the Spara Complaint.

## C.     The Trustee Is Entitled to Summary Judgment on His Post-Petition Transfer Claim in the Revstone Action

62.     Pursuant to section 549(a) of the Bankruptcy Code, a chapter 11 trustee or debtor in possession "may avoid a transfer of property of the estate … that occurs after the commencement of the case; and … that is not authorized under this title or by the court."  11 U.S.C. § 549(a); *see also* 11 U.S.C. § 1107(a) (providing that a debtor in possession shall have the rights and powers of a chapter 11 trustee).  The Trustee is the successor in interest to Revstone, which commenced the Revstone Action as a debtor in possession.  In his capacity as successor in interest to Revstone, the Trustee seeks to avoid the Revstone Post-Petition Transfers pursuant to 11 U.S.C. § 549(a).  Upon avoidance of the Revstone Post-Petition Transfers

-28-

pursuant to 11 U.S.C. § 549(a), the Trustee can recover the value of the property transferred from Scott Hofmeister if the Trustee establishes that Scott Hofmeister was the "initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1). Here, the undisputed facts establish each of these elements as to the Revstone Post-Petition Transfers.

63.     First, the Revstone Post-Petition Transfers, totaling $9,615.38, were transfers of property of Revstone's bankruptcy estate. The Revstone Post-Petition Transfers were wire transfers made by Revstone's payroll processor using Revstone's funds, which became property of the estate as of the Petition Date. *See* 11 U.S.C. § 541(a)(1) (commencement of case creates estate comprised of all legal or equitable interests of the debtor in property as of commencement of case). Revstone's payroll records establish that the Revstone Post-Petition Transfers were gross wages to Scott Hofmeister, including employee withholding amounts transferred to federal and state taxing authorities on behalf of Scott Hofmeister. Thus, the undisputed evidence in this case establishes that the Revstone Post-Petition Transfers were transfers of property of Revstone's bankruptcy estate.

64.     Second, the Revstone Post-Petition Transfers occurred after the commencement of Revstone's chapter 11 case. Revstone filed its chapter 11 petition on December 3, 2012. All of the Revstone Post-Petition Transfers were made on or after December 14, 2012 and December 28, 2012.

65.     Third, the Revstone Post-Petition Transfers were not authorized under the Bankruptcy Code or by this Court. To the extent (if any) Scott Hofmeister might argue that the Revstone Post-Petition Transfers were authorized by the Court's orders [D.I. 36, D.I. 101] regarding pre-petition wages, those orders only authorized Revstone to pay obligations "that

have accrued by virtue of the services rendered" by its employees prior to the Petition Date.  *See* D.I. 36 at ¶ 2, D.I. 101 at ¶ 2.  As discussed above, Scott Hofmeister did not render any services to Revstone in exchange for the Revstone Post-Petition Transfers.  Furthermore, the Revstone Post-Petition Transfers – all of which were made for the benefit of an insider (Scott Hofmeister), and were not made in exchange for any value to Revstone – were not payments made in the ordinary course of Revstone's business.  *See* 11 U.S.C. § 101(31)(B)(vi) (insiders include relatives of any person in control of the debtor); *In re TSIC, Inc.*, 428 B.R. 103, 116 (Bankr. D. Del. 2010) (when a debtor transfers funds for the sole benefit of an insider, the transfer is not considered in the ordinary course of business).

66.    Fourth, and finally, the undisputed facts establish that Scott Hofmeister was the initial transferee or beneficiary of each of the Revstone Post-Petition Transfers.  As set forth in the Lukenda Declaration, Revstone's payroll records establish that the Revstone Post-Petition Transfers were gross wages to Scott Hofmeister, including employee withholding amounts transferred to federal and state taxing authorities on behalf of Scott Hofmeister.

67.    Thus, the Trustee has established each element of his 11 U.S.C. § 549 claim against Scott Hofmeister in the Revstone Action: the Revstone Post-Petition Transfers were transfers of $9,615.38 of property of Revstone's bankruptcy estate; the Revstone Post-Petition Transfers were made after the Petition Date; the Revstone Post-Petition Transfers were not authorized under the Bankruptcy Code or by this Court; and Scott Hofmeister was the initial transferee or beneficiary of each of the Revstone Post-Petition Transfers.  Therefore, the Trustee is entitled to summary judgment against Scott Hofmeister on the Second Claim for Relief asserted in the Revstone Complaint.

**Conclusion**

For the reasons set forth herein and in the Motion, the Trustee respectfully requests that

the Court grant the Motion, and grant such other relief as is just and proper.


Dated:  April 14, 2017                          PACHULSKI STANG ZIEHL & JONES LLP


                                                _/s/ Colin R. Robinson_
                                                Laura Davis Jones (Bar No. 2436)
                                                Alan J. Kornfeld (CA Bar No. 130063)
                                                Elissa A. Wagner (CA Bar No. 213589)
                                                Colin R. Robinson (Bar No. 5524)
                                                919 North Market Street, 17th Floor
                                                P.O. Box 8705
                                                Wilmington, DE  19899-8705 (Courier 19801)
                                                Telephone:  (302) 652-4100
                                                Facsimile:  (302) 652-4400
                                                Email:  ljones@pszjlaw.com
                                                        akornfeld@pszjlaw.com
                                                        ewagner@pszjlaw.com
                                                        crobinson@pszjlaw.com

                                                Counsel for the Revstone/Spara Litigation Trustee

DOCS_LA:303556.4 73864/030