# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>REVSTONE INDUSTRIES, LLC, et al.,[1]<br>            Reorganized Debtors. | Chapter 11<br>Case No. 12-13262 (BLS)<br>Jointly Administered |
| FRED C. CARUSO, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust,<br>            Plaintiff,<br>   v.<br>SCOTT R. HOFMEISTER, et al.,<br>            Defendants. | Adv. No. 14-50977 (BLS) |
| FRED C. CARUSO, solely in his capacity as the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust,<br>            Plaintiff,<br>   v.<br>SCOTT R. HOFMEISTER, et al.,<br>            Defendants. | Adv. No. 14-50984 (BLS) |

### DECLARATION OF JAMES M. LUKENDA IN SUPPORT OF TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT SCOTT R. HOFMEISTER

I, James M. Lukenda, declare as follows:

1. I make this declaration in support of the *Trustee's Motion for Summary Judgment Against Defendant Scott R. Hofmeister* (the "Motion") filed by Fred C. Caruso, the Revstone/Spara Litigation Trustee for the Revstone/Spara Litigation Trust (the "Trustee"), in the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: Revstone Industries, LLC (7222); Spara, LLC (6613); Greenwood Forgings, LLC (9285); and US Tool & Engineering, LLC (6450). The location of the Debtors' headquarters and the service address for each Debtor is: Revstone Industries, LLC, et al., c/o Huron Consulting Group Inc., PO Box 1720, Birmingham, MI 48012, Attn: John C. DiDonato, Chief Restructuring Officer.

above-captioned adversary proceedings.[2] Unless otherwise stated, the facts contained in this declaration are based on my personal knowledge, and my review of (among other things) the books and records of Revstone Industries, LLC ("Revstone") and Spara, LLC ("Spara") (collectively, the "Debtors"). If called as a witness, I could testify competently to the facts contained in this declaration.

2.  I am a Managing Director of the Business Advisory practice of Huron Consulting Services LLC. I also served as the Deputy Chief Restructuring Officer for Revstone and Spara during the above-captioned chapter 11 case.

3.  I am a Certified Insolvency and Restructuring Advisor ("CIRA"), Certified in Financial Forensics ("CFF"), and an active member of the Association of Insolvency and Restructuring Advisors. I have over 28 years of experience in bankruptcy and restructuring. During that time, I have performed a wide range of services, including valuation and insolvency analyses, analyses of fraudulent transfers and avoidance claims, forensic accounting and investigations.

4.  I have been retained to provide, among other things, expert testimony on behalf of the Trustee in connection with the Spara Action and the Revstone Action. Specifically, in the Spara Action, I have been designated as the Trustee's expert witness on Spara's insolvency, the fraudulent pre-petition transfer made by Spara to Scott Hofmeister, Spara's predicate creditors, and the contents of my expert report regarding Spara. A true and correct copy of the *Initial Expert Report of James M. Lukenda Regarding Spara, LLC* (the "Spara Report"), which I prepared in connection with the Spara Action, is attached as **Exhibit F** to the *Trustee's Appendix of Exhibits in Support of Motion for Summary Judgment Against Defendant Scott R. Hofmeister*

---

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the *Trustee's Opening Brief in Support of Motion for Summary Judgment Against Defendant Scott R. Hofmeister*, filed concurrently herewith.

(the "Appendix") and is incorporated herein by this reference. In the Revstone Action, I have been designated as the Trustee's expert witness on Revstone's insolvency, the fraudulent pre-petition transfers made by Revstone to or for the benefit of Scott Hofmeister, Revstone's predicate creditors, the unauthorized post-petition transfers to Scott Hofmeister, and the contents of my expert report regarding Revstone. A true and correct copy of the *Initial Expert Report of James M. Lukenda Regarding Revstone Industries, LLC* (the "Revstone Report"), which I prepared in connection with, among other things, the Revstone Action, is attached as **Exhibit D** to the Appendix and is incorporated herein by this reference. My education, experience and other qualifications are set forth at pgs. 3-4 and Appendix A of the Spara Report, and at pgs. 3-4 and Appendix A of the Revstone Report. A37-38, A84-86, A212-213, A223-225.[3]

**I.      Organization of Revstone and Spara**

5.      According to Revstone's books and records, Revstone was founded on December 2, 2008 as a Delaware limited liability company, pursuant to an operating agreement dated December 2, 2008 between the Scott R. Hofmeister Irrevocable Trust, the Megan G. Hofmeister Irrevocable Trust and the Jamie S. Hofmeister Irrevocable Trust (the "Children's Trusts"). According to Spara's books and records, Spara was founded on August 2, 2010 as a Delaware limited liability company, pursuant to an operating agreement effective as of August 2, 2010 between the Children's Trusts. Revstone and Spara's operating agreements identified Scott Hofmeister's father, George Hofmeister, as the Chairman and sole manager of both Revstone and Spara. Based on my review of the Debtors' books and records, Revstone never held an ownership interest in Spara, and Spara never held an ownership interest in Revstone.

---

[3] Citations to page numbers preceded by an "A" refer to the Appendix submitted by the Trustee concurrently herewith.

**II.     The Spara Action**

    **A.     The Spara Transfer**

6.     Attached as **Exhibit H** to the Appendix is a wire confirmation reflecting a transfer of $70,000 from Spara to Scott Hofmeister on June 29, 2011 (the "Spara Transfer"). The Spara Transfer was made via wire transfer from Spara's operating account, Account No. 7381005722, at Fifth Third Bank (the "Fifth Third Account"). As set forth in the Spara Report, the Fifth Third Account was controlled and maintained by Spara, and was used to conduct Spara's business. The wire confirmation for the Spara Transfer identifies Spara as the originator of the Spara Transfer, and identifies Scott Hofmeister as the beneficiary of the Spara Transfer. A295.

7.     Based on my review of the Debtors' books and records, Spara never received anything of value in exchange for the Spara Transfer. Spara was not obligated to make the Spara Transfer, was not repaid for the Spara Transfer, and did not receive any promissory notes, written agreements, verbal repayment promises, or anything else of value in exchange for the Spara Transfer. Moreover, I have reviewed the portions of Scott Hofmeister's deposition transcript regarding work that Scott allegedly performed, and I have not located anything in the Debtors' books and records indicating that any work Scott allegedly performed provided any benefit to either Spara or its subsidiaries in exchange for the Spara Transfer.

8.     For instance, Scott testified that he may have performed M&A services for T Cast Holdings, LLC, although he could not identify any specific M&A services he performed for that entity. Ex. G, A247-248 at 33:16-34:12, A249-250 at 35:12-36:2. I have not located anything in the Debtors' books and records indicating that Scott performed any M&A services for Spara or its subsidiaries in exchange for the Spara Transfer.

-4-

9. Scott also testified that he was involved in the purchase of a die casting plant in Chihuahua, Mexico. Ex. G, A251-252 at 38:20-39:10. Spara never acquired a die casting plant in Chihuahua, Mexico. Scott also testified that he tried to create "synergies" between the die casting plant and two other entities, Contech and Texas Die. Ex. G, A259 at 46:13-24. Neither Contech Castings, LLC nor MW Texas Die Casting, Inc. was a Spara subsidiary.

10. Scott testified that he was involved in the purchase of a stamping company in Matamoros, Mexico. Ex. G, A251-252 at 38:20-39:3. Spara never acquired a stamping company in Matamoros. In fact, the stamping company in Matamoros appears to have been acquired by Matamoros Stamping, LLC ("Matamoros Stamping") in or around April 2010, well before Spara's formation in August 2010. Matamoros Stamping was not a Spara subsidiary.

11. Scott also testified that he was involved in six other transactions, which he identified as: Tisamatic, Demay, HK Engine, Interlock Commando, Stadco and Eptec. Ex. G, A266-267 at 55:23-56:25, A270 at 60:3-4. None of these transactions provided any benefit to Spara in exchange for the Spara Transfer. In particular, and based on my review of the Debtors' books and records:

- Tisamatic – This was a potential acquisition of certain assets of Tisamatic S. de RL de C.V. by Revstone or one of its subsidiaries. The acquisition process began in or around January 2009, almost two years prior to Spara's formation in August 2010. Scott testified at his deposition that the Tisamatic acquisition did not close. Ex. G, A268 at 57:2-4.

- Demay – This was a potential acquisition of certain assets of Demay International, LLC by Revstone or one of its subsidiaries. The acquisition process began in or around December 2009, almost one year prior to Spara's

-5-

formation in August 2010. Scott testified at his deposition that the Demay acquisition did not close. Ex. G, A268 at 57:5-6.

- HK Engine – This was a potential acquisition of certain assets of HK Engine Components, LLC by Revstone or one of its subsidiaries. The acquisition process began in or around August 2010, and ended in or around October 2010 (approximately nine months prior to the Spara Transfer). The HK Engine acquisition did not close.

- Interlock Commando – This was an acquisition in or around June 2009 of (i) certain assets of Interlock Die Company, LLC ("Interlock Die") by Arete Interlock, LLC ("Arete Interlock"), and (ii) a controlling membership interest in Commando Lock Company, LLC ("Commando Lock") by Arete Commando, LLC ("Arete Commando"). Neither Spara nor any of its subsidiaries had any interest in Interlock Die, Arete Interlock, Commando Lock or Arete Commando.

- Stadco – This was a potential acquisition of an ownership interest in Stadco, Inc. by Revstone or one of its subsidiaries. The acquisition process began in or around October 2009, almost one year prior to Spara's formation in August 2010. Scott testified at his deposition that the Stadco acquisition did not close. Ex. G, A269 at 59:13-15.

- Eptec – Scott testified at his deposition that this was a refinancing transaction. Ex. G, A270 at 60:3-9. Eptec, S.A. de C.V. was not a Spara subsidiary.

### B. Spara's Insolvency

12. As set forth in the Spara Report, Spara was hopelessly insolvent at the time of the Spara Transfer (June 29, 2011). At the time of the Spara Transfer, Spara's liabilities exceeded the fair value of Spara's assets by at least $46,387,000. A213. This amount is conservative. For instance, in valuing Spara's assets – which consisted of approximately $1 million in cash, investments in subsidiaries that with one exception had little or no value, and uncollectible account receivables – I used the $15.9 million net sale value obtained for Spara's only profitable subsidiary in 2014, notwithstanding that the terminal value of that subsidiary at the time of the Spara Transfer was much less ($8.2 million). A216. Similarly, in valuing Spara's liabilities – which included an approximately $61 million liability for underfunded pension plans – I used, as a starting point, a lower underfunded amount reported as of December 31, 2010 rather than a higher underfunded amount reported as of December 31, 2011. A218-219.

### C. Spara's Predicate Creditors

13. As set forth in the Spara Report, Spara had at least one predicate creditor: Gratiot 26 Mile Industrial 1, LLC ("Gratiot"), a lessor that entered into a lease with Spara on June 10, 2011. A222. Spara's lease obligations to Gratiot arose as of June 10, 2011 and remained outstanding on the Petition Date. A222. After the Petition Date, Gratiot filed Claim No. 527 against Spara.

## III. The Revstone Action

### A. The Revstone Transfers

14. Between January 13, 2012 and December 28, 2012, a total of $124,999.94 of Revstone's funds were transferred (the "Revstone Transfers") to or for the benefit of Scott

Hofmeister. The dates and amounts of each of the Revstone Transfers are set forth on Exhibit 1 to the Revstone Complaint. A014.[4]

15. The Revstone Transfers were made via twenty-six biweekly wire transfers from Revstone's payroll processor, Ceridian HCM, Inc. Revstone's payroll records establish that twenty-four of the Revstone Transfers, totaling $115,384.56, were made prior to the Petition Date (the "Revstone Pre-Petition Transfers") as gross wages to Scott Hofmeister, including employee withholding amounts transferred to federal and state taxing authorities on behalf of Scott Hofmeister. Revstone's payroll records also establish that the last two Revstone Transfers, totaling $9,615.38, were made after the Petition Date (the "Revstone Post-Petition Transfers") as gross wages to Scott Hofmeister, including employee withholding amounts transferred to federal and state taxing authorities on behalf of Scott Hofmeister. Revstone's payroll records pertaining to the Revstone Transfers are attached as **Exhibit J** to the Appendix.

16. Based on my review of the Debtors' books and records, Revstone did not receive anything of value in exchange for the Revstone Transfers. Among other things, at his deposition, Scott Hofmeister testified that he moved to Cambridge, Massachusetts in July 2011 to attend Harvard Business School as a full-time student, and continued to live in Cambridge until he graduated in May 2013. Ex. G, A261-262 at 49:24-50:22. As stated above, the Revstone Transfers were made in 2012. Revstone was located in Lexington, Kentucky in 2012.

### B. Revstone's Insolvency

17. As set forth in the Revstone Report, Revstone was without adequate capitalization from its inception in December 2008, and was insolvent at all times from December 2008

---

[4] As set forth in the Motion and discussed in further detail below, the Trustee seeks entry of summary judgment only as to the amounts transferred to Scott Hofmeister or to federal and state taxing authorities on behalf of Scott Hofmeister. The Trustee does not seek entry of summary judgment as to the remaining balance ($8,986.70) alleged in the Revstone Complaint. The remaining balance consists of employer taxes paid as a result of the Revstone Transfers.

through the filing of its bankruptcy petition on December 3, 2012. A039, A049-A050. Revstone's liabilities greatly exceeded its assets at all relevant times, with liabilities exceeding assets by over $4 million at the end of 2008, over $23 million at the end of 2009, over $57 million at the end of 2010, over $81 million at the end of 2011 and over $53 million at the end of 2012. A044. This calculation of Revstone's insolvency does not include the numerous guarantees that Revstone issued for its subsidiaries, for other Hofmeister-related entities, and for George Hofmeister and his family. A049. As set forth in the Revstone Report, Revstone issued guarantees of over $32 million in 2009, over $90 million in 2010, over $20 million in 2011 and $45 million in 2012. A049. Even without adding these guarantees to the calculation of Revstone's liabilities, Revstone was insolvent at the time of the Revstone Pre-Petition Transfers, which were made between January 2012 and November 2012. A039, A049-A050.

    C.    **Revstone's Predicate Creditors**

18.    As set forth in the Revstone Report, Revstone had at least two predicate creditors: (i) the Commonwealth of Kentucky Division of Unemployment Insurance, with a claim for unpaid unemployment insurance taxes that arose in January 2009 and remained outstanding on the Petition Date; and (ii) the Indiana Department of Workforce Development Collections Unit, with a claim for employer contributions under the Indiana Employer Security Act that arose in the first quarter of 2009 and remained outstanding on the Petition Date. A083.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 13, 2017.

_____
James M. Lukenda, CIRA, CFF

DOCS_LA:304490.4 73864/030